No. 13-55562

In the

# United States Court of Appeals

for the

# Ninth Court

JEFFREY KUNS, an individual, on his own behalf
and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,

*Defendant-Appellee.*

## PLAINTIFF-APPELLANT'S OPENING BRIEF
## AND STATUTORY ADDENDUM

Appeal from the United States District Court for the Central District of California,
No. 2:12-cv-07118-DMG-PLA, the Honorable Dolly M. Gee

DAVID C. PARISI, ESQ.
SUZANNE HAVENS BECKMAN, ESQ.
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 Telephone
(818) 501-7852 Facsimile

ETHAN PRESTON, ESQ.
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 Telephone
(866) 509-1197 Facsimile

*Attorneys for Plaintiff-Appellant, Jeffrey Kuns*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ......................................................4

    I.    The District Court Had Subject Matter Jurisdiction under the
Class Action Fairness Act ....................................................4

    II.   This Court Has Appellate Jurisdiction under 28 U.S.C. § 1291 ..........6

SUMMARY OF FACTS ........................................................................7

SUMMARY OF ARGUMENT ..............................................................9

STANDARD OF REVIEW ..................................................................10

ARGUMENT .......................................................................................10

    I.    Kuns Was Not Personally Liable for the Deficiency ..........................10

        A.    Section 580b Precludes Deficiency Judgments on
Purchase Money Mortgages....................................................11

        B.    Section 580d Precludes Deficiency Judgments on
Nonjudicial Foreclosure.........................................................12

        C.    The Anti-Deficiency Laws Eliminate Personal Liability,
Although They Do Not Eliminate the Underlying Debt..........14

    II.   The Test for Liability Under CCRAA Section 1785.25(a) Is
Whether Furnished Information Is Materially Misleading, Not
Just Technically Accurate ................................................................15

        A.    The CCRAA and the FCRA Share the Same Test for
Liability ..................................................................................16

        B.    The Same "Materially Misleading, Albeit Technically
Accurate" Standard Applies to CCRAA Section
1785.25(a) ...............................................................................18

C.  Because Section 1785.25(a) Prohibits Furnishing Incomplete *or* Inaccurate Information, It Must Cover Misleading Omissions As Well As Inaccurate Information.................................................................20

D.  Section 1785.25(a) Extended the Requirement for "Maximum Possible Accuracy" That Applies to CRAs and Furnishers ..........................................................22

III.  The District Court Erred Because It Did Not Consider Whether Ocwen's Reporting Was Misleading, Instead Resting on the Conclusion that the CCRAA Does Not Create an Affirmative Duty to Furnish Information ...............................................25

A.  Ocwen Had No Duty to Report the Deficiency, But It Did Have a Duty to Furnish Complete Information Once It Did So.........................................................................26

B.  Ocwen's Omission Was Misleading.........................................27

C.  Ocwen's Post-Bankruptcy Reporting Was Also Misleading........................................................................31

D.  Whether Ocwen's Credit-Reporting Was Materially Misleading Was An Issue of Fact for the Jury ........................33

E.  Ocwen's Cases Are Inapposite or Contrary to *Carvalho* and *Gorman*.......................................................35

IV.  Conclusion...................................................................38

STATEMENT OF RELATED CASES ....................................................40

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ...............................................................40

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abdelfattah v. Carrington Mortg. Servs. LLC*
No. 12-04656, 2013 WL 495358 (N.D. Cal. Feb. 7, 2013)............................2, 38

*Acosta v. City of Costa Mesa*
718 F.3d 800 (9th Cir. 2013) .........................................................................20, 21

*Agosta v. InoVision, Inc.*
No. 02-806, 2003 WL 23009357 (E.D. Pa. Dec. 16, 2003) ...............................32

*Alexander v. Moore & Assocs., Inc.*
553 F. Supp. 948 (D. Haw. 1982)..................................................................29, 30

*Bauer v. Target Corp.*
No. 12-978, 2012 WL 4054296 (M.D. Fla. Sept. 14, 2012) ..............................33

*Boggio v. USAA Federal Sav. Bank*
696 F.3d 611 (6th Cir. 2012) .............................................................................21

*Carvalho v. Equifax Information Servs., LLC*
629 F.3d 876 (9th Cir. 2010) ......................................................................passim

*Cortez v. Trans Union, LLC*
617 F.3d 688 (3d Cir. 2010) ...............................................................................30

*Dahlia v. Rodriguez*
--- F.3d ----, 2013 WL 4437594 (9th Cir. Aug. 21, 2013)..................................10

*Daley v. A & S Collection Associates, Inc.*
717 F. Supp. 2d 1150 (D. Or. 2010) ..................................................................32

*Davis v. HSBC Bank Nevada, N.A.*
691 F.3d 1152 (9th Cir. 2012) ...........................................................................35

*Fecht v. Price Co.*
70 F.3d 1078 (9th Cir. 1995) .............................................................................34

*Gorman v. Wolpoff & Abramson, LLP*
584 F.3d 1147 (9th Cir. 2009) ....................................................................passim

*Herrera v. LCS Fin. Servs. Corp.*
  No. 09-02843, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009).....................passim

*Herrera v. LCS Financial Services Corp.*
  No. 09-02843, 2009 WL 5062192 (N.D. Cal. Dec. 22, 2009) ...........................15

*Hinojos v. Kohl's Corp.*
  718 F.3d 1098 (9th Cir. 2013) .....................................................................35

*Hynix Semiconductor Inc. v. Rambus Inc.*
  441 F. Supp. 2d 1066 (N.D. Cal. 2006).......................................................26

*Knevelbaard Dairies v. Kraft Foods, Inc.*
  232 F.3d 979 (9th Cir. 2000) .........................................................................6

*Koropoulos v. Credit Bureau, Inc.*
  734 F.2d 37 (D.C. Cir.1984).................................................................22, 30, 33

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001) .......................................................................35

*Lenox v. Equifax Info. Servs. LLC*
  No. 05-1501, 2007 WL 1406914 (D. Or. May 7, 2007).....................................34

*Llewellyn v. Allstate Home Loans, Inc.*
  711 F.3d 1173 (10th Cir. 2013) .............................................................21, 29, 33

*Maloney v. LVNV Funding LLC*
  No. 06- 0452, 2006 WL 3006484 (N.D. Tex. Oct. 20, 2006) ...........................32

*Meyer v. Holley*
  537 U.S. 280 (1980).......................................................................................27

*Montgomery v. Wells Fargo Bank*
  No. 12-3895, 2012 WL 5497950 (N.D. Cal. Nov. 13, 2012).....................passim

*Orange County Dep't. of Educ. v. California Dep't. of Educ.*
  668 F.3d 1052 (9th Cir. 2011) ......................................................................10

*Pinner v. Schmidt*
  805 F.2d 1258 (5th Cir. 1986) ......................................................................30

*Rex v. Chase Home Finance LLC*
  905 F.Supp.2d 1111 (C.D. Cal. 2012) ............................................................2, 28

*Rosenberg v. Cavalry Investments, LLC*
  No. 03-1087, 2005 WL 2490353 (D. Conn. Sept. 30, 2005) ............................32

*Saunders v. Branch Banking & Trust Co. of Va.*
  526 F.3d 142 (4th Cir. 2008) .......................................................................passim

*Shannon v. Equifax Information Services, LLC*
  764 F. Supp. 2d 714 (E.D. Pa. 2011)..........................................................30, 34

*Sonoma County Ass'n of Retired Employees v. Sonoma County*
  708 F.3d 1109 (9th Cir. 2013) ...........................................................................10

*Standard Fire Ins. Co. v. Knowles*
  133 S. Ct. 1345 (2013)..........................................................................................5

*Thomas v. NCO Fin. Sys., Inc.*
  No. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ...............................33

*Turnacliff v. Westly*
  546 F.3d 1113 (9th Cir. 2008) ...........................................................................20

*Valentine v. First Advantage Saferent, Inc.*
  No. 08-142, 2009 WL 4349694 (C.D. Cal. Nov. 23, 2009) ...............................33

*Wang v. Asset Acceptance, LLC*
  681 F. Supp. 2d 1143 (N.D. Cal. 2010)..................................................35, 36, 37

*White v. Trans Union, LLC*
  462 F. Supp. 2d 1079 (C.D. Cal. 2006) .............................................................32

*Wilhelm v. Credico, Inc.*
  519 F.3d 416 (8th Cir. 2008) .............................................................................26

*Yourke v. Experian Info. Solutions, Inc.*
  No. 06-2370, 2007 WL 1795705 (N.D. Cal. June 20, 2007) .............................34

CALIFORNIA CASES

*Adams v. Paul*
  11 Cal.4th 583 (1995) ........................................................................................37

*Arnold v. Mutual of Omaha Ins. Co.*
202 Cal. App. 4th 580 (2011) ...............................................................27

*Bank of America, N.A. v. Mitchell*
204 Cal. App. 4th 1199 (2012) ............................................................13

*Borg-Warner Protective Servs. Corp. v. Sup. Ct.*
75 Cal. App. 4th 1203 (1999) ..............................................................27

*Cadle Co. II v. Harvey*
83 Cal. App. 4th 927 (2000) ................................................................37

*Cicone v. URS Corp.*
183 Cal. App. 3d (1986) .......................................................................26

*Cisneros v. U.D. Registry, Inc.*
39 Cal. App. 4th 548 (1995) ...............................................17, 19, 22

*Coker v. JP Morgan Chase Bank, N.A.*
218 Cal. App. 4th 1 (2013) ..............................................1, 11, 12, 13

*Commonwealth Mortgage Assurance Co. v. Sup. Ct.*
211 Cal. App. 3d 508 (1989) ..........................................................13, 37

*DeBerard Properties v. Lim*
20 Cal.4th 659 (1999) ..........................................................................37

*Dreyfuss v. Union Bank of Cal.*
24 Cal. 4th 400 (2000) .........................................................................11

*Engalla v. Permanente Med. Group, Inc.*
15 Cal. 4th 951 (1997) .........................................................................35

*Enloe v. Kelso*
217 Cal.App.4th 877 (2013) ................................................................12

*Guild Mortgage Co. v. Heller*
193 Cal. App. 3d 1505 (1987) .............................................................14

*Jacobs v. Freeman*
104 Cal. App. 3d 177 (1980) ...............................................................26

*Lake v. Reed*
  16 Cal. 4th 448 (1997) ...................................................................................15

*Martinez v. Combs*
  49 Cal. 4th 35 (2010) .....................................................................................27

*National Enterprises, Inc. v. Woods*
  94 Cal. App. 4th 1217 (2001) ..........................................................................1

*Olson v. Six Rivers Nat'l Bank*
  111 Cal. App. 4th 1 (2003) .............................................................................19

*People v. Massicot*
  97 Cal. App. 4th 920 (2002) ...........................................................................27

*Romo v. Stewart Title of Cal.*
  35 Cal. App. 4th 1609 (1995) .........................................................................14

*Roseleaf Corp. v. Chierighino*
  59 Cal. 2d 35 (1963) ......................................................................................13

*Schoendorf v. U.D. Registry, Inc.*
  97 Cal. App. 4th 227 (2002) .....................................................................23, 31

*Spitzer v. The Good Guys, Inc.*
  80 Cal. App. 4th 1376 (2000) ...................................................................19, 21

*Torrey Pines Bank v. Hoffman*
  231 Cal. App. 3d 308 (1991) ..........................................................................14

*Union Bank v. Gradsky*
  265 Cal. App. 2d 40 (1968) .......................................................................13, 37

*Vega v. Jones, Day, Reavis & Pogue*
  121 Cal. App. 4th 282 (2004) .........................................................................26

*Williams v. Superior Court*
  5 Cal. 4th 337 (1993) .....................................................................................20

*Yeroushalmi v. Miramar Sheraton*
  88 Cal. App. 4th 738 (2001) ...........................................................................24

**FEDERAL STATUTES**

15 U.S.C. § 1681c(a)(1) ...............................................................3, 32

15 U.S.C. § 1681c(a)(4) ...................................................................32

15 U.S.C. § 1681c(a)(5) ...................................................................32

15 U.S.C. § 1681e(b) ..................................................................22, 33

15 U.S.C. § 1681s-2(a)(1)(A) ..........................................................18

15 U.S.C. § 1681s-2(b) ..............................................................passim

15 U.S.C. § 1681s-2(b)(1)(D) .....................................................18, 33

15 U.S.C. § 1681s–2(b)(1)(E) ..........................................................18

28 U.S.C. § 1291 ........................................................................6, 7

28 U.S.C. § 1332(d)(2) ....................................................................5

28 U.S.C. § 1332(d)(l)(B) ...............................................................5

28 U.S.C. § 1332(d)(2)(A) ...............................................................5

Class Action Fairness Act of 2005 ....................................................4

Fair Debt Collection Practices Act ..............................................passim

Federal Fair Credit Reporting Act .................................................9, 16

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1785.13(a)(5) ........................................................32

Cal. Civ. Code § 1785.13(a)(7) ........................................................32

Cal. Civ. Code § 1785.13(c) ............................................................32

Cal. Civ. Code § 1785.16 .........................................................22, 23, 24

Cal. Civ. Code § 1785.16(a) .......................................................22, 23

Cal. Civ. Code § 1785.25 .......................................................16, 21, 23, 24

Cal. Civ. Code § 1785.25(a) ....................................................................passim

Cal. Code Civ. Proc. § 580b ...................................................................passim

Cal. Code Civ. Proc. § 580b(a)(3) ........................................................1, 11

Cal. Code Civ. Proc. § 580d ...............................................1, 2, 8, 12, 13

Ca. Consumer Credit Reporting Agencies Act....................................passim

**OTHER AUTHORITIES**

Ca. Assembly Bill No. 1629 .....................................................................23

Ca. Senate Bill No. 1069, Chapter 64 (Cal. 2012.) ...................................11

Fed. R. App. P. 4(a)(1)(A) ..........................................................................7

Fed. R. App. P. 32(a)(5)(A) .........................................................................1

Fed. R. App. P. 32(a)(6).............................................................................1

Fed. R. App. P. 32(a)(7)(B) ........................................................................1

Fed. R. App. P. 32(a)(7)(B)(iii) ..................................................................1

Fed. R. Civ. P. 12(b)(6)...................................................................1, 10, 35

Restatement (Second) of Torts § 529 (1977)............................................26

## INTRODUCTION

Plaintiff-Appellant Jeffrey Kuns ("Kuns") appeals from the dismissal of his case with prejudice under Federal Rule 12(b)(6). This case arises from the real estate collapse of 2007 and 2008. Kuns purchased a home in Nevada City, California with a purchase money mortgage. (ER 166:23-24.) Kuns fell into default, and his home was sold through a non-judicial foreclosure in late 2009. (*Id*.) The foreclosure on Kuns's home resulted in a deficiency: the sales proceeds were some $400,000 less than the outstanding balance of the mortgage. (*Id*. 166:25-27.) After the foreclosure, Defendant-Appellee Ocwen Loan Servicing, LLC ("Ocwen") reported to credit reporting agencies ("CRAs") in a manner that indicated that Kuns was *liable* for this deficiency. (*Id*. 166:27-167:4.)

California enacted "a collection of anti-deficiency statutes . . . during the Great Depression." *Coker v. JP Morgan Chase Bank, N.A.*, 218 Cal. App. 4th 1, 10 (2013). *See also National Enterprises, Inc. v. Woods*, 94 Cal. App. 4th 1217, 1225 (2001). Reflecting fundamental California public policy, these anti-deficiency laws bar personal liability, e.g., for a deficiency resulting from a non-judicial foreclosure or from foreclosure on a purchase money mortgage on a personal residence (that is used by less than five families). *See* Cal. Code Civ. Proc. § 580d; Cal. Code Civ. Proc. § 580b(a)(3). While the anti-deficiency laws do not eliminate Kuns's *debt* for the deficiency *per se*, they do eliminate Kuns's *liability* for the

deficiency. *See Herrera v. LCS Fin. Servs. Corp.*, No. 09-02843, 2009 WL 2912517, *3 (N.D. Cal. Sept. 9, 2009) ("*Herrera I*").

Ultimately, Kuns filed for bankruptcy in June 2011 and received a discharge in October 2011. (ER 166:27-67:10.) Shortly thereafter, Ocwen reported that the deficiency was discharged in Kun's bankruptcy. (*Id.*)

In his complaint, Kuns alleged that Ocwen violated California's Consumer Credit Reporting Agencies Act ("CCRAA") (Cal. Civ. Code, §§ 1785.1-36) by furnishing information to a "consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Kuns does not dispute that Ocwen could report the deficiency "as an existing debt" (ER 5). However, Ocwen furnished information it knew to be "incomplete or inaccurate" by reporting the deficiency *but failing to mention that Kuns was not personally liable on that deficiency. Cf. Abdelfattah v. Carrington Mortg. Servs. LLC*, No. 12-04656, 2013 WL 495358, *2-4 (N.D. Cal. Feb. 7, 2013) (CCRAA permits reporting deficiency barred by section 580d); *Rex v. Chase Home Finance LLC*, 905 F.Supp.2d 1111, 1121, 1157 (C.D. Cal. 2012) (allegation that defendant reported deficiency balance as "'late,' 'charged off,' 'collection' or other derogatory status" to credit reporting agencies, "when in fact under California Code of Civil Procedure 580b no such personal liability exists," stated CCRAA claim). There cannot be a more material omission. The district court held

that the CCRAA did not impose any "affirmative duty to report that a debt is uncollectible in court." (*Id*.) This holding is at odds with this Court's construction of the CCRAA. If Ocwen reported the deficiency, then it also had to report enough information so that a reasonable person would not be misled into thinking that Kuns was liable for the deficiency.

Ocwen's post-bankruptcy reporting was also "incomplete or inaccurate." Information about debts discharged in bankruptcy can be included in a credit report for ten years after the date of adjudication, but information about simple unpaid debts can only be reported for seven years. *See* 15 U.S.C. § 1681c(a)(1), (4), (5). By reporting the deficiency as discharged in bankruptcy, Ocwen ensured that the deficiency will be included in Kuns's credit report until October 2021—when it should properly be expunged from his credit report in late 2016.

### STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Was Ocwen's credit-reporting "incomplete or inaccurate" under CCRAA section 1785.25(a) when it failed to disclose that Kuns was not personally liable for the deficiency on his mortgage?

2. Was Ocwen's credit-reporting "incomplete or inaccurate" under CCRAA section 1785.25(a) when it reported Kuns's liability on the mortgage deficiency was discharged in bankruptcy in October 2011 (rather than barred under the anti-deficiency laws after the non-judicial foreclosure in 2009), so that the

deficiency will remain on Kuns's credit report until October 2021 rather than 2016?

## JURISDICTIONAL STATEMENT

### I.     The District Court Had Subject Matter Jurisdiction under the Class Action Fairness Act

Kuns filed his complaint in California Superior Court for Los Angeles on July 17, 2012. (ER 163.) Kuns alleged a class of California residents:

> All natural persons residing in California at the time Ocwen Loan Servicing LLC reported information to TransUnion, Experian, and/or Equifax which (a) indicated that such person was liable for the deficiency from
>
> > (i)     a non-judicial foreclosure of a mortgage for a residential property in California; or
> >
> > (ii)    a foreclosure of a purchase money mortgage for an owner-occupied residential property in California with less than five units; or
>
> which (b) indicated that such person's liability for a deficiency from
>
> > (i)     a non-judicial foreclosure of a mortgage for a residential property in California; or
> >
> > (ii)    a foreclosure of a purchase money mortgage for an owner-occupied, residential property in California with less than five units
>
> was discharged in bankruptcy when the bankruptcy occurred after the foreclosure ("the Class").

 (ER 167:21-68:8.) On August 17, 2012, Ocwen removed the case, asserting subject matter jurisdiction under the Class Action Fairness Act of 2005, Pub. L.

No. 109-2, § 4, 118 Stat. 4, 9-12 (codified at 28 U.S.C. § 1332(d)). (ER 248.) As

Ocwen's notice of removal states, the case is a "class action," and there is minimal

diversity between Kuns and Ocwen. (ER 155:17-18; 158:22-59:15.) *Cf.* 28 U.S.C.

§ 1332(d)(l)(B), (d)(2)(A). In support of its removal, Ocwen presented a

declaration asserting that:

> from July 1, 2010 through June 30, 2012, Ocwen engaged in credit
> reporting for approximately 5,101 California loans where the
> reporting indicated that a foreclosure sale had occurred on the
> property secured by the loan [and] [f]or approximately 4,730 of these
> loans, Ocwen reported a positive balance on the loan account to the
> three major credit bureaus following foreclosure sale of the property. .
> . . The overwhelming majority of the foreclosures associated with
> these loans were conducted non-judicially.

(ER 156:16-57:1.) On the basis of this evidence, Ocwen alleged $5 million in

controversy. (ER 154:23-58:7.) *Cf.* 28 U.S.C. § 1332(d)(2).

Initially, the district court questioned Ocwen's allegations that Kuns's class

allegations placed $5 million in controversy. (ER 92-93.) After taking

jurisdictional discovery, the parties submitted additional evidence about the

amount in controversy to the district court. (ER 43-91.) The district court then held

that "Defendants . . . demonstrated by a preponderance of the evidence that the

damages which Plaintiff seeks meet the jurisdictional threshold." (ER 42.) *Cf.*

*Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (prior to

certification, stipulation cannot substitute for district court's independent

assessment of amount in controversy under CAFA).

5

## II.     This Court Has Appellate Jurisdiction under 28 U.S.C. § 1291

This Court has jurisdiction under 28 U.S.C. § 1291. The district court

dismissed Plaintiff's complaint with prejudice: "Plaintiff's Complaint is

DISMISSED with prejudice." (ER 5.)

> Failure to allow leave to amend supports an inference that the district court intended to make the order final. Furthermore, the court's intention of finality is evinced by its apparent conclusion that amendment of the complaint would not save the action.

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000)

(citation omitted). Where "it appears that the district court intended the dismissal to

dispose of the action" through the dismissal of a complaint, the dismissal "may be

considered final and appealable." *Id*. (same). Here, the district court's order makes

it clear that the district court incorrectly concluded that Kuns's complaint did not

state a claim and could not be saved through amendment. The district court held

that the post-foreclosure deficiency balance "may be reported as an existing debt

*as a matter of law*." (ER 5 (emphasis added).) Likewise, the district court held that

Kuns's post-bankruptcy "claim also falters and Defendant's report of the existence

of the debt is accurate *as a matter of law*." (*Id*. (same).) Finally, the order bears the

"JS-6" notation that "shows that the clerk reported the case as terminated to the

Administrative Office of the United States Courts" (*cf*. ER 1-5 *with Knevelbaard*,

232 F.3d at 983) and the docket entry for the ruling states "[c]ase [t]erminated."

(*Cf*. ER 179 *with Knevelbaard*, 232 F.3d at 983.) This plainly indicates that the

district court intended to issue a final ruling. As "the district court intended its order to be a final dismissal," this Court "has jurisdiction on appeal under 28 U.S.C. § 1291." *Id.*

The district court entered the dismissal on April 1, 2013. Plaintiff timely filed his notice of appeal on April 4, 2013. (*Cf.* ER 6-15 *with* Fed. R. App. P. 4(a)(1)(A).)

## SUMMARY OF THE CASE

On July 17, 2012, Kuns filed his complaint in California state court. (ER 163.) On August 17, 2012, Ocwen removed the case to federal court. (*Id*. 248.) On September 19, 2012, Ocwen filed a motion to dismiss. (*Id*. 133-52.) On October 5, 2012, Kuns filed his opposition to the motion. (*Id*. 105-32.) On October 12, 2012, Ocwen filed its reply. (*Id*. 94-104.)

After the district court established that the jurisdictional amount in controversy had been met (*id*. 92-93), Ocwen and then Kuns submitted supplemental authorities to the district court on February 11, 2013 and March 20, 2013, respectively. (*Id*. 16-41.) The district court dismissed the case on April 1, 2013. (*Id*. 1-5.) Kuns filed his notice of appeal on April 4, 2013. (*Id*. 6-15.)

## SUMMARY OF FACTS

In June 2005, Kuns purchased a home in Nevada City, California with a purchase money mortgage. (*Id*. 166:23-25.) Ocwen serviced the mortgage. (*Id*.)

When the economy soured, Kuns defaulted on his mortgage. (*Id*. 166:25-26.) Kuns's home was ultimately sold through a non-judicial foreclosure in late 2009. (*Id*. 166:24.) The sale resulted in a deficiency: the sales proceeds totaled some $400,000 less than the outstanding balance of the mortgage. (*Id*. 166:25-27.)

Immediately prior to filing for bankruptcy in June 2011, Kuns discovered that Ocwen reported information to Equifax (and possibly other credit reporting agencies) that suggested that Kuns was liable for this deficiency. (*Id*. 166:27-67:2.) (Kuns also alleged, in the alternative or in addition, that Ocwen did not correct outdated information which suggested that he was liable for this deficiency. (*Id*. 167:2-4.))

Kuns received a discharge from his bankruptcy in October 2011. Shortly thereafter, Ocwen reported to Equifax (and possibly others) that Kuns's liability on the deficiency had been eliminated through the bankruptcy. (*Id*. 167:7-9.) Again, this reporting suggested that Kuns had liability for the deficiency after the non-judicial foreclosure on his home. (*Id*. 167-9:10.)

During discovery, Ocwen admitted that (1) it knew about California Code of Civil Procedure sections 580b and 580d prior to reporting the deficiency on Kuns's mortgage to Equifax (*id*. 77:15-17; 87:4-88:28); and that (2) between July 1, 2010 and June 30, 2012, it had reported deficiencies on 4,730 mortgages which were

secured by a California residence, "and that the overwhelming majority of those properties were foreclosed nonjudicially." (ER 78:3-9; 84:1-22.)

## SUMMARY OF ARGUMENT

The central issue on appeal is whether Ocwen's failure to note that Kuns was not personally liable for the deficiency on his mortgage rendered Ocwen's credit-reporting "incomplete or inaccurate" under CCRAA section 1785.25(a). The crux of the district court's decision was that California's anti-deficiency laws do not eliminate a debt on a deficiency *per se*, they just prohibit the entry of judgment on such deficiency. This misses the point of Kuns's claim; Kuns does not dispute that Ocwen can report the deficiency. Rather, the question before the Court is whether Ocwen's credit-reporting was "incomplete or inaccurate" under the CCRAA in light of the fact that Kuns was not personally liable for the debt. Ocwen violated the CCRAA because this omission is materially misleading: at the minimum, the jury must decide whether Ocwen's omission was misleading.

The district court seems to have based its ruling on a reading of the CRAA that did not create any "affirmative duty to report" material information. (ER 4, 5.) But the CCRAA's plain text ("*incomplete* or inaccurate"), its legislative history, and this Court's construction of the CCRAA (which borrows extensively from persuasive analysis concerning the closely-related federal Fair Credit Reporting Act (15 U.S.C. §§ 1681-1681x) ("FCRA")) all point to the contrary: if a furnisher

like Ocwen chooses to report information, it does have an affirmative duty to

report enough information that it is not materially misleading.

## STANDARD OF REVIEW

The Court "review[s] *de novo* the district court's dismissal [of a] complaint

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Dahlia*

*v. Rodriguez*, --- F.3d ----, 2013 WL 4437594, at *4 (9th Cir. Aug. 21, 2013)

(citation omitted). In particular, "[t]he district court's interpretation of California

state law is also reviewed *de novo*; our goal is to ascertain and apply California

law." *Orange County Dep't. of Educ. v. California Dep't. of Educ.*, 668 F.3d 1052,

1055 n. 3 (9th Cir. 2011). On *de novo* review, the Court accepts "all factual

allegations of the complaint as true and draw[s] all reasonable inferences in favor

of the nonmoving party." *Dhalia*, 2013 WL 4437594, at *4 (citation omitted). "As

a general rule, dismissal without leave to amend is improper unless it is clear, upon

*de novo* review, that the complaint could not be saved by any amendment."

*Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109,

1118 (9th Cir. 2013) (citation, punctuation omitted).

## ARGUMENT

## I.    Kuns Was Not Personally Liable for the Deficiency

The deficiency Ocwen reported arose from the non-judicial foreclosure on

Kuns's Nevada City single-family residence. (ER163:23-164:18.) As Ocwen

conceded below, it could not obtain a judgment against Kuns for this deficiency.

(*Id*. 144-45.)

A deficiency judgment is "a personal judgment against a debtor for a recovery of the secured debt measured by the difference between the debt and the net proceeds received from the foreclosure sale." *Dreyfuss v. Union Bank of Cal.*, 24 Cal. 4th 400, 407 (2000) (citations omitted). California law precludes deficiency liability in several contexts, two of which are at issue in this appeal.

## A.    Section 580b Precludes Deficiency Judgments on Purchase Money Mortgages

Section 580b prohibits deficiency judgments on purchase money mortgages for personal residences (used by less than five families):

> No deficiency judgment shall lie in any event . . . [u]nder a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by the purchaser.

Cal. Code Civ. Proc. § 580b(a)(3).[1] The effect of section 580b is to "prohibit[] a deficiency judgment following a foreclosure on a purchase money loan"—that is, a "deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price." *Coker*, 218 Cal. App. 4th at 9, 10 (citation omitted). Section

---

[1]    Although the parties' briefing was complete in 2012, the California Legislature amended section 580b to apply to refinance loans, effective January 1, 2013. Senate Bill No. 1069, ch. 64 (Cal. 2012.) This amendment does not alter the law relevant to this appeal in any way.

580b was intended to "discourage the vendor from overvaluing the property, and to prevent the aggravation of a downturn that may result from an economic depression." *Enloe v. Kelso*, 217 Cal.App.4th 877, 880-881 (2013) (citation, punctuation omitted). Section 580b "stabilizes purchase money secured land sales by keeping the vendor from overvaluing the property and by suggesting to the purchaser its true value," and "prevents the aggravation of the [decline in property values] that would result if defaulting purchasers were burdened with large personal liability." *Herrera I*, 2009 WL 2912517, at *3 (citations omitted).

### B.    Section 580d Precludes Deficiency Judgments on Nonjudicial Foreclosure

Likewise, section 580d prohibits deficiency judgments arising from non-judicial foreclosures:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

Cal. Code Civ. Proc. § 580d. A judicial foreclosure "requires the foreclosing party to file a lawsuit" and to prove that "the subject loan is in default and the amount of default." *Coker*, 218 Cal. App. 4th at 8 (citation omitted). Conversely, in a "nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust." *Id*. (citation, punctuation omitted). Nonjudicial foreclosures are initiated simply by recording of a notice of default,

and concluded with the trustee's sale of the mortgaged property. *Id.* "Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure," because there is no court oversight, no appraisal, or judicial determination of fair value is required, and the mortgagor has no post-sale right of redemption. *Id.* (citation, punctuation omitted).

The trade-off is that section 580d precludes the creditor from "seek[ing] a deficiency judgment following the trustee's sale." *See also Bank of America, N.A. v. Mitchell*, 204 Cal. App. 4th 1199, 1205 (2012) ("[t]he effect of section 580d is that a [mortgagee] cannot hold the debtor for a deficiency unless he uses the remedy of judicial foreclosure").

> The Legislature clearly intended to protect the debtor from personal liability following a nonjudicial sale of the security. No liability, direct or indirect, should be imposed upon the debtor following a nonjudicial sale of the security. To permit a guarantor to recover reimbursement from the debtor would permit circumvention of the legislative purpose in enacting section 580d.

*Union Bank v. Gradsky*, 265 Cal. App. 2d 40, 46 (1968).  Section 580d is intended "to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies." *Commonwealth Mortgage Assurance Co. v. Superior Court*, 211 Cal. App. 3d 508, 514, 516 (1989). "[S]ection 580d was enacted to put judicial enforcement on a parity with private enforcement" and to ensure "the security satisf[ies] a realistic share of the debt." *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 43 (1963) (citations omitted).

13

Indeed, California's anti-deficiency laws all share the same general purposes. *See Torrey Pines Bank v. Hoffman*, 231 Cal. App. 3d 308, 318 (1991) (purpose of anti-deficiency laws generally is "to prevent an overvaluation of the security," and "to prevent the aggravation of an economic recession"); *Guild Mortgage Co. v. Heller*, 193 Cal. App. 3d 1505, 1511 (1987) (anti-deficiency laws generally designed "to protect debtors in certain situations from personal liability for large deficiency judgments" and to thereby "prevent[] aggravation of the economic downturn"; citation omitted).

### C.    The Anti-Deficiency Laws Eliminate Personal Liability, Although They Do Not Eliminate the Underlying Debt

The district court's ruling was predicated on the notion that the anti-deficiency laws only "prohibit[] deficiency judgments, rather than eradicat[e] the debt." (ER 4.) The district court found that the anti-deficiency laws

> merely limit remedies available to creditors and do not completely extinguish a debtor's liability for the deficiency. *See Romo v. Stewart Title of Cal.*, [35 Cal. App. 4th 1609, 1615 n.5 (1995)] ("Although the lender may not obtain a deficiency judgment after a foreclosure . . ., the foreclosure does not extinguish the debt. The lender retains other remedies for collection of the unpaid balance of the debt.")

(*Id.*) *See also Herrera I*, 2009 WL 2912517, at *6-7 (anti-deficiency laws eliminate personal liability, but permit creditors to pursue additional security like insurance proceeds or to seek recovery from a guarantor).

Notably, the anti-deficiency laws have nothing at all to say about how creditors may *communicate* about deficiencies. Indeed, the *Herrera* court later found that communications seeking to collect a deficiency could be misleading and thereby violate the Fair Debt Collection Practices Act, because it did not explain that the creditor had no legal right to recoup the deficiency. *Herrera v. LCS Financial Services Corp.*, No. 09-02843, 2009 WL 5062192, *5 (N.D. Cal. Dec. 22, 2009) ("*Herrera II*"). Because it is the CCRAA section 1785.25(a) that specifically regulates information furnished to CRAs, its provisions (and not the anti-deficiency laws) control how such deficiencies can be reported. *Lake v. Reed*, 16 Cal. 4th 448, 464 (1997) ("a more specific statute controls over a more general one"). As set forth below, Kuns's theory of liability is consistent with *Herrera I* and *Herrera II*: Ocwen can certainly report the deficiency balance, but if it does so, then it must also report the deficiency in a manner that does not mislead anyone into thinking Kuns could be personally liable for the deficiency.

## II.    The Test for Liability Under CCRAA Section 1785.25(a) Is Whether Furnished Information Is Materially Misleading, Not Just Technically Accurate

The Court uses FCRA case law to help construe the CCRAA. Indeed, California courts have looked to FCRA cases to construe the CCRAA. Case law that specifically construes CCRAA section 1785.25(a) takes the same approach. The CCRAA's plain language and statutory history, and the Court's prior decisions

on the FCRA and the CCRAA, all point to a single test for liability under section 1785.25(a): information furnished to a CRA is incomplete (and therefore violates the law) if it is *materially misleading*.

### A.    The CCRAA and the FCRA Share the Same Test for Liability

The CCRAA prohibits "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The legislative history for section 1785.25 describes it as "creat[ing] a general standard of care for suppliers of information to CRAs—a supplier must not furnish information a specific transaction or experience to a CRA if it knows or should know that the information is incomplete or inaccurate." (Dkt. Entry 9-3, Hamilton Decl. at p. 229 of 537 (cite to internal page number).).

When construing the CCRAA, the Court has turned to case law construing the FCRA. The Court has held that information may be "inaccurate" under the CCRAA either "'because it is patently incorrect, or ***because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions***.'" *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (emphasis added). The Court's analysis recognized the close, intertwined relationship between the CCRAA and the FCRA: "because the

16

CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.'" *Carvalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003)). *Carvalho* noted that California state courts "expound[ed] a very similar concept of inaccuracy in the context of FCRA and CCRAA provisions requiring that credit reporting agencies adopt procedures to assure the 'maximum possible accuracy' of credit reports." *Id*. at 890 (citing *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 579 (1995)). Because the CCRAA and the FCRA both "require 'maximum possible' accuracy[,]' a report violates [these] statutes when it is misleading or incomplete, even if it is technically accurate." *Cisneros*, 39 Cal. App. 4th at 579 (citing *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir.1984); quoted in *Carvalho*, 629 F.3d at 890).

The fact that *Carvalho* applied *Gorman*'s analysis to the CCRAA is illustrative by itself. In *Gorman*, the Court held that the failure to report that a consumer disputed a debt after the furnisher's investigation of the dispute could violate FCRA section 1681s-2(b). *Gorman*, 584 F.3d at 1162-64. *Gorman* found that "the failure to report [a] dispute ***that could materially alter how the reported debt is understood*** . . . gives a furnisher's liability under § 1681s-2(b)." *Id*. at 1163 (following *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th

Cir. 2008); emphasis added). Although *Gorman* concerned FCRA section 1681s-2(b) rather than CCRAA section 1785.25(a), these laws use the exact same language and regulate essentially the same conduct.[2] The weight of authority supports applying the same standard of liability to CCRAA section 1785.25(a): information violates the statute if it is materially misleading, i.e., if omitted information could materially alter how the reported debt is understood.

### B. The Same "Materially Misleading, Albeit Technically Accurate" Standard Applies to CCRAA Section 1785.25(a)

*Montgomery v. Wells Fargo Bank*, No. 12-3895, 2012 WL 5497950 (N.D. Cal. Nov. 13, 2012) appears to be the only court to directly formulate a standard for liability under CCRAA section 1785.25(a). Not surprisingly, *Montgomery* held that *Gorman*'s test for liability—the failure to report information "'that could materially alter how the reported debt is understood'"—applied to a claim under CCRAA section 1785.25(a) as well. *Id.* at *4 (quoting *Gorman*, 584 F.3d at 1163). In *Montgomery*, the court found that the defendant furnished *accurate* information,

---

[2] FCRA section 1681s-2(b) requires furnishers to correct "incomplete or inaccurate" information after it has been disputed. 15 U.S.C. § 1681s-2(b)(1)(D). *See also* 15 U.S.C. § 1681s–2(b)(1)(E). *Cf.* Cal. Civ. Code § 1785.25(a) (prohibiting furnishing "incomplete or inaccurate information"). *Gorman* also held that section 1785.25(a) was "largely consistent with obligations imposed in the FCRA; indeed, the requirements imposed in the [CCRAA] appear, in nearly identical fashion, in [FCRA section] 1681s-2(a)." *Gorman*, 584 F.3d at 1172 (comparing Cal. Civ. Code § 1785.25(a) with 15 U.S.C. § 1681s-2(a)(1)(A) (prohibiting furnishing information "the person knows or has reasonable cause to believe that the information is inaccurate").

but might still be liable if the information was *incomplete*. *Id*. at *5.

> *Even if* [the furnished information] *was technically accurate, it might still be misleading or incomplete*. *Cf*. [*Cisneros*, 39 Cal. App. 4th at 579] (concluding that a consumer reporting agency has not ensured the "maximum possible accuracy" of information when the information "is misleading or incomplete, even if it is technically accurate.")

*Id*. (emphasis added). *Montgomery* acknowledges that a furnisher can accurately report that a debt exists, but still violate the CCRAA by omitting information necessary to prevent the report from being misleading. Ocwen's report that Kuns owed the deficiency may have been technically correct—but, as *Montgomery* shows, the information Ocwen furnished could still violate the CCRAA because it was misleadingly incomplete.

The weight of the authority supports *Montgomery*'s application of the *Gorman* standard of liability under the FCRA, because the FCRA and the CCRAA share identical language. "Resort to federal case law is particularly appropriate" when a California statute uses language "virtually identical to language" in a federal statute. *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (2000). This principal applies here, where California state courts have held that "judicial interpretation of the [FCRA] is persuasive authority and entitled to substantial weight when interpreting the [CCRAA]." *Olson*, 111 Cal. App. 4th at 12 (quoted by *Carvalho*, 629 F.3d at 889 (this Court "assum[es] that California courts would interpret the FCRA and CCRAA consistently")).

19

**C.     Because Section 1785.25(a) Prohibits Furnishing Incomplete *or* Inaccurate Information, It Must Cover Misleading Omissions As Well As Inaccurate Information**

Other, more generally applicable principles of California statutory interpretation support the same result as *Montgomery*. The Court applies California's rules of statutory interpretation when construing California statutes. *Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008) (citing *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir.2001)). CCRAA section 1785.25(a) applies to "*incomplete* or inaccurate" information. Cal. Civ. Code § 1785.25(a). Because the California Legislative prohibited furnishing either incomplete or inaccurate information, "incomplete" must mean something besides "inaccurate." The Court must "'accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.'" *Id*. (quoting *In re First T.D. & Inv.*, 253 F.3d at 527). *See also Williams v. Superior Court*, 5 Cal. 4th 337, 357 (1993) ("[a]n interpretation that renders statutory language a nullity is obviously to be avoided"). Further, the placement of the word "or" between "incomplete" and "inaccurate" confirms that "incomplete" must have a different meaning than "inaccurate." "California courts follow the common rule of statutory construction that gives disjunctive and distinct meaning to items separated by the word 'or.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800, 815 (9th Cir. 2013) (following,

quoting *In re Jesusa V.*, 32 Cal. 4th 588, 622 (2004) ("The ordinary and popular meaning of the word 'or' is well settled. It has a disjunctive meaning: In its ordinary sense, the function of the word 'or' is to mark an alternative such as either this or that.")). Hence, "because [the word 'incomplete'] is separated from [the word 'inaccurate'] by the word 'or,' *it must be interpreted to mean something distinct*." *Id*. (emphasis added).

Case law construing the same language in FCRA section 1681s-2(b) illustrates what the word "incomplete" means in this context. *Cf. Spitzer*, 80 Cal. App. 4th at 1384. Emphasizing that section 1681s-2(b) applied to both "*incomplete or inaccurate*" information, the Fourth Circuit in *Saunders* concluded that "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported **but also for omissions that render the reported information misleading**." *Saunders*, 526 F.3d at 148 (italics in original, bold added). *Saunders*'s analysis has proven persuasive to three other appellate courts, including this Court. *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013) (quoting and following above passage from *Saunders*); *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) (same); *Gorman*, 584 F.3d at 1163 (same). The word "incomplete" covers misleading omissions under the FCRA; CCRAA section 1785.25 should be construed the same way.

21

**D.    Section 1785.25(a) Extended the Requirement for "Maximum Possible Accuracy" That Applies to CRAs and Furnishers**

Authority construing other provisions of the CCRAA also supports a broad construction of the word "incomplete" in section 1785.25(a). For instance, the CCRAA provides consumers a procedure to dispute the "completeness or accuracy" of any information in a credit report with a CRA. Cal. Civ. Code § 1785.16(a). In *Cisneros*, the court held that a CRA violated this provision by failing to respond to the plaintiffs when they disputed the *completeness* of the credit reports, rejecting the CRA's argument that section 1785.16 only applied to disputes over the *accuracy* of information in a credit report. *Cisneros*, 39 Cal. App. 4th at 578-80.

> [The defendant] overlooks its broader obligations under the statutes as a credit reporting agency. Both CCRAA and FCRA require "maximum possible" accuracy. [citing Cal. Civ. Code § 1785.14(b); 15 U.S.C. § 1681e(b).] This means that a report violates the statutes when it is misleading or incomplete, even if it is technically accurate. [citing *Koropoulos*, 734 F.2d at 40; other citation omitted.] In *Koropoulos*, the [court] held that reporting that a consumer defaulted on a loan without also reporting that he subsequently paid the debt in full violated the FCRA. The court "d[id] not agree with the district court that section 1681e(b) makes a credit reporting agency liable for damages only if the report contains statements that are technically untrue. Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure 'maximum accuracy.' The Act's self-stated purpose is 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and

22

> equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.' 15 U.S.C. § 1681e(b). Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports."

*Id*. at 579-80 (quoting *Koropoulos*, 734 F.2d at 40; citing, e.g., *Alexander v. Moore & Assocs., Inc.*, 553 F. Supp. 948, 952 (D. Haw. 1982)). *See also Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227, 239 (2002).

The similarity between the language in sections 1785.16(a) and 1785.25(a) also supports applying *Cisneros*'s analysis to this case. *Cf. Carvalho*, 629 F.3d at 890 (applying *Gorman*'s analysis of FCRA to CCRAA section 1785.16, Court "adhere[d] to the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation"). Section 1785.25's statutory history also supports this result. The California Legislature intended to impose the same sort of "maximum accuracy" on furnishers that it imposed on CRAs. On August 5, 1992, the California Senate inserted section 1785.25 into Assembly Bill No. 1629 as section 11. (*See* Dkt. Entry 9-3, Hamilton Decl. at p. 92 of 537. *Cf. id*. at p. 213 of 537.) The Senate committee report on the amendment noted that the bill

> place[d] new responsibilities and obligations on credit grantors—the furnishers of information. *Many of the same duties imposed on the CRAs would be imposed on creditors*. For example, creditors must ensure that information is complete and accurate[.]

(*Id*. at 290) (emphasis added). Likewise, the Assembly's concurrence to the Senate

amendments noted that existing law did not impose any "obligations or responsibilities with respect to credit reporting upon creditors," and that the amendment "[p]lace[d] duties and obligations on persons who furnish information to CRAs (creditors) *similar to those placed on CRAs* [including] maintaining accurate files[.]" (*Id*. at 260-61) (emphasis added). In light of this legislative history, *Cisneros*'s interpretation of section 1785.16 is particularly salient:

> [W]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the framers intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after federal statutes.

*Yeroushalmi v. Miramar Sheraton*, 88 Cal. App. 4th 738, 748-49 (2001) (quoting *Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen*, 54 Cal. 2d 684, 688-89 (1960)). The same "materially misleading" standard that applies to section 1785.16 also applies to section 1785.25 here.

In sum, prevailing case law on the FCRA and the close relationship between the FCRA and the CCRAA, as well as traditional canons of legislative interpretation (including section 1785.25(a)'s statutory history) all support *Montgomery*'s conclusion that section 1785.25(a) reaches information that is "technically accurate," but nonetheless "misleading or incomplete." *Montgomery*, 2012 WL 5497950, at *5.

**III.   The District Court Erred Because It Did Not Consider Whether Ocwen's Reporting Was Misleading, Instead Resting on the Conclusion that the CCRAA Does Not Create an Affirmative Duty to Furnish Information**

The district court seems to have reasoned that Kuns did not state a CCRAA claim because the CCRAA did not impose any affirmative duty to furnish clarifying information on Ocwen. (*Cf*. ER 5.) The district court misapprehended what the CCRAA requires. While the information that Kuns owed the deficiency furnished by Ocwen may have been "technically accurate," it still violated the CCRAA (as *Montgomery* shows) because it was still misleading. The CCRAA did not require Ocwen to report the deficiency in the first place—but once Ocwen did so, it had an obligation to furnish enough information that no one would be misled. Contrary to the ruling below, the weight of authority is that defendants who furnish "technically accurate" information *do* have an affirmative duty to furnish enough information so that the credit report is not misleading. The omission of the fact that Kuns was not liable for the deficiency (although it technically still existed) is exactly the kind of omission that other courts have found to be materially misleading under the CCRAA and FCRA. In short, Ocwen had no duty to speak, but once it chose to do so, it had a duty to speak the whole truth.

25

In any event, it is dispositive that the test for liability under the CCRAA is whether Ocwen's reporting was materially misleading. It is beyond question that the determination of whether or not Ocwen's reporting was materially misleading is an issue of fact reserved for the jury. Reversal is warranted on that basis alone.

## A.    Ocwen Had No Duty to Report the Deficiency, But It Did Have a Duty to Furnish Complete Information Once It Did So

The ruling below appears to hinge on the conclusion that the CCRAA did not impose an affirmative duty on Ocwen to furnish information. (*Cf.* ER 5.) It is a well-settled principle of common law is that one who communicates information must communicate enough that the information is not misleading, even if the person had no duty to communicate at all in the first place:

> A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation.

Restatement (Second) of Torts § 529 (1977). California courts have adopted this principle of law: "where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated," *even if there is no duty to speak otherwise*. *Jacobs v. Freeman*, 104 Cal. App. 3d 177, 192 (1980) (citing Restatement (Second) of Torts § 529 (1977)).[3] Further, California

---

[3]    *See also Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004) (same; quoting *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 201 (1986); quoted by *Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066, 1076 (N.D. Cal. 2006)). *Cf. Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th

courts incorporate common law principles when construing California statutes. *Cf.*
*Martinez v. Combs*, 49 Cal. 4th 35, 63 (2010) ("statute will be construed in light of
the common law unless the Legislature clearly and unequivocally indicates
otherwise"; citation, punctuation omitted).[4] *See also Meyer v. Holley*, 537 U.S.
280, 285 (1980) ("when Congress creates a tort action, it legislates against a legal
background of ordinary tort-related vicarious liability rules and consequently
intends its legislation to incorporate those rules"). Kuns reiterates that Ocwen has
admitted to knowing that California's anti-deficiency laws barred Kuns's liability
on the deficiency from his mortgage. (ER 77:15-17; 87:4-88:28.)

    No one contends Ocwen had a duty to report the deficiency on Kuns's
mortgage to Equifax in the first place. Thus, fixating on whether the CCRAA
imposes an affirmative duty to furnish information misses the point. Ocwen did not
have to furnish information about the deficiency on Kun's mortgage, but once
Ocwen chose to speak, it had to speak the whole truth.

### B.    Ocwen's Omission Was Misleading

    Courts have frequently held that material omissions render even technically

---

Cir. 2008) (citing "basic fraud law principle that, if a debt collector *elects* to
communicate "credit information" about a consumer, it must not omit a piece of
information that is always material, namely, that the consumer has disputed a
particular debt").

[4]    *See Arnold v. Mutual of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 586 (2011);
*People v. Massicot*, 97 Cal. App. 4th 920, 928 (2002); *Borg-Warner Protective
Servs. Corp. v. Superior Court*, 75 Cal. App. 4th 1203, 1208 (1999).

accurate information furnished to (or reported by) CRAs misleading and actionable. Given these authorities and their application to the CCRAA, there is little room to doubt that the information Ocwen furnished regarding the deficiency on Kuns's mortgage violated section 1785.25(a) because it omitted the fact that Kuns was not liable for the deficiency.

Ocwen's omission of the fact that Kuns was not personally liable for the reported mortgage deficiency is consistent with other omissions found to be actionable. *Montgomery* found that even if the information furnished by the defendant (that the debt had been charged off) was "technically accurate," it could still be "incomplete" under the CCRAA and misleading because it failed to mention that the debt had been discharged in bankruptcy. *Montgomery*, 2012 WL 5497950, at *5. *Montgomery* found that the plaintiff properly alleged a CCRAA claim: the logical implication is that the defendant had an affirmative duty to report that a debt was discharged in bankruptcy, if that omission was misleading.[5]

The result in *Montgomery* is consistent with other cases on furnisher liability under FCRA section 1681s-2(b). In *Saunders*, the Fourth Circuit rejected "a *per se* rule that furnishers are never obliged to report affirmative defenses or consumer

---

[5]   *Rex* upheld that a CCRAA claim against a defendant reporting a deficiency barred under California Code of Civil Procedure 580b as "'late,' 'charged off,' 'collection' or other derogatory status." *Rex*, 905 F. Supp. 2d at 1121, 1157. Unfortunately, *Rex*'s analysis does not shed much light on the question before the Court: whether the omission that a deficiency is barred by California law renders furnished information "incomplete" under the CCRAA.

disputes, regardless of how meritorious the dispute may be." *Saunders*, 526 F.3d at 150. Rather, *Saunders* held that "if a consumer has a meritorious dispute . . . the consumer's failure to pay the debt does not reflect financial irresponsibility." *Id*. (Indeed, *Saunders* cited *Alexander* for the proposition that "a disputed debt differs materially from an undisputed debt even if the consumer would not succeed at a trial of the dispute." *Id*. (citing *Alexander*, 553 F. Supp. at 954).) *Gorman* endorsed *Saunders*'s reasoning that "a consumer's failure to pay a debt that is not really due 'does not reflect financial irresponsibility,' and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." *Gorman*, 584 F.3d at 1163 (quoting *Saunders*, 526 F.3d at 150). In *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013), the Tenth Circuit found that information which accurately indicated that a plaintiff failed to repay a loan could nonetheless be misleading, because it was incomplete without the plaintiff's dispute (that "the payoff funds were stolen by an unidentified party" before the defendants received them). *Id*. at 1185-86 (citing *Saunders*, 526 F.3d at 148). Thus, furnishers violate the FCRA, even if everything reported about a debt is accurate, if they do not report the fact that the debt is disputed and that omission renders the report misleading. In other words, the FCRA recognizes an affirmative duty on furnishers to report additional information, if the omission of that information renders the

existing report misleading. Given authority like *Carvalho*, there is every reason to think the CCRAA reaches the same result.

Courts construing CRAs' duties under the FCRA are also helpful. For instance, the FCRA does not permit "a consumer reporting agency [to] report that a person was 'involved' in a credit card scam, [but] fail to report that he was in fact one of the victims of the scam." *Alexander*, 553 F. Supp. at 952. Two different appellate courts have endorsed *Alexander*'s analysis. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010); *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986). Indeed, *Cortez* uses this analysis to illustrate the "dramatic" distinction between "accuracy" and "maximum possible accuracy": while the statement that the consumer was "involved" is accurate, it is "also woefully misleading because it did not inform people that she was involved as a victim of the scam, and not as the perpetrator." *Cortez*, 617 F.3d at 709. *See also Koropoulos*, 734 F.2d at 43-45 (FCRA's legislative history indicates that credit report is incomplete and not maximally accurate if it does not distinguish between chapter 7 and chapter 13 bankruptcies). Likewise, when a plaintiff sent a check to a creditor but the creditor never cashed the check, a credit report indicating that the creditor's bill was unpaid "may have been technically accurate, but may also have been misleading[.]" *Shannon v. Equifax Information Services, LLC*, 764 F. Supp. 2d 714, 722 (E.D. Pa. 2011). "[A] trier of fact could find that the . . . tradeline

could leave the impression that Plaintiff never even attempted to pay his bill, even though Plaintiff had in fact mailed a check to cover the debt." *Id. See also Schoendorf*, 97 Cal. App. 4th at 239-40 (plaintiff stated CCRAA claim where credit report listed unlawful detainer case, but omitted fact that it was a counterclaim in a suit for breach of habitability that settled in consumer's favor).

California's anti-deficiency laws afford Kuns a complete defense to the deficiency reported by Ocwen. *Gorman* held that a furnisher's omission of a meritorious defense against a debt renders a report on that debt misleading. *Gorman*, 584 F.3d at 1163. The same result applies here. At the very least, it was for the jury—not the district court—to decide whether Ocwen's failure to note that could be misleading to anyone reading Kuns's credit report.

## C.   Ocwen's Post-Bankruptcy Reporting Was Also Misleading

After Kuns declared bankruptcy on June 16, 2011, Ocwen began to report that the deficiency on the Kuns's mortgage was discharged in bankruptcy— suggesting that Kuns had personal liability for that deficiency. (ER 167:7-10.) In fact, Kuns's liability on the mortgage ended with the non-judicial foreclosure on his home in December 21, 2009.

Ocwen's credit-reporting will cause the CRAs to include the deficiency on Kuns's credit report for years after it should be purged, by misrepresenting both the nature of Kuns's personal liability and the date when his exposure to that

liability came to an end. As it stands now, Ocwen's tradeline will be reported on Kuns's credit report until June 16, 2021. Both the FCRA and CCRAA "limit the amount of time [bankruptcies may be reported] to a maximum of ten years." *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006). *Cf.* 15 U.S.C. § 1681c(a)(1); Cal. Civ. Code § 1785.13(c). However, Ocwen's tradeline should be expunged from his credit report by December 21, 2016. This is because "[a]ccounts placed for collection" and "other adverse item[s] of information" can only be reported on a credit report for seven years. *Cf.* Cal. Civ. Code § 1785.13(a)(5), (7). *See also* 15 U.S.C. § 1681c(a)(4), (5) (same).

Misstatements which cause the CRAs to report adverse information longer than permitted are actionable. *Daley v. A & S Collection Associates, Inc.*, 717 F. Supp. 2d 1150 (D. Or. 2010) entered summary judgment on an FDCPA claim against a defendant which misreported the delinquency date on a debt to CRAs (and were therefore materially false). *See id.* at 1154-55.

> It is true, and [the defendant] was likely aware, that had it reported the [correct] delinquency date [the CRAs] would not have reported it on [the plaintiff's] credit report because it was older than seven years.

*Id.* at 1155. Ocwen's June 2011 credit-reporting is materially misleading and therefore subject to liability under the CCRAA.[6]

---

[6]    *See also Maloney v. LVNV Funding LLC*, No. 06- 0452, 2006 WL 3006484, *1, *3-5 (N.D. Tex. Oct. 20, 2006) (FCRA and FDCPA claim for improperly continuing to report account that defaulted years as "open"); *Agosta v.*

**D.    Whether Ocwen's Credit-Reporting Was Materially Misleading Was An Issue of Fact for the Jury**

It is well-established that the decision about whether an omission is "materially misleading" belongs to the finder of fact, and could not be properly resolved on a motion to dismiss. "Whether an omission was misleading in such a way and to such an extent that it can be expected to have an adverse effect, and thus is an inaccuracy, is generally a question for the jury." *Valentine v. First Advantage Saferent, Inc.*, No. 08-142, 2009 WL 4349694, *8 (C.D. Cal. Nov. 23, 2009) (denying summary judgment on FCRA § 1681e(b) claim; citations, punctuation omitted). *See also*, *e.g.*, *Llewellyn*, 711 F.3d at 1186 (issue of whether omission of dispute created "materially misleading impression" precluded summary judgment on claim under FCRA § 1681s-2(b)(1)(D)); *Gorman*, 584 F.3d at 1163 ("finder of fact" must decide whether omission in information furnished to CRA was "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect"; citation omitted); *Koropoulos*, 734 F.2d at 42 (summary judgment on a "technically accurate" credit report, "regardless of any confusion

---

*InoVision, Inc.*, No. 02-806, 2003 WL 23009357, *2, *4 (E.D. Pa. Dec. 16, 2003) (FCRA claim for failure to properly report first date of delinquency, causing debt to be reported after it should have been purged). *Cf. Rosenberg v. Cavalry Investments, LLC*, No. 03-1087, 2005 WL 2490353 (D. Conn. Sept. 30, 2005) (denying summary judgment where plaintiff's evidence indicated that reported debt should have been purged); *Thomas v. NCO Fin. Sys., Inc.*, No. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) (FDCPA claim where changing date of last activity caused debt to be reported beyond the period permitted by law).

generated in the recipient's minds as to what it meant, was improper"); *Bauer v. Target Corp.*, No. 12-978, 2012 WL 4054296, *3 (M.D. Fla. Sept. 14, 2012) ("question of whether . . . failure to report a dispute to [CRAs] is materially misleading is a matter of fact to be decided by the jury"); *Shannon*, 764 F. Supp. 2d at 722 (question of whether credit report contained inaccuracies was "rife with factual and credibility disputes that only the trier of fact should resolve"); *Yourke v. Experian Info. Solutions, Inc.*, No. 06-2370, 2007 WL 1795705, *5 (N.D. Cal. June 20, 2007) (question of what person who reviewed plaintiff's credit report "could reasonably believe" precluded summary judgment); *Lenox v. Equifax Info. Servs. LLC*, No. 05-1501, 2007 WL 1406914, *6 (D. Or. May 7, 2007) ("[w]hether defendant's reporting of plaintiffs' credit records was accurate is an issue best decided by the trier of fact").

These FCRA cases are consistent with the general rule that questions about whether an omission was misleading or material are questions of fact, and reserved for the jury:

> Whether an omission is "material" is a determination that "requires delicate assessments of the inferences a 'reasonable [person]' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." . . . Similarly, whether a public statement is misleading . . . is a mixed question to be decided by the trier of fact.

*Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); other citations omitted). Similarly,

34

California state courts judge materiality from the standpoint of its impact on a reasonable man, "and as such materiality is generally a question of fact . . ." *Engalla v. Permanente Med. Group, Inc.,* 15 Cal. 4th 951, 976 (1997) (citations omitted).

Because the question of whether Ocwen's omission was materially misleading is a question of fact for the jury, the district court could not properly resolve that issue on a motion to dismiss. *Cf. Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.7 (9th Cir. 2013); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### E.    Ocwen's Cases Are Inapposite or Contrary to *Carvalho* and *Gorman*

The ruling below relies heavily on *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143 (N.D. Cal. 2010). (*Cf.* ER 4-5.) The district court cited *Wang* for the proposition that "because the statute of limitations is an affirmative defense which does not extinguish a debt, but merely bars recovery if asserted, its reporting was not required—the debt still existed." (*Id.* 4.)

Neither the district court nor *Wang* are consistent with prevailing case law. When construing the analogous FCRA provision under section 1681s-2(b), *Saunders* explicitly rejected "a *per se* rule that furnishers are never obliged to

report affirmative defenses or consumer disputes, regardless of how meritorious the dispute may be." *Saunders*, 526 F.3d at 150. This Court has similarly rejected any "rule that, as a matter of law, an omission of the disputed nature of a debt never renders a report incomplete or inaccurate." *Gorman*, 584 F.3d at 1163 (citing *Saunders*, 526 F.3d at 150). "[S]uch a rule intimidate[s] consumers into giving up *bona fide* disputes by paying debts not actually due to avoid damage to their credit ratings, but it also contravenes the purpose of the FCRA, to protect against 'unfair credit reporting methods.'" *Id.* (citing 15 U.S.C. § 1681(a)(1)). This Court gives the same interpretation to provisions of the CCRAA and FCRA with similar language. *See Carvalho*, 629 F.3d at 889-90. The Court has already rejected any *per se* rule that there is no liability for failure to report a defense to a debt under FCRA section 1681s-2(b); the same result must apply to CCRAA section 1785.25(a).

Moreover, *Wang* is distinguishable on its own logic. *Wang* held that since affirmative defenses on a debt can be waived if they are not raised, and the CCRAA does not specifically mention "an affirmative duty to report [any affirmative defense,]" furnishers have no duty to report affirmative defenses to CRAs. *Wang*, 681 F. Supp. 2d at 1149. *Herrera I* rejected the district court and Ocwen's analogy to a statute of limitations precisely because California's anti-deficiency laws cannot be waived:

> [The district court and Ocwen's] analogy [to a statute of limitations defense] is marred by a key distinction. Since the statute of limitations is "an affirmative defense that is forfeited if not appropriately invoked by the defendant," it does not extinguish a creditor's ability to bring an action in the first instance. *Adams v. Paul*, [11 Cal.4th 583, 597 (1995)]. Section 580b, to the contrary, unequivocally bars deficiency judgments and cannot be waived. *DeBerard Properties v. Lim*, [20 Cal.4th 659, 662 (1999)].

*Herrera I*, 2009 WL 2912517, at *5 (emphasis added). Debtors "cannot waive the provisions of the antideficiency legislation . . . because those provisions are not solely for the debtor's benefit but are also for the protection of the public." *Union Bank*, 265 Cal. App. 2d at 43 (citation omitted). *See also Cadle Co. II v. Harvey*, 83 Cal. App. 4th 927, 930 (2000) ("any purported waiver of the protections [section 580b], which bars deficiency judgments following foreclosure of a purchase money secured obligation, is unenforceable against [debtor]"); *Commonwealth Mortgage*, 211 Cal. App. 3d at 515 (same). Because the anti-deficiency laws are unwaivable, *Wang*'s application to this case must fail under *Wang*'s own logic. *Cf. Wang*, 681 F. Supp. 2d at 1149. Rather, *Wang* supports the conclusion that Ocwen's credit-reporting violates section 1785.25(a). Ocwen cannot collect the deficiency from Kuns, but continues to report the deficiency as though it could. *Wang* held that a defendant violated the CCRAA by "*continu*[*ing*] *to report* [*a*] *debt in a manner that suggest*[*ed*] [*the defendant*] *could still collect on it*," even though the defendant previously dismissed a prior state court action to collect that debt and could not collect that debt. *Id*. (emphasis added). Likewise,

37

here, Ocwen cannot collect on the deficiency from Kuns.

Finally, below Ocwen cited *Abdelfattah* in a notice of supplemental authority. The core of *Abdelfattah*'s ruling is that the anti-deficiency laws do "not preclude the reporting of a deficiency." *Abdelfattah*, 2013 WL 495358, at *3. Kuns has no quarrel with *Abdelfattah* because it only rejected claims "based on the theory that [the anti-deficiency laws] preclude[] the reporting of a deficiency following a non judicial foreclosure" but, ***nevertheless*** held that "the reported information must be accurate and complete." *Id*. Kuns does not dispute that Ocwen can report the deficiency: rather, Kuns's claim under CCRAA section 1785.25(a) is premised on the fact that Ocwen reported the deficiency in a misleadingly incomplete manner, because it failed to note that Kuns could not be held liable for the deficiency.  The CCRAA does not prohibit Ocwen from reporting the deficiency, but it did require Ocwen to report the deficiency completely, in a manner that was not misleading.

## IV.    Conclusion

Kuns respectfully asks the Court to reverse the district court's dismissal of his claim under CCRAA section 1785.25(a). The Court has held the CCRAA should be construed consistent with the FCRA. There is no room to doubt that Ocwen's omission of the fact that Kuns's is not liable for the deficiency on his

mortgage would be considered incomplete and misleading under the standard

articulated for FCRA section 1681s-2(b) in *Gorman*. The same result applies here.

Dated: October 4, 2013    By:    _____s/Ethan Preston_____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff-Appellee Jeffrey Kuns*

**Statement of Related Cases**

There are no related cases pending in this Court.

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,444 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2007 and in a proportionally spaced typeface of 14-point or more.


Dated: October 4, 2013    By: _____ s/David C. Parisi _____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)

40

(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff-Appellee Jeffrey Kuns*

*Jeffrey Kuns v. Ocwen Loan Servicing, LLC,* No. 13-55562

**Statutory Addendum**

| Document | Page |
|---|---|
| California Civil Code § 1785.25(a) | App. 1 |
| California Code of Civil Procedure § 580b (2012 version) | App. 2 |
| California Code of Civil Procedure § 580b | App. 3 |
| California Code of Civil Procedure § 580d | App. 4 |

California Civil Code § 1785.25:

      (a)     A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.

California Code of Civil Procedure § 580b (2012 version):

> No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

California Code of Civil Procedure § 580b:

     (a)    No deficiency judgment shall lie in any event for the following:

. . .

          (3)    Under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by the purchaser.

California Code of Civil Procedure § 580d:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 4, 2013    By: _____ s/David C. Parisi _____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff-Appellee Jeffrey Kuns*