No. 13-55562

In the

# United States Court of Appeals

for the

# Ninth Court

JEFFREY KUNS, an individual, on his own behalf
and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,

*Defendant-Appellee*.

**PLAINTIFF-APPELLANT'S EXCERPT OF RECORD
VOLUME II**

Appeal from the United States District Court for the Central District of California,
No. 2:12-cv-07118-DMG-PLA, the Honorable Dolly M. Gee

DAVID C. PARISI, ESQ.
SUZANNE HAVENS BECKMAN, ESQ.
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 Telephone
(818) 501-7852 Facsimile

ETHAN PRESTON, ESQ.
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 Telephone
(866) 509-1197 Facsimile

*Attorneys for Plaintiff-Appellant, Jeffrey Kuns*

*Jeffrey Kuns v. Ocwen Loan Servicing, LLC,* No. 13-55562

Plaintiff-Appellant Jeffrey Kuns ("Kuns") submits the following Volume II

of the Excerpt of Record:

| Tab | Document Description | Page | Docket No. | Date Filed |
|-----|----------------------|------|-----------|------------|
| 1. | Notice of Appeal | ER 6 | 32 | April 4, 2013 |
| 2. | Defendant's Response to Plaintiff's Notice of Supplemental Authority | ER 16 | 31 | March 21, 2013 |
| 3. | Plaintiff's Notice of Supplemental Authority | ER 19 | 30 | March 20, 2013 |
| 4. | Plaintiff's Response to Defendant's Supplement to its Motion to Dismiss | ER 24 | 29 | February 11, 2013 |
| 5. | Defendant's Notice of Supplemental Authority | ER 29 | 28 | February 11, 2013 |
| 6. | Order Discharging Order to Show Cause | ER 42 | 27 | February 8, 2013 |
| 7. | Parties' Joint Report on the Amount in Controversy | ER 43 | 26 | February 1, 2013 |
| 8. | Relevant Portions of Declaration of Ethan Preston in Support of Parties' Joint Report on the Amount in Controversy | ER 76 | 26-2 | February 1, 2013 |
| 9. | Order to Show Cause | ER 92 | 20 | October 25, 2012 |
| 10. | Defendant's Reply in Support of Its Motion to Dismiss | ER 94 | 19 | October 12, 2012 |

| Tab | Document Description | Page | Docket No. | Date Filed |
|-----|---------------------|------|------------|------------|
| 11. | Plaintiff's Opposition to Defendant's Motion to Dismiss | ER 105 | 18 | October 5, 2012 |
| 12. | Defendant's Motion to Dismiss | ER 133 | 13 | September 19, 2012 |
| 13. | Relevant Portions of Defendant's Notice of Removal | ER 153 | 1 | August 17, 2012 |
| 14. | Plaintiff's State Court Complaint | ER 163 | 1 | July 17, 2012 |
| 15. | Trial Court Docket | ER 174 | | |

Name  Ethan Preston

Address  8245 North 85th Way

City, State, Zip  Scottsdale, Arizona 85258

Phone  (480) 269-9540

Fax  (866) 509-1197

E-Mail  ep@eplaw.us

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

CLEAR FORM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,

PLAINTIFF(S),

v.

OCWEN LOAN SERVICING, LLC,  a Delaware limited liability companies, and DOES 1-100, inclusive,

DEFENDANT(S).

CASE NUMBER:

No. 12-CV-7118 (DMG) (PLAx)

# NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that _____ Plaintiff Jeffrey Kuns _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  Order Granting Motion to Dismiss

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _____ April 1, 2013 _____.  Entered on the docket in this action on  April 1, 2013 _____.

A copy of said judgment or order is attached hereto.

_____ April 4, 2013 _____
Date

s/Ethan Preston _____
Signature
☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

ER 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**JS-6**

| Case No. | **CV 12-7118 DMG(PLAx)** | Date | April 1, 2013 |
|---|---|---|---|

| Title | *Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.* | Page | 1 of 5 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOC. # 13]**

**I.**
**PROCEDURAL BACKGROUND**

On July 17, 2012, Jeffrey Kuns ("Plaintiff") filed a class action Complaint in the Los Angeles County Superior Court against Defendant Ocwen Loan Servicing, LLC ("Defendant"), raising one cause of action for  a violation of the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a).    On August 17, 2012, removed the action to this Court.  [Doc. # 1].

On September 19, 2012, Defendant filed the instant motion to dismiss . [Doc. # 13].  On October 25, 2012, the Court took the Motion under submission and vacated the hearing, originally set for October 26, 2012.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Defendant's Motion is GRANTED.

**II.**
**FACTUAL BACKGROUND**

In 2005, Plaintiff purchased a residence in Nevada City, California with a purchase money loan, serviced by Defendant.  (Compl. ¶ 1.)  On December 21, 2009, when Plaintiff could no longer make his mortgage payments, the residence was sold in a non-judicial foreclosure.  (*Id.*)  There was a deficiency balance from the foreclosure:  proceeds from the sale fell approximately $400,000 short of the full amount of the loan at the time of the foreclosure.  (*Id.* ¶ 17.)

On June 16, 2011, as Plaintiff was preparing to file for bankruptcy, he discovered that Defendant had furnished information to Equifax, a credit reporting agency, indicating that Plaintiff was liable for the deficiency from the 2009 foreclosure.  (*Id.*)  Plaintiff filed for Chapter

---

CV-90                    **CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk <u>vv</u>

**ER 7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 12-7118 DMG(PLAx)** | Date | April 1, 2013 |
|---|---|---|---|

| Title | *Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.* | Page | 2 of 5 |
|---|---|---|---|

Seven bankruptcy in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"). (*Id.*; Decl. of Danielle Oakley ("Oakley Decl."), Ex. 2. [Doc. # 13-4].) Plaintiff did not list his current cause of action against Defendant in his schedule of assets as part of his petition for the bankruptcy. (Oakley Decl., Ex. 1. [Doc. # 13-3].) In October 2011, after Plaintiff's bankruptcy, Defendant furnished information to Equifax showing that Plaintiff's deficiency had been discharged through the bankruptcy. (Notice of Removal, Ex. A ¶ 18.)

On September 5, 2012, after Plaintiff brought the current action against Defendant, Plaintiff moved to reopen his Chapter Seven bankruptcy proceeding and amended his schedule of assets to include his cause of action against Defendant. (Oakley Decl., Ex. 2; Pl.'s Req. for Judicial Notice ("RJN"), Ex. 2 [Doc. # 17].) On September 14, 2012, Sam Leslie, the bankruptcy trustee, filed notice that he would abandon any interest the bankruptcy estate had in Plaintiff's current claim against Defendant absent objections by an interested party within fourteen days. (Pl.'s RJN, Ex. 5.) On October 3, 2012, after the fourteen-day period passed without any objections, the Bankruptcy Court re-closed the case. (Pl.'s RJN, Ex. 1.)

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). On a motion to dismiss, a court can consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

//
//
//

---

CV-90 **CIVIL MINUTES—GENERAL** Initials of Deputy Clerk <u>vv</u>

**ER 8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 12-7118 DMG(PLAx)** | Date | April 1, 2013 |
|---|---|---|---|

| Title | *Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.* | Page | 3 of 5 |
|---|---|---|---|

**IV.**
**DISCUSSION**

**A. Standing and Judicial Estoppel**

Prior to a Chapter Seven bankruptcy proceeding, a debtor must submit a schedule of assets for potential liquidation by a Chapter Seven bankruptcy trustee. *See Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001). A debtor must include any legal claims he may bring as assets in this schedule. *Id.* Any undisclosed assets remain the property of the bankruptcy estate, even after the debt is discharged. *Id.* Where a legal claim is unscheduled, the Chapter Seven bankruptcy trustee (on behalf of the bankruptcy estate) becomes the real party in interest for the claim and the debtor loses standing to pursue it. *See Dunmore v. U.S.*, 358 F.3d 1107, 1112 (9th Cir. 2004). Nonetheless, Federal Rule of Civil Procedure 17(a) permits a party to obtain the real party in interest's ratification to proceed with a cause of action. Fed. R. Civ. P. 17(a). Pursuant to Rule 17(a), the Ninth Circuit has indicated that a debtor may cure prudential standing defects after a complaint is filed by having the trustee formally abandon the claim, provided the defects arose from an "understandable mistake" by the debtor. *Dunmore*, 358 F.3d at 1112.

Defendant claims that Plaintiff lacks standing because he did not initially list the cause of action at issue in his schedule of assets when filing for Chapter Seven bankruptcy in June 2011. (Mot. at 12.) Plaintiff alleges a single cause of action in this case: that Defendant violated the CCRAA by inaccurately reporting Plaintiff's deficiency balance. (Notice of Removal, Ex. A ¶ 35.) Plaintiff discovered that Defendant had been reporting that Plaintiff was liable for the deficiency balance, as he was filing for Chapter Seven bankruptcy in 2011. (Notice of Removal, Ex. A ¶ 17.) While Plaintiff did not disclose the claim on the initial schedule of assets, Plaintiff reopened the bankruptcy case and amended his schedule of assets, as *Dunmore* instructs. (Pl.'s Request for Judicial Notice ("RJN"), Ex. 1; Ex. 2; Ex. 5.) When the trustee abandoned the claim, any standing defects were cured. Hence, the Court finds that Plaintiff has standing to pursue his pre-bankruptcy claims.

Defendant also asks the court to apply the doctrine of judicial estoppel to prevent Plaintiff from asserting the claim now, given his failure to do so in bankruptcy. The doctrine of judicial estoppel is an equitable doctrine, designed to prevent parties from playing games with the court. Plaintiff claims that the failure to disclose the claim was merely an inadvertent mistake. As Plaintiff had not filed any claims against Defendant at the time of his bankruptcy proceedings, there is no evidence suggesting that Plaintiff deliberately sought to conceal the existence of his CCRAA claim while creating his schedule of assets. Moreover, Defendant has not been prejudiced by the inadvertent failure. Thus, Plaintiff is not estopped from asserting his claims.

**ER 9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 12-7118 DMG(PLAx)** | | Date | April 1, 2013 |
|---|---|---|---|---|

| Title | *Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.* | | Page | 4 of 5 |

**B. California Consumer Credit Reporting Agencies Act**

    **1. Pre-Bankruptcy Reporting**

    Section 1785.25(a) of the CCRAA provides that "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

    Plaintiff claims that California's Anti-Deficiency Statute, Cal. Civ. Proc. Code §§80b(a)(3), 580d, entirely eliminates his liability for his deficiency balance and, as a result, Defendant's actions in reporting it violated the CCRAA. Section 580b(a)(3) states that no deficiency judgment shall lie against debtors for any deficiency resulting from a foreclosure on a purchase money mortgage for a personal residence that is used by less than five families. Cal. Civ. Proc. Code § 580b(a)(3). Likewise, section 580d holds that no deficiency judgment shall lie against debtors for any deficiency resulting from a non-judicial foreclosure. Cal. Civ. Proc. Code § 580d. Plaintiff's residence was originally acquired by Plaintiff with a purchase money mortgage serviced by Defendant, and was later sold in non-judicial foreclosure. (Notice of Removal, Ex. A ¶ 1.) Hence, both 580b(a)(3) and 580d bar a deficiency judgment against Plaintiff for the deficiency from the 2009 foreclosure of his residence.

    Notwithstanding the bar against deficiency judgments, California courts have interpreted sections 580b(a)(3) and 580d only in the "strict sense" of prohibiting deficiency judgments, rather than eradicating the debt. *Hodges v. Mark*, 49 Cal. App. 4th 651, 657, 56 Cal. Rptr. 2d 700 (1996); *Armsey v. Channel Associates, Inc.*, 184 Cal. App. 3d 833, 837, 229 Cal. Rptr. 509 (1986). Sections 580b(a)(3) and 580d merely limit remedies available to creditors and do not completely extinguish a debtor's liability for the deficiency. *See Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 1615 n.5, 42 Cal. Rptr. 2d 414 (1995) ("Although the lender may not obtain a deficiency judgment after a foreclosure . . ., the foreclosure does not extinguish the debt. The lender retains other remedies for collection of the unpaid balance of the debt.")

    Plaintiff argues that Defendant cannot claim to have accurately and completely reported the deficiency debt to the credit reporting agencies if it did not report the fact that it cannot collect in court on this debt. In *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148 (N.D. Cal. 2010), the court considered whether the furnisher of information was required to report the fact that the statute of limitations had run on the debt collection. The court found that because the statute of limitations is an affirmative defense which does not extinguish a debt, but merely bars recovery if asserted, its reporting was not required--the debt still existed. *Id.* at 1149. The same is true here. The CCRAA mentions no affirmative duty to report that the debt

**CIVIL MINUTES—GENERAL**

**ER 10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 12-7118 DMG(PLAx)** | Date | April 1, 2013 |
|---|---|---|---|

| Title | *Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.* | Page | 5 of 5 |

cannot be collected as a deficiency. Though Defendant cannot recover the deficiency in court, the balance exists and may be reported as an existing debt as a matter of law.

Plaintiff argues that *Wang* does not apply because the statute of limitations is a defense that may be waived, while the deficiency judgment bar may not. *See Herrera v. LCS Fin. Services Corp.*, C09-02843 TEH, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009). It is true that, unlike a limitations period which may be waived, a creditor may not seek court intervention to enforce a deficiency judgment. The central point in *Wang*, however, still holds. Even though the debt is not recoverable in court, it is not extinguished under California law. If the California legislature wanted to include a creditor's affirmative duty to report that a debt is uncollectible in court, it could have done so, but the statute as written does not support such an interpretation.

### 2. Post-Bankrputcy Reporting

Plaintiff additionally argues that Defendant's post-bankruptcy reporting is inaccurate because it listed the date of the debt's discharge as the date of his bankruptcy, rather than the date of the foreclosure sale two years prior. Plaintiff claims that his personal liability for the debt ended upon the foreclosure sale, which is the date that he asserts should have been reported. For the same reasons discussed above – that the anti-deficiency statute does *not* extinguish the debt, despite preventing a court judgment – the Court finds that this claim also falters and Defendant's report of the existence of the debt is accurate as a matter of law.

### V.
### CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600 (telephone)
(888) 958-3028 (facsimile)
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns, on his own behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability companies, and DOES 1-100, inclusive,<br><br>Defendants. | No. 12-CV-7118 (DMG) (PLAx)<br><br>District Judge Dolly M. Gee<br><br>Magistrate Judge Paul L. Abrams<br><br>**PLAINTIFF JEFFREY KUNS'S NOTICE OF APPEAL FROM THE COURT'S APRIL 1, 2013 ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND REPRESENTATION STATEMENT** |

**ER 12**

**NOTICE OF APPEAL**

Plaintiff Jeffery Kuns hereby submits his Notice of Appeal from the Court's Order Granting Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss (Dkt. #32). Plaintiff Jeffery Kuns hereby appeals to the United States Court of Appeals for the Ninth Circuit from the District Court's April 1, 2013 Order.

**REPRESENTATION STATEMENT**

Pursuant to Circuit Rule 3-2(b), parties to the appeal and the names, addresses, and telephone numbers for their counsel are listed below. Jeffery Kuns, plaintiff and appellant in this matter, is represented by:

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

Ocwen Loan Servicing, LLC, defendant and appellee in this matter, is represented by:

Elizabeth Lemond McKeen
Danielle Nicole Oakley
Edgar H Martinez
O'MELVENY & MYERS LLP
610 Newport Center Drive Suite 1700
Newport Beach, California 92660-6429
(949) 823-6900

**ER 13**

emckeen@omm.com
doakley@omm.com
emartinez@omm.com

Dated: April 4, 2012          By: s/Ethan Preston
                                   David C. Parisi (162248)
                                   Suzanne Havens Beckman (188814)
                                   PARISI & HAVENS LLP
                                   15233 Valleyheart Drive
                                   Sherman Oaks, California 91403
                                   (818) 990-1299 (telephone)
                                   (818) 501-7852 (facsimile)
                                   dcparisi@parisihavens.com
                                   shavens@parisihavens.com

                                   Ethan Preston (263295)
                                   PRESTON LAW OFFICES
                                   8245 North 85th Way
                                   Scottsdale, Arizona 85258
                                   (480) 269-9540 (telephone)
                                   (866) 509-1197 (facsimile)
                                   ep@eplaw.us

                                   Jonathan Cothran (259210)
                                   J. COTHRAN LAW OFFICES
                                   2230 West Chapman Avenue, Suite 200
                                   Orange, California 92868
                                   (714) 974-5600
                                   (888) 958-3028
                                   jpcothranlaw@gmail.com

                                   *Attorneys for Plaintiff Jeffery Kuns,
                                   on his own behalf, and behalf of all
                                   others similarly situated*

ER 14

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that copies of the attached documents were this date served upon the parties below Fed. R. Civ. P. 5(b) by causing copies of such documents to be transmitted to parties below through the Electronic Filing System in the manner prescribed by the Court's General Order 10-07 ¶IV on the date below:

Elizabeth Lemond McKeen
Danielle Nicole Oakley
Edgar H Martinez
O'Melveny and Myers LLP
610 Newport Center Drive Suite 1700
Newport Beach, CA 92660-6429
emckeen@omm.com
doakley@omm.com
emartinez@omm.com

*Attorneys for Ocwen Loan Servicing, LLC*

Dated: April 4, 2012                    By: _s/Ethan Preston_

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns,*
*on his own behalf, and behalf of all*
*others similarly situated*

**ER 15**

1   ELIZABETH L. MCKEEN (S.B. #216690)
    emckeen@omm.com
2   DANIELLE N. OAKLEY (S.B. #246295)
    doakley@omm.com
3   EDGAR H. MARTINEZ (S.B. #255503)
    emartinez@omm.com
4   O'MELVENY & MYERS LLP
    610 Newport Center Drive, 17th Floor
5   Newport Beach, California 92660-6429
    Telephone: (949) 823-6900
6   Facsimile: (949) 823-6994

7   Attorneys for Defendant
    Ocwen Loan Servicing, LLC
8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11  JEFFREY KUNS, an individual, on his          Case No. CV12-7118-DMG-PLA
    own behalf and on behalf of all others
12  similarly situated,                          **OCWEN LOAN SERVICING
                            Plaintiffs,          LLC'S RESPONSE TO
13                                               PLAINTIFF JEFFREY KUNS'S
             v.                                  NOTICE OF SUPPLEMENTAL
14  OCWEN LOAN SERVICING, LLC, a                 AUTHORITY**
    Delaware limited liability company, and
15  DOES 1-100, inclusive,                       Judge: Hon. Dolly M. Gee
                            Defendants.          Ctrm: 7
16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendant Ocwen Loan Servicing ("Ocwen") respectfully submits this
2    Response to plaintiff Jeffrey Kuns's Notice of Supplemental Authority in
3    Opposition to Ocwen Loan Servicing, LLC's Motion to Dismiss.  On March 20,
4    2013, plaintiff filed a Notice of Supplemental Authority in Opposition to Ocwen
5    Loan Servicing, LLC's Motion to Dismiss (Dkt. No. 30), in which he asserts that
6    Judge Carter's decision in *Rex v. Chase Home Finance LLC*, No. SACV 12-0609
7    DOC (RNBx), 2012 WL 5866209 (C.D. Cal. Nov. 19, 2012), "plainly
8    encompasses and supports Kuns's CCRAA [California Credit Reporting Agencies
9    Act] claim."  (Pl.'s Notice at 2.)

10    The *Rex* opinion does not address to any extent the dismissal arguments
11    asserted in Ocwen's pending motion to dismiss, including the argument that
12    because the California anti-deficiency statutes did not extinguish plaintiff's debt
13    when the property securing the debt was foreclosed, Ocwen did not violate the
14    CCRAA by allegedly reporting the existence of the deficiency balance.  The
15    parties in *Rex* did not brief this issue at all.  Nor was the court in *Rex* presented
16    with the on-point and persuasive authorities governing this question. *See, e.g.*,
17    *Herrera v. LCS Fin. Servs. Corp.*, No. C09-02843 TEH, 2009 WL 2912517, at *8
18    (N.D. Cal. Sept. 9, 2009) (holding that "the claim that section 580b erases the debt,
19    barring Ocwen from seeking payment in any manner, must fail as a matter of
20    law"); *Abdelfattah v. Carrington Mortg. Servs. LLC*, No. C-12-04656-RMW, 2013
21    WL 495358 (N.D. Cal. Feb. 7, 2013) (dismissing CCRAA claim based on same
22    theory asserted here because "section 580d does not preclude the reporting of a
23    deficiency")[1]; *Romo v. Stewart Title of California*, 35 Cal. App. 4th 1609, 1615 n.5
24    (1995) (holding that Section 580d does not extinguish the debt, and that the lender
25    may retain other remedies for the collection of the unpaid balance); *Kerivan v.*
26    *Title Ins. and Trust Co., Inc.*, 147 Cal. App. 3d 225, 231 (1983) (same); *Hodges v.*

27    ─────────────────
      [1] The *Rex* court could not have been presented with the *Abdelfattah* case, which was the subject
28    of a notice of supplemental authority filed by Ocwen in this case last month, because *Abdelfattah*
      post-dates *Rex*.

- 1 -

1   *Mark*, 49 Cal. App. 4th 651, 657 (1996) (Section 580b "prohibits only a deficiency

2   judgment in the strict sense, i.e., a personal judgment against the debtor"); *Armsey*

3   *v. Channel Assocs., Inc.*, 184 Cal. App. 3d 833, 837 (1986) ("While section 580b

4   of the Code of Civil Procedure prohibits a judgment against a debtor following

5   foreclosure, it does not prevent a creditor from realizing on additional security.").

6        In *Rex*, defendants moved to dismiss plaintiff's CCRAA claim on the sole

7   basis that "[p]laintiffs' CCRAA [claim] fails to identify a specific credit report that

8   contains an inaccuracy, and thus is conclusory." 2012 WL 5866209, at *35. In

9   denying defendants' motion on this claim, the court merely ruled on the narrow

10  issue of whether plaintiff's CCRAA allegations were too conclusorily pled. *Id.*

11  *Rex* is therefore not persuasive authority regarding the issues raised in Ocwen's

12  motion to dismiss.

13       Dated:  March 21, 2013

14                                ELIZABETH L. MCKEEN
       DANIELLE N. OAKLEY

15                                EDGAR H. MARTINEZ
       O'MELVENY & MYERS LLP

16

17                                By:        /s/ Danielle N. Oakley

18                                          Danielle N. Oakley
       Attorneys for Defendants

19                                          Ocwen Loan Servicing, LLC

20

21

22

23

24

25

26

27

28

RESPONSE TO PLAINTIFF'S NOTICE OF
SUPPLEMENTAL AUTHORITY
CV12-7118-DMG-PLA

**ER 18**

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600 (telephone)
(888) 958-3028 (facsimile)
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns, on his own behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability companies, and DOES 1-100, inclusive,<br><br>Defendants. | No. 12-CV-7118 (DMG) (PLAx)<br><br>District Judge Dolly M. Gee<br><br>Magistrate Judge Paul L. Abrams<br><br>**PLAINTIFF JEFFREY KUNS'S NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS** |

Plaintiff Jeffery Kuns ("Kuns" or "Plaintiff") hereby submits his Notice of Supplemental Authority ("Supplement") in Opposition to Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss.

## I. KUNS'S THEORY OF LIABILITY

For the sake of convenience, Kuns restates the theory underlying his complaint here. Ocwen reported information to various credit-reporting agencies ("CRAs") about the deficiency arising from a non-judicial foreclosure on Kuns's single-family California residence. (Pl.'s Compl. ¶¶16-19, 29-30.) Ocwen was precluded from collecting against Kuns personally under California's anti-deficiency laws:

> No deficiency judgment shall lie in any event after a sale of real property . . . under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

(Code Civ. Proc., § 580b.) Ocwen violated the Consumer Credit Reporting Agencies Act (Cal. Civ. Code §§ 1785.1-1785.36) ("CCRAA") by reporting information to CRAs about Kuns's mortgage that was "incomplete and inaccurate because it failed to indicate or disclose that Kuns was not liable for the deficiency from the foreclosure of his home." (Pl's. Compl. ¶19.) *See* Cal. Civ. Code § 1785.25(a) (prohibits furnishing information to CRAs "if the person knows or should know the information is incomplete or inaccurate."). The crux of Kuns's claim is that Ocwen's reporting would leave anyone reviewing his credit report with the impression that Ocwen could have held Kuns personally liable for the deficiency after the foreclosure on his mortgage.

## II. THE COURT'S DECISION IN *REX V. CHASE HOME FINANCE LLC* APPLIES DIRECTLY TO THIS CASE

On November 19, 2012, after the briefing on Ocwen's pending Rule 12(b)(6) motion closed, this Court entered an order denying dismissal of a similar claim advanced by Kuns in *Rex v. Chase Home Finance LLC*, No. 12-0609 , 2012

WL 5866209 (C.D. Cal. Nov. 19, 2012). In *Rex*, the plaintiff alleged a claim under California Civil Code section 1785.25(a) because the defendant reported the deficiency arising from the short sale of the plaintiff's mortgaged residence "as 'late,' 'charged off,' 'collection,' or other derogatory status [to CRAs] when in fact under California Code of Civil Procedure 580b no such personal liability exists." *Id.* at *3 (internal citations omitted). Kuns's CCRAA claim is substantially narrower than the claims alleged in *Rex*; the plaintiff in *Rex* alleged that the defendant had actually sought to collect the deficiency from the plaintiff, rather than simply report it to CRAs (as Ocwen has done).

After a thorough analysis, the Court held that Code of Civil Procedure section 580b applied to the short sale of the plaintiff's residence and precluded the defendant from holding the plaintiff personally liable for the resulting deficiency. *See id.* at *16-24. The Court ultimately denied the defendant's motion to dismiss the plaintiff's CCRAA claim:

> It is quite apparent from the FAC that the basis for Plaintiffs' CCRAA claim is the Defendants are reporting to credit reporting agencies some or all of a $56,000 debt that Plaintiffs contend they do not owe. [The plaintiff's complaint] alleges that Defendants are "reporting purchase money loans ... to consumer credit agencies as 'late,' 'charged off,' 'collection' or other derogatory status." . . . Such allegations are all that is required to meet the notice pleading standard.

*Id.* at *35. While the holding in *Rex* goes well beyond the claims at issue in this case, it plainly encompasses and supports Kuns's CCRAA claim. In *Rex*, the Court held that a mortgagee could not report a deficiency to the CRAs. The Court does not have to go that far here; again, Kuns does ***not*** dispute whether Ocwen could report the deficiency at all. Rather, the question before the Court is whether Ocwen could report the deficiency without giving any indication that Ocwen could not hold Kuns personally liable for the deficiency without violating the CCRAA's prohibition on reporting information Ocwen "knows or should know . . . is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

**ER 21**

## III.    CONCLUSION

Kuns alleges that the information Ocwen furnished is materially misleading, because someone reviewing Kuns's credit report would believe Kuns was personally liable for the deficiency at the foreclosure. The Court should not dismiss Kuns's claims because it would be inconsistent with its ruling in *Rex,* in addition to those reasons stated in Kuns's opposition.

As a final note, Kuns again provides notice to the Court that he intends to file a motion for a preliminary injunction as soon that the Court holds he has stated a claim. Kuns does not wish to create potentially unnecessary or untimely work for himself, Ocwen, or the Court. However, if ***the Court believes that delaying until the Court resolves Ocwen's pending Rule 12(b)(6) motion might prejudice the motion for preliminary injunction contemplated by Kuns, Kuns asks the Court to so indicate*** so he can file his motion now.

Dated: March 20, 2012          By: _s/Ethan Preston_

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns,*
*on his own behalf, and behalf of all*
*others similarly situated*

1  David C. Parisi (162248)
   Suzanne Havens Beckman (188814)
2  PARISI & HAVENS LLP
   15233 Valleyheart Drive
3  Sherman Oaks, California 91403
   (818) 990-1299 (telephone)
4  (818) 501-7852 (facsimile)
   dcparisi@parisihavens.com
5  shavens@parisihavens.com

6  Ethan Preston (263295)
   PRESTON LAW OFFICES
7  8245 North 85th Way
   Scottsdale, Arizona 85258
8  (480) 269-9540 (telephone)
   (866) 509-1197 (facsimile)
9  ep@eplaw.us

10 Jonathan Cothran (259210)
   J. COTHRAN LAW OFFICES
11 2230 West Chapman Avenue, Suite 200
   Orange, California 92868
12 (714) 974-5600 (telephone)
   (888) 958-3028 (facsimile)
13 jpcothranlaw@gmail.com

14 *Attorneys for Plaintiff Jeffery Kuns, on his own*
   *behalf, and behalf of all others similarly situated*
15

16         **IN THE UNITED STATES DISTRICT COURT FOR**
                 **CENTRAL DISTRICT OF CALIFORNIA**
17

18 JEFFREY KUNS, an individual, on          No. 12-CV-7118 (DMG) (PLAx)
   his own behalf and on behalf of all
   others similarly situated,               District Judge Dolly M. Gee
19
                                            Magistrate Judge Paul L. Abrams
20              Plaintiffs,
                                            **PLAINTIFF JEFFREY KUNS'S**
21        v.                                **OPPOSITION TO OCWEN LOAN**
                                            **SERVICING, LLC'S MOTION TO**
22 OCWEN LOAN SERVICING, LLC,               **DISMISS**
   a Delaware limited liability
23 companies, and DOES 1-100,               Date:     October 26, 2012
   inclusive,                               Time:     9:30 a.m.
24                                          Location: Courtroom 7, 2d Floor
                Defendants.                           312 North Spring Street
25                                                    Los Angeles, CA 94102

26

27

28

---

Opposition to Motion to Dismiss                      No. 12-CV-7118 (DMG) (PLAx)

**ER 24**

Plaintiff Jeffery Kuns ("Kuns" or "Plaintiff") hereby submits his Response to Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Supplement to its Motion to Dismiss.

## I. OCWEN CONTINUES TO MISREPRESENT KUNS'S THEORY OF LIABILITY

Ocwen reported information to various credit-reporting agencies ("CRAs") about the deficiency arising from a non-judicial foreclosure on Kuns's California residence. (Pl.'s Compl. ¶¶16-19, 29-30.) Ocwen violated the Consumer Credit Reporting Agencies Act (Cal. Civ. Code §§ 1785.1-1785.36) ("CCRAA") by reporting information to CRAs about Kuns's mortgage that was *incomplete*. *See* Cal. Civ. Code § 1785.25(a) (prohibits furnishing information to CRAs "if the person knows or should know the information is incomplete or inaccurate.").

In the Supplement, Ocwen continues to misrepresent Kuns's CCRAA claim. Ocwen mischaracterizes Kuns's claim as asserting "that California's anti-deficiency statutes eliminated the deficiency balance and *that the mere fact of reporting a balance as due and owing* post-foreclosure was inaccurate and incomplete under the CCRAA . . ." (Dkt. #28 at 1 (emphasis added).) Again, Ocwen inaccurately portrays Kuns's CCRAA claim. As stated in the Opposition to the Motion to Dismiss, Kuns does *not* contend "the CCRAA prohibits Ocwen from reporting the deficiency altogether." (Dkt. #18 at 1.)

> Rather, Ocwen violated the CCRAA by failing to report the deficiency accurately and completely. Ocwen's credit reporting of Kuns's deficiency was "incomplete and inaccurate because it failed to indicate or disclose that Kuns was not liable for the deficiency from the foreclosure of his home." (Pl's. Compl. ¶19.)

(*Id*.) The crux of Kuns's CCRAA claim is that Ocwen's reporting would leave anyone reviewing his credit report with the impression that Ocwen could have held Kuns personally liable for the deficiency after the foreclosure on his mortgage.

## II. KUNS'S CCRAA CLAIM IS CONSISTENT WITH *ABDELFATTAH*

Ocwen cites *Abdelfattah v. Carrington Mortgage Services, LLC*, No. C-12-

04656-MW (N.D. Cal. Feb. 7, 2013) for the proposition that Kuns has not stated a CCRAA claim, but *Abdelfattah* does not support this position. *Abdelfattah* considered whether "California Code of Civil Procedure section 580d . . . precludes the reporting of a deficiency to credit reporting agencies following a non-judicial foreclosure sale . . ." *Abdelfattah*, at 1. *Unlike Kuns*, the plaintiff in *Abdelfattah* argued that a non-judicial foreclosure sale "extinguishe[d] the debt" arising from a deficiency sale. *Id*. at 2. The court rejected that position:

> Because Abdelfattah's claims only relate to the reporting of debt, section 580d does not preclude the reporting of a deficiency. The court dismisses Abdelfattah's claims based on the theory that section 580d precludes the reporting of a deficiency following a non-judicial foreclosure. **However, the reported information must be accurate and complete.**

*Id*. at 4 (emphasis added). *Abdelfattah* simply holds that Code of Civil Procedure section 580d does not prevent someone from reporting a deficiency to a CRA. However, nothing in *Abdelfattah* holds that information about a deficiency sale that omits mentioning that the consumer cannot be held personally liable for the deficiency is accurate and complete.

   *Abdelfattah* is analogous to and consistent with *Herrera v. LCS Financial Services Corp.*, No. 09-02843, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009). *Herrera* held that Ocwen did not violate the anti-deficiency laws by simply requesting voluntary payment from former mortgagors, but that "the *content* of [Ocwen's] communications [would be] unlawful" if it rendered Ocwen's communications untrue or misleading. *Id*. at *4 (emphasis in original). Likewise, anyone who reviews Kuns's credit report would be misled into believing that Ocwen could hold Kuns personally liable, when in fact California's anti-deficiency laws protected Kuns from any such deficiency judgment. But Ocwen can lawfully report the deficiency, as long as it does so in a manner that is not misleading. Hence, it is the *content* of the information Ocwen furnished to the CRAs that is actionable, not the mere fact that Ocwen furnished information. *Cf. Wang v. Asset*

*Acceptance, LLC*, 681 F. Supp. 2d 1143, 1149 (N.D. Cal. 2010) (defendant violated CCRAA by "*continu[ing] to report [a] debt in a manner that suggest[ed] it could still collect on it,*" but in fact could not) (emphasis added).

## III.    CONCLUSION

Kuns alleges that the information Ocwen furnished is materially misleading, because someone reviewing Kuns's credit report would believe Kuns was personally liable for the deficiency at the foreclosure. Therefore, Kuns's CCRAA claim is entirely consistent with *Abdelfattah*. Unlike the plaintiff in *Abdelfattah*, Kuns's claim does not depend on the argument that the anti-deficiency laws preclude Ocwen from reporting the deficiency altogether. Rather, as *Abdelfattah* recognized, the CCRAA merely requires that Ocwen's reporting of the deficiency is accurate and complete.

Dated: February 11, 2012          By: _s/Ethan Preston_
David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns,*
*on his own behalf, and behalf of all*

*others similarly situated*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ELIZABETH L. MCKEEN (S.B. #216690)
emckeen@omm.com
DANIELLE N. OAKLEY (S.B. #246295)
doakley@omm.com
EDGAR H. MARTINEZ (S.B. #255503)
emartinez@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660-6429
Telephone:   (949) 823-6900
Facsimile:    (949) 823-6994

Attorneys for Defendant
Ocwen Loan Servicing, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br>　　　　　　　Defendants. | Case No. CV12-7118-DMG-PLA<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OCWEN'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Dolly M. Gee<br>Ctrm:  7 |

Defendant Ocwen Loan Servicing ("Ocwen") respectfully submits this Notice of Supplemental Authority in further support of its Motion to Dismiss Plaintiff's Class Action Complaint. On February 7, 2013, the United States District Court for the Northern District of California in *Abdelfattah v. Carrington Mortgage Services, LLC*, No. C-12-04656-RMW, dismissed plaintiff's claim under California's Consumer Credit Reporting Agencies Act ("CCRAA"), the same statute under which plaintiff in this case has sued Ocwen, based on the same theory plaintiff asserts here. A copy of the district court's Order Granting-In-Part And Denying-In-Part Defendant's Motion To Dismiss is attached hereto as Exhibit A.

In *Abdelfattah*, plaintiff based his claims under the CCRAA and the Fair Credit Reporting Act ("FCRA") on, *inter alia*, the exact theory plaintiff asserts here. *Id.* at 2. Plaintiff alleged that his former mortgage servicer reported a balance as due and owing on his account after the nonjudicial foreclosure sale of the property. He further contended, as does plaintiff here, that California's anti-deficiency statutes eliminated the deficiency balance and that the mere fact of reporting a balance as due and owing post-foreclosure was inaccurate and incomplete under the CCRAA and FCRA. *Id.* at 3. The court disagreed. It held that the anti-deficiency statutes merely bar deficiency judgments and do not, as plaintiff urged, eliminate the underlying debt. *Id.* at 4. Accordingly, the court held that the reporting the deficiency as due and owing was proper under the CCRAA and FCRA. *Id.* ("To preclude the reporting of a deficiency would seem inconsistent with the purpose of a credit report, namely to provide accurate credit information to potential creditors. Although a deficiency may not be reducible to a judgment or even collectible, it does show that the debtor did not fully pay the balance due on his debt.").[1]

---

[1] Plaintiff there also asserted a second theory, which plaintiff here does not assert, namely that the amount plaintiff's mortgage servicer reported as due and owing post-foreclosure was the entire loan amount and that the servicer failed to subtract the sale amount from the amount owing. Plaintiff's claims survived dismissal on

NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OCWEN'S MOTION TO DISMISS CV12-7118-DMG-PLA

**ER 30**

Dated:  February 11, 2013

ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
EDGAR H. MARTINEZ
O'MELVENY & MYERS LLP


By: _____/s/ Danielle N. Oakley_____
Danielle N. Oakley
Attorneys for Defendants
Ocwen Loan Servicing, LLC

---

that theory alone. *Id.* at 6 ("The court does not intend to imply, however, that [the mortgage servicer] could not lawfully report the unpaid balance due on the loan at the time of the foreclosure sale, the credit given for the non-judicial foreclosure sale, and the amount of the deficiency. What is potentially misleading, however, is a report that there remains $596,870 owed when that is no longer the case following the foreclosure sale.").

NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF
OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

ER 31

# EXHIBIT A

1
2
3
4
                                                    **E-FILED on** 2/7/13
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT
9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                                SAN JOSE DIVISION
11

12   AHMED ABDELFATTAH, an individual,        No. C-12-04656-RMW
13                              Plaintiff,
                                              **ORDER GRANTING-IN-PART AND
14        v.                                  DENYING-IN-PART DEFENDANT'S
                                              MOTION TO DISMISS**
15   CARRINGTON MORTGAGE SERVICES
     LLC, a limited liability corporation,    [Re Docket No. 20]
16
                                Defendant.
17

18

19        Defendant Carrington Mortgage Services ("CMS") moves pursuant to Federal Rule of Civil

20   Procedure 12(b)(6) to dismiss all claims asserted by plaintiff Ahmed Abdelfattah in his First

21   Amended Complaint ("FAC").  The main issues addressed in this motion are whether: (1) California

22   Code of Civil Procedure section 580d ("Cal. Code of Civ. P. § 580d") precludes the reporting of a

23   deficiency to credit reporting agencies following a non-judicial foreclosure sale; (2) whether

24   Abdelfattah has pled sufficient facts to support a theory that CMS supplied incomplete or inaccurate

25   information to credit reporting agencies when it reported the full unpaid balance due on his home

26   loan after the property securing the loan had been sold at a non-judicial foreclosure sale; (3) whether

27   CMS failed to investigate and correct the allegedly misleading information after it was notified of

28   the alleged inaccuracies; and (4) if the answer to (2) and (3) is "yes," whether Abdelfattah is entitled

**United States District Court**
For the Northern District of California

**ER 33**

United States District Court
For the Northern District of California

to damages under the Fair Credit Reporting Act ("FCRA") or California's Consumer Credit Reporting Agencies Act ("CCRAA").

The court grants in part and denies in part defendant's motion as explained below.

## I. BACKGROUND

Plaintiff Abdelfattah originally secured a home loan for $540,000 in 2005. FAC ¶ 8, Dkt. No. 16. The loan was later acquired by CMS. After failing to make payments as agreed, a non-judicial foreclosure sale of Abdelfattah's home was conducted on May 21, 2008. *Id*. ¶ 9.[1] In June of 2012, Abdelfattah discovered that CMS had last reported to credit reporting agencies in June 2008 and had stated that he had a balance of $596,870 on his home loan, with $59,547 past due. *Id*. ¶¶ 10-11. Abdelfattah contends that the foreclosure sale of the home to CMS for $547,200 should have eliminated the loan balance or at least reduced it by the sale amount. *Id*. ¶ 10. On June 20, 2012, Abdelfattah sent a letter to the credit reporting agencies (Equifax, Experian and Transunion) and CMS "disputing the reported account and requesting that they cease reporting that Mr. Abdelfattah owes the entire amount of the loan when all or part of the loan was satisfied in the foreclosure sale." *Id*. ¶ 14. CMS responded with a letter dated July 17, 2012, indicating that it would not stop reporting the entire balance because "the amounts past due were an accurate statement of what was due at the time of the report." *Id*. ¶ 16. The letter also stated that "[t]he balances reflected in your credit report would not reflect a zero balance on your personal credit report because the final status of your account was reported based as of the time your property was acquired through the foreclosure sale, not at the time of the later sale of the property." *Id.*, Ex.1.

Abdelfattah now brings this action against CMS contending that California's anti-deficiency law as set forth in Cal. Code of Civ. P. § 580d precludes deficiency judgments after non-judicial foreclosure sales and, therefore, makes CMS' reporting of a purported balance of $596,870 inaccurate and incomplete. Abdelfattah alleges willful violations of FCRA and CCRAA, both of which require a reasonable investigation of disputes and prohibit reporting inaccurate or incomplete information to credit reporting agencies. *Id*. ¶¶ 28-39. Because of these alleged violations,

---

[1] CMS' July 17, 2012 letter to plaintiff says the property was acquired through foreclosure proceedings on June 3, 2008.

ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS   —No. C-12-04656-RMW TMDH
2

**ER 34**

United States District Court
For the Northern District of California

Abdelfattah contends that he has suffered emotional distress and humiliation, has been denied credit, and has been unable to refinance his automobile loan or secure a home or automobile loan. *Id.* ¶ 17.

## II. ANALYSIS

To survive a motion to dismiss, Abdelfattah's complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Furthermore, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). It is with this standard in mind that the court addresses CMS' motion.

### A. Section 580d

The first issue is whether section 580d, which bars deficiency judgments following non-judicial foreclosure sales, necessarily precludes a creditor from reporting a deficiency to credit reporting agencies following a non-judicial foreclosure sale. CMS contends that section 580d's reach applies only to the obtaining of deficiency judgments, and, therefore, does not bar a creditor from furnishing deficiency information. Plaintiff claims that the sale extinguishes the debt.

Section 580d prevents a creditor from obtaining a deficiency judgment after a non-judicial foreclosure proceeding. Cal. Civ. P. Code § 580d; *Espinoza v. Bank of Am., N.A.*, 823 F. Supp. 2d 1053, 1056-57 (S.D. Cal. 2011). By its terms, section 580d applies "only when a personal judgment against a debtor is sought after a foreclosure." *Dreyfuss v. Union Bank of Cal.*, 24 Cal. 4th 400, 407 (2000). However, Abdelfattah contends that section 580d has the effect of entirely extinguishing the debt and, therefore, precludes the party barred from obtaining a deficiency judgment from reporting the existence of any deficiency. He argues that "courts have consistently taken a more policy based approach, which compels them to look beyond the plain language of the statute." Opp. 5, Dkt. No. 23. CMS points out in its reply that "if the statutory language is clear and unambiguous, our task is at an

United States District Court
For the Northern District of California

1   end, for there is no need for judicial construction." Rep. at 6, Dkt. No. 26 (quoting *MacIsaac v.*

2   *Waste Mgmt. Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076 (2005)).

3      Section 580d makes no reference to the way a furnisher, defined as a "source that provides

4   credit information to credit reporting agencies," *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d

5   1147, 1153 (9th Cir. 2009), may or may not report a deficiency to a credit reporting agency. The

6   statute only bars a creditor from obtaining a deficiency judgment from a borrower after the creditor

7   has completed non-judicial foreclosure. To preclude the reporting of a deficiency would seem

8   inconsistent with the purpose of a credit report, namely to provide accurate credit information to

9   potential creditors. Although a deficiency may not be reducible to a judgment or even collectible, it

10   does show that the debtor did not fully pay the balance due on his debt. *See Redingler v. Imperial*

11   *Sav. & Loan Ass'n*, 47 Cal. App. 3d 48, 50 (1975) (debtor-creditor relationship between the parties

12   not totally extinguished during the foreclosure proceedings because creditor purchased the property

13   for less than the amount of the balance due under the deed of trust); *Mortg. Guar. Co. v. Sampsell*,

14   51 Cal. App. 2d 180, 185 (1942) (anti-deficiency statutes do not even purport to wipe out the debt,

15   but only to apply in the contingency that a deficiency judgment is sought).

16      Because Abdelfattah's claims only relate to the reporting of debt, section 580d does not

17   preclude the reporting of a deficiency. The court dismisses Abdelfattah's claims based on the theory

18   that section 580d precludes the reporting of a deficiency following a non-judicial foreclosure.

19   However, the reported information must be accurate and complete.

20      **B. Allegedly Incomplete or Inaccurate Information**

21      The second issue is whether Abdelfattah has pled sufficient facts to support a theory that

22   CMS supplied incomplete or inaccurate information to the credit reporting agencies in violation of

23   FCRA or CCRAA. In his FCRA claim he alleges that both he and the credit reporting agencies

24   notified CMS that he was disputing the amount shown as due on his credit report. He further

25   contends that thereafter CMS conducted an inadequate investigation which included "a failure to

26   take into consideration the fact that the foreclosure sale had yielded proceeds which should be

27   credited to loan balance, and failure to consider the application of the relevant anti-deficiency laws."

28   FAC ¶ 37. In his CCRAA claim he contends that CMS provided information it knew to be

United States District Court
For the Northern District of California

inaccurate or incomplete to the credit reporting agencies by stating that Abdelfattah owed a balance of "$596,870 as of Jun 2008" when, in fact, "the loan balance was eliminated or greatly reduced by the foreclosure sale and, therefore, the credit reporting should reflect this amount." FAC ¶ 37. CMS argues that Abdelfattah's claim that CMS' report was inaccurate is "unsupported, conclusory and fails as a matter of law." Mot. at 6.

The court is not persuaded by CMS's arguments. Abdelfattah has pled sufficient facts to plausibly support a theory that the reported balance of $596,870 was inaccurate or incomplete. A credit entry can be "incomplete or inaccurate" if it is actually incorrect or if it is misleading "to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir.1998)). The Ninth Circuit has explained that the purpose of the FCRA is "to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs [sic] after a consumer has objected to the information in his file." *Id*. at 1164. In *Gorman*, the Ninth Circuit reversed the district court's grant of summary judgment finding that a credit file that was not marked as disputed, when it was, could be sufficiently misleading to form the basis of a claim. *Id.* The court noted that "a consumer's failure to pay a debt that is not really due does not reflect financial irresponsibility and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." *Id*. at 1163.

Here, CMS has refused to change allegedly inaccurate and incomplete information after receiving notice in June 2012 of a dispute. The FAC alleges that Abdelfattah's credit report for June 2008 states he owes $596,870 when that amount had been largely satisfied by the foreclosure sale of his former home. While CMS emphasizes in its letter sent to Abdelfattah addressing his request for an investigation that the outstanding balance *at the time of the account closure* on May 21, 2008 was $590,818.43, it has not sufficiently explained why the balance was not reduced *after* CMS purchased the home for $547,200 in May 2008. As the court held in *Gorman*, even the technical accuracy of a reported figure does not necessarily insulate a creditor from liability if the report is misleading. 584 F.3d at 1163. Abdelfattah has sufficiently pled that the $596,870 figure that allegedly remains on his credit report is incomplete or inaccurate given the amount realized by CMS on the foreclosure

**United States District Court**
For the Northern District of California

1 sale of Abdelfattah's home. Therefore, since CMS did not correct the report after notice and time to

2 investigate, plaintiff's FCRA claim survives dismissal at this pleading stage. *See id.* at 1162; *Nelson*

3 *v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057 (9th Cir. 2002).[2]

4      The court does not intend to imply, however, that CMS could not lawfully report the unpaid

5 balance due on the loan at the time of the foreclosure sale, the credit given for the non-judicial

6 foreclosure sale, and the amount of the deficiency. What is potentially misleading, however, is a

7 report that there remains $596,870 owed when that is no longer the case following the foreclosure

8 sale.

9      CMS contends that the CCRAA does not allow private actions by consumers against

10 furnishers such as CMS for supplying incomplete or inaccurate information to credit reporting

11 agencies. However, Cal. Civ. Code § 1785.25(a) provides that: "[a] person shall not furnish

12 information on a specific transaction or experience to any consumer credit reporting agency if the

13 person knows or should know the information is incomplete or inaccurate." Section 1681t(b)(1)(F),

14 FCRA's preemption provision, expressly exempts § 1785.25(a) from its general exclusion of state

15 law claims. In *Gorman*, the Ninth Circuit expressly held that a private right of action to enforce Cal.

16 Civ. Code § 1785.25(a) is not preempted by the FCRA. 584 F.3d at 1172-73. Therefore, plaintiff's

17 claim that CMS provided inaccurate and misleading information to the credit reporting agencies

18 following the foreclosure sale is viable.

19 **C. Reasonable Investigation**

20      CMS argues that Abdelfattah "fails to allege any facts to support his legal conclusion that

21 CMS' investigation was unreasonable or that CMS failed to review all relevant information." Mot. 9.

22 However, Abdelfattah has pled sufficient facts to support his claim that CMS deliberately or

23 negligently ignored the foreclosure sale and its effect on plaintiff's loan balance. A reasonable

24 investigation would have determined that that information affected the plaintiff's account balance.

25 **D. Damages**

26      **1. Damages Under FCRA**

27 _____

28 [2] The parties do not appear to dispute that a consumer has no private cause of action against a
furnisher of information prior to the time that the furnisher is advised of the disputed issue with the
credit report.

**ER 38**

Abdelfattah contends that as a result of the erroneous information on his credit report, he has been denied credit and thus been unable to refinance his automobile loan or secure a home or automobile loan. FAC ¶ 17. He has also allegedly suffered emotional distress. *Id.* CMS contends that Abdelfattah has failed to plead actual damages, arguing that the facts pled do not rise beyond the speculative level. CMS argues that Abdelfattah fails to plead "any facts showing that plaintiff's purported actual damages were caused by CMS . . . rather than [his] recent bankruptcy filing, defaulting on his loan, or the foreclosure of his home." Reply 11.

Under the FCRA, Abdelfattah can obtain actual damages and attorneys' fees if he successfully shows that CMS negligently failed to comply with any provision of FCRA. 15 U.S.C. § 1681o. The Ninth Circuit has interpreted "actual damages" under FCRA to include recovery for emotional distress and humiliation. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Although a denial of credit is not a prerequisite to recovery under the FCRA, Abdelfattah has marginally pled sufficient facts to support a reasonable inference that the failure to correct his account balance after CMS was made aware of the error in the amount reported was a substantial factor in his inability to get a new loan or refinancing. When the decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, a plaintiff must only show that the alleged wrongful conduct was a substantial factor in bringing about a denial of credit. *See Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d (D. Or. 2011); *Fregoso v. Wells Fargo Dealer Servs., Inc.*, CV 11-10089 SJO AGRX, 2012 WL 4903291 (C.D. Cal. Oct. 16, 2012); *Pourfard v. Equifax Info. Servs. LLC*, CIV 07-854-AA, 2010 WL 55446 (D. Or. Jan. 7, 2010). Thus, although the FCRA limits Abdelfattah's damage claim to damages incurred after CMS had notice of the dispute and time to conduct an investigation, plaintiff's damage claim survives at this pleading stage. *See* 15 U.S.C. § 1681s-2(b)(sets deadline for completing actions). Plaintiff contends that credit denials have occurred since 2008, citing the "continued reporting" by CMS of the deficiency as a "substantial factor" in those denials. FAC ¶ 17; *but see* FAC ¶ 11 (suggesting that last report was June 2008). However, only damages incurred after the deadline for CMS to

**ER 39**

complete its investigation are potentially recoverable under the FCRA (approximately July 22, 2012).

### 2. Damages Under CCRAA

The parties' briefing does not focus on the question of what damages may be recovered under the CCRAA. However, the court in *Gorman* does an extensive analysis and concludes that damages are recoverable in a private action for a violation of Cal. Civ. Code § 1725(a), which proscribes the providing of information on a specific transaction to a credit reporting agency if the person knows or should know the information is incomplete or inaccurate. 584 F.3d at 1169-73. Therefore, if plaintiff can establish that in June 2008 CMS knowingly provided incomplete information to the credit reporting agencies, Abdelfattah may recover any damages caused by the reporting of that information.

### E. Punitive Damages under the FCRA

A consumer can recover punitive damages for willful non-compliance with the FCRA. 15 U.S.C. § 1681n. CMS argues in its motion that Abdelfattah's request for punitive damages is "improperly conclusory" and is "not supported by any factual matter." Mot. at 13. Here, Abdelfattah alleges that CMS offered to alter or remove the $596,870 balance only if he agreed to "make a financial settlement" with CMS. FAC ¶ 13. If Abdelfattah is able to prove that the reported balance was in fact inaccurate or incomplete and CMS would only change it if Abdelfattah paid CMS to do so, a jury could find such a violation to be willful. Thus, the court will not dismiss the claim at this early stage of litigation.

### III. ORDER

For the foregoing reasons, the court:

1. GRANTS defendant's motion to dismiss the claim that reporting a deficiency following a non-judicial foreclosure sale is in and of itself a violation of FCRA or CCRAA;

2. GRANTS defendant's motion to dismiss any claim under FCRA for damages incurred prior to dispute investigation deadline; and

3. DENIES defendant's motion to dismiss in all other respects.

*United States District Court*
*For the Northern District of California*

DATED:     February 7, 2013

_Ronald M. Whyte_

RONALD M. WHYTE
United States District Judge

ER 41

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-07118 DMG (PLAx)** | Date | February 8, 2013 |
|---|---|---|---|

| Title | ***Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.*** | Page | 1 of 1 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER DISCHARGING ORDER TO SHOW CAUSE
[DOC. # 20]**

October 25, 2012, the Court ordered the parties to show cause why this action should not be dismissed for lack of subject matter jurisdiction ("OSC").  [Doc. # 20.]  Plaintiff responded that they needed time to conduct jurisdictional discovery regarding the amount in controversy, and on November 30, 2012, the Court ordered the parties to take jurisdictional discovery and submit a joint report on February 1, 2012.  [Doc. # 23.]

Because Defendant removed this diversity class action complaint from state court to federal court pursuant to the Class Action Fairness Act, the total amount in controversy must exceed $5 million.  28 U.S.C. § 1332(d).  As the Court previously explained, when the complaint fails to specify the amount of damages sought, the defendant must show by a preponderance of the evidence that more than $5 million is at stake.  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)).  Having reviewed the joint report [Doc. # 26], the Court is satisfied that Defendants have demonstrated by a preponderance of the evidence that the damages which Plaintiff seeks meet the jurisdictional threshold.  Therefore, the October 25, 2012 OSC is hereby **DISCHARGED**.  Plaintiff's request for additional time to complete jurisdictional discovery is **DENIED** as moot.

**IT IS SO ORDERED.**

**ER 42**

1  ELIZABETH L. MCKEEN (S.B. #216690)
   emckeen@omm.com
2  DANIELLE N. OAKLEY (S.B. #246295)
   doakley@omm.com
3  EDGAR H. MARTINEZ (S.B. #255503)
   emartinez@omm.com
4  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
5  Newport Beach, California 92660-6429
   Telephone: (949) 823-6900
6  Facsimile: (949) 823-6994

7  Attorneys for Defendant
   Ocwen Loan Servicing, LLC
8

9

10           **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  JEFFREY KUNS, an individual, on his own behalf and on behalf of all others | Case No. CV12-7118-DMG-PLA |
| 13  similarly situated, | **PARTIES' JOINT REPORT ON AMOUNT IN CONTROVERSY** |
| 14                Plaintiff, | |
| 15      v. | Judge: Hon. Dolly M. Gee |
| 16  OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and | |
|     DOES 1-100, inclusive, | |
| 17 | |
| 18                Defendants. | |

19

20

21

22

23

24

25

26

27

28

**ER 43**

The parties agreed to prepare this Joint Statement by simultaneously exchanging their initials drafts at 4 p.m. PST on January 30, 2013, and their revised drafts at 2 p.m. PST on February 1, 2013. The simultaneous exchanges were intended to promote the orderly finalization of the parties' Joint Statement while preventing one party or the other from timing the insertion of additional arguments in a manner that would prevent the other party from addressing those arguments. Defendant certifies that it received Plaintiff's revised draft at 2:19 p.m. PST on February 1, 2013, and emailed its revised draft to Plaintiff at 2:18 p.m. PST on February 1, 2013. After the parties exchanged their statements, Ocwen's counsel changed certain errata in the headings of Kuns's brief that were identified in a telephonic conference between counsel.

## OCWEN'S POSITION

### INTRODUCTION

In this putative class action under the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1 *et seq.* ("CCRAA"), plaintiff Jeffrey Kuns confirmed through his responses to the jurisdictional discovery ordered by this Court that he alleges to have suffered individual damages in the amount of $14,100. More specifically, plaintiff seeks up to $9,100 in alleged actual damages and up to $5,000 in statutory punitive damages from his former mortgage servicer, defendant Ocwen Loan Servicing, LLC ("Ocwen"). As explained more fully below, whereas it would take just 354 putative absent class members for the jurisdictional threshold to be met in light of the recovery plaintiff seeks for himself and on behalf of others similarly situated, plaintiff purports to represent thousands of absent class members. Accordingly, there can be no doubt that plaintiff seeks to recover in this action more than the minimum jurisdictional amount of $5 million, as required under the Class Action Fairness Act ("CAFA"), and that the amount-

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 44**

in-controversy requirement has been met, as plaintiff himself now acknowledges. *See* 28 U.S.C. § 1332(d).

## STATEMENT OF RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY[1]

### *1. Plaintiff's Allegations*

Plaintiff brings the present one-count class-action complaint against Ocwen, alleging that Ocwen reported to credit reporting agencies a balance owing on plaintiff's mortgage loan following the non-judicial foreclosure of plaintiff's home. (Compl. ¶3.) Plaintiff alleges that the practice of reporting mortgage deficiencies to credit reporting agencies in this manner is unlawful because California Code of Civil Procedure Sections 580b and 580d prevent mortgagees from obtaining deficiency judgments against certain types of mortgagors, of which plaintiff alleges he is one. (*Id.* ¶2.) Plaintiff alleges that Ocwen's failure to inform credit reporting agencies that the balance remaining on plaintiff's account could not be enforced by way of a deficiency judgment violated Section 1785.25(a) of the CCRAA, which forbids furnishers of credit information from reporting information on a specific transaction or experience that is "incomplete or inaccurate." (*Id.* ¶¶4–6.)

### *2. Procedural History*

Plaintiff filed the operative complaint in Los Angeles County Superior Court on July 17, 2012, and Ocwen timely removed the action to this Court on August 17, 2012, under CAFA. (Dkt. No. 1, Notice of Removal.) Plaintiff did not seek to remand the case, and Ocwen has moved to dismiss the action for failure to state a claim. (Dkt. No. 13, Def.'s Motion to Dismiss.) That motion is fully briefed. On

---

[1] This statement of facts and allegations includes allegations from the complaint, which are assumed true solely for the purposes of establishing jurisdiction. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("In measuring the amount in controversy a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." (internal quotation marks omitted)). Ocwen denies all material allegations of the complaint and maintains that plaintiff is not entitled to recovery in this case, whether on his own behalf or on behalf of others.

JOINT REPORT ON AMOUNT IN CONTROVERSY
CV12-7118-DMG-PLA

**ER 45**

October 25, 2012, this Court issued an Order to Show Cause ("OSC") why this action should not be remanded to state court for lack of subject matter jurisdiction. (Dkt. No. 20.) The Court required Ocwen to demonstrate that it had met its burden of establishing that the parties in the action are minimally diverse and that the amount in controversy in the complaint exceeds $5,000,000. (*Id.*) Both parties responded to the Court's OSC on November 5, 2012. (*See* Dkt. No. 21, Ocwen's Response to OSC; Dkt. No. 22, Pl.'s Response to OSC.)

On November 30, 2012, the court issued an Order Permitting Jurisdictional Discovery, (Dkt. No. 23), in which it held that Ocwen had established minimal diversity between the parties as required by CAFA, but further ordered jurisdictional discovery to determine whether the amount in controversy in this action exceeds $5,000,000. (*Id.* at 1-2.) The parties met and conferred multiple times and exchanged several sets of discovery pursuant to the Court's Order. The discovery completed confirms that plaintiff has put over $5,000,000 in controversy in this action, as plaintiff's own statement below acknowledges.

### 3. Relief Sought by Plaintiff

Plaintiff's complaint seeks four categories of relief: actual damages, statutory punitive damages, injunctive and equitable relief, and attorneys' fees under the CCRAA Section 1785.31. (Compl. ¶38.) Plaintiff represented to the Bankruptcy Court for the Central District of California in September of 2012 that the value of his individual claim against Ocwen is $14,100. (Dkt. No. 17, Pl.'s Request for Judicial Notice ("Pl.'s RJN"), Ex. 2 at 8.)[2] Plaintiff confirmed this position in his discovery responses, where he alleges to have "suffered $14,100 in individual damages." (Declaration of Danielle Oakley ("Oakley Decl.") Ex. 1,

---

[2] The value of the property listed on this schedule is the value of the debtor's interest alone. *See* 11 U.S.C. § 541(a)(1) (the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case") (emphasis added); *In re Ball*, 201 B.R. 204, 208 (Bankr. N.D. Ill. 1996) (value of asset reported by class representative limited to the value of her individual claim).

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

1   Pl.'s Resp. to RFA No. 1.)  According to plaintiff, "[t]his estimate includes up to

2   $9,100.00 in actual damages and up to $5,000.00 in potential punitive damages

3   pursuant to Civil Code section 1785.31."  (Oakley Decl. Ex. 3, Pl.'s Supp. Resp. to

4   Interrog. No. 1; *see also* Dkt. No. 22, Pl.'s Response to OSC at 4 n.2.)  The "up to

5   $5,000" in statutory punitive damages plaintiff seeks are the maximum statutory

6   damages allowed by statute under the CCRAA in the case of willful violations.

7   Cal. Civ. Code § 1785.31; (*see also* Compl. ¶38 (seeking statutory punitive

8   damages); Oakley Decl. Ex. 1, Pl.'s Resp. to RFA Nos. 2–3 (admitting that

9   plaintiff's complaint alleges that Ocwen willfully violated the CCRAA); *Id.* at Ex.

10  2, Pl.'s Resp. to Interrog. No. 4.)

11          Plaintiff's complaint alleges that his "claims are typical of the claims of the

12  other members of the Class.  Plaintiff is not different in any relevant way from any

13  other member of the Class, and the relief he seeks is common to the Class."

14  (Compl. ¶24.)  Plaintiff seeks to represent a putative class comprising borrowers

15  whose primary residential mortgage loans Ocwen serviced and whose deficiency

16  balances Ocwen reported to a credit reporting agency after the nonjudicial

17  foreclosure of the property securing the mortgage loan, (*see* Compl. ¶20), of which

18  there are nearly 4,730.  (Dkt. No. 3, Lyew Decl. ¶3; *see also* Oakley Decl. Ex.4,

19  Ocwen's Resp to RFA No. 4) (Ocwen "reported a positive balance on the loan

20  accounts to the three major credit bureaus following the foreclosure sale of the

21  properties securing approximately 4,730 loans that were foreclosed between July

22  1, 2012 and June 30, 2012, and . . . the overwhelming majority of those properties

23  were foreclosed nonjudicially.").  Thus plaintiff alleges to have suffered $14,100

24  in individual damages and seeks to recover those damages on behalf of himself and

25  on behalf of thousands of people who plaintiff alleges seek the same relief as he.

26  (*See* Compl. ¶24.)[3]

---

27  [3] Additionally, regarding attorneys' fees, plaintiff alleges to have incurred to date
28  in excess of $99,000 in attorneys' fees.  (Oakley Decl. Ex. 3, Pl.'s Supp. Resp. to
    Interrog. No. 3.)  Plaintiff seeks to recover these fees as well.  (Compl. ¶38.)

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

### ARGUMENT

A removing party must establish jurisdiction by a preponderance of the evidence. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). As explained in *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199 (E.D. Cal. 2008), the preponderance standard " is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Id.* at 1205 (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)) (emphasis in original).

### I. THE ACTUAL DAMAGES PLAINTIFF SEEKS ARE INDEPENDENTLY SUFFICIENT TO SATISFY THE AMOUNT IN CONTROVERSY.

The actual damages plaintiff seeks in this case alone satisfy the amount-in-controversy requirement. Plaintiff here contends to have "suffered $14,100 in individual damages," of which he claims to have incurred "up to $9,100 in actual damages."[4] (Oakley Decl. Ex 1, Pl.'s Resp. to RFA No. 1; *Id.* at Ex. 3, Pl.'s Supp. Resp. to Interrog. No. 1.) Plaintiff alleges in his complaint that his claims are "typical of the claims of the other members of the class" and that he is "not different in any relevant way from any other member of the Class, and the relief he seeks is common to the Class." (Compl. ¶24); *see also O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 372 (C.D. Cal. 1997) (quoting *Gen. Tel. Co.*, 457 U.S. 147, 156 (1982)) (A class representative is typical of the class when the representative "possess[es] the same interest and suffer[s] the same injury as the class members."). Thus, the $9,100 plaintiff seeks in actual damages should be multiplied by the number of putative class members to determine the amount of actual damages sought for purposes of determining the amount in controversy under CAFA. *Schubert v. Manheim Auctions, Inc.*, Civ. Action No. 09-3365, 2010

---

[4] Ocwen maintains that plaintiff has suffered no actual damages as a result of any alleged conduct by Ocwen, but Ocwen adopts plaintiff's alleged damages figures solely for the purpose of establishing the amount plaintiff has placed in controversy.

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

WL 624175, at *5 (E.D. Pa. Feb. 18, 2010); *Waller v. Hewlett-Packard Co.*, No. 11cv0454-LAB (RBB), 2011 WL 8601207 (S.D. Cal. May 10, 2011).

In *Schubert*, plaintiff alleged that he had suffered $578.79 in damages, and the court used that figure to estimate the amount in controversy in the case, noting that "[t]he complaint and amended complaint . . . allege, on the subject of damages, that the named plaintiff was charged $578.79 . . . and that, as a result of defendants' conduct, other class members suffered 'similar damages.'" *Schubert*, 2010 WL 624175 at *4. The court thus concluded that, in the absence of other evidence, a proper estimate of actual damages for determining the amount in controversy under CAFA was plaintiff's alleged damages multiplied by the number of putative class members. *Id.* at *5. The court further tripled the amount because plaintiff sought treble damages. *Id.*at *6.

Similarly, in *Waller*, the court concluded that plaintiff's actual damages of $1,335, coupled with his allegation that other members of the putative class suffered similar damages to him, was sufficient to justify extrapolating his actual damages to each member of the putative class for CAFA amount-in-controversy purposes. 2011 WL 8601207 at *3 (denying remand); *see also Frederico v. Home Depot*, 507 F.3d 188, 197–200 (3d Cir. 2007) (extrapolating plaintiff's alleged actual damages, punitive damages, and attorney's fees to the entire class to assess amount in controversy under CAFA).

Here, as in *Schubert* and *Waller*, for purposes of determining the amount in controversy, plaintiff's alleged actual damages should be extrapolated to each putative absent class member because plaintiff alleges that his claims are representative of those of putative absent class members and that "the relief he seeks is common to the class." (Compl. ¶24.) Moreover, as in *Schubert* and *Waller*, plaintiff has offered no more appropriate metric for assessing actual damages suffered by putative absent class members. (*See* Oakley Decl. Ex. 3, Pl.'s Supp. Resp. to RFP Resp. No. 3 (admitting plaintiff does not possess evidence of

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

1     actual damages suffered by putative class members).)

2         With alleged actual damages estimated at $9,100 per class member, a class

3 size of 550 is sufficient to fulfill the amount-in-controversy requirement based on

4 alleged actual damages alone (*i.e.*, without even considering statutory damages).

5 Here, however, Ocwen reported a positive balance on the loan accounts following

6 the foreclosure sale of the property for 4,730 loans, the "overwhelming majority"

7 of which were foreclosed nonjudicially. (Dkt. No. 3, Lyew Decl. ¶3; *see also*

8 Oakley Decl. Ex. 4, Ocwen's Resp to RFA No. 4.) Even a simple majority of the

9 loans identified would be more than four times the number of putative class

10 members necessary to reach the amount-in-controversy requirement based on

11 alleged actual damages alone.

12 **II.**    **PLAINTIFF SEEKS MORE THAN $5 MILLION IN STATUTORY PUNITIVE**
        **DAMAGES ALONE.**

13

14        Plaintiff admits that he seeks in this action "up to $5,000 in potential

15 [statutory] punitive damages pursuant to Civil Code section 1785.31." (Oakley

16 Decl. Ex. 3, Pl.'s Supp. Resp. to Interrog. No. 1; *see also* Compl. ¶38(b) (seeking

17 statutory damages); Cal. Civ. Code § 1785.31(a)(2)(B) (authorizing "[p]unitive

18 damages of not less than one hundred dollars ($100) nor more than five thousand

19 dollars ($5,000) for each [willful] violation as the court deems proper" ); Oakley

20 Decl. Ex. 1, Pl.'s Resp. to RFA Nos. 2-3 (admitting that his complaint alleges

21 willful violations).) This request alone puts $5 million in controversy because

22 where a plaintiff seeks "up to" the maximum allowable statutory damages, the

23 maximum possible damages should be calculated for each putative absent class

24 member for purposes of determining the amount in controversy. *Korn*, 536 F.

25 Supp. 2d at 1205; (Oakley Decl. Ex. 2, Pl.'s Supp. Resp. to Interrog. No. 1

26 (plaintiff seeks "up to $5,000.00 in potential punitive damages pursuant to Civil

27 Code section 1785.31.").

28        In *Korn*, the district court held that CAFA's amount-in-controversy

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

requirement was met because the plaintiff sought statutory damages of "up to" $1,000 per transaction, and the defendant submitted declarations stating that there had been at least 5,001 transactions during the putative class period. 536 F. Supp. 2d at 1205–1206. Plaintiff there advanced the theory that, because less than the maximum statutory damages might be awarded to plaintiffs, the defendants failed to fulfill CAFA's amount-in-controversy requirement. *Id.* at 1205. The court held that the maximum amount sought (regardless of whether the facts of the case would ultimately justify such an award) is what controls for purposes of determining the amount in controversy. *Id.* ("[W]here a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.").

Similarly, in *Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883 (C.D. Cal. Dec. 26, 2007), a court in this district stated that, "[c]ourts, as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to the plaintiff," and that this figure includes the maximum statutory penalty available for the number of putative class claimants. *Id.* at *4 (denying remand where statutory damages awarded could be either $250 or $1,000 and multiplying the $1,000 figure by declaration establishing that at least 5,001 violations occurred); *see also Romo v. FGG Ins. Co.*, 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005) (holding that statutory punitive damages under the Song-Beverly Consumer Warranty Act—which authorizes civil penalties up to twice the amount of actual damages for violations—could be applied to meet a jurisdictional amount-in-controversy requirement).[5]

---

[5] Plaintiff's Response to the Court's OSC cites *Soloman v. Mainline Information Systems, Inc.*, No. CV 11-07388 SJo (SSx), 2012 WL 137568 (C.D. Cal. Jan. 17, 2012) as an example of a case in which the court declined to apply the statutory maximum penalty for purposes of determining the amount in controversy. However, the statute at issue in *Soloman*—California Labor Code Section 226(e)—is tied directly to actual damages, allowing the plaintiff to cover the *greater* of his or her actual damages, or certain specified statutory damages, up to

1    In his response to the OSC, plaintiff argued that, despite expressly seeking

2 statutory punitive damages in this case, he has not put the maximum statutory

3 punitive damages at issue because he did not explicitly alleged entitlement to the

4 "maximum" damages.  (Dkt. No. 22, Pl.'s Response to OSC at 3–6.)  But plaintiff

5 invoked the CCRAA statutory punitive damage provision by alleging willful

6 violations of the statute.  (*See* Oakley Decl. Ex. 1, Pl.'s Resp. to RFA Nos. 2-3

7 (admitting that plaintiff alleges willful violations).)  Moreover, now that plaintiff

8 has conceded in response to jurisdictional discovery that he seeks "up to" the

9 statutory maximum damages, which he previously refused to admit despite his

10 representations to the Bankruptcy Court, this alone is sufficient to justify using the

11 maximum potential damages award to determine the amount in controversy.  *Korn*,

12 536 F. Supp. 2d at 1205.

13    Plaintiff further argued in his OSC response that the amount of statutory

14 punitive damages in controversy should be determined not by what was pleaded

15 but by the amount of damages that would ultimately be awarded in the case.  (*See*

16 Dkt. No. 22, Pl.'s Response to OSC at 6, 10.)  This inquiry goes to the merits of

17 the case and is an improper subject of jurisdictional discovery.  *Rippee v. Boston*

18 *Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (disallowing class survey

19 on the alleged misconduct underlying absent class member claims, finding it

20 "more germane to the merits of the case rather than to the amount in controversy").

21 The amount-in-controversy requirement does not require the defendant to concede

22

23 an aggregate figure of $4,000.  *See* Cal. Lab. Code § 226(e)(1).  Plaintiff here
seeks statutory damages irrespective of actual damages, and thus *Soloman* is not

24 instructive.  Moreover plaintiff's citation to *Tompkins v. Basic Research LL*, No.
CIV. S-08-244 LKK/DAD, 2008 WL 1808316 (E.D. Cal. Apr. 22, 2008), relies on

25 dicta in which the court considered whether an allegation that each member's
claim is "less than" $75,000 warrants an assumption that the claim is $74,999.  *Id.*

26 at *3.  To the extent plaintiff relies on common-law punitive-damages cases (as
opposed to statutory-damages cases), plaintiff's reliance is misplaced.  As the

27 *Saulic* court recognized, damages specified by statute are distinct from standard
punitive damages, which are limited only by due process requirements.  *Saulic*,

28 2007 WL 5074883, at *8 (citing *Conrad Associates v. Harford Accident &*
*Indemnity Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998)).

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

ER 52

liability, *Lewis*, 627 F.3d at 400, but under plaintiff's view, whether the amount in controversy is met in this case would be contingent upon the ultimate outcome: Defendants who would be found liable could remove to federal court, whereas those who would not be found liable, could not.[6]

Because plaintiff here seeks up to the maximum statutory damages, which he now admits, and has alleged willful violations of the CCRAA, plaintiff has put into controversy, based on statutory damages alone, $5,000 per putative class member, of which there are nearly 4,730. (*See* Dkt. No. 3, Lyew Decl. ¶3.)

## III. ATTORNEYS' FEES ARE PROPERLY INCLUDED IN THE AMOUNT IN CONTROVERSY.

In addition to the alleged actual damages and statutory punitive damages plaintiff seeks, each of which independently meets the amount-in-controversy requirement as explained above, plaintiff seeks attorneys' fees, which should be considered when determining the amount in controversy. (Compl. ¶38); *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (attorneys' fees are part of the amount in controversy when they are statutorily authorized); Cal. Civ. Code § 1785.31(d) (authorizing attorneys' fees and costs under the CCRAA). In attorneys' fees alone, plaintiff has incurred fees in excess of $99,000, which are to be considered as part of the amount in controversy. (Oakley Dec. Ex. 3, Supp. Resp. to Interrog. No. 3.)[7] When combined with actual

---

[6] In his OSC response, plaintiff relied on *Conrad Associates v. Harford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998), in which the district court remanded the case, for his argument that the court should assess evidence of willfulness to determine the extent of statutory punitive damages warranted. But *Conrad* does not support plaintiff's argument that an examination of the extent of the alleged willfulness is warranted. The court in *Conrad* compared the "egregious circumstances" in defendant's claimed analogous cases with the "alleged facts" of the present case. 994 F. Supp. at 1201. In other words, the court's analysis was limited to what appeared on the face of the complaint when assessing amount in controversy.

[7] Plaintiff asserts that attorneys' fees should be calculated as of the time of removal, however several courts in this Circuit have determined that a reasonable estimate of attorneys' fees to the resolution of the case is appropriate for determining amount in controversy. *See, e.g., Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002); *Simmons v. PCR Tech.*, 209 F.

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 53**

and/or statutory damages sought by plaintiff, it is clear plaintiff seeks more than $5 million in this action.[8]

## IV. ADDITIONAL DISCOVERY IS NEITHER NECESSARY NOR WARRANTED.

Plaintiff's statements that "Ocwen objected to discovery" about various topics gives the misleading impression that Ocwen stood on its objections, refusing to respond to plaintiff's requests. Ocwen appropriately made both general and specific objections to each of plaintiff's requests for production, but notwithstanding those objections, it responded fully regarding nearly every category of information plaintiff sought.[9] Discovery in this case is not incomplete; plaintiff is just unhappy with the content, not the completeness, of Ocwen's responses.[10]

### A. *For Reasons Previously Explained To Plaintiff, Ocwen Cannot Identify The Precise Number Of Putative Class Members Absent An Arduous Individualized Inquiry.*

Apparently dissatisfied that Ocwen could not confirm under oath that the

---

Supp. 2d 1029, 1034–35 (N.D. Cal. 2002). But even a recent decision espousing a more restrictive view of the attorneys' that may be considered for purposes of determining the amount in controversy advocates for that a rule that, at a minimum, allows for consideration of attorney's fees incurred up to the date of the decision on a motion to remand. *Reames v. AB Car Rental Services, Inc.*, --- F. Supp. 2d ---, 2012 WL 786849 at *6 (D. Or. 2012) (recommending that Ninth Circuit adopt a rule precluding consideration of attorney's fees after remand, "or at the latest, after the date a party's motion for remand is decided"). However, regardless of which view this Court takes, the amount in controversy is plainly satisfied.

[8] While plaintiff seeks injunctive relief in this case (Compl. ¶38), Ocwen does not rely on injunctive relief to establish the amount in controversy. Ocwen's offer to stipulate to as much with plaintiff was rejected. (Declaration of Ethan Preston ("Preston Decl.") ¶11.)

[9] There was only one discovery request propounded by plaintiff to which Ocwen stood on its objections because the request for admission sought a pure legal conclusion and was not the proper subject of a request for admission. (*See* Oakley Decl. Ex. 6, Ocwen's Resp. to RFA No. 11.)

[10] Plaintiff has made clear to Ocwen that, if jurisdictional discovery were to continue, plaintiff would not propound more requests, he would only continue to seek additional information in response to the requests already propounded. (Oakley Decl. ¶13.) But as explained by Ocwen to plaintiff during the meet-and-confer process, there is no further information to provide.

JOINT REPORT ON AMOUNT IN CONTROVERSY
CV12-7118-DMG-PLA

class contains 4,400 class members any more than it could confirm under oath that it contains exactly 4,730 class members, plaintiff now attacks for the first time, nearly five months after it was filed, the validity of the Lyew Declaration as a whole.[11]  That Lyew has not performed an individual review of every loan file at issue does not call into question whether she can competently testify to the number of mortgage loans that, according to Ocwen's business records, were foreclosed and subsequently had balances owing  reported to credit reporting agencies during the relevant time period.  It is precisely because Ms. Lyew has not performed an individual loan file review that she cannot attest any more precisely than that the "overwhelming majority" of that number of mortgages was foreclosed nonjudicially.[12]

California is a non-judicial foreclosure state, and accordingly the vast majority of foreclosures in California occur non-judicially.  *See, e.g.*, Foreclosure, Judicial Branch of California, http://www.courts.ca.gov/1048.htm (last visited January 31, 2013)[13]; (*see also* Dkt No. 3, Lyew Decl. ¶3).  However, Ocwen cannot assert that all of the 4,730 loans it has identified were non-judicially foreclosed because it is possible that in an isolated or rare instance, Ocwen foreclosed judicially on one or more of the loans (Dkt. No. 3, Lyew Decl. ¶3), and Ocwen would not be able to know this without individualized review of each foreclosure file—which in some cases, may not even be in Ocwen's possession if

---

[11] Notably, plaintiff did not seek remand despite what he now contends are deficiencies in the Lyew declaration, which was filed in support of removal.

[12] Plaintiff cites *Allen v. Int'l Tel. & Telegraph Corp.*, 164 F.R.D 489, 492 (D. Ariz. 1995) in support of his challenge to the Lyew Declaration, however *Allen* is inapposite.  The content of the declarations at issue in *Allen* concerned activities of persons other than the declarants, and the declarants asserted that they "came to know," or "became familiar" with facts as to third parties in part by overhearing the third parties "frequently discuss" those facts.  *Id.*  The declarations were patently based upon hearsay and indirect knowledge.  There is no similar basis upon which to believe, nor has Plaintiff reasonably identified any, that the Lyew Declaration was not made of Ms. Lyew's personal knowledge.

[13] Judicial notice may be taken of documents available on government websites. *Jarvis v. JP Morgan Chase Bank, N.A.*, No. CV-10-4184-GHK(FMOx), 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010).

it was not the foreclosing entity (*e.g.*, if Ocwen serviced the second-lien mortgage, but the foreclosure was effected by the holder of the first).  (Oakley Decl. ¶12.)

In any event, as explained above, even a bare majority of the 4,730 loans potentially at issue easily clears the jurisdictional threshold.

**B.** ***Ocwen Provided Full And Complete Responses To Plaintiff's Discovery Regarding Ocwen's "Motives" For Credit Reporting And Alleged Damages Incurred By Putative Class Members.***

Plaintiff misleadingly states that Ocwen has resisted discovery about its motive for reporting deficiencies to credit reporting agencies.  That is false.  Ocwen provided a fulsome response to plaintiff's interrogatory no. 4, specifically providing as follows:

> Ocwen does not furnish information to credit reporting agencies for the purpose of 'inconveniencing the subjects of such credit reporting.' Rather, Ocwen furnishes information to credit reporting agencies to, among other things, comply with its servicing obligations under pooling and servicing agreements and/or other contractual obligations and to help insure the integrity and completeness of the information available from credit reporting agencies. Regarding the reporting of deficiencies specifically, as Ocwen explained in its Motion to Dismiss (Dkt. No. 13), and Reply In Support of Motion to Dismiss (Dkt. No. 19), California law is clear that its anti-deficiency statutes do not eliminate the existence of a deficiency debt. *E.g.*, *Romo v. Stewart Title of California*, 35 Cal. App. 4th 1609, 1615 n.5 (1995). Therefore accurately reporting deficiency balances remaining owing after a foreclosure sale is legally permissible and is not performed for the purpose of inconveniencing anyone.

(Oakley Decl. Ex. 8, Ocwen's Resp. to Interrogatory No. 4.)  Plaintiff takes no issue with the completeness of this response.  Rather, he takes issue with Ocwen's response to request for production of documents no. 2, which sought "[a]ll documents to which Ocwen referred, or which Ocwen viewed, or created, in the

course of preparing its responses to Plaintiff's Interrogatories Nos. 2, 3, and/or 4." (Oakley Decl. Ex. 5, Ocwen's Resp. to RFP no. 2.) Ocwen's response identified all responsive documents. Plaintiff simply does not believe that Ocwen did not "refer," "view," or "create[]" in the course of preparing its response" to interrogatory no. 4 to any documents other than those listed. But as Ocwen confirmed in meet-and-confer correspondence with plaintiff, Ocwen listed all responsive documents. (Oakley Decl. Ex. 7, Letter from D. Oakley to E. Preston.)

Plaintiff also complains that "Ocwen has not provided any evidence of actual damages to the proposed class." But plaintiff provides no reason to for the Court to presume that Ocwen would possess such evidence, particularly in light of its response to RFA No. 6 representing that it has no such evidence. (Preston Decl. ¶4.)

## V. PLAINTIFF IS NOT ENTITLED TO COSTS IF THIS CASE IS REMANDED.

Plaintiff now concedes that "the record, as it stands now, does not permit Kuns to discount the possibility of jurisdiction under CAFA," but he nevertheless contends that plaintiff should recover costs from Ocwen for removing this case. To support his bid for costs, plaintiff asserts that "removal has delayed Kuns's case for five months and has required discovery . . . ." But plaintiff did not seek remand of the case when it was removed—nor does he seek it now—and it was *he* who requested jurisdictional discovery. (Dkt. No. 22.)

Moreover, while he has heretofore attempted to capitalize on ambiguities of his complaint, plaintiff has intended to seek the maximum statutory damages in this action all along. (*See* Dkt. No. 17, Pl.'s RJN Ex. 2, September 2012 Bankruptcy Schedule of Assets valuing individual claim at $14,100; Oakley Decl. Ex. 3, Pl.'s Supp. Resp. to Interrog. No. 1 (breaking down the $14,100 valuation presented to the Bankruptcy Court as comprising up to $9,100 in actual damages and up to $5,000 in statutory damages).) He submitted a claim valuation before the bankruptcy court establishing as much back on September 4, 2012, but was

never willing to say as much to this Court.[14]  (Dkt. No. 17, Pl.'s RJN Ex. 2.)  At a minimum, he has known since at least September 4, 2012 that he seeks $14,100 individually in this action and that there are nearly 4,730 putative absent class members, yet he has fervently maintained, without reason, that he has placed at controversy less than $5 million.  He now equivocates on the point, and seeks to recover costs from Ocwen because of the unreasonable positions plaintiff himself has taken throughout this proceeding.  He should not be monetarily rewarded for such actions.

Finally, plaintiff's contention that it is entitled to costs because Ocwen lacked a reasonable basis for removing the case is contradicted by plaintiff's own admission in the instant filing that $5 million is likely put in controversy by his complaint.

CONCLUSION

Based on the foregoing, Ocwen has established by a preponderance of the evidence that plaintiff has placed in controversy in this action an amount in excess of $5 million, and this Court has jurisdiction over the claim asserted in this case.

KUNS'S POSITION

## II.    Plaintiff Jeffrey Kuns's Position

As before, Plaintiff Jeffery Kuns's ("Kuns" or "Plaintiff") highest priority is to ensure that the Court's decision about its jurisdiction is final and dispositive, and that there is no possibility of a subsequent removal if the case is remanded. Ocwen

---

[14] Ocwen has never suggested and does not now suggest that plaintiff can merely stipulate to jurisdiction in this matter.  Stipulating to jurisdiction is different, however, from advantageously relying on one's own failure to plead maximum damages to argue in favor of remand with full knowledge that maximum damages are in fact being sought, and having previously essentially represented as much in a different federal court.

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

ER 58

has admitted that it was aware of California anti-deficiency laws at issue (Code of Civil Procedure sections 580b and 580d) prior to the class period. (Preston Decl. ¶5.) Also, Ocwen's "adjusted net worth" exceeds $500 million. (*Id*. ¶6.) Kuns believes that a court could conceivably award more than $5 million in statutory damages based on these facts and the Lyew declaration. Hence, ***Kuns opposes remand***. However, Kuns recognizes that the parties' opinions about the amount in controversy are not controlling. The Court has a duty to make its own independent assessment about whether it is more likely than not that there are $5 million in statutory damages at stake, and cannot simply take the parties' word for it. Conversely, though, the Court should not remand to state court without giving Plaintiff the opportunity to complete jurisdictional discovery and address Ocwen's objections to his discovery requests.

Further, it is clear that if the Court finds there is jurisdiction under CAFA, that finding must hinge on statutory damages. Ocwen cannot support $5 million in controversy by extrapolating Kuns's estimate of his *individual* damages in his amended bankruptcy schedules to every other class member. Likewise, none of the other remedies approach the requisite amount in controversy.

## A. Kuns's Summary of Proceedings to Date

Kuns filed this action in the Superior Court of California for Los Angeles County on July 17, 2012, alleging a class claim under California's Consumer Credit Reporting Agencies Act (Cal. Civ. Code §§ 1785.1-1785.36) ("CCRAA"). Ocwen removed the action to this Court asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), which provides federal jurisdiction for class actions where the amount in controversy exceeds $5 million.[15] 28 U.S.C. § 1332(d)(2). Ocwen's notice of removal was based on the CCRAA's provision for statutory damages ranging from $100 to $5,000 and a declaration that Kuns's class CCRAA claim applies to an "overwhelming majority of" 4730 mortgages reported

---

[15] *See* Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 4, 118 Stat. 4, 9-12 (codified at 28 U.S.C. § 1332(d)).

JOINT REPORT ON AMOUNT IN CONTROVERSY
CV12-7118-DMG-PLA

**ER 59**

by Ocwen. (*Cf.* Dkt. #1 *with* Cal. Civ. Code § 1785.31(c).)

On October 25, 2012, the Court ordered the parties to show cause ("OSC") why this action should not be remanded to state court. (Dkt. #20.) The OSC noted that the notice of removal was based on the assumption that "Plaintiff could potentially seek the maximum punitive damages," so the amount in controversy could exceed $5 million. (*Id*. at 2.) The OSC reasoned that

> Defendant has not provided any evidence, however, that would allow the Court to plausibly conclude that punitive damages would be in the range asserted. . . . Defendant has not shown that actual damages, a proportionate amount of punitive damages, and attorney's fees make up the remaining $4,527,000 required for jurisdiction under CAFA.

(*Id*.) The parties then submitted responses to the OSC. (Dkt. #21, 22.) Kuns argued that the record did not support $5 million in controversy because Kuns's complaint did not necessarily put the maximum statutory penalty at issue. (Dkt. #22 at 5-6.) Kuns also asked for jurisdictional discovery so he could definitively determine whether the case could meet the $5 milllion threshold. (*Id*. at 2, 7-9.)

On November 30, 2012, the Court entered an order granting jurisdictional discovery in light of the parties' responses to the OSC. The November 30, 2012 order stated in relevant part:

> Plaintiff states in his response that he cannot determine the extent of damages without discovery. (Pl.'s OSC Response at 3.) Because subject matter jurisdiction cannot be waived, if it is not "facially apparent from the complaint that the jurisdictional amount is in controversy," the court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." [*Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)] As neither party has the facts yet to determine if the threshold is met, jurisdictional discovery is required. The parties shall engage in jurisdictional discovery and shall submit a Joint Report to the Court by February 1, 2013 containing their respective positions regarding the amount in controversy.

(Dkt. #23 at 2.) Kuns has not been able to complete the necessary jurisdictional discovery. Ocwen has objected to discovery of a number of facts which are essential to determining the amount in controversy. In particular, Ocwen has resisted discovery which "determine the extent of damages." (*Id*.) Nonetheless,

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 60**

Kuns opposes remand, as the record does not permit him to discount the possibility of jurisdiction under CAFA.

### B. A Court Could Conceivably Award More than $5 Million in Statutory Damages under the CCRAA

The amount in controversy (and therefore federal jurisdiction) hinges on a statutory damages award under CCRAA section 1785.31(c). Section 1785.31(c) has two aspects relevant to the Joint Report. First, the court (rather than the jury) decides statutory damages. Cal. Civ. Code § 1785.31(c) (liability for statutory damages "in an amount that the court may allow"). The court's role in assessing statutory damages reinforces the Court's independent duty to examine its own obligation. Second, section 1781.31(c) lists certain mandatory factors the Court must consider; it is implicit that the Court can also consider other factors, especially the defendant's state of mind and/or culpability. Ocwen has resisted discovery on these factors, so Kuns's analysis here is necessarily incomplete.

#### 1. The Court Must Independently Assess Whether There Are More Than $5 Million in Statutory Damages at Stake

Kuns's opinion is that a court could conceivably decide to award more than $5 million is statutory damages based on the facts analyzed below. Kuns does not assume, however, that his opinion instantly confers jurisdiction under CAFA. Federal jurisdiction cannot "'be maintained by mere averment[.]'" *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The parties' opinions are not sufficient to sustain federal jurisdiction (especially where the presiding court has responsibility for assessing statutory damages under section 1781.31(c).)

> [F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.

*Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1202 (2011).[16]

---

[16] "[F]ederal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 (9th Cir. 2012) (citation, punctuation omitted). *See also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (federal

- 18 -

Certainly, the parties cannot stipulate to federal jurisdiction. "[P]arties cannot, by their consent, confer jurisdiction upon a federal court in excess of that provided by Article III of the United States Constitution." *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 757 (9th Cir. 1999).[17] "[A] defect in jurisdiction [cannot] be avoided by waiver or stipulation to submit to federal jurisdiction." *Singer*, 116 F.3d at 376. Likewise, Kuns acknowledges that even if the parties stipulated that a court could award more than $5 million in statutory damages, it would not alleviate the Court from independently assessing its jurisdiction:

> [S]ince a defect in subject matter jurisdiction cannot be stipulated to or waived, attempting to force the plaintiff to enter a stipulation regarding the potential amount of damages would serve no effect in determining the actual amount in controversy at the time of removal.

*Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998). *See Hill v. Hill-Love*, No. 09-2713, 2011 WL 2038511, *2 (E.D. Cal. May 23, 2011) ("'stipulated-to' amount in controversy is not the operative amount in controversy[;]" citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996) for proposition that the amount in controversy claimed by the plaintiffs only "controls if the claim is apparently made in good faith")). While Kuns presents his opinion here, even judicial admissions are not necessarily dispositive. Hence, the "plausibility" of the plaintiff's "formal judicial admission" as to the amount in controversy "was facially apparent from the complaint" which alleged facts plainly supporting punitive damages. *Singer*, 116 F.3d at 377. Similarly, a settlement demand might be "inflated and not an honest assessment of

---

[17] court has "an independent obligation to examine [its] own jurisdiction"). "[F]ederal jurisdiction cannot be created by contract." *ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality of Montana*, 213 F.3d 1108, 1117 n. 11 (9th Cir. 2000). "When jurisdiction may not exist, however, the court must raise the issue even if the parties are willing to stipulate to federal jurisdiction." *Washington Local Lodge No. 104 of Int'l Bhd. of Boilermakers, AFL-CIO v. Int' Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers*, AFL-CIO, 621 F.2d 1032, 1033 (9th Cir. 1980). "[E]ven if no objection is made to removal or both sides stipulate to federal jurisdiction, the district court has an independent obligation to examine whether removal jurisdiction exists." *Wong v. State Farm Ins. Cos.*, No. 98-0513, 1998 WL 78125, *1 (N.D. Cal. Feb. 12, 1998) (citation, punctuation omitted).

1    damages." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).

2        Kuns does not take federal jurisdiction for granted, and asks the Court to

3    carefully examine the evidence and make its own independent assessment about

4    the probable amount in controversy. Again, Kuns's primary interest is in a final,

5    dispositive decision about federal jurisdiction. A ruling that there was no federal

6    jurisdiction after all late in the case (from an appellate court, for instance) would

7    harm that interest even worse than if the case were remanded and subsequently

8    removed to federal court again.

9          **2.    Kuns's Opinion Is that a Court Could Conceivably Award
              Statutory Damages in Excess of $5 Million, But Discovery Is
10            Incomplete**

11       Kuns's opinion is that a court could conceivably decide the facts in evidence

     warrant $5 million in statutory damages. Section 1785.31(c) controls statutory
12
     damages under the CCRAA:
13
14                Notwithstanding any other provision of this section, any person who
                  willfully violates any requirement imposed under this title may be
15                liable for punitive damages in the case of a class action, in an amount
                  that the court may allow. In determining the amount of award in any
16                class action, the court shall consider among relevant factors the
                  amount of any actual damages awarded, the frequency of the
17                violations, the resources of the violator and the number of persons
                  adversely affected.
18   Cal. Civ. Code § 1785.31(c). The court must consider "any actual damages

19   awarded, the frequency of the violations, the resources of the violator and the

20   number of persons adversely affected." *Id*. Further, it would be appropriate for the

21   Court to consider other evidence of culpability such as Ocwen's state of mind.

22   Kuns has sought discovery on all these factors, but Ocwen has objected to much of

23   this discovery. Kuns's opinion about the possible statutory damages in this case is

24   based on the facts gleaned from the Lyew declaration, Ocwen's admission it knew

25   about Code of Civil Procedure sections 580b and 580d before the class period, and

26   Ocwen's net worth (in excess of $500 million). (Preston Decl. ¶¶5-6.) Ocwen has

27   objected to Kuns's discovery on the remaining factors.

28       This resistance puts Kuns in a difficult position: again, his first priority is to

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

avoid being remanded while there is any possibility of a subsequent removal later on. (Further, Kuns cannot simply stipulate his way out of this situation.) Where Kuns did not seek a specific amount of damages in his complaint, Ocwen "bears the burden of actually proving the facts to support jurisdiction." *Gaus*, 980 F.2d at 567 (9th Cir. 1992). When "a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of [proving] by a preponderance of the evidence[] that the amount in controversy exceeds [the jurisdictional threshold]." *Sanchez*, 102 F.3d 398, 404 (9th Cir. 1996) (quoted by *Abrego Abrego*, 443 F.3d at 683). This means that "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Id*. If the Court is not able to conclude on the basis of the Joint Report that the amount in controversy does not exceed $5 million, it should at least allow the parties to complete jurisdictional discovery.

### a. Ocwen Has Not Definitively Identified the Frequency of Violations or the Number of Persons Adversely Affected with Competant Evidence

Ocwen has provided some information about the "frequency of the violations" and "number of persons adversely affected" in the Lyew declaration. As the Court noted, Ocwen claimed "the class consists of people receiving an 'overwhelming majority of' 4730 loans" during the relevant time period. (Dkt. #23 at 2 (quoting Lyew Decl. ¶3.))

The problem with the Lyew declaration is that the term "overwhelming majority" is not precise. A "majority" means anything above 50 percent (2,228 here), and the adjective "overwhelming" does not supply any more precision. Plaintiff sought to avoid this uncertainty by serving a request for admission on Ocwen that there are 4,400 class members. Ocwen objected:

> Ocwen cannot ascertain whether any of the properties associated with the 4,730 loans it foreclosed between July 1, 2012 and June 30, 2012 may have been foreclosed judicially without performing a manual loan-by-loan analysis, which is not only required for purposes of responding to this RFA but is also inconsistent with class treatment in

general.

(Preston Decl. ¶7.) Kuns needs to ascertain the size of the class because it necessarily affects both the number of class members entitled to statutory damages, as well as the amount each class member may be awarded. *Cf.* Cal. Civ. Code § 1785.31(c). The difference between 2,228 class members (and 4,370 class members seriously affects the calculation of the amount in controversy.[18]

More pointedly, it does not appear Lyew's testimony about the number of class members was competent. Ocwen must support its "'allegations of jurisdictional facts'" with "'**competent proof**.'" *Gaus*, 980 F.2d 564, 567 (9th Cir. 1992) (quoting *McNutt*, 298 U.S. at 189 (1936), emphasis added). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

> It is not enough that an affiant assert that he or she has personal knowledge of the facts recited; the facts themselves must show that they are matters known to the affiant personally and are not based upon hearsay or upon "information and belief."

*Allen v. Int'l Tel. & Telegraph Corp.*, 164 F.R.D. 489, 492 (D. Ariz. 1995). Lyew plainly has not actually reviewed the mortgages at issue, because Ocwen has said it is too burdensome to do so. Further, the Lyew declaration does not explain how else Ocwen could know that the "overwhelming majority" of these 4,370 mortgages are at issue. Ocwen's arguments for CAFA jurisdiction depend heavily on there being "nearly" 4,370 class members, but the "evidence" supporting this figure is not competent. Nonetheless, assuming there are 2,228 class members, a court could conceivably award more than $5 million in statutory damages.

### b. Ocwen Provided No Evidence of Actual Damages

Ocwen has not provided any evidence of actual damages to the proposed class. (Preston Decl. ¶4.) As set forth below, Ocwen cannot extrapolate Kuns's individual damages (or even the estimate in his bankruptcy schedules) to 2,228

---

[18] For instance, if the number of class members is only 2,228, then each member needs to have $2,244 in controversy to reach $5 million, while if the number was 4,370, the minimum individual amount in controversy would only be $1,114.

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 65**

class members (or 4,370 class members, for that matter).

**c.    Ocwen Has Objected to Discovery About its Motive for the Credit-Reporting Alleged in the Complaint**

Kuns has sought discovery as to Ocwen's state of mind for credit-reporting mortgage deficiencies on which California bars personal liability. While this is not a mandatory factor under section 1785.31(c), Kuns contends that Ocwen's culpability is one of the most important factors in assessing statutory damages under the CCRAA. Kuns alleges that Ocwen "willfully violated CCRAA section 1785.25," but this is simply a prerequisite for statutory damages.

> In civil cases, the word "willful" . . . does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally.

*Baker v. American Horticulture Supply, Inc.*, 186 Cal.App.4th 1059, 1074-75 (2010) (citation, punctuation omitted). Whether a defendant's actions are willful under this standard is independent of whether his conduct is culpable, malicious, blame-worthy, etc. Given the facts here (e.g., Ocwen's admission that it knew about the California anti-deficiency laws at issue), it is still Kuns's opinion is that a court could award more than $5 million in statutory damages. (Preston Decl. ¶5.) Hence, there is a risk of subsequent removal if the Court remands.

That said, Kuns recognizes that the Court has already held that Kuns's allegation of willful conduct did not automatically place maximum statutory damages in controversy. (Pl.'s Compl. ¶36. *Cf.* Dkt. #20 at 2 ("Defendant has not provided any evidence, however, that would allow the Court to plausibly conclude that punitive damages would [reach the maximum provided under section 1785.31(c)]".) Indeed, the Court's approach is consistent with other authorities. In *Solomon v. Mainline Info. Sys., Inc.*, No. 11-07388, 2012 WL 137568 (C.D. Cal. Jan. 17, 2012), the Court refused to use "statutory maximum penalty [under Cal. Lab. Code § 226(e)] when calculating the amount in controversy." *Id.* at *3.[19] The

---

[19]    Ocwen's efforts to distinguish *Solomon* are unavailing. Labor Code section 226(e) provides for actual damages *or* a daily statutory penalty, capped at $4,000. Cal. Lab. Code § 226(e). As here, the defendant did not produce

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 66**

assumption of "maximum statutory penalty for purposes of calculating an amount in controversy" is "appropriately limited to situations where plaintiff has expressly sought the maximum statutory amount." *Tompkins v. Basic Research LLC*, No. 08-244, 2008 WL 1808316, *3 (E.D. Cal. Apr. 22, 2008).

Ocwen's reliance on *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199 (E.D. Cal. 2008) and *Saulic v. Symantec Corp.*, No. 07-610, 2007 WL 5074883 (C.D. Cal. Dec. 26, 2007) are misplaced. In *Korn*, the plaintiff's complaint had an *ad damnum* clause which "explicitly pled the statutory maximum" civil penality. *Id*. at 1205-06. Ocwen's quotation of *Saulic* is especially misleading, because in context is clear that the Court was characterizing the defendants' position, not stating its own position. *Cf. Saulic*, 2007 WL 5074883, *3-4 (reprising defendant's opposition to motion for remand). In actuality, Saulic held that "the amount in controversy per class member [was] not subject to debate" only because the "plaintiff chose to specify $1,000 as the recovery demanded." *Id*. at *7. The Court and parties do not have the luxury of a specific *ad damnum* clause here. (*Cf*. Pl.'s Compl. ¶38.) As set forth below, Kuns's amended bankruptcy schedule does not serve as a demand for $5,000 in statutory damages for each class member. Ocwen has taken the statement that Kuns could seek "up to $5,000[]" in statutory damages in his discovery responses fundamentally out of context: this was a disclosure to the bankruptcy trustee, not a demand for damages in his complaint. (Preston Decl. ¶15.)

Ocwen has resisted discovery about its motive for reporting the deficiencies to credit reporting agencies. (*Id*. ¶¶8-9, 14.) If the Court concludes the record is insufficient to determine whether there is $5 million in statutory damages at stake, it should permit Kuns to complete discovery.

---

evidence of actual damages and the Court refused to assume the maximum statutory penalty. Solomon, 2012 WL 137568, at *3. Likewise, *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237 (C.D. Cal. 2005) held that civil penalties can be counted towards the amount in controversy; it said nothing relevant here about actually calculating those penalties.

JOINT REPORT ON AMOUNT IN CONTROVERSY
CV12-7118-DMG-PLA

## C. The Court's Jurisdiction Hinges on Statutory Damages

A statutory damages award under section 1785.31(c) is the only realistic basis for an amount in controversy exceeding $5 million.

### 1. Kuns's Amended Bankruptcy Schedules Do Not Provide Evidence That Actual Damages Will Exceed $5 Million

Again, Ocwen has not produced any evidence that actual damages will approach $5 million. (*Id.* ¶4.) The $14,100 estimate in Kuns's amended bankruptcy schedules does not support $5 million in controversy. First, the bankruptcy schedules have a completely different context and purpose than a complaint's *ad damnum* clause. Second, Ocwen cannot simply extrapolate Kuns's individual damages out to every class member, simply because Kuns alleged he was "typical" of the class.

Ocwen's argument relies on information and discovery derived from Kuns's amended bankruptcy schedules. The schedules have a completely different function than a complaint's *ad damnum* clause. The "proper role" of a debtor's bankruptcy schedules is to aid

> the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption . . .

*Schwab v. Reilly*, 130 S.Ct. 2652, 2663 (2010). Here, Kuns's amended schedule disclosed to the trustee that Kuns's good faith assessment that his recovery on his individual CCRAA would be completely exempt given the residual exemption available under California Code of Civil Procedure section 703.140(b)(5) (i.e., $14,100). It is proper to estimate a claim of uncertain value "for exemption purposes only" in a bankruptcy schedule, as long as the trustee is not misled or "deprived of sufficient information so as to preclude" proper investigation of the claim. *In re Adair*, 253 B.R. 85, 89 (9th Cir. BAP 2000).[20] *By valuing his CCRAA claim as the exact amount as the residual exemption, Kuns encouraged the*

---

[20] *See also In re Johnson*, 361 B.R. 903, 909 (Bankr. D. Mont. 2007) (bankruptcy schedules are sufficient if they do "not deprive[] [trustee] of sufficient information" to perform investigation of asset).

JOINT REPORT ON AMOUNT IN CONTROVERSY
CV12-7118-DMG-PLA

ER 68

*trustee to independently evaluate this assessment.* As Kuns explained in his discovery responses, this was expressly *not* an allegation that every class member has a claim for $14,100:

> Plaintiff reiterates that [the] estimate [of the value of his individual CCRAA claim in his amended bankruptcy schedules] only means that he does not anticipate his individual damages on the claims alleged in the complaint (no matter how such damages are composed) would exceed $14,100 and so his claim is entirely exempt from the bankruptcy estate.

(Preston Decl. ¶15.) In context, the $14,100 estimate was really the equivalent of saying: "Trustee, I think this claim worth less than my remaining exemption, but go ahead and check for yourself." Tompkins is instructive: in that case, the plaintiff alleged "that each individual class member's claim is 'less than $75,000'" which the court held were did not equate to an allegation that each class members' claim was $74,999:

> [A]lleging that a claim is worth "less than $75,000" is fundamentally different from alleging that a claim is worth $74,999. There are also 74,998 other figures that would satisfy plaintiff's allegation, and there is no logical reason why the figure arbitrarily chosen by defendants, at the high end of that range, should control the jurisdictional inquiry.

*Tompkins*, 2008 WL 1808316, *3. The same result applies here.

Moreover, Kuns's allegation that he is "typical" of other class members does not support the notion that all class members claim the same damages. Kuns's individual damages include emotional distress, declined credit, bankruptcy fees, credit monitoring fees, and filing fees. (*Cf.* Preston Decl. ¶15 *with* Cal. Civ. Code § 1785.31(a)(1) ("actual damages" include "court costs [and] pain and suffering").) Class members do not have to share these damages for Kuns to be typical. Typicality under Rule 23(a)(3) does not require

> that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.

*Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). More specifically, typicality does not require that the "physical, emotional, or monetary damages sustained by Plaintiffs [be] need not be identical or even similar, so long as those

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 69**

differences do not negatively affect the viability of the legal theories under which they proceed." *In re Paxil Litig.*, 218 F.R.D. 242, 246 (C.D. Cal. 2003). In short, "typicality does not require uniformity of damages[.]" *Welling v. Alexy*, 155 F.R.D. 654, 662 (N.D. Cal. 1994) (citation, punctuation omitted).

Ocwen's authorities are distinguishable. *Shubert v. Manheim Auctions, Inc.*, No. 09-3365, 2010 WL 624175, *5 (E.D. Pa. Feb. 18, 2010) based its ruling that the defendant did not prove a sufficient number of class members to sustain removal jurisdiction on the assessment that the "plaintiff's own compensatory damages provide a reasonable estimate of the class average," where the plaintiff expressly alleged that other class members "suffer[ed] similar damages." Kuns does not allege that all class members suffered the same damages, and it is clear not every class member will have incurred, e.g., court costs and bankruptcy fees. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) ("differences in the amount of damages is insufficient to defeat class certification"); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (while damages "could differ from participant to participant, individual damages should not defeat typicality"). In *Waller v. Hewlett-Packard Co.*, No. 11-0454, 2011 WL 8601207 (S.D. Cal. May 10, 2011), the court's calculation was based not only on the class plaintiff's individual damages, but "on the fact that Costco sold a certain [confidential] number of SimpleSave units in California [and] that the SimpleSave unit retails for $79.99." *Id.* at *3. While the multiplier in Waller was confidential, it is significant that the number of units *shipped* to California was 87,000, which would result in over $6 million in damages. *Id.* at *2. While *Waller* rejected using the number of shipped units as a multipler, it tells us that the magnitude of the sales was such *Waller*'s use of the plaintiff's individual damages does not tell us much without access to the number of units actually shipped. *Id.* at *3.

### 2. The Pre-Removal Attorneys Fees Do Not Approach $5 Million

There no evidence that a claim for attorneys' fees will meet the required amount in controversy. It is true that Plaintiffs' counsel have incurred a significant amount of attorneys' fees *after Ocwen removed the case*. In determining its jurisdiction, however, the Court can properly assess "summary-judgment-type evidence *relevant to the amount in controversy **at the time of removal**.*" *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citations, punctuation omitted, emphasis added). Hence, it is improper to count attorneys' fees incurred in "post-removal events" towards the amount in controversy. *Conrad*, 994 F. Supp. at 1200 ("the amount in controversy must be determined as of the date of removal").[21] While a few courts in the Ninth Circuit have gone the other way, the emerging majority supports Kuns's position on this point.[22] The attorneys' fees incurred prior to removal are a small fraction of the $99,000 figure cited in Ocwen's statement, and Ocwen has not proved that the pre-removal portion of the attorneys' fees will carry the amount in controversy across the jurisdictional threshold. (*Cf.* Preston Decl. ¶15.)

### 3. The Value of Injunctive Relief Will Not Approach $5

---

[21]  *See also Pegram v. Jamgotchian*, No. 12-50, 2012 WL 3929789, *7 (D. Nev. Sept. 7, 2012) ("only those attorneys' fees incurred at the time of removal are relevant to the amount in controversy here"); *Dukes v. Twin City Fire Ins. Co.*, No. 09-2197, 2010 WL 94109, *2 (D. Ariz. Jan. 6, 2010) ("the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal"); *Green v. Party City Corp.*, No. 01-09681, 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002) (calculating attorneys' fees on the basis "only [of] work done by plaintiff's counsel prior to removal"); *Faulkner v. Astro-Med, Inc.*, No. 99-2562, 1999 WL 820198, *4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only [attorneys'] fees that can be considered [for purposes of establishing amount in controversy] are those incurred as of the date of removal").

[22]  *See MIC Philberts Investments v. Am. Cas. Co. of Reading, Pa.*, No. 12-0131, 2012 WL 2118239, *5 (E.D.Cal. June 11, 2012) ("nascent consensus may be emerging among the district courts of this Circuit, finding that attorneys' fees not yet incurred may not be included in the amount in controversy calculation"); *Hernandez v. Towne Park, Ltd.*, No. 12-02972, 2012 WL 2373372, *19 (C.D. Cal. June 22, 2012); *Burk v. Medical Savings Ins. Co.*, 348 F. Supp. 2d 1063, 1068-69 (D.Ariz. 2004).

Million

Injunctive relief can also be counted towards the amount in controversy. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Ocwen has refused to provide documents which relate to its assertion that Kuns's proposed injunctive relief would cause it to incur expenses. (Preston Decl. ¶¶11-12, 14.) In Ocwen's discussion of its objections to this discovery, however, it is clear that the proposed injunctive relief will not tip the amount in controversy towards federal jurisdiction:

> [T]he simplest alteration to Ocwen's business process to comply with an injunction of any kind would necessarily involve outside expense to Ocwen, and the mere discussion of any ordered injunction with Ocwen's counsel in the instant matter would result in expense to Ocwen.

(*Id*. ¶14.)[23] Whether or not Ocwen's objections are proper, the parties' communications evidence that it will not be injunctive relief that tip the scale in favor of jurisdiction under CAFA.

**D.    If the Court Nonetheless Remands, It Should Award Kuns Costs**

Kuns recognizes the Court will to make its own independent assessment of the amount in controversy, notwithstanding the parties' opinions about the statutory damages. The Court should permit Kuns to complete discovery if it doubts the amount in controversy exceeds the jurisdictional threshold. If, however, the Court finds that it is certain as a matter of law that the amount in controversy does not exceed $5 million, it should award costs to Plaintiff under 28 U.S.C. § 1447(c) when it remands the case.

Ocwen's initial removal papers were based on the assumption that the Court could calculate the amount in controversy by just multiplying the number of class members by the maximum statutory damages, but there was no basis for this assumption where Kuns's complaint did not allege the maximum statutory damages. Cf. *Solomon*, 2012 WL 137568, *3; *Tompkins*, 2008 WL 1808316, *3.

---

[23] Plaintiff declined Ocwen's offer to stipulate not to rely on the cost of injunctive relief for the purpose of establishing jurisdiction. (Preston Decl. ¶11.) *See Conrad Assocs.*, 994 F. Supp. at 1199 ("defect in subject matter jurisdiction cannot be stipulated to or waived," so stipulation or failure to stipulate to "potential amount of damages" is immaterial).

This is sufficient basis for an attorneys' fee award under section 1447(c); such an award is permitted "even if defendant's removal was 'fairly supportable,' but wrong as a matter of law." *Arden Mgmt., LLC v. Abdur-Raman*, No. 12-00898, 2012 WL 589659, *3 (C.D. Cal. Feb. 22, 2012) (quoting *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1106 n. 6 (9th Cir. 2000)).[24]

An award of costs would be especially appropriate here, where removal has delayed Kuns's case for five months and has required discovery and extensive brief. Further, Ocwen has resisted discovery of evidence that *it needed to present* to justify the Court's jurisdiction over this case. Awards under section 1447(c) serve to "deter removals [that] prolong[] litigation and impos[e] costs on the opposing party." *Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1156 (9th Cir. 2012). Given the facts here, it would be equitable for the Court to award costs if it decides to remand.

Dated:  February 1, 2013          ELIZABETH L. MCKEEN
                                  DANIELLE N. OAKLEY
                                  EDGAR H. MARTINEZ
                                  O'MELVENY & MYERS LLP


                         By:      _____/s/ Danielle N. Oakley_____
                                  Danielle N. Oakley
                                  Attorneys for Defendants
                                  Ocwen Loan Servicing, LLC

---

[24] *See also Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 864 (9th Cir. 2003) (lack of authority supporting specific argument for removal sufficient basis for section 1447(c) award); *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 448 (9th Cir. 1992) (award of costs under section 1447(c) does not require bad faith).

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

1

2   Dated: February 1, 2013  By: _s/Ethan Preston_
David C. Parisi (162248)
3   Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
4   15233 Valleyheart Drive
Sherman Oaks, California 91403
5   (818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
6   dcparisi@parisihavens.com
shavens@parisihavens.com

7   Ethan Preston (263295)
PRESTON LAW OFFICES
8   8245 North 85th Way
Scottsdale, Arizona 85258
9   (480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
10  ep@eplaw.us

11  Jonathan Cothran (259210)
LAW OFFICES OF JONATHAN P. COTHRAN
12  2230 West Chapman Avenue, Suite 228
Orange, California 92868
13  (714) 497-3024
(888) 958-3028
14  jpcothranlaw@gmail.com

15  *Attorneys for Plaintiff Jeffery Kuns,*
*on his own behalf, and behalf of all*
16  *others similarly situated*

17

18

19

20

21

22

23

24

25

26

27

28

- 31 -

JOINT REPORT ON AMOUNT IN
CONTROVERSY
CV12-7118-DMG-PLA

**ER 74**

1    ATTESTATION:

2        I hereby certify that all other signatories listed, and on whose behalf this

3    Stipulation is submitted, concur in its content and have authorized the filing.

4

5        Dated: February 1, 2013

6                                              ELIZABETH L. MCKEEN
                                               DANIELLE N. OAKLEY
7                                              EDGAR H. MARTINEZ
                                               O'MELVENY & MYERS LLP
8

9                                              By:    _____/s/ Danielle N. Oakley_____
                                                         Danielle N. Oakley
10                                                     Attorneys for Defendants
                                                       Ocwen Loan Servicing, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 32 -

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
LAW OFFICES OF JONATHAN P. COTHRAN
2230 West Chapman Avenue, Suite 228
Orange, California 92868
(714) 497-3024
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns, on his own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY KUNS, an individual, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, a Delaware limited liability companies, and DOES 1-100, inclusive, <br><br> Defendants. | No. 12-CV-7118 (DMG) (PLAx) <br><br> District Judge Dolly M. Gee <br><br> Magistrate Judge Paul L. Abrams <br><br> **DECLARATION OF ETHAN PRESTON IN SUPPORT OF PARTIES' JOINT REPORT ON THE AMOUNT IN CONTROVERSY** |

1. My name is Ethan Preston. I am an attorney at law licensed to practice before all of the courts of the State of California. I am counsel of record for Plaintiff Jeffrey Kuns, and have personal knowledge of all of the facts set forth in this declaration.

**ER 76**

2.    **Ocwen's Undisputed Discovery Responses:** On November 30, 2012, the Court entered an order granting jurisdictional discovery. Kuns received Ocwens' responses to his first set of discovery on January 7, 2013. True and correct excerpts of the relevant portions of Ocwen's responses to Kuns's first set of requests for admission ("RTAs"), first set of RPDs, and first set of Interrogatories are attached as Exhibits A through C, respectively.

3.    Kuns received Ocwen's responses to his subsequent discovery on January 22, 2013. True and correct excerpts of the relevant portions of Ocwen's responses to Kuns's second set of RTAs and its responses to Kuns's third set of RPDs are attached as Exhibits D and E, respectively.

4.    Ocwen's response to RTA No. 6 states that "plaintiff has alleged that the absent members of the putative class identified in plaintiff's Complaint incurred actual damages, but Ocwen does not possess any evidence that would support his allegation." (Ex. A at 8.)

5.    Ocwen's responses to RTAs Nos. 7 and 8 "admit[] that, by July 1, 2010, [Ocwen] knew of California Code of Civil Procedure Section 580b" and "580d." (*Id.* at 9.)

6.    On January 30, 2013, Ocwen supplemented its response to Kuns's Interrogatory No. 1. In its supplemental response, Ocwen indicated that its "adjusted net worth" is over $500 million. Ocwen has labelled this supplemental response as confidential and it is not attached to this Declaration.

7.    **Ocwen's Disputed Discovery Responses:** RTA No. 4 asks Ocwen to admit that there are at least 4,400 members of the class alleged in Kuns complaint. Specifically, RTA No. 4 reads:

> Between July 1, 2010 and June 30, 2012, Ocwen reported to credit reporting agencies that at least 4,400 persons owed the deficiency which arose when the proceeds from the sale of a California residence after Ocwen foreclosed on such residence non-judicially were less than the amount which Ocwen contends was owed on the mortgage secured by such residence.

(*Cf*. Ex. A at 5.) Ocwen's response to RTA No. 4 objected in and answered relevant part:

> Ocwen cannot ascertain whether any of the properties associated with the 4,730 loans it foreclosed between July 1, 2012 and June 30, 2012 may have been foreclosed judicially without performing a manual loan-by-loan analysis, which is not only required for purposes of responding to this RFA but is also inconsistent with class treatment in general. . . .
> Ocwen admits it reported a positive balance on the loan accounts to the three major credit bureaus following the foreclosure sale of the properties securing approximately 4,730 loans that were foreclosed between July 1, 2012 and June 30, 2012, and that the overwhelming majority of those properties were foreclosed nonjudicially. Except as specifically admitted, Ocwen denies this request in its entirety.

(*Id*.)

8.    Ocwen denied RTAs Nos. 9 and 10, which asked for an admission that Ocwen knew its credit-reporting would inconvenience class members and that Ocwen had no other reason for its credit-reporting. Interrogatory No. 4 asked Ocwen to "[i]dentify all facts which support" its responses to RTAs Nos. 9 and 10. Ocwen's response to Interrogatory No. 4 stated in relevant part that:

> Ocwen does not furnish information to credit reporting agencies for the purpose of "inconveniencing the subjects of such credit reporting." Rather, Ocwen furnishes information to credit reporting agencies to, among other things, comply with its servicing obligations under pooling and servicing agreements and/or other contractual obligations and to help insure the integrity and completeness of the information available from credit reporting agencies.

(Ex. C at 8.) RPD No. 2 asks for "documents to which Ocwen referred, or which Ocwen viewed, or created, in the course of preparing its responses to [Kuns's] Interrogatories Nos. 2, 3, and/or 4." Ocwen's response to RPD No. 2 refers to a variety of documents, but does not agree to produce any of the "pooling and servicing agreements" referenced in its response to Interrogatory No. 4. (*See* Ex. B at 5-6.)

9.    RPDs No. 6 and 7 seek "documents concerning California Code of Civil Procedure section[s] 580b's [and 580d's] effect on the mortgage deficiencies." After making voluminous objections, Ocwen's response asserted

**ER 78**

that "no non-privileged responsive documents exist." (Ex. B at 10.)

10.     RTA No. 11 sought an admission that "Ocwen contends that no damages can be awarded under California Civil Code section 1785.31 (c) without evidence that class members suffered actual damages." Ocwen's response to RTA No. 11 objected on the basis that it called for a legal conclusion. (*See* Ex. D at 3.)

11.     Kuns's third set of RTAs (Nos. 12 to 21) asked Ocwen to admit that it "would not incur any expense" if it complied with the terms of injunctive relief which Kuns seeks in his complaint. On or about January 8, 2013, Ocwen proposed a stipulation whereby Ocwen would not "put a dollar value on the cost of complying with injunctive relief in [its] briefing regarding the amount in controversy in exchange for" Kuns withdrawing his third set of RTAs. After consideration, Kuns declined that stipulation. Ocwen then denied RTAs Nos. 12 to 21.

12.     Kuns's third set of RPDs (No. 10) asked Ocwen to produce

> All documents to which Ocwen referred, or which Ocwen viewed or created, in the course of preparing its responses to Plaintiffs Requests for Admission Nos. 12 to 21, or which tend to support its answers to Plaintiffs Requests for Admission Nos. 12 to 21.

(Ex. E at 4.) Ocwen objected that RPD No. 10 was "overbroad and unduly burdensome to the extent it purports to require Ocwen to produce 'all' documents which 'support' its responses to [RTAs Nos. 12 to 21]," so that Ocwen would only respond by "identifying the non-privileged documents to which it referred, viewed, or created in the course of preparing its responses to [RTAs Nos. 12 to 21]." (*Id.*) Having thereby unilaterally limited the scope of responsive documents, Ocwen asserted that "no non-privileged responsive documents exist." (*Id.*)

13.     **The Parties' Correspondence:** Pursuant to Local Rule 37, Kuns sent a letter outlining his various disputes with Ocwen's discovery responses on January 24, 2013. A true and correct copy of the January 24 letter is attached as Exhibit F. In particular, Kuns's January 24 letter clarified that RTA No. 11 sought

**ER 79**

an admission that "Ocwen contends that *the class alleged in Plaintiff's complaint* cannot be awarded statutory damages . . . without evidence that *those class members* suffered actual damages." (Ex. F at 2 (emphasis added).)

14.     Ocwen provided its response to Kuns's letter on January 28, 2013. A true and correct copy of the January 28 response is attached as Exhibit G. Ocwen agreed to address a couple defective responses, but otherwise persisted with its objections. In particular, the January 28 letter contends that Ocwen's response to RTAs Nos. 4 and 11 are adequate. (*See* Ex. G at 1-3.) The January 28 letter contends that Ocwen does not have any documents responsive to RPD No. 2 (despite Interrogatory No. 4's plain reference to "pooling and servicing agreements.") (*Id.* at 3.) The January 28 letter contends that the documents responsive to RPDs No. 6 and 7 which have been located are all privileged. (*Id.* at 3-4.) With respect to RPD No. 10, Ocwen stated:

> [T]he simplest alteration to Ocwen's business process to comply with an injunction of any kind would necessarily involve outside expense to Ocwen, and the mere discussion of any ordered injunction with Ocwen's counsel in the instant matter would result in expense to Ocwen. To require Ocwen to search for and produce all documents that support to any extent the basic and undeniable concept that compliance with injunctive relief would cost Ocwen more than $0 is unduly burdensome

(*Id.* at 4.)

15.     **Kuns's Discovery Responses:** On January 25, 2013, Kuns supplemented his responses to Ocwen's Interrogatories. A true and correct excerpt of the relevant portions of Kuns's supplemental responses to Ocwen's Interrogatories is attached as Exhibit H. Ocwen's Interrogatory No. 2 asked Kuns to "[i]dentify all facts and documents relating" to the $14,100 estimated value of his CCRAA claim in his amended bankruptcy schedule.  In his supplemental response, Kuns stated in relevant part:

> Plaintiff's good faith estimate of his damages (based upon the foregoing facts) does not exceed $14,100. This number was calculated by determining the total value of exempt property which Plaintiff

could claim under California Code of Civil Procedure section 703.140(b)(5). This estimate includes up to $9,100.00 in actual damages and up to $5,000.00 in potential punitive damages pursuant to Civil Code section 1785.31. Plaintiff reiterates that this estimate only means that he does not anticipate his individual damages on the claims alleged in the complaint (no matter how such damages are composed) would exceed $14,100 and so his claim is entirely exempt from the bankruptcy estate.

(Ex. H at 4-5.) Also, Ocwen's Interrogatory No. 3 asked Kuns to state his attorneys' "hourly rates" and the "total number of hours spent, to date, by each such attorney in connection with this matter." Consistent with Interrogatory's terms, Kuns's response provided all attorney time through January 9, 2013. The majority of lodestar stated in the response stems from my time (145.7 hours at $450.00 per hour through January 9, 2013). My time prior to removal on August 17, 2012, however, totals only 34.6 hours. I have reviewed Jonathan Cothran's time records, and his time prior to August 17, 2012 totals only 11.9 hours. Based on the foregoing, our lodestar in this case prior to August 17, 2012 totals $20,925. The total lodestar for the Parisi & Havens law firm is $23,260. I believe that the Parisi & Havens law firm performed *no* work on this case prior to August 17, 2012. Even assuming that all of Parisi & Havens LLP's work was performed *before* removal (which is not the case), the total pre-removal lodestar of all of Kuns's attorneys in this case would be $44,185.

16. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: February 1, 2013          By: s/Ethan Preston
                                      Ethan Preston

---

Preston Declaration                                    No. 12-CV-7118 (DMG) (PLAx)

6

**ER 81**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

ELIZABETH L. MCKEEN (S.B. #216690)
emckeen@omm.com
DANIELLE N. OAKLEY (S.B. #246295)
doakley@omm.com
EDGAR H. MARTINEZ (S.B. #255503)
emartinez@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660-6429
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Defendant
Ocwen Loan Servicing, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. CV12-7118-DMG-PLA<br><br>**DEFENDANT OCWEN LOAN SERVICING, LLC'S RESPONSES TO PLAINTIFF JEFFREY KUNS'S FIRST SET OF REQUESTS FOR ADMISSION** |

PROPOUNDING PARTY:     PLAINTIFF JEFFREY KUNS

RESPONDING PARTY:     DEFENDANT OCWEN LOAN SERVICING, LLC

SET NO:     ONE

RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION
CV12-7118-DMG

1    **REQUEST FOR ADMISSION NO. 4:**

2         Between July 1, 2010 and June 30, 2012, Ocwen reported to credit reporting

3    agencies that at least 4,400 persons owed the deficiency which arose when the

4    proceeds from the sale of a California residence after Ocwen foreclosed on such

5    residence non-judicially were less than the amount which Ocwen contends was

6    owed on the mortgage secured by such residence.

7    **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

8         Ocwen objects to this request on the grounds that the request is overbroad

9    and unduly burdensome. Ocwen cannot ascertain whether any of the properties

10   associated with the 4,730 loans it foreclosed between July 1, 2012 and June 30,

11   2012 may have been foreclosed judicially without performing a manual loan-by-

12   loan analysis, which is not only required for purposes of responding to this RFA

13   but is also inconsistent with class treatment in general. (Dkt. No. 3, Lyew Decl. at

14   ¶3.) Ocwen further objects to this request as vague and ambiguous. Subject to the

15   foregoing specific objections and the general objections asserted above, and to the

16   extent Ocwen understands the request, Ocwen responds as follows:

17        Ocwen admits it reported a positive balance on the loan accounts to the three

18   major credit bureaus following the foreclosure sale of the properties securing

19   approximately 4,730 loans that were foreclosed between July 1, 2012 and June 30,

20   2012, and that the overwhelming majority of those properties were foreclosed

21   nonjudicially. Except as specifically admitted, Ocwen denies this request in its

22   entirety.

23   **REQUEST FOR ADMISSION NO. 5:**

24        When Ocwen removed this case to federal court, Ocwen did not have

25   evidence that the class alleged in Kuns's complaint had incurred any actual

26   damages from Ocwen's credit reporting.

27

28

- 5 -

RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION
CV12-7118-DMG **ER 84**

1 **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

2    Ocwen objects to this request as unduly burdensome and overbroad in that it
3 seeks evidence outside the scope of permissible discovery anticipated in this
4 Court's Order Permitting Jurisdictional Discovery (Dkt. No. 23). This Court
5 permitted discovery into the amount in controversy as pleaded in plaintiff's
6 complaint, which, as is well-established by the courts of this district, is a distinct
7 question from any potential recovery for the plaintiff. *E.g., Korn v. Polo Ralph*
8 *Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Ocwen further
9 objects to this request as vague and ambiguous as to "Ocwen's credit reporting."
10 Ocwen further objects to this request on the grounds that it is overbroad and
11 unduly burdensome in that it purports to require Ocwen to make a representation
12 as to all possible sources of evidence in this matter prior to responding. Ocwen's
13 responses are complete to the extent reasonably achievable but Ocwen does not,
14 and could not possibly, represent that these responses reflect or include all
15 potentially responsive information located anywhere accessible to Ocwen. Subject
16 to the foregoing specific objections and the general objections asserted above,
17 Ocwen responds as follows:

18    Ocwen admits that, when it removed this case to federal court, it did not
19 have evidence that any absent members of the putative class identified in
20 plaintiff's Complaint had incurred any actual damages from Ocwen's credit
21 reporting. However, plaintiff has alleged that he "and the other members of the
22 Class have suffered actual injury as a result of the Defendants' violations of the
23 CCRAA. These injuries may include emotional distress, declined and reduced
24 credit, forced purchase of credit reports and credit monitoring, postage and private
25 courier costs, mileage, long distance telephone charges, lost cell phone airtime,
26 [and] increased credit costs . . . ." (Compl. ¶37.) Thus plaintiff has alleged that he
27 incurred actual damages, but Ocwen does not possess any evidence that would
28 support his allegation.

- 6 -

**REQUEST FOR ADMISSION NO. 6:**

Ocwen has no evidence that the class alleged in Kuns's complaint have incurred any actual damages from Ocwen's credit reporting.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Ocwen objects to this request as unduly burdensome and overbroad in that it seeks evidence outside the scope of permissible discovery anticipated in this Court's Order Permitting Jurisdictional Discovery (Dkt. No. 23). This Court permitted discovery into the amount in controversy as pleaded in plaintiff's complaint, which, as is well-established by the courts of this district, is a distinct question from any potential recovery for the plaintiff. *E.g.*, *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Ocwen further objects to this request as vague and ambiguous as to "Ocwen's credit reporting." Ocwen further objects to this request on the grounds that it is overbroad and unduly burdensome in that it purports to require Ocwen to make a representation as to all possible sources of evidence in this matter prior to responding. Ocwen's responses are complete to the extent reasonably achievable but Ocwen does not, and could not possibly, represent that these responses reflect or include "all" potentially responsive information located anywhere accessible to Ocwen. Subject to the foregoing specific objections and the general objections asserted above, Ocwen responds as follows:

Ocwen admits that it has no evidence that any absent members of the putative class identified in plaintiff's Complaint has incurred any actual damages from Ocwen's credit reporting. However, plaintiff has alleged that he "and the other members of the Class have suffered actual injury as a result of the Defendants' violations of the CCRAA. These injuries may include emotional distress, declined and reduced credit, forced purchase of credit reports and credit monitoring, postage and private courier costs, mileage, long distance telephone charges, lost cell phone airtime, [and] increased credit costs . . . ." (Compl. ¶37.)

1  Thus plaintiff has alleged that the absent members of the putative class identified

2  in plaintiff's Complaint incurred actual damages, but Ocwen does not possess any

3  evidence that would support his allegation.

4  **REQUEST FOR ADMISSION NO. 7:**

5  By July 1, 2010, Ocwen was aware of California Code of Civil Procedure

6  section 580b.

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

8  Ocwen objects to this request on the grounds that it is overbroad and unduly

9  burdensome in that it seeks evidence outside the scope of permissible discovery

10  anticipated in this Court's Order Permitting Jurisdictional Discovery (Dkt. No. 23).

11  This request purports to seek evidence related to willful conduct within the

12  meaning of Cal. Civ. Code § 1785.31(a)(2)(B). However, plaintiff's complaint

13  alleges willful violations, which is sufficient to put the amount of recoverable

14  damages for willful violations in controversy for purposes of establishing

15  jurisdiction. The eventual amount of any potential recovery that may ultimately be

16  awarded in this case, and Ocwen maintains that plaintiff is entitled to no recovery

17  in this case, is irrelevant to the amount plaintiff has placed in controversy in his

18  complaint. *See, e.g., Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199,

19  1205 (E.D. Cal. 2008). Moreover, this request is unduly burdensome and

20  overbroad as it seeks evidence related to the merits of plaintiff's Complaint, an

21  improper topic of jurisdictional discovery. *See Rippee v. Boston Market Corp.*,

22  408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Ocwen further objects to this RFA on

23  the grounds that it is vague and ambiguous as to "aware." Ocwen further objects

24  to this request to the extent it seeks information protected from discovery by the

25  attorney-client privilege and/or the attorney work-product doctrine. Subject to the

26  foregoing specific objections and the general objections asserted above, Ocwen

27  responds as follows:

28

- 8 -

RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION
CV12-7118-DMG-PLA
**ER 87**

1  Ocwen admits that, by July 1, 2010, it knew of California Code of Civil
2  Procedure Section 580b.

3  **REQUEST FOR ADMISSION NO. 8:**

4  By July 1, 2010, Ocwen was aware of California Code of Civil Procedure
5  section 580d.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

7  Ocwen objects to this request on the grounds that it is overbroad and unduly
8  burdensome in that it seeks evidence outside the scope of permissible discovery
9  anticipated in this Court's Order Permitting Jurisdictional Discovery (Dkt. No. 23).
10  This request purports to seek evidence related to willful conduct within the
11  meaning of Cal. Civ. Code § 1785.31(a)(2)(B). However, plaintiff's complaint
12  alleges willful violations, which is sufficient to put the amount of recoverable
13  damages for willful violations in controversy for purposes of establishing
14  jurisdiction. The eventual amount of any potential recovery that may ultimately be
15  awarded in this case, and Ocwen maintains that plaintiff is entitled to no recovery
16  in this case, is irrelevant to the amount plaintiff has placed in controversy in his
17  complaint. *See, e.g.*, *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199,
18  1205 (E.D. Cal. 2008). Moreover, this request is unduly burdensome and
19  overbroad as it seeks evidence related to the merits of plaintiff's Complaint, an
20  improper topic of jurisdictional discovery. *See Rippee v. Boston Market Corp.*,
21  408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Ocwen further objects to this RFA on
22  the grounds that it is vague and ambiguous as to "aware." Ocwen further objects
23  to this request to the extent it seeks information protected from discovery by the
24  attorney-client privilege and/or the attorney work-product doctrine. Subject to the
25  foregoing specific objections and the general objections asserted above, Ocwen
26  responds as follows:

27  Ocwen admits that, by July 1, 2010, it knew of California Code of Civil
28  Procedure Section 580d.

- 9 -

**ER188**

1  **REQUEST FOR ADMISSION NO. 9:**

2      Ocwen knew that reporting mortgage deficiencies to the credit reporting

3  agencies would inconvenience to [sic] the subjects of such credit-reporting.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

5      Ocwen objects to this request on the grounds that it is overbroad and unduly

6  burdensome in that it seeks evidence outside the scope of permissible discovery

7  anticipated in this Court's Order Permitting Jurisdictional Discovery (Dkt. No. 23).

8  This request purports to seek evidence related to willful conduct within the

9  meaning of Cal. Civ. Code § 1785.31(a)(2)(B). However, plaintiff's complaint

10 alleges willful violations, which is sufficient to put the amount of recoverable

11 damages for willful violations in controversy for purposes of establishing

12 jurisdiction. The eventual amount of any potential recovery that may ultimately be

13 awarded in this case, and Ocwen maintains that plaintiff is entitled to no recovery

14 in this case, is irrelevant to the amount plaintiff has placed in controversy in his

15 complaint. *See, e.g., Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199,

16 1205 (E.D. Cal. 2008). Moreover, this request is unduly burdensome and

17 overbroad as it seeks evidence related to the merits of plaintiff's Complaint, an

18 improper topic of jurisdictional discovery. *See Rippee v. Boston Market Corp.*,

19 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Ocwen further objects to this request

20 on the grounds that it is vague and ambiguous as to "inconvenience," and, as such,

21 renders the entire request unduly burdensome and overbroad. Ocwen further

22 objects to this request on the grounds it seeks information that is neither relevant to

23 the issues in this lawsuit, nor reasonably calculated to lead to the discovery of

24 admissible evidence. Subject to the foregoing specific objections and the general

25 objections asserted above, Ocwen responds as follows:

26     Denied.

27 **REQUEST FOR ADMISSION NO. 10:**

28     Ocwen had no reason for reporting mortgage deficiencies to the credit-

RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION
CV12-7118-DMG

**ER 89**

1  reporting agencies other than inconvenience [sic] the subjects of such credit-

2  reporting.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

4     Ocwen objects to this request on the grounds that it is overbroad and unduly

5  burdensome in that it seeks evidence outside the scope of permissible discovery

6  anticipated in this Court's Order Permitting Jurisdictional Discovery (Dkt. No. 23).

7  This request purports to seek evidence related to willful conduct within the

8  meaning of Cal. Civ. Code § 1785.31(a)(2)(B). However, plaintiff's complaint

9  alleges willful violations, which is sufficient to put the amount of recoverable

10  damages for willful violations in controversy for purposes of establishing

11  jurisdiction. The eventual amount of any potential recovery that may ultimately be

12  awarded in this case, and Ocwen maintains that plaintiff is entitled to no recovery

13  in this case, is irrelevant to the amount plaintiff has placed in controversy in his

14  complaint. *See, e.g., Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199,

15  1205 (E.D. Cal. 2008). Moreover, this request is unduly burdensome and

16  overbroad as it seeks evidence related to the merits of plaintiff's Complaint, an

17  improper topic of jurisdictional discovery. *See Rippee v. Boston Market Corp.*,

18  408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Ocwen further objects to this request

19  on the grounds that it is vague and ambiguous as to "inconvenience," and, as such,

20  renders the entire request unduly burdensome and overbroad. Ocwen further

21  objects to this request on the grounds it seeks information that is neither relevant to

22  the issues in this lawsuit, nor reasonably calculated to lead to the discovery of

23  admissible evidence. Subject to the foregoing specific objections and the general

24  objections asserted above, Ocwen responds as follows:

25     Denied.

26

27

28

RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION
CV12-7118-DM

**ER190**

Dated: January 3, 2013

ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
EDGAR H. MARTINEZ
O'MELVENY & MYERS LLP

By: _____
Danielle N. Oakley
Attorneys for Defendant
Ocwen Loan Servicing, LLC

RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION
CV12-7118-DMG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-07118 DMG (PLAx)** | Date | October 25, 2012 |
|---|---|---|---|

| Title | *Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.* | Page | 1 of 2 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE REMANDED TO STATE COURT FOR LACK OF SUBJECT MATTER JURISDICTION**

On July 17, 2012, Plaintiff Jeffrey Kuns filed a class action complaint in Los Angeles County Superior Court against Defendant Ocwen Loan Servicing, LLC ("Ocwen"), for violations of the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.25(a).  On August 17, 2012, Defendant removed the action to this Court, asserting subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). [Doc. # 1].

The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citing *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006)).  There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*)) (internal quotation marks omitted).

CAFA enables defendants to "remove a diversity class action from state to federal court when, among other conditions, the parties are minimally diverse and the amount in controversy exceeds $5,000,000." *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1012 (9th Cir. 2011) (citing 28 U.S.C. §§ 1332(d)(2), 1453(b)).  Plaintiff seeks to certify a class of entirely California residents. (Compl. ¶ 20.)  Because Defendant is an LLC, it was required to allege the citizenship of each of the LLC's constituent members in order to establish diversity of citizenship.  See *Johnson v. Columbia Props. Advantage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Defendant has not shown that its members are not California citizens, and therefore has failed to adequately allege the existence of diversity jurisdiction.

Additionally, when the complaint fails to specify the amount of damages sought, the defendant must show by a preponderance of the evidence that more than $5 million is at stake.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk <u>vv</u> |
|---|---|---|

**ER 92**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-07118 DMG (PLAx)** | Date | October 25, 2012 |
|---|---|---|---|

| Title | ***Jeffrey Kuns v. Ocwen Loan Servicing, LLC, et al.*** | Page | 2 of 2 |
|---|---|---|---|

*Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)). Plaintiff seeks unspecified actual damages, statutory punitive damages between $100 and $5000 per violation, *see* Cal. Civ. Code § 1785.31, and attorney's fees. Defendant asserts that the class consists of an "overwhelming majority of" 4730 loans. (Decl. of Sandra Lyew ¶ 3) [Doc. # 3]. Defendant then reasons that because Plaintiff could potentially seek the maximum punitive damages, the total exceeds the $5 million threshold. Defendant has not provided any evidence, however, that would allow the Court to plausibly conclude that punitive damages would be in the range asserted. Assuming, *arguendo*, that the "overwhelming majority" is one hundred percent of the 4730 loans, the minimum statutory damages would only amount to $473,000. Defendant has not shown that actual damages, a proportionate amount of punitive damages, and attorney's fees make up the remaining $4,527,000 required for jurisdiction under CAFA.

In light of the foregoing, the parties are hereby **ORDERED TO SHOW CAUSE** why this action should not be remanded to the Los Angeles County Superior Court for lack of subject matter jurisdiction. The parties shall file their responses on or before **November 5, 2012**. Defendant's pending motion to dismiss is taken under submission pending a resolution of the jurisdictional issue. The October 26, 2012 hearing regarding Defendant's motion to dismiss is hereby **VACATED**.

**IT IS SO ORDERED.**

ELIZABETH L. MCKEEN (S.B. #216690)
emckeen@omm.com
DANIELLE N. OAKLEY (S.B. #246295)
doakley@omm.com
EDGAR H. MARTINEZ (S.B. #255503)
emartinez@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660-6429
Telephone:  (949) 823-6900
Facsimile:  (949) 823-6994

Attorneys for Defendant
Ocwen Loan Servicing, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br><br>                    Defendants. | Case No. CV12-7118-DMG-PLA<br><br>**OCWEN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Hearing Date:  October 26, 2012<br>Time:  9:30 a.m.<br>Place:  Courtroom 7<br>Judge: Hon. Dolly M. Gee |

## INTRODUCTION

In his opposition, plaintiff now concedes that Ocwen acted appropriately in reporting the existence of his $400,000 deficiency balance. (Opp. at 1-2.) Plaintiff's sole remaining contention is that Ocwen was required by Section 1785.25(a) of the CCRAA[1] to report along with his deficiency balance an affirmative statement that plaintiff was not "liable" for the debt. (*Id.*) Yet because California law uniformly holds that ***borrowers remain liable for deficiency balances*** despite the existence of anti-deficiency statutes, plaintiff's own theory as to what Ocwen should have reported would necessitate Ocwen to have made a false statement in violation of the CCRAA. The mere reporting of the continued existence of plaintiff's deficiency, on the other hand, does not violate the statute as a matter of law. Likewise, because plaintiff remained liable for the debt until it was discharged in plaintiff's Chapter 7 bankruptcy, Ocwen cannot be faulted for allegedly reporting, post-discharge, that the debt was in fact discharged in bankruptcy. Additionally, plaintiff's claim fails for the independent reason that plaintiff failed to timely disclose this claim during the pendency of his bankruptcy, depriving him of standing despite his tardy efforts to cure that defect.

## ARGUMENT

**I.** **PLAINTIFF'S CCRAA CLAIM FAILS BECAUSE OCWEN WAS NOT OBLIGATED TO REPORT TO THE CRAS THAT OCWEN "COULD NOT COLLECT" PLAINTIFF'S DEBT.**

### A. As a Matter of Law, Plaintiff Was Liable For His Deficiency Balance Until It Was Discharged in Bankruptcy.

Plaintiff's contention that Ocwen was obligated to report, along with the existence of plaintiff's deficiency balance, a statement to the effect that plaintiff was not liable for the balance fails as a matter of law because plaintiff was in fact

---

[1] Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1-1785.36.

OCWEN'S REPLY ISO MOTION TO DISMISS
CV12-7118-DMG-PLA

liable for it.  In *Romo v. Stewart Title of California*, the court recognized that "[a]lthough the lender may not obtain a deficiency judgment after a foreclosure by power of sale (Code Civ. Proc. § 580d), the foreclosure does not extinguish the debt.  The lender retains other remedies for collection of the unpaid balance of the debt."  35 Cal. App. 4th 1609, 1615 n.5 (1995); *see also Hodges v. Mark*, 49 Cal. App. 4th 651, 657 (1996) (Section 580b "prohibits only a deficiency judgment in the strict sense, i.e., a *personal judgment* against the debtor.").

California law specifically recognizes Ocwen's right to pursue other methods for collecting on deficiency debt after the foreclosure of property securing a loan within the purview of California's anti-deficiency statutes.  *Armsey v. Channel Assocs., Inc.*, 184 Cal. App. 3d 833, 837 (1986) ("While section 580b of the Code of Civil Procedure prohibits a judgment against a debtor following foreclosure, it does not prevent a creditor from realizing on additional security."); *Herrera v. LCS Fin. Servs. Corp.* ("*Herrera I*"), No. C09-02843 TEH, 2009 WL 2912517, at *8 (N.D. Cal. Sept. 9, 2009) (holding that Ocwen may rightfully seek to collect on deficiency debt post-foreclosure).  Thus plaintiff's sole contention here—that Ocwen somehow violated the CCRAA for allegedly reporting the deficiency balance without simultaneously reporting that Ocwen "could not collect against the debtor"—fails as a matter of law.  (*See* Opp. at 1.)

Plaintiff's entire theory conflates his liability for the debt with Ocwen's ability to obtain a deficiency judgment against him as a matter of procedure.  As held in each of the aforementioned cases, the two are not the same.  *See Black's Law Dictionary* (9th ed. 2009) (defining "liability" as, "[t]he quality or state of being legally obligated or accountable. . . .  A financial or pecuniary obligation" and defining "deficiency judgment" as "[a] judgment against a debtor for the unpaid balance of the debt if a foreclosure sale . . . fails to yield the full amount of the debt due.").

1    Plaintiff's opposition ignores *Romo*, *Hodges*, and *Armsey* altogether:

2    Plaintiff also concedes, as he must, that *Herrera I* held that the anti-deficiency

3    statutes do not preclude a creditor from collecting on a deficiency balance after a

4    foreclosure sale, because the debt remains owing.  (Opp. at 3.)  Plaintiff focuses

5    instead solely on a different order from the *Herrera* case ("*Herrera II*") that does

6    not to any extent address the impact of anti-deficiency statutes on the existence of

7    a debt because that question had already been answered in *Herrera I*.  *Herrera II*

8    simply held that in attempting to collect a deficiency debt after a foreclosure sale—

9    which the court had already found appropriate—the content of those debt

10   collections must comply with the California analog to the Fair Debt Collections

11   Practices Act.  *See Herrera v. LCS Fin. Servs. Corp.*, No. C09-02843 TEH, 2009

12   WL 5062192, at *4 (N.D. Cal. Dec. 22, 2009).  Credit reporting was not at issue in

13   *Herrera*.  The applicability of *Herrera* to this case ends with the court's clear

14   holding that California's anti-deficiency statutes do not extinguish deficiency debt,

15   which remains due and owing post-foreclosure.  *Herrera I*, 2009 WL 2912517, at

16   *8 (Section 580b "does not eliminate the underlying debt. . . . [T]he claim that

17   Section 580b erases the debt, barring Ocwen from seeking payment in any manner

18   must fail as a matter of law.").

19   None of the cases on which plaintiff relies, *Bank of America, N.A. v.*

20   *Mitchell*, 204 Cal. App. 4th 1199 (2012), *Union Bank v. Gradsky*, 265 Cal. App.

21   2d 40 (1968), or *Commonwealth Mortgage Assurance Co. v. Superior Court*, 211

22   Cal. App. 3d 508 (1989), holds that the anti-deficiency statutes do anything more

23   than bar deficiency ***judgments***.  *Mitchell* was an action by a mortgagee against a

24   mortgagor to recover a deficiency balance after a foreclosure sale, to which

25   Section 580d provided a defense.  204 Cal. App. 4th at 1202.  Similarly, *Gradsky*

26   was an action by a mortgagee against a guarantor to recover a deficiency balance,

27   and the court held that Section 580d barred the action.  265 Cal. App. 2d at 41-42.

28   In *Commonwealth Mortgage*, a judgment could not be obtained via an indemnity

OCWEN'S REPLY ISO MOTION TO
DISMISS
CV12-7118-DMG-PLA

1  agreement used to circumvent the anti-deficiency statutes. 211 Cal. App. 3d at

2  514-517.

3      Because plaintiff remained liable for the deficiency remaining on his

4  account until the debt was discharged in bankruptcy, Ocwen cannot have violated

5  the CCRAA by allegedly failing to include in its reporting some affirmative

6  statement to the effect that plaintiff was not "liable" for the debt prior to his

7  discharge from bankruptcy. Nor can Ocwen be liable for truthfully and fully

8  reporting that the debt was discharged in bankruptcy—because that is precisely

9  what happened. Not only has Ocwen's reporting, even as alleged by plaintiff, been

10 entirely accurate, the reporting plaintiff seeks here simply would not have been

11 true.

12      Nothing in *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143 (N.D.

13 Cal. 2010), requires Ocwen to report information about potential defenses that

14 plaintiff **could** assert in hypothetical litigation in the event Ocwen were, in the

15 future, to seek a deficiency judgment against plaintiff. In *Wang*, the court held that

16 the CCRAA does not require a furnisher to report information about potential

17 defenses that may at some point in the future be asserted in litigation. *Id.* at 1148-

18 1149. Plaintiff's attempt to constrain *Wang*'s holding by arguing that it extends

19 only to the statute-of-limitations defense mischaracterizes the court's reasoning.

20 (Opp. at 6.) In finding that the furnisher in *Wang* did not have to volunteer

21 information about the statute of limitations, the court considered the general

22 "nature" of such defenses: that the statute of limitations is "an affirmative defense"

23 and, most critically, that "[a] statute of limitations does not operate to extinguish a

24 debt, but merely bars recovery on a debt when properly asserted." *Id.* at 1149. So

25 too with California's anti-deficiency statutes.

26

27

28

OCWEN'S REPLY ISO MOTION TO
DISMISS
CV12-7118-DMG-PLA

## B. Ocwen Did Not Violate the CCRAA by Reporting "Materially Misleading" Information.

Putting aside that, as established above, because plaintiff remained liable for the deficiency balance on his account until it was discharged in bankruptcy, there was nothing "materially misleading" about Ocwen's alleged credit reporting, there is no authority for plaintiff's argument that the CCRAA contains an implicit "materially misleading" standard. The Fair Credit Reporting Act ("FCRA") cases on which plaintiff relies for that proposition are wholly inapplicable because the "materially misleading" analysis employed in those cases applied specifically to alleged violations of a FCRA requirement that is in no way analogous to the specific CCRAA section at issue here, Section 1785.25(a). In *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008), plaintiff alleged that defendant violated its express duty under FCRA to report to the CRAs that plaintiff had affirmatively disputed his debt. The FCRA section at issue there was 15 U.S.C. § 1681s-2(b)(1), which provides that if a consumer disputes the validity of the debt or accuracy of information reported, the furnisher must investigate the dispute and, if the dispute is legitimate, must report to the CRAs the results of the investigation. In *Saunders*, plaintiff had contacted his creditor numerous times to dispute the validity of the debt reported by the creditor because the reported balance included illegitimate late fees. *Id.* at 145-46. The creditor also reported plaintiff as being in default, though plaintiff had communicated to the creditor numerous times that the default was the direct consequence of the creditor's admitted accounting errors. *Id.* Plaintiff had also lodged a dispute with the CRAs, which in turn inquired of the creditor company regarding the dispute. *Id.* Despite the consumer's numerous communications regarding his dispute, the creditor still did not comply with Section 1681s-2(b)(1) and report the results of any investigation to the CRAs. *Id.* at 146. The "materially misleading" analysis only came into play after the court found that the creditor had shirked its affirmative duties in response to an express

OCWEN'S REPLY ISO MOTION TO DISMISS
CV12-7118-DMG-PLA

**ER 99**

dispute being raised by the consumer, when the court analyzed whether that failure had resulted in a materially misleading credit report.  *Id.* at 148-49.  That analysis is inapplicable here, where there has been no predicate failure to report affirmatively required information.

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2010), likewise involved the express dispute-related reporting obligations of FCRA's Section 1681s-2.  Specifically, the consumer there had a long history of disputing a particular debt both to the CRAs and to his credit-card company.  *Id.* at 1152-53.  Yet the credit-card company reported the debt as owing without reporting, as it was obligated to do under Section 1681s-2(a)(3), that the consumer disputed the debt.  *Id.* at 1152.  Upon realizing the creditor's failure to report his dispute, the consumer disputed the debt yet again, which caused the CRA to inquire of the credit-card company regarding the dispute, which prompted the credit-card company's investigation and related reporting obligations under Section 1681s-2(b)(1).  *Id.*  The credit-card company failed in those obligations in a way that resulted in potentially "materially misleading" credit reporting, in which case summary judgment of the FCRA claim was not appropriate.  *Id.* at 1162-64.  But once again, the "materially misleading" analysis related only to the credit reporting that occurred as a result of the furnisher's failure to report specific information affirmatively mandated by federal law.

Both *Saunders* and *Gorman* involved a creditor's failure to report specifically mandated information about an affirmative dispute raised by the consumer.  Here, by contrast, plaintiff contends that, though the CCRAA contains no such specific statutory directive, Ocwen should be held liable for not reporting information about a potential defense that plaintiff had never raised to a hypothetical future action for a deficiency judgment that has never been filed.

Plaintiff declares that because materiality is a question of fact, dismissal cannot be had.  Putting aside that there is no "materially misleading" standard

OCWEN'S REPLY ISO MOTION TO DISMISS
CV12-7118-DMG-PLA

**ER 100**

under Section 1785.25(a) as explained above, dismissal would nevertheless be appropriate where, as here, the allegedly misleading statement is not misleading to any extent as a matter of law. *E.g.*, *In re ATI Techs., Inc. Sec. Litig.*, 216 F. Supp. 2d 418, 433 (E.D. Pa. 2002) (dismissing Private Securities Litigation Reform Act claim based on company's announcement of financial performance figures, as figures were not material misrepresentations as a matter of law because they were accurate).[2]

## II. PLAINTIFF'S FAILURE TO TIMELY DISCLOSE THIS CLAIM IN CONNECTION WITH HIS BANKRUPTCY PROCEEDING INDEPENDENTLY NECESSITATES DISMISSAL.

Though plaintiff has attempted to cure his previous failure to disclose the existence of this claim in his bankruptcy proceeding by reopening the bankruptcy and soliciting an order abandoning the claim (after Ocwen met and conferred with plaintiff about his lack of standing as grounds for its dismissal motion), plaintiff's last-minute efforts are insufficient to prevent dismissal here. Courts have not looked favorably upon plaintiffs who reopened bankruptcy proceedings for the sole purpose of remedying a misrepresentation only after defendants in a separate case file a dispositive motion based on procedural facts similar to those here. The Eleventh Circuit, for example, has noted:

> Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. "Allowing [a debtor] to back-up, re-

---

[2] Similarly, plaintiff's attempt to distinguish *Miller v. Bank of Am. Nat'l Assoc.* fails. *Miller* held that Section 1785.25(a) "does not apply to actions against furnishers of credit information." No. 11-CV-2588-MMA(BGS), 2012 WL 3962456, at *4 (Sept. 10, 2012). Plaintiff attacks this holding, arguing that Section 1785.25(a) was enacted prior to the primary case upon which the *Miller* court relies. (Opp. at 10.) This argument is a red herring, as the question of who may be sued for violation of Section 1785.25(a) is not dependent on the interpretation of Section 1785.25(a) itself, but upon interpretation of Section 1785.31 which was initially enacted in 1976. 1976 Cal. Stat. 666.

open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor.

*Barger v. City of Cartersville*, 348 F.3d 1289, at 1297 (11th Cir. 2003) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, at 1288 (11th Cir. 2002)) (internal citations omitted); *see also Ortiz v. Sodexho Operations, LLC*, No. 11-CV-1295 JLS (RBB), 2011 WL 4499050, at *5 (S.D. Cal. Sept. 27, 2011) (finding that reopening of bankruptcy proceedings not a bar to judicial estoppel as "these efforts at honest disclosure came too late"); *Granados v. Supervalu, Inc.*, No. LA CV11-10175 JAK (MANx), 2012 WL 3562521, at *5 (C.D. Cal. Aug. 16, 2012) (granting judicial estoppel relying in part on the rule articulated in *Burnes*).

The Ninth Circuit has recognized that retroactively restoring standing to a debtor is discretionary, "not a categorical imperative, to be blindly followed to a result that is unjust." *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 395 n.1 (9th Cir. 1964). Thus, before a court restores standing in such a manner, it must weigh the equities. *See, e.g.*, *In re Hat*, 363 B.R. 123, 141 (Bankr. E.D. Cal. 2007). Here, for the same reason judicial estoppel applies as discussed in Ocwen's initial memorandum, this Court should decline to retroactively restore plaintiff's standing to bring a claim.

By reopening his bankruptcy case over a year after plaintiff was discharged, plaintiff practically guaranteed an automatic abandonment of the claim, which may not have been forthcoming had plaintiff's creditors been presented with the opportunity to object to abandonment when they were actively engaged in the bankruptcy proceeding. The perceived value to either creditors or the trustee of

OCWEN'S REPLY ISO MOTION TO DISMISS
CV12-7118-DMG-PLA

reopening plaintiff's stale bankruptcy case to re-divvy plaintiff's assets is low.  As the court observed in *Granados*, "creditors who may have participated in the bankruptcy process two years ago, may not have the interest or incentive to participate anew.  It would be unfair, therefore, for plaintiff to be permitted to pursue claims that could result in a greater benefit to him than he would have attained had they been disclosed as part of the 2010 bankruptcy process."  2012 WL 3562521 at *5.[3]

While plaintiff argues that judicial estoppel should not be applied, erroneously asserting that his "inadvertent" failure to schedule the present action is dispositive of the application of the doctrine, his intent is not dispositive.  *See, e.g.*, *Kinnee v. Shack, Inc.*, No. 07-1463-AC, 2008 WL 4899204, at *6 (D. Or. Nov. 12, 2008).  The prejudice Ocwen will suffer if plaintiff's claim is allowed to proceed well outweighs any latitude plaintiff is entitled for his claimed innocent mistake.  Neither precedent nor the alleged facts require this Court to take the extraordinary step of restoring plaintiff's standing which he admittedly lacked when he filed this lawsuit.

---

[3] The dearth of residual interest in plaintiff's year-old case is exemplified by the fact that the bankruptcy trustee issued a proposed order of abandonment within 24 hours of the bankruptcy case being reopened.  (Pl.'s RJN Ex. 1.)  Had plaintiff's belated amendment to his bankruptcy schedule occurred while his bankruptcy was still pending, it is likely that plaintiff's creditors would have taken a more active interest in an asset that plaintiff claims roughly doubles the value of his bankruptcy estate, as this lawsuit purports to.  (*Id.* at Ex. 2 (valuing this claim at $14,100, which essentially would have doubled the value of the estate).)

**CONCLUSION**

For the foregoing reasons plaintiff's claim should be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.


Dated: October 12, 2012

ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
EDGAR H. MARTINEZ
O'MELVENY & MYERS LLP


By:  _____/s/ Danielle N. Oakley_____
Danielle N. Oakley
Attorneys for Defendants
Ocwen Loan Servicing, LLC

OCWEN'S REPLY ISO MOTION TO DISMISS
CV12-7118-DMG-PLA

**ER 104**

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600 (telephone)
(888) 958-3028 (facsimile)
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns, on his own behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability companies, and DOES 1-100, inclusive,<br><br>Defendants. | No. 12-CV-7118 (DMG) (PLAx)<br><br>District Judge Dolly M. Gee<br><br>Magistrate Judge Paul L. Abrams<br><br>**PLAINTIFF JEFFREY KUNS'S OPPOSITION TO OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS**<br><br>Date:  October 26, 2012<br>Time:  9:30 a.m.<br>Location: Courtroom 7, 2d Floor<br>  312 North Spring Street<br>  Los Angeles, CA 94102 |

**ER 105**

# **TABLE OF CONTENTS**

I.     OCWEN'S MOTION TO DISMISS MISSTATES KUNS'S THEORY OF LIABILITY AS WELL AS THE LAW ................................. 1

II.    OCWEN'S FAILURE TO DISCLOSE THAT KUNS HAD NO PERSONAL LIABILITY VIOLATED THE CCRAA ................................. 2

     A.    Under California's Anti-Deficiency Laws, Kuns Could Not Be Liable for the Deficiency Reported by Ocwen ..................... 4

     B.    Ocwen's Credit Reporting Violated the CCRAA Because the Anti-Deficiency Laws Cannot Be Waived ......................... 5

     C.    Ocwen Violated the CCRAA Because the Fact that Kuns Is Not Personally Liable Was a Material Omission....................... 7

     D.    Ocwen's Post-Bankruptcy Reporting Was Materially Misleading ................................................................. 8

     E.    Section 1785.25(a) Provides for Liability Against Furnishers ........... 9

III.    KUNS'S JUNE 2011 BANKRUPTCY DOES NOT BAR HIS CLAIMS ..................................................................10

     A.    Ocwen Does Not Contend Kuns Lacks Standing to Bring His Post-Bankruptcy Claim ................................................11

     B.    Kuns Cured Any Standing Defects Related to His Pre-Bankruptcy Claim Because the Trustee Has Abandoned Such Claims ..................................................................11

     C.    Ocwen Confuses the Difference Between Constitutional Standing and Prudential Standing ..................................14

     D.    Judicial Estoppel Does Not Apply Because Kuns's Failure to List the CCRAA Claim Was Inadvertent ..........................15

IV.    CONCLUSION ..........................................................18

ER 106

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Agosta v. InoVision, Inc.*
No. 02-806, 2003 WL 23009357 (E.D. Pa. Dec. 16, 2003) ..............................9

*Britton v. Co-op Banking Group*
4 F.3d 742 (9th Cir. 1993) ..............................................................................17

*Catalano v. C.I.R.*
279 F.3d 682 (9th Cir. 2002) ..........................................................................13

*Cobb v. Aurora Loan Servs., LLC*
408 B.R. 351 (E.D. Cal. 2009) ........................................................................12

*Coward v. JP Morgan Chase Bank, N.A.*
No. 11-03378, 2012 WL 1552773 (E.D. Cal. Apr. 30, 2012) ..........................11

*Cusano v. Klein*
264 F.3d 936 (9th Cir. 2001) .....................................................................11, 14

*Daley v. A & S Collection Associates, Inc.*
717 F. Supp. 2d 1150 (D. Or. 2010) ..................................................................9

*Davis v. Maryland Bank*
No. 00-04191, 2002 WL 32713429 (N.D. Cal. June 19, 2002) ......................10

*Dunmore v. United States*
358 F.3d 1107 (9th Cir. 2004) .................................................... 15, 16, 17, 18

*Flowers v. Wells Fargo Bank, N.A.*
No. 11-1315, 2011 WL 2748650 (N.D. Cal. July 13, 2011) ...........................12

*Gorman v. Wolpoff & Abramson, LLP*
584 F.3d 1147 (9th Cir. 2009) .....................................................................7, 10

*Hamilton v. State Farm Fire & Cas. Co.*
270 F.3d 778 (9th Cir. 2001) .....................................................................17, 18

*Hernandez v. Downey Savings and Loan Ass'n*
No. 08-2336, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009) .............................12

**ER 107**

*Hernandez v. IndyMac Bank*
 No. 12-00369, 2012 WL 3860646 (D. Nev. Sept. 5, 2012) ..............................18

*Herrera v. LCS Financial Services Corp.*
 No. 09-02843, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009)..................3, 4, 5, 6

*Herrera v. LCS Financial Services Corp.*
 No. 09-02843, 2009 WL 5062192 (N.D. Cal. Dec. 22, 2009) ...................3, 7, 8

*In re Crevier*
 820 F.2d 1553 (9th Cir. 1987).......................................................................14

*In re Kreisel*
 399 B.R. 679 (Bankr. C.D. Cal. 2008) .....................................................13, 16

*In re Lopez*
 283 B.R. 22 (9th Cir. BAP 2002) ..................................................................15

*In re Trim-X, Inc.*
 695 F.2d 296 (7th Cir. 1982) ........................................................................13

*Jordan v. Paul Financial, LLC*
 No. 07-4496, 2012 WL 3647759 (N.D. Cal. Aug. 23, 2012) ..........................12

*Just Film, Inc. v. Merchant Servs., Inc.*
 No. 10-1993, 2012 WL 1997031 (N.D. Cal. June 4, 2012) .......................14, 17

*Kurchack v. Life Ins. Co. of N. Am.*
 725 F. Supp. 2d 855 (D. Ariz. 2010) ..........................................13, 14, 15, 17

*Lujan v. Defenders of Wildlife*
 504 U.S. 555 (1992) ......................................................................................14

*Macias v. WMC Mortg. Corp.*
 No. 09-1374, 2010 WL 114006 (S.D. Cal. Jan. 6, 2010)................................12

*Maloney v. LVNV Funding LLC*
 No. 06- 0452, 2006 WL 3006484 (N.D. Tex. Oct. 20, 2006)...........................9

*Miller v. Bank of America, N.A.*
 No. 11-2588, 2012 WL 3962456 (S.D. Cal. Sept. 10, 2012) ...........................10

*Moreno v. Autozone, Inc.*
  No. 05-4432, 2007 WL 1063433 (N.D. Cal. Apr. 9, 2007) .............................17

*Morlan v. Universal Guar. Life Ins. Co.*
  298 F.3d 609 (7th Cir. 2002)........................................................................13

*Morris v. California*
  966 F.2d 448 (9th Cir. 1991)...................................................................16, 17

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*
  219 F.3d 895 (9th Cir. 2000)........................................................................14

*Rosenberg v. Cavalry Investments, LLC*
  No. 03-1087, 2005 WL 2490353 (D. Conn. Sept. 30, 2005)............................9

*Rowland v. Novus Fin. Corp.*
  949 F. Supp. 1447 (D. Haw. 1996).....................................................12, 13, 14

*Runaj v. Wells Fargo Bank*
  667 F. Supp. 2d 1199 (S.D. Cal. 2009) .........................................................12

*Saunders v. Branch Banking and Trust Co. of V.*
  526 F.3d 142 (4th Cir. 2008).....................................................................7, 8

*Schneider v. Unum Life Ins. Co. of Am.*
  No. 05-1402, 2008 WL 1995459 (D. Or. May 6, 2008) .................................15

*Skaff v. Meridien N. Am. Beverly Hills, LLC*
  506 F.3d 832 (9th Cir. 2007) .......................................................................14

*Snider v. Sherman*
  No. 03-6605, 2007 WL 1174441 (E.D. Cal. Apr. 19, 2007)............................15

*Thomas v. NCO Fin. Sys., Inc.*
  No. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002)................................9

*United States v. Ibrahim*
  522 F.3d 1003 (9th Cir. 2008)......................................................................17

*Valdez v. JDR LLC*
  No. 04-1620, 2006 WL 2038456 (D. Ariz. July 20, 2006) ........................17, 18

**ER 109**

*Valentine v. First Advantage Saferent, Inc.*
  No. 08-142, 2009 WL 4349694 (C.D. Cal. Nov. 23, 2009)..............................8

*Walton v. Allstate Ins. Co.*
  222 Fed. Appx. 544 (9th Cir. 2007) ...............................................................14

*Wang v. Asset Acceptance, LLC*
  681 F. Supp. 2d 1143 (N.D. Cal. 2010)...............................................1, 3, 5, 6

*White v. Trans Union, LLC*
  462 F. Supp. 2d 1079 (C.D. Cal. 2006) ............................................................9

*Zone Sports Ctr. LLC v. Red Head Inc.*
  No. 11-00634, 2011 WL 3862007 (N.D. Cal. Sept. 1, 2011).........................16

**CALIFORNIA CASES**

*Adams v. Paul,*
  11 Cal.4th 583 (1995) .......................................................................................5

*Bank of America, N.A. v. Mitchell*
  204 Cal.App.4th 1199 (2012)............................................................................5

*Cadle Co. II v. Harvey*
  83 Cal.App.4th 927 (2000)................................................................................6

*Commonwealth Mortgage Assurance Co. v. Superior Court*
  211 Cal.App.3d 508 (1989)............................................................................5, 6

*DeBerard Properties v. Lim*
  20 Cal.4th 659 (1999).......................................................................................6

*Dreyfuss v. Union Bank of Cal.*
  24 Cal. 4th 400 (2000) .....................................................................................4

*Engalla v. Permanente Med. Group, Inc.*
  15 Cal.4th 951 (1997).......................................................................................8

*Guild Mortgage Co. v. Heller*
  193 Cal.App.3d 1505 (1987).............................................................................5

*Olson v. Six Rivers Nat. Bank*
  111 Cal.App.4th 1 (2003)..................................................................................7

**ER 110**

*Pulver v. Avco Financial Services*
   182 Cal.App.3d 622 (1986) ........................................................................10

*Roseleaf Corp. v. Chierighino*
   59 Cal.2d 35 (1963) ....................................................................................5

*Sanai v. Saltz*
   170 Cal.App.4th 746 (2009) ......................................................................10

*Torrey Pines Bank v. Hoffman*
   231 Cal.App.3d 308 (1991) ..........................................................................5

*Union Bank v. Gradsky*
   265 Cal.App.2d 40 (1968) ........................................................................5, 6

**FEDERAL STATUTES**

11 U.S.C. § 102(1) ...............................................................................................13

11 U.S.C. § 554(a) ...............................................................................................13

15 U.S.C. § 1681c(a)(1) .........................................................................................9

15 U.S.C. § 1681c(a)(4) .........................................................................................9

15 U.S.C. § 1681c(a)(5) .........................................................................................9

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1785.1 ........................................................................................1

Cal. Civ. Code § 1785.13(a)(5) ..............................................................................9

Cal. Civ. Code § 1785.13(a)(7) ..............................................................................9

Cal. Civ. Code § 1785.13(c) ...................................................................................9

Cal. Civ. Code § 1785.25(a) ..........................................................................passim

Cal. Civ. Code § 1785.31(a) .................................................................................10

Cal. Civ. Code § 1785.31(c) .................................................................................10

Cal. Code Civ. Proc. § 580b ..........................................................................passim

ER 111

Cal. Code Civ. Proc. § 580d..........................................................................passim

Cal. Code Civ. Proc. § 703.140(b)(1)......................................................12, 13

Cal. Code Civ. Proc. § 703.140(b)(5)......................................................12, 13

**OTHER AUTHORITIES**

Assembly Bill No. 1692, Chapter 1194, § 11 (Cal. 1992)..................................10

C.D. Cal. R. 6007-1, 9013-1(o)(1), (3).............................................................13

Fed. R. Civ. Pro. 17......................................................................................11, 12

Fed. R. Civ. Pro. 17(a)(3)............................................................................11, 12

Fed. R. Civ. Proc. 12(b)(6).................................................................................8

# OPPOSITION TO MOTION TO DISMISS

Plaintiff Jeffery Kuns ("Kuns" or "Plaintiff") hereby submits his Opposition to Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Motion.

## I. OCWEN'S MOTION TO DISMISS MISSTATES KUNS'S THEORY OF LIABILITY AS WELL AS THE LAW

Ocwen reported information to various credit-reporting agencies ("CRAs") which indicated Kuns was liable for the deficiency arising from a non-judicial foreclosure on his California residence. (Pl.'s Compl. ¶¶16-19, 29-30.) California law bars deficiency liability on (1) non-judicial foreclosures and (2) foreclosures on a purchase money mortgage for a personal residence that is used by less than five families. Cal. Code Civ. Proc. §§ 580b, 580d. Ocwen violated the Consumer Credit Reporting Agencies Act (Cal. Civ. Code §§ 1785.1-1785.36) ("CCRAA") by reporting information about Kuns's mortgage that was incomplete (if not outright false) to the CRAs. *See* Cal. Civ. Code § 1785.25(a) (prohibits furnishing information to CRAs "if the person knows or should know the information is incomplete or inaccurate.").

Ocwen makes two arguments, both mistaken. First, Ocwen contends it did not violate the CCRAA because "the amount of the deficiency as reported by Ocwen was accurate – plaintiff simply contends that Ocwen simply should not have reported the deficiency at all." (Def.'s Mot. at 1.) This is wrong: Kuns does not allege the CCRAA prohibits Ocwen from reporting the deficiency altogether. Rather, Ocwen violated the CCRAA by failing to report the deficiency accurately and completely. Ocwen's credit reporting of Kuns's deficiency was "incomplete and inaccurate because it failed to indicate or disclose that Kuns was not liable for the deficiency from the foreclosure of his home." (Pl's. Compl. ¶19.) A furnisher violates the CCRAA where it reports a debt but fails to report that the furnisher could not collect against the debtor (and, under California's anti-deficiency laws, Ocwen could not collect against Kuns personally). *Cf. Wang v. Asset Acceptance,*

---

Opposition to Motion to Dismiss        1        No. 12-CV-7118 (DMG) (PLAx)

*LLC*, 681 F. Supp. 2d 1143, 1149 (N.D. Cal. 2010) (defendant violated CCRAA by "***continu[ing] to report [a] debt in a manner that suggest[ed] it could still collect on it***," but in fact could not) (emphasis added).

Second, Ocwen contends that Kuns does not have standing to bring this claim because it arose prior to his June 2011 bankruptcy. (Def.'s Mot. Dismiss at 1-2, 8-12.) Kuns has cured this issue because he amended his bankruptcy schedules and the trustee abandoned the CCRAA claim. Hence, Kuns has standing to being this case. Ocwen's argues that Kuns's standing was set in stone at the time the complaint was filed: this argument confuses *constitutional* standing with *prudential* standing. (*Cf. id.* at 11.) Likewise, judicial estoppel does not apply here because Kuns's omission of the CCRAA claim from his original bankruptcy schedules was an inadvertent error, not the result of a strategic decision to conceal his claim from the trustee. (*Cf. id.* at 12.) Kuns simply did not know he had a CCRAA claim at the time. Finally, Ocwen ignores the portions of Kuns's claims that arose *after* his bankruptcy (and therefore were never the bankruptcy estate's property). Ocwen reported that Kuns's liability for the deficiency was discharged by his June 2011 bankruptcy – rather than by foreclosure in November 2009. (Pl's. Compl. ¶18.) By misrepresenting both the time and nature of the discharge, Ocwen has ensured that CRAs will include its tradeline on Kuns's credit report longer after it should be excluded under the CCRAA. This is a material misstatement.

## II. OCWEN'S FAILURE TO DISCLOSE THAT KUNS HAD NO PERSONAL LIABILITY VIOLATED THE CCRAA

The CCRAA does not prohibit Ocwen from reporting the deficiency, but it did require Ocwen to report the deficiency accurately and completely. Ocwen violated the CCRAA because its reporting failed to note that Ocwen could never hold Kuns personally liable for the deficiency under California Code of Civil Procedure sections 580b and 580d. Ocwen violated the CCRAA where it "continued to report the [deficiency] in a manner that *suggests it could still collect*

*on it*," even though it could not. *Wang*, 681 F. Supp. 2d at 1149 (CCRAA claim stated where defendant reported debt but previously dismissed collection suit against plaintiff).

Ocwen extensively cites *Herrera v. LCS Financial Services Corp.*, No. 09-02843, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) ("*Herrera I*"). *Herrera I* and that court's subsequent decision in *Herrera v. LCS Financial Services Corp.*, No. 09-02843, 2009 WL 5062192 (N.D. Cal. Dec. 22, 2009) ("*Herrera II*") indeed frame the central issue in Ocwen's Motion: whether California's anti-deficiency laws impact how a deficiency can be reported under the CCRAA.

The court in *Herrera I* closely examined the anti-deficiency laws and held that, while they do not eliminate debts from foreclosure deficiencies, they do bar *personal liability* on such debts. *Herrera I*, 2009 WL 2912517, at *8 ("[s]ection 580b, by its own terms, eliminates a creditor's ability to seek a deficiency judgment, but it does not eliminate the underlying debt"). Thus, *Herrera I* held that Ocwen (the same defendant in this action) did not violate the law merely by requesting voluntary payment of such a deficiency from the plaintiff. *Id*. at *8. However, the *Herrera* court "invited [the plaintiff] to file an amended complaint alleging that the *content* of the communications made them unlawful." *Herrera II*, 2009 WL 5062192,*4 (emphasis in original). *Herrera II* held that that, because Ocwen's communication to the plaintiff could only be "understood as an order to 'submit payment,' not a request," it was misleading and unlawful. *Id*. at *5. The same analysis applies here. Kuns does not assert Ocwen could not report the deficiency at all. Rather, Ocwen violated the law because it reported the deficiency in a manner which misleadly implied (if not stated explicitly) that Ocwen could hold Kuns personally liable for the deficiency – when it could not. *Cf. Wang*, 681 F. Supp. 2d at 1149.

Kuns first analyzes the California anti-deficiency laws at issue and then analyzes the interplay between those laws and the CCRAA. Ocwen's analogy to a

**ER 115**

statute of limitations defense has already been rejected: unlike a statute of limitations defense, the anti-deficiency laws bar personal liability altogether and cannot be waived. *Herrera I*, 2009 WL 2912517, at *5.

A.     **Under California's Anti-Deficiency Laws, Kuns Could Not Be Liable for the Deficiency Reported by Ocwen**

Ocwen reported the deficiency from the December 2009 non-judicial foreclosure on Kuns's Nevada City residence to the CRAs. (Pl's. Compl. ¶¶1-2.) Ocwen concedes that, under Code of Civil Procedure sections 580b and 580d, it cannot obtain a judgment against Kuns for this deficiency. (Def.'s Mot. at 5.) Deficiency judgments are defined as "a personal judgment against a debtor for a recovery of the secured debt measured by the difference between the debt and the net proceeds received from the foreclosure sale." *Dreyfuss v. Union Bank of Cal.*, 24 Cal. 4th 400, 407 (2000) (citations omitted). Section 580b prohibits deficiency judgments on purchase money mortgages for personal residences (used by less than five families):

> No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

Cal. Code Civ. Proc. § 580b. Section 580b "stabilizes purchase money secured land sales by keeping the vendor from overvaluing the property and by suggesting to the purchaser its true value," and "prevents the aggravation of the [decline in property values] that would result if defaulting purchasers were burdened with large personal liability." *Herrera I*, 2009 WL 2912517, at *3 (citations omitted). Likewise, section 580d prohibits deficiency judgments arising from non-judicial foreclosures:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years

> therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

Cal. Code Civ. Proc. § 580d. Section 580d is also intended "to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies." *Commonwealth Mortgage Assurance Co. v. Superior Court*, 211 Cal.App.3d 508, 514, 516 (1989). *See also Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 43 (1963) (intended effect of section 580d was to ensure "the security satisf[ied] a realistic share of the debt").[1]

The effect of sections 580b and 580d is that Kuns cannot be made personally liable for the deficiency that Ocwen reported on his credit report. "Section 580b, by its own terms, eliminates a creditor's ability to seek a deficiency judgment[.]" *Herrera I*, 2009 WL 2912517, at *8. The same result applies under section 580d:

> The Legislature clearly intended to protect the debtor from personal liability following a nonjudicial sale of the security. No liability, direct or indirect, should be imposed upon the debtor following a nonjudicial sale of the security.

*Union Bank v. Gradsky*, 265 Cal.App.2d 40, 46 (1968).[2] Even Ocwen does not dispute that Kuns is not personally liable for the deficiency reported on his credit report. (Def.'s Mot. at 5.)

## B. Ocwen's Credit Reporting Violated the CCRAA Because the Anti-Deficiency Laws Cannot Be Waived

Citing *Wang*, Ocwen asserts that the CCRAA does not impose any "duty on Ocwen to report the existence of any potential defenses . . . which may only become relevant if a suit were to be filed against the borrower." (Def.'s Mot. at 6.)

---

[1] Indeed, all of California's anti-deficiency laws share these same purposes. *See Torrey Pines Bank v. Hoffman*, 231 Cal.App.3d 308, 318 (1991) (purpose of anti-deficiency laws generally is "to prevent an overvaluation of the security," and "to prevent the aggravation of an economic recession"); *Guild Mortgage Co. v. Heller*, 193 Cal.App.3d 1505, 1511 (1987) (anti-deficiency laws generally designed "to protect debtors in certain situations from personal liability for large deficiency judgments" and to thereby "prevent[] aggravation of the economic downturn"; citation omitted).

[2] *See also Bank of America, N.A. v. Mitchell*, 204 Cal.App.4th 1199, 1205 (2012) ("[t]he effect of section 580d is that a [mortgagee] cannot hold the debtor for a deficiency unless he uses the remedy of judicial foreclosure"); *Commonwealth Mortgage*, 211 Cal.App.3d at 516.

---

As set forth in section II.C below, the CCRAA's statutory language does not support an overbroad, categorical rule that section 1785.25(a) does not apply to affirmative defenses. Moreover, *Wang* does not support such a rule; rather, the basis for *Wang*'s decision was that a statute of limitations defense could be *waived*. *See Wang*, 681 F. Supp. 2d at 1148-49 (rejecting duty to report statute of limitations defense because "a debtor may waive this defense by failing to raise it"). While there is reason to question this logic, it simply does not apply here: *Herrera I* already rejected Ocwen's analogy to a statute of limitations precisely because California's anti-deficiency laws cannot be waived:

> [Ocwen's] analogy [to a statute of limitations defense] is *marred by a key distinction*. Since the statute of limitations is "an affirmative defense that is forfeited if not appropriately invoked by the defendant," it does not extinguish a creditor's ability to bring an action in the first instance. *Adams v. Paul*, [11 Cal.4th 583, 597 (1995)]. *Section 580b*, to the contrary, unequivocally bars deficiency judgments and *cannot be waived*. *DeBerard Properties v. Lim*, [20 Cal.4th 659, 662 (1999)].

*Herrera I*, 2009 WL 2912517, at *5 (emphasis added). Debtors "cannot waive the provisions of the antideficiency legislation (Code Civ.Proc., ss 580a-580d), because those provisions are not solely for the debtor's benefit but are also for the protection of the public." *Union Bank*, 265 Cal.App.2d at 43 (citation omitted). *See also Cadle Co. II v. Harvey*, 83 Cal.App.4th 927, 930 (2000) ("any purported waiver of the protections [section 580b], which bars deficiency judgments following foreclosure of a purchase money secured obligation, is unenforceable against [debtor]"); *Commonwealth Mortgage*, 211 Cal.App.3d at 515 (same). Because the anti-deficiency laws are unwaivable, Ocwen's analogy to a statute of limitations defense fails under the logic of *Herrera* and *Wang*.

Rather, *Wang* supports the conclusion that Ocwen's credit-reporting violates section 1785.25(a). Ocwen cannot collect the deficiency from Kuns personally, but continues to report the deficiency as though it could. *Wang* held that a defendant violated the CCRAA by "*continu[ing] to report [a] debt in a manner that*

*suggest[ed] [the defendant] could still collect on it,"* even though the defendant previously dismissed a prior state court action to collect that debt and could not collect that debt. *Id.* (emphasis added).

### C. Ocwen Violated the CCRAA Because the Fact that Kuns Is Not Personally Liable Was a Material Omission

Ocwen proposes a nonsensical rule that CCRAA does not apply to affirmative defenses. Rather, the standard of liability under the CCRAA is whether the information furnished to a CRA is, on the whole, *materially misleading*. This is the standard of liability under the federal Fair Credit Reporting Act ("FCRA"). Case law under the FCRA is especially persuasive when construing the CCRAA: because of the close relationship between the two laws, "judicial interpretation of the [different provisions of the FCRA has been found to be] persuasive authority and entitled to substantial weight when interpreting the [CCRAA]." *Olson v. Six Rivers Nat. Bank*, 111 Cal.App.4th 1, 12 (2003). Under the FRCA, information furnished to a CRA is "incomplete" if it contains "omissions that render the reported information misleading," and a report is "inaccurate" if it "provides information in such a manner as to create a materially misleading impression." *Saunders v. Branch Banking and Trust Co. of V.*, 526 F.3d 142, 148 (4th Cir. 2008). *See also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citing, following *Saunders*; information furnished to a CRA is "incomplete or inaccurate" under FCRA if it "could materially alter how the reported debt is understood"). Because the CCRAA uses the same language as the FCRA, same "materially misleading" standard applies. *Cf.* Cal. Civ. Code § 1785.25(a) (prohibiting "inaccurate or incomplete" information).

This standard is consistent with *Herrera II*, which held that the "*content* of [Ocwen's] communications" was unlawful because those communications were likely to mislead debtors about their liability on the deficiencies Ocwen sought to

**ER 119**

collect. *Herrera II*, 2009 WL 5062192, at *4, *5 (emphasis in original). Here, it is highly significant (if not outright dispositive) that Ocwen's credit reporting does not distinguish between deficiencies which are barred by sections 580b and 580d and those which are not. Ocwen asserts in the declaration of Sandra Lyew that it reports 4,730 loans to the CRAs as having a positive balance on a deficiency after the foreclosure of a California property. (Dkt. #3 ¶3.) Ocwen also avers that it "cannot ascertain whether any of the properties associated with the 4,730 loans were foreclosed judicially without a loan-by-loan analysis." (*Id*.) **Ocwen itself cannot determine whether these deficiencies are subject to section 580d – and whether the underlying consumers are therefore personally liable or not – by examining the information it reports to the CRAs**.

At the very least, the question of whether Ocwen's omission was material is an issue of fact. "Whether an omission was 'misleading in such a way and to such an extent that it can be expected to have an adverse effect,' and thus is an 'inaccuracy,' is generally a question for the jury." *Valentine v. First Advantage Saferent, Inc.*, No. 08-142, 2009 WL 4349694, *8 (C.D. Cal. Nov. 23, 2009) (quoting *Saunders*, 526 F.3d at 150; other citations omitted). *Cf. Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 976 (1997) ("materiality is generally a question of fact"). Kuns's CCRAA claim cannot be dismissed on a Rule 12(b)(6) motion.

### D. Ocwen's Post-Bankruptcy Reporting Was Materially Misleading

After Kuns declared bankruptcy on June 16, 2011, Ocwen reported to the CRAS that Kuns's liability was discharged in bankruptcy. In fact, Kuns's exposure to personal liability ended after the non-judicial foreclosure on his home in December 21, 2009. By misrepresenting both the date and nature of when Kuns's exposure to personal liability ended, Ocwen ensures that the CRAs will include the deficiency on Kuns's credit report for years after it should be purged. Both the FCRA and CCRAA "limit the amount of time [bankruptcies may be reported] to a

**ER 120**

maximum of ten years." *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006). *Cf.* 15 U.S.C. § 1681c(a)(1); Cal. Civ. Code § 1785.13(c). Conversely, "[a]ccounts placed for collection" and "other adverse item[s] of information" can only be reported on a credit report for seven years. *Cf.* Cal. Civ. Code § 1785.13(a)(5), (7). *See also* 15 U.S.C. § 1681c(a)(4), (5) (same).

Hence, Ocwen's tradeline will be reported on Kuns's credit report until **June 16, 2021** when it should be expunged from his credit report by **December 21, 2016**. Misstatements which cause the CRAs to report adverse information longer than permitted are actionable. *Daley v. A & S Collection Associates, Inc.*, 717 F. Supp. 2d 1150 (D. Or. 2010) entered summary judgment on an FDCPA claim against a defendant which misreported the delinquency date on a debt to CRAs (and were therefore materially false). *See id.* at 1154-55.

> It is true, and [the defendant] was likely aware, that had it reported the [correct] delinquency date [the CRAs] would not have reported it on [the plaintiff's] credit report because it was older than seven years.

*Id.* at 1155. Ocwen's June 2011 credit-reporting is materially misleading and therefore subject to liability under the CCRAA.[3]

### E. Section 1785.25(a) Provides for Liability Against Furnishers

In a footnote, Ocwen asserts the CCRAA does not provide a cause of action against persons which furnish information to CRAs. (Def.'s Mot. at 8 n.4.) The CCRAA provides a private right of action to "[a]ny consumer who suffers damages as a result of a violation of this title by ***any person***," and

---

[3] *See also Maloney v. LVNV Funding LLC*, No. 06- 0452, 2006 WL 3006484, *1, *3-5 (N.D. Tex. Oct. 20, 2006) (FCRA and FDCPA claim for improperly continuing to report account that defaulted years as "open"); *Agosta v. InoVision, Inc.*, No. 02-806, 2003 WL 23009357, *2, *4 (E.D. Pa. Dec. 16, 2003) (FCRA claim for failure to properly report first date of delinquency, causing debt to be reported after it should have been purged). *Cf. Rosenberg v. Cavalry Investments, LLC*, No. 03-1087, 2005 WL 2490353 (D. Conn. Sept. 30, 2005) (denying summary judgment where plaintiff's evidence indicated that reported debt should have been purged); *Thomas v. NCO Fin. Sys., Inc.*, No. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) (FDCPA claim where changing date of last activity caused debt to be reported beyond the period permitted by law).

> [n]otwithstanding any other provision of this section, **any person** who willfully violates any requirement imposed under this title may be liable for punitive damages in the case of a class action, in an amount that the court may allow.

Cal. Civ. Code § 1785.31(a), (c). CCRAA section 1785.25(a) prohibits "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The Ninth Circuit has held that a consumer may state a CCRAA claim against a furnisher of inaccurate information. *See Gorman*, 584 F.3d at 1169-73. Likewise, California state courts have recognized furnishers can be held liable under the CCRAA. *Sanai v. Saltz*, 170 Cal.App.4th 746, 770-71 (2009).

Notwithstanding section 1785.31's provision of a right of action under against "any person" who violates the CCRAA, *Pulver v. Avco Financial Services*, 182 Cal.App.3d 622 (1986) held that the CCRAA did not provide a right of action against "one who furnishes information to a credit reporting agency." *Id*. at 634. **Notably, however, section 1785.25(a) was not enacted until 1992 – six years after *Pulver* was decided**.[4] Ocwen relies entirely on *Miller v. Bank of America, N.A.*, No. 11-2588, 2012 WL 3962456 (S.D. Cal. Sept. 10, 2012). (Def.'s Mot. at 8 n.4.) *Miller*, in turn, relies entirely on *Pulver* and *Davis v. Maryland Bank*, No. 00-04191, 2002 WL 32713429, *13 (N.D. Cal. June 19, 2002). None of these cases attempt to distinguish *Gorman* or *Sanai* in any way. *Pulver* was decided before the CCRAA imposed any obligations on furnishers. Both *Miller* and *Davis* cite *Pulver* without analysis, and fail to address the fact that section 1785.25(a) was enacted **after** *Pulver* in any way.

## III.   KUNS'S JUNE 2011 BANKRUPTCY DOES NOT BAR HIS CLAIMS

Ocwen's second major argument is that the bankruptcy estate owns Kuns's CCRAA claims and only Kuns's trustee can bring those claims. (Def.'s Mot. at 8-13.) The bankruptcy estate only owned the portions of the CCRAA claim which

---

[4]  *See* Assembly Bill No. 1692, ch. 1194, § 11 (Cal. 1992).

**ER 122**

(1) were not exempt and (2) accrued prior to Kuns filing his bankruptcy petition. Further, the trustee here has already *abandoned Kuns's CCRAA claim*. Kuns has cured the standing defect alleged by Ocwen, and any inadvertent errors in failing to list the CCRAA claim on his initial is not the kind of misconduct that would lead to judicial estoppel of the CCRAA claim.

### A. Ocwen Does Not Contend Kuns Lacks Standing to Bring His Post-Bankruptcy Claim

Ocwen does not contend that Kuns lacks standing to bring his post-bankruptcy claims relating to the improper reporting of the deficiency as discharged in the June 2011 bankruptcy rather than eliminated in the December 2009 foreclosure. "A cause of action is exempt from the proceedings if it accrues after a debtor files for bankruptcy since 'generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy.'" *Coward v. JP Morgan Chase Bank, N.A.*, No. 11-03378, 2012 WL 1552773, *2 (E.D. Cal. Apr. 30, 2012) (quoting *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001)).

### B. Kuns Cured Any Standing Defects Related to His Pre-Bankruptcy Claim Because the Trustee Has Abandoned Such Claims

Ocwen asserts that Kuns "is not the real party in interest to this action" because the bankruptcy estate owns any claims that arose prior to his bankruptcy. Even if this were true, it could not warrant the outright dismissal of the case:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.

Fed. R. Civ. Pro. 17(a)(3). Applying Rule 17, courts have typically provided plaintiffs the opportunity to (1) show the claims fall under an exemption from the bankruptcy estate; (2) show that the trustee has abandoned the claims; (3) show that the trustee has ratified the action; or (4) substitute in or join the trustee. *Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d 1199, 1207 (S.D. Cal. 2009). *See also Jordan v. Paul Financial, LLC*, No. 07-4496, 2012 WL 3647759, *7 (N.D.

---

**ER 123**

Cal. Aug. 23, 2012) (Rule 17 requires opportunity to cure standing defect created by prior bankruptcy). Consequently, a consensus has emerged in courts in this Circuit that previously-bankrupt plaintiffs must receive an opportunity to cure any standing issue arising from the fact that their claims belonged to the bankruptcy estate when the complaint was filed.[5]

Here, Kuns has taken that opportunity and cured any standing problem identified by Ocwen.

1. On September 5, 2012, Kuns filed amended bankruptcy schedules B and C to both disclose the CCRAA cause of action as pre-petition property and claim the cause of action as an exempt asset. (Preston Decl. for RJN ¶3.) Kuns had $14,100 remaining in bankruptcy exemptions under California Code of Civil Procedure section 703.140(b)(1), (5).

2. Simultaneously, Kuns filed a motion to reopen his bankruptcy case to give the trustee an opportunity to administer any newly-disclosed property of the estate. (*Id.* ¶4.)

3. The bankruptcy court reopened Kuns's bankruptcy case on September 13, 2012. (*Id.* ¶5.) The next day, the bankruptcy trustee filed a notice that he intended to "abandon any and all interest or claim the estate may have in the Debtor's personal property commonly described as *Kuns v. Ocwen Loan Servicing, LLC* (the 'property')." (*Id.* ¶6.) The trustee indicated that he "investigated the value of the Property and concluded there is no realizable equity for the estate." (*Id.*)

4. The trustee further indicated that the property would be abandoned without further notice or hearing unless an interested party filed an objection. The trustee's notice of abandonment was properly served by mail on all interested parties (*See* proof of service for Ex. 5 to Preston Decl. for RJN.) Under the applicable local rules, all interested parties had fourteen days to object to the abandonment of

---

[5] *See also Flowers v. Wells Fargo Bank, N.A.*, No. 11-1315, 2011 WL 2748650, *4 (N.D. Cal. July 13, 2011) (granting leave to amend complaint "to allege either that her claims fall under a Bankruptcy Code exemption, or that they have been abandoned by the bankruptcy trustee"; citing *Rowland*); *Macias v. WMC Mortg. Corp.*, No. 09-1374, 2010 WL 114006, *3-4 (S.D. Cal. Jan. 6, 2010) (providing plaintiff opportunity to cure standing defect under Rule 17(a)(3); citing *Runaj, Cobb*); *Cobb v. Aurora Loan Servs., LLC*, 408 B.R. 351, 354 (E.D. Cal. 2009) (citing *Rowland*; to show standing, plaintiff-debtor "must either show that his or her claims are exempt from the bankruptcy estate or were abandoned by the bankruptcy trustee"); *Hernandez v. Downey Savings and Loan Ass'n*, No. 08-2336, 2009 WL 704381, *5 (S.D. Cal. Mar. 17, 2009) (citing *Rowland*; a bankrupt plaintiff "may take steps to cure the standing problem, such as by substituting the bankruptcy trustee or showing the Court why it is not necessary to do").

the CCRAA claim and request a hearing before the bankruptcy court. *See* Bankr. C.D. Cal. R. 6007-1, 9013-1(o)(1), (3).

5. The bankruptcy court re-closed the case on October 3, 2012, after the deadline for objection and request for a hearing elapsed. (Preston Decl. for RJN ¶2, 7.) The bankruptcy court held that "it appears that no further matters are required that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed." (*Id.* ¶2.)[6]

Kuns cured any standing defect by filing amended bankruptcy schedules which listed the CCRAA claim as exempt property. *Kurchack v. Life Ins. Co. of N. Am.*, 725 F. Supp. 2d 855, 862 (D. Ariz. 2010) (even though initial bankruptcy schedules did not list pre-petition claim, plaintiff "cured the prudential standing defect by amending his bankruptcy Schedules to list his claim . . . as exempt"). *See also Rowland v. Novus Fin. Corp.*, 949 F. Supp. 1447, 1454 (D. Haw. 1996) (debtor who can show that his claim "is exempt from the bankruptcy estate . . . has standing" to assert that claim). Even if Kuns pre-petition claim was not entirely exempt, any remaining standing defect was cured when the trustee abandoned the claim. "[W]hen a trustee abandons a claim, a debtor regains standing to bring that claim because 'upon abandonment, the debtor's interest in the property is restored *nunc pro tunc* as of the filing of the bankruptcy petition.'" *In re Kreisel*, 399 B.R. 679, 687 (Bankr. C.D. Cal. 2008) (quoting *Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002)). *Cf. Rowland*, 949 F. Supp. at 1454, 1461 (plaintiff could cure standing defect by demonstrating, *e.g.*, trustee abandoned claim).[7] The bankruptcy trustee's estimation that the estate had no equity in

---

[6]  11 U.S.C. § 554(a) did not require an actual hearing for the trustee to effectively abandon the claim. "'[N]otice and a hearing' really means notice and the *opportunity* for a hearing. In fact the Bankruptcy Code is explicit in defining 'after notice and a hearing' as 'authorizing an act without an actual hearing if such notice is given properly' and no interested party requests a hearing." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) (quoting 11 U.S.C. § 102(1); citing *In re Trim-X, Inc.*, 695 F.2d 296, 300 (7th Cir. 1982) ("trustee may abandon property without involvement of the court if no party in interest objects to the action")).

[7]  *See also Walton v. Allstate Ins. Co.*, 222 Fed. Appx. 544, 545 (9th Cir. 2007) (remanding for referral to bankruptcy court where plaintiff could "gain standing if the bankruptcy trustee were to abandon the claim"); *Just Film, Inc. v. Merchant Servs., Inc.*, No. 10-1993, 2012 WL 1997031, *3 (N.D. Cal. June 4,

Kuns's CCRAA claim (after application of his remaining exemptions) cannot be second-guessed by Ocwen. "[M]istakes in valuation will not enable a trustee to recover an abandoned asset, not even upon subsequent discovery that the property has a greater value than previously believed." *Cusano*, 264 F.3d at 946 (citations, punctuation omitted). *See also Kurchack*, 725 F. Supp. 2d at 859 (bankruptcy court, "not the district court, is charged with determining whether [assets] are exempt").

### C. Ocwen Confuses the Difference Between Constitutional Standing and Prudential Standing

Despite the weight of authority that shows such standing defects can be cured, Ocwen still argues that Kuns cannot cure because he "lacked standing to assert this claim at the time he filed his complaint." (Def.'s Mot. at 11.) Ocwen confuses the difference between prudential standing and constitutional standing.

Ocwen's cases address constitutional standing, but Ocwen's opening brief does not raise Kuns's *constitutional* standing.[8] Rather, Ocwen argues Kuns "lack[s] standing" because his claim "belonged to the [bankruptcy] estate": this argument runs to "the judicially imposed prudential rule of standing that bars a litigant from asserting the rights of others." *In re Crevier*, 820 F.2d 1553, 1555 (9th Cir. 1987). The Ninth Circuit has "specifically distinguished between constitutional standing and 'third-party' standing to bring a claim to which another holds title." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 900 (9th Cir. 2000). Kuns can readily cure such defects in *prudential* standing even after his complaint was filed:

> When a party fails to schedule a claim in bankruptcy, that claim remains the property of the bankruptcy estate even after discharge, and the debtor lacks prudential standing to pursue it. *See Dunmore v. United States*, 358 F.3d 1107, 1110-12 (9th Cir. 2004) . . . A

---

[8] 2012) (debtor can "re-gain standing if the bankruptcy trustee abandons the claims"; citing *Rowland*).
*Cf.* Def.'s Mot. at 11 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 850 (9th Cir. 2007)).

**ER 126**

plaintiff's lack of prudential standing, however, can be cured if the property is exempt from the estate.

*Kurchack*, 725 F. Supp. 2d at 861 (plaintiff cured defect in prudential standing after complaint filed by amending his bankruptcy schedules to list claim as exempt). *See also Dunmore*, 358 F.3d at 1111, 1113 (plaintiff had "constitutional standing" and could "cure his prudential standing defect" by reopening his bankruptcy case and amending bankruptcy schedules); *Schneider v. Unum Life Ins. Co. of Am.*, No. 05-1402, 2008 WL 1995459, *4 (D. Or. May 6, 2008) (recognizing bankrupt plaintiff's constitutional standing, giving opportunity to cure prudential standing after complaint filed).

### D. Judicial Estoppel Does Not Apply Because Kuns's Failure to List the CCRAA Claim Was Inadvertent

Ocwen argues that Kuns "gained an unfair advantage by not disclosing this action" in his original bankruptcy schedules and so he should be judicially estopped from pursuing his CCRAA claim. (Def.'s Mot. at 13 n.7.) This argument faces increasing criticism from the bench: the "judicial estoppel defense to the basic unscheduled cause of action is meretricious and potentially inexpedient . . . " *Snider v. Sherman*, No. 03-6605, 2007 WL 1174441, *36 (E.D. Cal. Apr. 19, 2007) (quoting *In re Lopez*, 283 B.R. 22, 31 (9th Cir. BAP 2002) (J., Klein, concurring)).

> The expedient solution to this dilemma is to require the parties to return to bankruptcy court for reopening so that a trustee can be appointed to deal with the cause of action that is property of the estate. The trustee has authority to act for the benefit of the estate and may sell the cause of action, prosecute it in nonbankruptcy court, settle it, or abandon it to the debtor as of inconsequential value to the estate.

*Id.* at *38 (quoting *In re Lopez*, 283 B.R. at 32-33 (J., Klein, concurring)). Kuns did what was needed to remedy the situation: he "reopen[ed] his bankruptcy case, thereby giving the bankruptcy trustee an opportunity to administer the unscheduled claims." *Zone Sports Ctr. LLC v. Red Head Inc.*, No. 11-00634, 2011 WL 3862007, *3 (N.D. Cal. Sept. 1, 2011) (quoting *Dunmore*, 358 F.3d at 1113 n.3). This approach moots any unfair advantage by subjecting to Kuns to the "risk[] that

the trustee would retain, rather than abandon, the [CCRAA] claims." *Id.* (same). Once the "bankruptcy case was reopened and . . . the trustee was given an opportunity to administer the unscheduled claims," the "inconsistent positions [taken in Kuns's initial bankruptcy papers were] remedied." *Id.*

Kuns's omission of his CCRAA claim his original bankruptcy schedules when he filed his bankruptcy petition in June 2011 was the result of "an understandable mistake and not a strategic decision." *Dunmore*, 358 F.3d at 1112. The phrase "understandable mistake" is "broadly" construed to encompass a debtor's inadvertent failure to list pre-petition claims on his bankruptcy schedules. *In re Kreisel*, 399 B.R. at 698 ("modern decisions are inclined to be lenient when an honest mistake," holding that trustee's abandonment of claims "suggest[ed]" debtor made "understandable mistake and not a strategic decision."). Kuns's error was inadvertent: neither Kuns nor his bankruptcy counsel were aware that Kuns had a CCRAA claim at the time the June 2011 bankruptcy petition (or even that the CCRAA existed). Indeed, Kuns's CCRAA claim was not conceived until 2012, after intensive research into the CCRAA and California's anti-deficiency laws by all Kuns's counsel. After the standing issue was brought to his attention, Kuns promptly did everything he could to remedy the matter. There was no intent to "game the system," and Ocwen cannot point to any evidence of bad faith by Kuns.

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991). Its application is nonetheless restricted to fit its purpose: "to protect the integrity of the judicial process." *Id.*

> [J]udicial estoppel seeks to prevent the *deliberate* manipulation of the courts, and therefore should not apply when a party's prior position was based on inadvertence or mistake. . . . If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply[.]

*United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (citations,

**ER 128**

punctuation omitted; emphasis in original). This same standard applies to the argument that Kuns should be judicially estopped because he did not initially identify his CCRAA claim in his bankruptcy schedules. *See Just Film, Inc. v. Merchant Servs., Inc.*, 2012 WL 1997031, *5; *Kurchack*, 725 F. Supp. 2d at 858; *Valdez v. JDR LLC*, No. 04-1620, 2006 WL 2038456, *2 (D. Ariz. July 20, 2006). Judicial estoppel is reserved for "playing 'fast and loose' with the courts," and requires "more egregious conduct than just 'threshold' inconsistency." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993).

Judicial estoppel is particularly inappropriate here where Kuns's initial omission of the CCRAA claim did not harm *Ocwen* at all, and where "application of the doctrine would provide a windfall to [Ocwen] at the expense of the members of the putative class." *Just Film, Inc. v. Merchant Servs., Inc.*, 2012 WL 1997031, at *6. Again, judicial estoppel is inappropriate where Kuns's claim was exempt in any event. *See Kurchack*, 725 F. Supp. 2d at 861 (where claim was exempt anyway, "late amendment is unlikely to present any inequity"). *See also Moreno v. Autozone, Inc.*, No. 05-4432, 2007 WL 1063433, *7 (N.D. Cal. Apr. 9, 2007) (rejecting judicial estoppel where value of undisclosed claims was "uncertain, and the effect, if any, that disclosure would have had on the course of the bankruptcy proceedings is purely speculative"). While Ocwen quotes broad language from *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001), it is clear that judicial estoppel does not apply every time a debtor fails to list a claim on his initial bankruptcy schedules. (*Cf.* Def.'s Mot. at 12 *with*, *e.g.*, *Dunmore*, 358 F.3d at 1110-12.) Indeed, it is helpful to contrast Kuns's situation with the facts in *Hamilton*:

> In *Hamilton*, the plaintiff deliberately concealed the possible suit against his insurance carrier from the bankruptcy court. *Id.* at 781. This seemingly insignificant fact is very important . . . [T]he party to be estopped must have acted intentionally, not inadvertently. . . . The mere failure to list the charge in the bankruptcy proceeding will not support a finding of intent [sufficient for judicial estoppel.]

**ER 129**

*Valdez*, 2006 WL 2038456, at *2-3. Likewise, there was no deliberate deception here, only a consumer who was not informed that he had a claim until after his bankruptcy. There is no evidence of gamesmanship that might warrant judicial estoppel. *Cf. Hernandez v. IndyMac Bank*, No. 12-00369, 2012 WL 3860646, *6 (D. Nev. Sept. 5, 2012) (even though facts of debtor's claims were "visible at the time of the bankruptcy," judicial estoppel was not appropriate "[g]iven the complexity of the foreclosure process and the confusing array of documents at issue").

## IV.   CONCLUSION

The Court should deny Ocwen's Motion to Dismiss. Ocwen violated the CCRAA by reporting Kuns's mortgage in a manner that suggested it could collect a deficiency judgment against Kuns even though there is no dispute that Kuns is not personally liable for that deficiency. Ocwen also violated the CCRAA by asserting that Kuns's liability was extinguished in bankruptcy in June 2011 rather than a non-judicial foreclosure in December 2009 – extending the time Ocwen's tradeline will be reported on Kuns's credit report from December 2016 to June 2021.

Kuns also has standing to bring these claims. Kuns has cured any standing defect, and his inadvertent failure to list the CCRAA claim on his bankruptcy schedules is not grounds for judicial estoppel.

Dated: October 5, 2012   By:   s/Ethan Preston

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES

**ER 130**

8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns,*
*on his own behalf, and behalf of all*
*others similarly situated*

ER 131

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that copies of the attached documents were this date served upon the parties below Fed. R. Civ. P. 5(b) by causing copies of such documents to be transmitted to parties below through the Electronic Filing System in the manner prescribed by the Court's General Order 10-07 ¶IV on the date below:

Elizabeth Lemond McKeen
Danielle Nicole Oakley
Edgar H Martinez
O'Melveny and Myers LLP
610 Newport Center Drive Suite 1700
Newport Beach, CA 92660-6429
emckeen@omm.com
doakley@omm.com
emartinez@omm.com

*Attorneys for Ocwen Loan Servicing, LLC*

Dated: October 5, 2012      By:   s/Ethan Preston

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffery Kuns,*
*on his own behalf, and behalf of all*
*others similarly situated*

1    ELIZABETH L. MCKEEN (S.B. #216690)
     emckeen@omm.com
2    DANIELLE N. OAKLEY (S.B. #246295)
     doakley@omm.com
3    EDGAR H. MARTINEZ (S.B. #255503)
     emartinez@omm.com
4    O'MELVENY & MYERS LLP
     610 Newport Center Drive, 17th Floor
5    Newport Beach, California 92660-6429
     Telephone: (949) 823-6900
6    Facsimile: (949) 823-6994

7    Attorneys for Defendant
     Ocwen Loan Servicing, LLC

8

9            **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

12    JEFFREY KUNS, an individual, on his    Case No. CV12-7118-DMG-PLA
     own behalf and on behalf of all others
13    similarly situated,                **NOTICE OF MOTION AND**
                                   **MOTION TO DISMISS**
14              Plaintiffs,          **PLAINTIFF'S CLASS ACTION**
                                   **COMPLAINT; MEMORANDUM**
15        v.                        **OF POINTS AND**
                                   **AUTHORITIES IN SUPPORT**
16    OCWEN LOAN SERVICING, LLC, a
     Delaware limited liability company, and    **[REQUEST FOR JUDICIAL**
17    DOES 1-100, inclusive,           **NOTICE AND DECLARATION**
                                   **OF DANIELLE N. OAKLEY IN**
18              Defendants.       **SUPPORT THEREOF FILED**
                                   **CONCURRENTLY HEREWITH]**
19

20                               Hearing Date: October 19, 2012
                              Time: 9:30 a.m.
21                               Place: Courtroom 7
                              Judge: Hon. Dolly M. Gee

22

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 19, 2012, at 9:30 a.m., in Courtroom 7 of this Court, located at 312 N. Spring Street, Los Angeles, California 90012, defendant Ocwen Loan Servicing, LLC will and hereby does move the Court for an order dismissing the claim asserted against it in plaintiff's Class Action Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the Request for Judicial Notice and Declaration of Danielle N. Oakley and the exhibits attached thereto filed concurrently herewith, the argument of counsel, all of the pleadings and other papers on file in this action, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 30, 2012 and September 11, 2012.

Dated: September 19, 2012    ELIZABETH L. MCKEEN
                             DANIELLE N. OAKLEY
                             EDGAR H. MARTINEZ
                             O'MELVENY & MYERS LLP


                             By:    /s/ Elizabeth L. McKeen
                                    Elizabeth L. McKeen
                             Attorneys for Defendants
                             Ocwen Loan Servicing, LLC

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

**ER 134**

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

I.      OCWEN ACCURATELY AND COMPLETELY REPORTED THAT PLAINTIFF'S DEFICIENCY BALANCE REMAINED DUE AND OWING POST-FORECLOSURE.........................................................................2

     A.     The Anti-Deficiency Statutes Do Not Extinguish A Borrower's Debt. .................................................................................................3

     B.     The CCRAA Imposes No Obligation On Ocwen To Report That A Deficiency Judgment May Not Be Obtained Relating To A Borrower's Debt. ...............................................................................6

     C.     Plaintiff Is Barred From Bringing This Suit Because He Did Not List His Claim On His Schedule Of Assets In His Chapter 7 Bankruptcy Proceeding. ...................................................................8

         1.     Plaintiff Lacks Standing To Bring The Present Suit Because The Claim Remains Property Of The Bankruptcy Estate.......................................................................................8

         2.     Plaintiff is Judicially Estopped From Asserting This Claim..............................................................................12

CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. City Bank v. Zetlen*,
    253 Cal. App. 2d 548 (1967) ............................................................... 7

*Armsey v. Channel Assocs., Inc.*,
    184 Cal. App. 3d 833 (1986) ............................................................... 5

*Banga v. Allstate Ins. Co.*,
    No. 2:08–cv–1518-LKK-EFB PS, 2012 WL 3704921 (E.D. Cal.
    Aug. 24, 2012) ............................................................................... 2, 6

*Bennett v. Flagstar Bank*,
    No. CV 210–181, 2011 WL 6152940 (S.D. Ga. Dec. 8, 2011) ........................ 10

*Conley v. Matthes*,
    56 Cal. App. 4th 1453 (1997) ............................................................. 7

*Cusano v. Klein*,
    264 F.3d 936 (9th Cir. 2001) ........................................................... 8, 9

*Daniel v. Wells Fargo Bank, N.A.*,
    No. 2:11-cv-02652-MCE-EFB, 2012 WL 2118539 (E.D. Cal. June
    4, 2012) ...................................................................................... 12

*Estate of Spirtos v. One San Bernadino Cnty. Superior Court Case
    Numbered SPR 02211*,
    443 F.3d 1172 (9th Cir. 2006) ............................................................ 10

*Guillen v. Bank of Am. Corp.*,
    No. 5:10-cv-05825 EJD (PSG), 2011 WL 4071996 (N.D. Cal. Aug.
    31, 2011) ...................................................................................... 4

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) ..................................................... 8, 10, 12

*Henry v. Assocs. Home Equity Servs., Inc.*,
    272 B.R. 266 (C.D. Cal. 2002) ........................................................... 11

*Herrera v. LCS Fin. Servs. Corp.*,
    No. C09–02843 TEH, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) .......... 1, 3, 4

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Hodges v. Mark*,
    49 Cal. App. 4th 651 (1996) .................................................................5

*In re Coastal Plains, Inc.*,
    179 F.3d 197 (5th Cir. 1999) ............................................................10

*In re Dewsnup*,
    908 F.2d 588 (10th Cir. 1990) ...........................................................8

*In re Lopez*,
    283 B.R. 22 (B.A.P. 9th Cir. 2002) ..................................................10

*Johnston v. Discover Bank*,
    No. SACV-11-00628-JST (JCGx), 2011 WL 2420216 (C.D. Cal.
    June 16, 2011) ..................................................................................11

*Kerivan v. Title Ins. and Trust Co., Inc.*,
    147 Cal. App. 3d 225 (1983) ..............................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................2, 11

*Miller v. Bank of America, Nat'l Ass'n*,
    No. 11–CV–2588-MMA(BGS), 2012 WL 3962456 (S.D. Cal. Sept.
    10, 2012) .............................................................................................8

*Mortimer v. JP Morgan Chase Bank, Nat'l Ass'n*,
    No. C 12–1936 CW, 2012 WL 3155563 (N.D. Cal., Aug. 2, 2012) ...................2

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..........................................................................12

*Romo v. Stewart Title of California*,
    35 Cal. App. 4th 1609 (1995) ..........................................................4, 5

*Safley v. Wells Fargo, NA*,
    No. 2:12-CV-00795-JAM-CKD, 2012 WL 2371401 (E.D. Cal.
    June 21, 2012) ...............................................................................9, 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Sandres v. Corr. Corp. of Am.*,
No. 1:09-cv-1609-OWW-DLB, 2010 WL 4321587 (E.D. Cal. Oct. 26, 2010) ........................................................................................................ 11

*Simon v. Superior Court*,
4 Cal. App. 4th 63 (1992) ............................................................................... 7

*Skaff v. Meriden N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ........................................................................ 11

*Stein v. United Artists Corp.*,
691 F.2d 885 (9th Cir. 1982) .......................................................................... 9

*Union Bank v. Wendland*,
54 Cal. App. 3d 393 (1976) ............................................................................ 7

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........................................................................ 10

*Vreugdenhill v. Navistar Int'l Transp. Corp.*,
950 F.2d 524 (8th Cir. 1991) .......................................................................... 9

*Wang v. Asset Acceptance, LLC*,
681 F. Supp. 2d 1143 (N.D. Cal. 2010) ..................................................... 6, 7

**STATUTES**

11 U.S.C. § 554 ................................................................................................ 8, 9

Cal. Civ. Code § 1785.25(a) ........................................................................ passim

Cal. Civ. Code § 1785.31 ..................................................................................... 8

Cal. Civ. Code § 1788 ......................................................................................... 4

Cal. Civ. Proc. Code § 580b ........................................................................ passim

Cal. Civ. Proc. Code § 580d ........................................................................ passim

Cal. Civ. Proc. Code § 580e .............................................................................. 7

1
2

# TABLE OF AUTHORITIES
(continued)

**Page**

3  **RULES**

4  Fed. R. Civ. P. 12(b)(6) ............................................................................13

5  Fed. R. Evid. 201(b)(2)...........................................................................10

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ER 139

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Jeffrey Kuns has asserted a single cause of action against his mortgage servicer, Ocwen Loan Servicing, LLC ("Ocwen"), for alleged inaccurate or incomplete credit reporting in violation of California's Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.25(a) ("CCRAA"), based on the fact that Ocwen reported the $400,000 deficiency balance owing on plaintiff's mortgage account following the sale of his property in foreclosure. Yet there is no dispute that the amount of the deficiency as reported by Ocwen was accurate — plaintiff simply contends that Ocwen simply should not have reported the deficiency at all. Plaintiff's claim depends upon his contention that California's anti-deficiency statutes, Cal. Civ. Proc. Code §§ 580b and 580d, which preclude mortgagees from seeking deficiency *judgments* against borrowers whose properties have been foreclosed, extinguished the very existence of the debt altogether. But California state and federal courts uniformly agree that the anti-deficiency statutes do not extinguish the underlying debt — rather, they limit the availability of certain collection remedies. *E.g.*, *Herrera v. LCS Fin. Servs. Corp.*, No. C09–02843 TEH, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) (dismissing claim against Ocwen because the anti-deficiency statutes do not extinguish deficiency balances). Because plaintiff's deficiency still exists as a matter of California law, Ocwen acted appropriately in reporting it. Plaintiff cannot base a claim for an alleged violation of the CCRAA on Ocwen's accurate statements; therefore, his complaint should be dismissed with prejudice.

Plaintiff's complaint must also be dismissed because he lacks standing. Despite being aware of Ocwen's credit reporting, plaintiff did not disclose the existence of this claim among his assets listed in his Chapter 7 bankruptcy petition. (Ex. 1 (Plaintiff's Schedule of Assets) to Request for Judicial Notice ("RJN"), filed concurrently herewith.) Thus the Chapter 7 Trustee neither liquidated the claim

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

nor entered an order of abandonment with respect to the claim, and the claim was not relinquished to plaintiff when he was discharged from bankruptcy. (*See* RJN Ex. 2 (Docket Sheet).) The claim therefore remains the property of the bankruptcy estate, and the Chapter 7 Trustee is the only party with standing to assert this claim. Recognizing after the Local Rule 7-3 conference of counsel regarding this motion that his lack of standing would necessitate dismissal, plaintiff scrambled to reopen his bankruptcy and has sought an order of abandonment from the Chapter 7 Trustee. (*See* RJN Ex. 2.) But, eleventh hour attempts notwithstanding, plaintiff cannot cure his lack of standing *ex post facto*. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (recognizing the "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed"). Moreover, because plaintiff failed to identify this claim as an asset in his bankruptcy proceeding, he is judicially estopped from bringing the claim. Therefore, as discussed more fully below, plaintiff's claim must be dismissed with prejudice.

<u>**ARGUMENT**</u>

**I. OCWEN ACCURATELY AND COMPLETELY REPORTED THAT PLAINTIFF'S DEFICIENCY BALANCE REMAINED DUE AND OWING POST-FORECLOSURE.**

Section 1785.25(a) of the California Civil Code provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a); *see also Banga v. Allstate Ins. Co.*, No. 2:08–cv–1518-LKK-EFB PS, 2012 WL 3704921, at *6-7 (E.D. Cal. Aug. 24, 2012) (dismissing claim under Section 1785.25(a) with prejudice because exhibits to complaint confirmed the accuracy of the alleged reporting); *Mortimer v. JP Morgan Chase Bank, Nat'l Ass'n*, No. C 12–1936 CW, 2012 WL 3155563, at *4-5 (N.D. Cal., Aug. 2, 2012) (dismissing CCRAA claim for failure to allege an inaccuracy).

Plaintiff here alleges that Ocwen's credit reporting regarding plaintiff's

- 2 -

deficiency balance was inaccurate in two respects: first, he alleges that Ocwen's post-foreclosure, pre-bankruptcy reporting of plaintiff's deficiency balance was inaccurate because California's anti-deficiency statutes, Section 580b and 580d of the California Code of Civil Procedure, eliminated plaintiff's debt upon foreclosure (Compl. ¶¶17, 19); and second, he alleges that the post-bankruptcy reporting stating that the debt had been discharged in bankruptcy was false because, plaintiff suggests, plaintiff's liability for the debt had actually been extinguished in the earlier foreclosure. (*Id.* ¶¶18-19.) Plaintiff's claim fails because it assumes that the anti-deficiency statutes extinguished plaintiff's debt and that Section 1785.25(a) requires Ocwen to report affirmative defenses that may be raised with respect to debts, neither of which is true.

## A. *The Anti-Deficiency Statutes Do Not Extinguish A Borrower's Debt.*

Ocwen's reporting of plaintiff's deficiency balance after the foreclosure of plaintiff's property was accurate because, as numerous courts have expressly held, California's anti-deficiency statutes do not extinguish a debt formerly secured by property that was foreclosed.[1]

---

[1] The anti-deficiency statutes provide:

> *No deficiency judgment shall lie* in any event after a sale of real property . . . under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied entirely or in part, by the purchaser.

Cal. Code Civ. Proc. § 580b (emphasis added).

> *No judgment shall be rendered* for any deficiency upon a note secured by a deed of trust or mortgage upon real property . . . hereafter executed in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

Cal. Code Civ. Proc. § 580d (emphasis added).

In *Herrera v. LCS Fin. Servs. Corp.*, No. C09–02843 TEH, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009), the Northern District of California dismissed a claim against Ocwen, which relied on the same premise as does plaintiff's claim here—*i.e.*, that the anti-deficiency statutes eliminate remaining debt once the lien is extinguished by foreclosure.  In *Herrera*, plaintiff brought a putative class action alleging that Ocwen violated the Rosenthal Fair Debt Collections Practices Act, California Civil Code §§ 1788 *et seq.* ("RFDCPA") by attempting to collect a deficiency debt that had since become unsecured by way of a foreclosure sale of the mortgaged property.  Plaintiff alleged that because Ocwen would be unable to pursue a deficiency judgment against plaintiff for the amount of the deficiency, it was false or misleading under the RFDCPA for Ocwen to send communications suggesting that the debt was still owing.  The court granted Ocwen's motion to dismiss, ruling that Ocwen was able to attempt to collect the debt because the debt remained owing regardless of the fact that the anti-deficiency statutes would prevent Ocwen from obtaining a judgment against the borrower for the amount of the deficiency.  In so doing, the court found, "[t]he absence of personal liability is not equivalent to the absence of debt." *Id.* at \*7.  The court further explained that "[i]f the security is exhausted, it does not mean that the debt ceases to exist—it means only that the debt is unrecoverable because there can be no deficiency judgment against the debtor." *Id.*; *accord Guillen v. Bank of Am. Corp.*, No. 5:10-cv-05825 EJD (PSG), 2011 WL 4071996, at \*8 n.4 (N.D. Cal. Aug. 31, 2011) (citing *Herrera* and noting that, "[a]lthough [the mortgagee's] interest in the loans may have been entirely theoretical after the foreclosure sale, continued attempts to collect on the loans, as alleged by Plaintiff, are nonetheless plausible").

California's state courts agree that the anti-deficiency statutes do not extinguish the underlying debt.  Rather, they simply limit the collection remedies available to the mortgagee.  *E.g.*, *Romo v. Stewart Title of California*, 35 Cal. App. 4th 1609, 1615 n.5 (1995); *Kerivan v. Title Ins. and Trust Co., Inc.*, 147 Cal. App.

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

3d 225, 231 (1983). In *Romo*, the plaintiff, a junior lienholder who foreclosed on the subject property and acquired title through a full credit bid (*i.e.*, a bid for a full value of the indebtedness to her plus fees and costs) sought additional recovery from the defendant in an action for, *inter alia*, fraud, conversion, and negligent performance of fiduciary duties. In explaining what actions remained available to the plaintiff after acquiring the property for the value of the indebtedness, the court noted:

> Although the lender may not obtain a deficiency judgment after a foreclosure by power of sale (Code Civ. Proc. § 580d), ***the foreclosure does not extinguish the debt. The lender retains other remedies for collection of the unpaid balance of the debt.*** Thus, if the lender-beneficiary enters a bid below the full amount of the outstanding indebtedness (and is successful in acquiring the property), then in an action for impairment of security, he may recover the difference between the amount of his bid and the full amount of the outstanding indebtedness.

*Id.* at 1615 n.5 (emphasis added) (citations omitted); *see also Hodges v. Mark*, 49 Cal. App. 4th 651, 657 (1996) (Code Civ. Proc. § 580b "prohibits only a deficiency judgment in the strict sense, *i.e.*, a *personal judgment* against the debtor."); *Armsey v. Channel Assocs., Inc.*, 184 Cal. App. 3d 833, 837 (1986) ("While section 580b of the Code of Civil Procedure prohibits a judgment against a debtor following foreclosure, it does not prevent a creditor from realizing on additional security.").[2]

Here too, regardless of the fact that his debt was no longer judicially enforceable by way of an action to obtain a deficiency judgment against him, plaintiff's deficiency balance remained due and owing after the foreclosure of his

---

[2] The courts' interpretation squares with the text of the statutes, which on their face merely limit the remedies available to a mortgagee after the foreclosure of property that once secured residential mortgage debt. *See* Cal. Civ. Proc. Code §580b; Cal. Civ. Proc. Code § 580d.

- 5 -

property until the debt was discharged in his Chapter 7 bankruptcy.[3] Ocwen's reporting that the debt remained owing was therefore entirely accurate, as was Ocwen's reporting after plaintiff's bankruptcy that the debt had been discharged in bankruptcy (as opposed to having been extinguished prior to the bankruptcy). Aside from the existence of the remaining debt, plaintiff otherwise concedes the accuracy of Ocwen's reporting: plaintiff concedes that the property securing the debt was in fact sold at a foreclosure sale (Compl. ¶1); and he acknowledges the amount of the deficiency remaining after the sale (*Id.* at ¶17). With nothing left to challenge, plaintiff's claim that Ocwen's credit reporting was inaccurate under Section 1785.25(a) fails. *See Banga*, 2012 WL 3704921, at *6-7 (dismissing claim under Section 1785.25(a) with prejudice because exhibits to complaint confirmed the accuracy of the alleged reporting).

**B.    The CCRAA Imposes No Obligation On Ocwen To Report That A Deficiency Judgment May Not Be Obtained Relating To A Borrower's Debt.**

Plaintiff additionally contends that Ocwen's reporting of his deficiency balance was incomplete because it did not include some affirmative statement that a deficiency judgment could not be obtained against him. Such a theory does not support a claim under the CCRAA. Specifically, Section 1785.25(a) imposes no duty on Ocwen to report the existence of any potential defenses—including the anti-deficiency provisions of Sections 580b and 580d—which may only become relevant if a suit were to be filed against the borrower. *See Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148-49 (N.D. Cal. 2010) (Section 1785.25(a) does not impose a duty to report information regarding statute-of-limitations defense that may never be asserted).

In *Wang*, plaintiff alleged defendant violated Section 1785.25(a) by failing

---

[3] Plaintiff concedes that once the debt was discharged in his bankruptcy, Ocwen began reporting that plaintiff's liability for the debt had been discharged in the bankruptcy. (Compl. ¶18.)

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

to report that defendant would be barred by the statute of limitations from obtaining a judgment for the deficiency balance. *Id.* at 1148. The court rejected this theory, explaining that the plain language of the statute "contains no mention of an affirmative duty to report that a statute of limitations has expired." *Id.* at 1149. The court explained that its holding was further supported by the fact that (1) a statute of limitations does not operate to extinguish a debt, but merely bars recovery on a debt when properly asserted, and (2) the statute of limitations is an affirmative defense. *Id.* at 1148-49.

Just as the plain language of Section 1785.25(a) does not include an affirmative duty to disclose that a debt may fall outside the statute of limitations, the plain language of Section 1785.25(a) does not include an affirmative duty to disclose that a creditor may be precluded from obtaining a deficiency judgment against a borrower under Sections 580b and 580d. The language of the statute limits the furnisher's obligation to ensure that information reported concerning a "specific transaction or experience" with the consumer is complete and accurate, and it imposes no broad duty to anticipate and report all potential defenses to a debt. *Cf. Wang*, 681 F. Supp. 2d at 1148-49.

Further, as was true of the statute-of-limitations defense, which the defendant was not affirmatively required to disclose in *Wang*, neither Section 580b nor Section 580d extinguishes the underlying debt; rather they are affirmative defenses that only apply when raised by borrowers in response to an allegedly improper attempt to pursue a personal deficiency judgment. *E.g.*, *Conley v. Matthes*, 56 Cal. App. 4th 1453, 1458 (1997) (Section 580b raised as an affirmative defense); *Simon v. Superior Court*, 4 Cal. App. 4th 63, 66 (1992) (anti-deficiency statutes raised as affirmative defenses to personal liability); *Union Bank v. Wendland*, 54 Cal. App. 3d 393, 398 (1976) (Section 580b raised as an affirmative defense against personal liability); *Am. City Bank v. Zetlen*, 253 Cal. App. 2d 548, 550 (1967) (same); *see generally* Cal. Civ. Proc. Code §§ 580b,

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

580d, 580e (no private right of action created).  Plaintiff does not allege that Ocwen has initiated an action against him to obtain a deficiency judgment, much less that he has asserted Section 580b or 580d in defense thereof.  Accordingly, Section 1785.25(a) imposes no duty to report information to credit reporting agencies regarding the fact that one of Ocwen's potential remedies for collecting the debt is statutorily barred.[4]

### C. Plaintiff Is Barred From Bringing This Suit Because He Did Not List His Claim On His Schedule Of Assets In His Chapter 7 Bankruptcy Proceeding.

#### 1. *Plaintiff Lacks Standing To Bring The Present Suit Because The Claim Remains Property Of The Bankruptcy Estate.*

Plaintiff lacks standing to bring the instant case because his claim remains the property of the bankruptcy estate, and therefore plaintiff is not the real party in interest to this action.  A debtor's pre-petition causes of action are property of the bankruptcy estate and thus must be listed on the debtor's schedule of assets. *Cusano v. Klein*, 264 F.3d 936, 948 (9th Cir. 2001) (declining to find standing as plaintiff's failure to schedule pre-petition claims "vests the claim in the bankruptcy estate").  When submitting his schedule of assets for potential liquidation by the Chapter 7 Trustee, a debtor must list, among those assets, any contingent and unliquidated claims.  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001).  The Chapter 7 Trustee then decides whether to liquidate those assets or release them back to the debtor when the debtor is discharged.  11 U.S.C. § 554(a)-(c).  In the event the Trustee decides not to liquidate an asset, after notice and hearing he or she will file a report of abandonment, abandoning the right to the

---

[4] Plaintiff's CCRAA claim is also subject to dismissal for the additional reason that, as one federal district court found just nine days ago, Cal. Civ. Code § 1785.31, which creates a private right of action for enforcing Section 1785.25(a), extends only to users of information and does not extend to furnishers of information.  *Miller v. Bank of America, Nat'l Ass'n*, No. 11–CV–2588-MMA(BGS), 2012 WL 3962456, *4 (S.D. Cal. Sept. 10, 2012) (dismissing CCRAA claim brought against mortgage servicer).

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

**ER 147**

property.  11 U.S.C. § 554(a).  Thereafter, the property reverts to the debtor.  *See, e.g., In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990) (abandoned property under Section 554 reverts to the debtor as though no bankruptcy petition was filed).  Additionally, properly scheduled property that is unadministered at the close of a bankruptcy case is deemed abandoned by operation of law.  11 U.S.C. § 554(c).

Where a debtor deprives the Bankruptcy Trustee of the opportunity to liquidate an asset by failing to list the asset on the debtor's schedule of assets, that asset continues to belong to the bankruptcy estate and does not revert to the debtor upon discharge.  *Safley v. Wells Fargo, NA*, No. 2:12-CV-00795-JAM-CKD, 2012 WL 2371401, at *5 (E.D. Cal. June 21, 2012) ("Under 11 U.S.C. § 554(d) of the Bankruptcy Code, property not scheduled by the debtor and not abandoned by the estate remains property of the estate even after a discharge is granted."); *see also Stein v. United Artists Corp.*, 691 F.2d 885, 893 (9th Cir. 1982) (observing that title to property in a bankruptcy estate may remain dormant).

This holds true specifically when the unscheduled asset is a cause of action.  *Cusano*, 264 F.3d at 945-946; *see also Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991) (claim could not be abandoned by operation of law because not formally scheduled in bankruptcy proceeding).  In *Cusano*, the debtor, a musician in the band KISS, brought suit against former band mates and companies associated with the band, alleging *inter alia* claims for unpaid royalties.  *Cusano*, 264 F.3d at 941.  While the court concluded that plaintiff had properly listed the underlying asset giving rise to his action for unpaid royalties, "songrights," it nevertheless found that "[c]auses of action are separate assets which must be formally listed. . . .  Simply listing the underlying lying asset out of which the cause of action arises is not sufficient."  *Id.* at 947.  Because plaintiff failed to list the causes of action as assets, the court ruled they did not revert to Cusano at the close of his bankruptcy case, and they instead remained the

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

ER 148

1    property of the estate. *Id.* at 948.

2         Additionally, the Chapter 7 Bankruptcy Trustee holds the exclusive right to

3    sue on behalf of the bankruptcy estate. *See Estate of Spirtos v. One San Bernadino*

4    *Cnty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir.

5    2006) ("We therefore reaffirm our previous reasoning . . . and hold that the

6    bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on

7    behalf of the estate.").[5]  Thus, where a claim is unscheduled—and consequently,

8    undischarged—the debtor is not the real party in interest for that claim, the estate

9    is. *In re Lopez*, 283 B.R. 22, 32 (B.A.P. 9th Cir. 2002) (Klein, Bankr. J.,

10   concurring) ("Thus, in the case of an omitted cause of action, the trustee is the real

11   party in interest . . . .").

12        Here, plaintiff concedes that he became aware of the credit reporting of

13   which he now complains before he filed his Chapter 7 petition.  (Compl. ¶¶17-18

14   ("Plaintiff had no notice of how Ocwen had reported this deficiency until he

15   reviewed his credit report ***in preparation for his bankruptcy*** on or about June 16,

16   2011") (emphasis added).)  This is sufficient to render the claim the property of the

17   bankruptcy estate. *See Hamilton*, 270 F.3d at 784 (debtor need not know all the

18   facts available at the time he files for bankruptcy, only enough to require

19   notification of the asset to the bankruptcy court).  When the asset at issue is a cause

20   of action, the debtor need not know the legal basis for the cause of action; "rather,

21   if the debtor has enough information prior to confirmation to suggest that [he] may

22   have a possible cause of action, then it is a 'known' cause of action such that it

23   must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999).

24        But plaintiff did not list the claim among his assets in his bankruptcy.  (RJN

25

26   _____

27   [5] Chapter 7 bankruptcies differ in this regard from Chapter 13 bankruptcies, in
     which debtors retain standing to assert prepetition causes of action. *See, e.g.*,
     *Bennett v. Flagstar Bank*, No. CV 210–181, 2011 WL 6152940, *2 (S.D. Ga. Dec.

28   8, 2011).

- 10 -

Ex. 1.)[6]  Consequently, the right to bring the present suit was never abandoned by the Chapter 7 Trustee, and thus it remains property of the bankruptcy estate.  *See Johnston v. Discover Bank*, No. SACV-11-00628-JST (JCGx), 2011 WL 2420216, at *2 (C.D. Cal. June 16, 2011) (finding that unscheduled claims belonging to plaintiff who was aware of claims prior to petition lay "dormant" in the bankruptcy estate).  The Chapter 7 Trustee alone, therefore, has standing to pursue this cause of action; plaintiff does not.

During the August 30, 2012 conference of counsel, Ocwen's counsel informed plaintiff's counsel of Ocwen's intention to move to dismiss based on *inter alia* plaintiff's lack of standing.  Recognizing that the claim asserted in this action remains the property of the bankruptcy estate that can only be enforced by the Chapter 7 Trustee, as Ocwen explained, plaintiff moved on September 5, 2012 to reopen his Chapter 7 bankruptcy proceeding and listed this claim in his schedule of assets.  (RJN Ex. 2.)  However, no order of abandonment has been entered; thus the property remains the property of the estate, as it was when plaintiff filed his complaint.  (*See id.*)  Importantly, regardless of whether an order of abandonment is ultimately entered, plaintiff's last-minute maneuvering cannot salvage this action because plaintiff lacked standing to assert this claim at the time he filed his complaint.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (recognizing the "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed"); *Skaff v. Meriden N. Am. Beverly Hills,*

---

[6] On a motion to dismiss, a court can consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  As explained more fully in Ocwen's Request for Judicial Notice, filed herewith, this Court may take judicial notice of documents from sources whose accuracy cannot reasonably be questioned, such as filings in other judicial proceedings.  *See* Fed. R. Evid. 201(b)(2); *Sandres v. Corr. Corp. of Am.*, No. 1:09-cv-1609-OWW-DLB, 2010 WL 4321587, at *2 n.1 (E.D. Cal. Oct. 26, 2010) (taking judicial notice of bankruptcy petition and bankruptcy court docket); *Henry v. Assocs. Home Equity Servs., Inc.*, 272 B.R. 266, 272 (C.D. Cal. 2002) (same).

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

*LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint.") (holding that intervening event since filing of suit does not affect standing analysis). Accordingly, plaintiff's claim must be dismissed.

2.     ***Plaintiff is Judicially Estopped From Asserting This Claim.***

Plaintiff is barred from bringing this claim on the independent basis of judicial estoppel because his asserting this claim here is inconsistent with his previous failure to acknowledge it as an asset when he filed a Chapter 7 bankruptcy petition. "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedule or disclosure statements" because the Bankruptcy Code and Rules impose upon a debtor the express, affirmative duty to disclose all assets, including contingent and unliquidated claims. *Hamilton*, 270 F.3d at 783, 785.   Judicial estoppel bars a claim undisclosed during bankruptcy proceedings when "the debtor has knowledge of enough facts to know that a potential cause of actions exists during the pendency of the bankruptcy, but fails to amend his schedule or disclosure statements to identify the cause of action as a contingent asset." *Id.* at 784.

Plaintiff admits he was aware before he filed his June 2011 Chapter 7 petition of the credit reporting of which he complains in this action, yet he did not disclose the existence of the claim.  (RJN Ex. 1.)  *See Hamilton*, 270 F.3d at 785. Accordingly, plaintiff is judicially estopped from asserting the present action against Ocwen. *See, e.g.*, *Daniel v. Wells Fargo Bank, N.A.*, No. 2:11-cv-02652-MCE-EFB, 2012 WL 2118539, at *4 (E.D. Cal. June 4, 2012) (plaintiffs judicially estopped from asserting claims related to the origination of home loan and subsequent refinancing, both of which occurred prior to bankruptcy petition); *Safley*, 2012 WL 2371401, at *3-5 (plaintiff who was denied debt modification before her bankruptcy proceeding and did not disclose a potential claim stemming

OCWEN'S MOTION TO DISMISS
CV12-7118-DMG-PLA

**ER 151**

1    from that denial as an asset was judicially estopped from bringing suit).[7]

2                       **CONCLUSION**

3        For the foregoing reasons plaintiff's claim should be dismissed with

4    prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5        Dated: September 19, 2012

6                              ELIZABETH L. MCKEEN
                                   DANIELLE N. OAKLEY

7                              EDGAR H. MARTINEZ
                             O'MELVENY & MYERS LLP

8

9                By:           /s/ Elizabeth L. McKeen

10                              Elizabeth L. McKeen
              Attorneys for Defendants

11               Ocwen Loan Servicing, LLC

12

13

14

15

16

17

18

19

---

20    [7] *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (listing non-
exclusive factors a court may consider in deciding whether to apply judicial

21    estoppel to a particular case: (1) "a party's later position must be 'clearly
inconsistent' with its earlier position"; (2) "whether the party has succeeded in

22    persuading a court to accept that party's earlier position"; and (3) "whether the
party seeking to assert an inconsistent position would derive an unfair advantage or

23    impose an unfair detriment on the opposing party if not estopped"). While these
factors are not "inflexible prerequisites or an exhaustive formula" for the

24    application of judicial estoppel, *id.* at 751, all are nevertheless met in the present
case. Failing to disclose this claim as an asset despite his affirmative duty to do so

25    is inconsistent with his present position as a named plaintiff in this action.
Additionally, the bankruptcy court accepted plaintiff's earlier representation as he

26    emerged from bankruptcy in October 2011, having obtained a discharge of his
debt, and plaintiff gained an unfair advantage by not disclosing this action among

27    his assets.

28

                                                    OCWEN'S MOTION TO DISMISS
                                                    CV12-7118-DMG-PLA

**ER 152**

FILED

2012 AUG 17 PM 2: 37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  ELIZABETH L. MCKEEN (S.B. #216690)
   emckeen@omm.com
2  DANIELLE N. OAKLEY (S.B. #246295)
   doakley@omm.com
3  EDGAR H. MARTINEZ (S.B. #255503)
   emartinez@omm.com
4  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
5  Newport Beach, CA 92660
   Telephone:  (949) 760-9600
6  Facsimile:   (949) 823-6994

7  Attorneys for Defendant
   OCWEN LOAN SERVICING, LLC
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. CV12-7118<br><br>**DEFENDANT OCWEN LOAN SERVICING, LLC'S NOTICE OF REMOVAL**<br><br>**(28 U.S.C. §§ 1332, 1441, 1446 & 1453)**<br><br>(Los Angeles County Superior Court Case No. BC 488534)<br><br>[Declaration of Sandra Lyew filed concurrently herewith] |

## <u>NOTICE OF REMOVAL</u>

Defendant Ocwen Loan Servicing, LLC ("Ocwen") hereby removes the above-captioned action from the Superior Court for the State of California, County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. As set forth more fully below, this Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") because plaintiff's complaint commenced litigation that could have been originally filed in this Court pursuant to 28 U.S.C. § 1332(d). As grounds for removal, Ocwen states as follows:

NOTICE OF REMOVAL  CV _____

# I. BACKGROUND

1.     Plaintiff filed this action as a putative class action in the Superior Court for the State of California, County of Los Angeles, on July 17, 2012. The action bears case number BC 488534. A copy of the complaint and all other documents filed in state court are attached hereto as Exhibit A.

2.     Plaintiff served a copy of the complaint and summons on Ocwen on July 19, 2012. Removal is timely because this notice has been filed within 30 days after service as required by 28 U.S.C. § 1446(b).

3.     This action is removed to federal court pursuant to 28 U.S.C. § 1441 because this is a putative class action over which the Court has original jurisdiction pursuant to CAFA.

# II. CAFA JURISDICTION

4.     Federal diversity jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1332(d), as amended by CAFA. Section 1332(d)(2) provides that United States district courts have original jurisdiction over any putative class action (1) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) involving a plaintiff class of 100 or more members; and (3) where at least one member of the plaintiff class is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(1)(B), 1332(d)(2)(A), 1332(d)(5)(B), 1332(d)(6). Plaintiff purports to bring a class action that meets each of these jurisdictional criteria, as discussed below. (Compl. ¶¶ 5, 20 (asserting entitlement to relief on behalf of a class).)

## THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

5.     Here, the amount in controversy exceeds $5 million, exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(6) (under CAFA, the amount in controversy is satisfied if the claims of the putative class exceed, in the aggregate, $5 million, exclusive of interest and costs).

NOTICE OF REMOVAL CV _____

**ER 154**

6.    Plaintiff alleges that he purchased a California residence using a purchase money loan and that this residence was eventually sold via non-judicial foreclosure. (Compl. ¶¶ 1, 16-17.) He alleges that there was a deficiency from the sale of his residence because the proceeds from the foreclosure sale were less than the outstanding balance on his loan. (*Id.*) He contends that under California law, there can be "no deficiency liability" following the non-judicial foreclosure of a California residence or the foreclosure of an owner-occupied residence which was financed with a purchase money mortgage. (*Id.* ¶ 2.) Plaintiff alleges that following the foreclosure sale of his residence, Ocwen reported information to credit reporting agencies indicating that plaintiff was liable for the deficiency after foreclosure. (*Id.* ¶¶ 3, 17-19.) Plaintiff contends that this information was "inaccurate or incomplete" because Ocwen "failed to indicate or disclose that [plaintiff] was not liable for the deficiency from the foreclosure of his home." (*Id.*) As a result of Ocwen's alleged conduct, plaintiff asserts a claim for violation of the California Consumer Credit Reporting Agencies Act, California Civil Code § 1785.25 ("CCRAA"). (*Id.* ¶¶ 19, 31-38.)

7.    Plaintiff alleges that Ocwen similarly violated the CCRAA with respect to a putative class of California borrowers with loan accounts serviced by Ocwen. (*Id.* ¶¶ 20, 29-30.) Specifically, plaintiff alleges that Ocwen provided information to credit reporting agencies indicating that borrowers owed a deficiency following the non-judicial foreclosure sale of their residence or the foreclosure sale of an owner-occupied residential property that was secured by a purchase money loan, and plaintiff contends that such reporting was inaccurate and incomplete because Ocwen failed to indicate or disclose that the putative class members had no liability for these deficiencies. (*Id.* ¶¶ 29-30, 35.)

1.    On the basis of these allegations, plaintiff seeks to certify a class consisting of *inter alia* "[a]ll natural persons residing in California at the time Ocwen Loan Servicing, LLC reported information to TransUnion, Experian, and/or

3        NOTICE OF REMOVAL  CV_____

**ER 155**

1  Equifax which [] indicated that such person was liable for the deficiency from [] a

2  non-judicial foreclosure of a mortgage for a residential property in California."

3  (Compl. ¶ 20.)[1]  Among other relief, plaintiff seeks statutory punitive damages,

4  actual damages, attorneys' fees, and injunctive relief, on behalf of himself and the

5  putative class.  (*Id.* ¶ 38, Prayer for Relief.)

6      2.      Under the CCRAA, "putative class members would be entitled to

7  [p]unitive damages of not less than one hundred dollars ($ 100) nor more than five

8  thousand dollars ($ 5,000) . . ." for willful violations.  *Wang v. Asset Acceptance,*

9  *LLC*, 680 F. Supp. 2d 1122, 1124-25 (N.D. Cal. 2010) (internal quotations omitted)

10  (citing Cal. Civ. Code § 1785.31(a)(2) and denying motion for remand where

11  estimated size of putative class multiplied by minimum amount of punitive

12  damages per class member far exceeded CAFA amount in controversy threshold).

13  (*See* Compl. ¶ 6.)

14      3.      While Ocwen generally denies plaintiff's allegations and further

15  denies that any class could be certified pursuant to Fed. R. Civ. P. 23 or on any

16  other basis, from July 1, 2010 through June 30, 2012, Ocwen engaged in credit

17  reporting for approximately 5,101 California loans where the reporting indicated

18  that a foreclosure sale had occurred on the property secured by the loan.  (Lyew

19  Decl. at ¶ 3.)  For approximately 4,730 of these loans, Ocwen reported a positive

20  balance on the loan account to the three major credit bureaus following foreclosure

21  sale of the property.  (*Id.*)  The overwhelming majority of the foreclosures

22  ─────────────────

23  [1] In full, plaintiff's proposed class definition includes "[A]ll natural persons
residing in California at the time Ocwen Loan Servicing, LLC reported information

24  to TransUnion, Experian, and/or Equifax which (a) indicated that such person was
liable for the deficiency from (i) a non-judicial foreclosure of a mortgage for a

25  residential property in California; *or* (ii) a foreclosure of a purchase money
mortgage for an owner-occupied residential property in California with less than

26  five units; *or* which (b) indicated that such person's liability for a deficiency from
(i) a non-judicial foreclosure of a mortgage for a residential property in California;

27  *or* (ii) a foreclosure of a purchase money mortgage for owner-occupied residential
property in California with less than five units was discharged in bankruptcy when

28  the bankruptcy occurred after foreclosure." (Compl. ¶ 20 (emphasis added).)

4          NOTICE OF REMOVAL CV _____

1    associated with these loans were conducted non-judicially. (*Id.*)  Assuming that

2    plaintiff sought to recover the maximum $5,000 in punitive damages for each such

3    loan,[2] the amount in controversy would well exceed the CAFA threshold of

4    $5 million.[3]  *See Wang*, 680 F. Supp. 2d at 1124-25.

5         4.    With respect to actual damages, plaintiff alleges that he and other

6    members of the putative class suffered actual injury in the form of "emotional

7    distress, declined and reduced credit, forced purchase of credit reports and credit

8    monitoring [services], postage and private courier costs, mileage, long-distance

9    telephone charges, lost cell phone airtime, [and] increased credit costs." (Compl.

10   ¶ 37.)  While Ocwen disputes that plaintiff or any member of the putative class is

11   entitled to recovery of actual damages, when plaintiff's request for actual damages

12   on behalf of himself and the putative class is considered in conjunction with the

13   potential statutory damages at issue, more than $5 million is in controversy here.

14   *See Wang*, 680 F Supp. 2d at 1124 (finding that, although amount of actual

15   damages was unspecified in complaint, amount in controversy threshold would be

16   satisfied even if each putative class member only had a nominal amount of actual

17   damages).

18        5.    The above figures also do not include attorneys' fees, which plaintiff

19   also seeks.  (Compl. ¶ 38, Prayer for Relief.)  Because the fees sought are

20   authorized by statute, an estimate of attorneys' fees may be included in the

21

22   [2] Ocwen contends that plaintiff is not entitled to recover the damages he seeks, but
     the question at issue here is not whether plaintiff may be able to establish liability
23   or prove damages, but whether the amount in controversy exceeds the jurisdictional
     threshold. *Lewis v. Verizon Commc'ns, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010)
24   ("The amount in controversy is simply an estimate of the total amount in dispute,
     not a prospective assessment of defendant's liability.")
25

26   [3] Even assuming that plaintiff sought to recover only half of the punitive damages
     recoverable under the CCRAA, the amount in controversy would be over the
27   jurisdictional threshold of $5 million, even without including any actual damages or
     attorneys' fees, both of which plaintiff seeks and which are properly considered in
28   evaluating the amount in controversy.

5        NOTICE OF REMOVAL CV _____

**ER 157**

1    calculation of amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

2    1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an

3    award of attorneys' fees, either with mandatory or discretionary language, such fees

4    may be included in the amount in controversy."); Cal. Civ. Code § 1785.31(d)

5    (prevailing party in CCRAA action entitled to court costs and attorneys' fees).

6    Accordingly, if attorneys' fees are included in the calculation of the amount in

7    controversy, more than $5 million is in controversy here.

8                    **THE CLASS CONSISTS OF OVER 100 CLASS MEMBERS**

9         6.     As discussed above, plaintiff seeks to certify a class consisting of *inter*

10   *alia* "[a]ll natural persons residing in California at the time Ocwen Loan Servicing,

11   LLC reported information to TransUnion, Experian, and/or Equifax which []

12   indicated that such person was liable for the deficiency from [] a non-judicial

13   foreclosure of a mortgage for a residential property in California." (Compl. ¶ 20.)

14        7.     While Ocwen denies that any class could be certified pursuant to Fed.

15   R. Civ. P. 23 or on any other basis, as explained in paragraph 10 above, the putative

16   class here significantly exceeds 100 members given that, since July 2010, Ocwen

17   has reported positive balances to the three major credit bureaus for approximately

18   4,730 California loans following the foreclosure sale of the property secured by the

19   loan (where the overwhelming majority of these foreclosures were conducted non-

20   judicially). (Lyew Decl. ¶ 3.)

21                 **DIVERSITY OF CITIZENSHIP EXISTS AS REQUIRED BY CAFA**

22        8.     There is a diversity of citizenship between plaintiff and Ocwen.

23        9.     Plaintiff is a resident of California. (Compl. ¶ 7.) Plaintiff has not

24   alleged any alternative state of residence or intent to stay indefinitely in such state.

25   (*See* Compl.) Accordingly, plaintiff is domiciled in California and is therefore a

26   citizen of California. *See Lew v. Moss*, 797 F. 2d 747, 750 (9th Cir. 1986) ("A

27   change in domicile requires the confluence of (a) a physical presence at the new

28   location with (b) an intention to remain there indefinitely."); *State Farm Mut. Auto*

1  *Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is *prima*

2  *facie* the domicile"); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972)

3  ("Where one lives is *prima facie* evidence of domicile") (citing *District of*

4  *Columbia v. Murphy*, 314 U.S. 441, 62 S. Ct. 303, 86 L. Ed. 329 (1941)); *Aqua*

5  *Connect, Inc. v. Code Rebel, LLC*, No. 11-cv-5764, 2011 WL 5075421, *3 n.2

6  (C.D. Cal. Oct. 25, 2011) (same); *Gutterman v. Wachovia Mortg.*, No. CV 11–

7  1611, 2011 WL 2633167, *1 (C.D. Cal. March 31, 2011) (same).

8       10.   Ocwen is a limited liability company organized under the laws of

9  Delaware and having a principal place of business in the State of Florida.  (Lyew

10  Decl. ¶ 2.)  For the purposes of CAFA, an unincorporated association is deemed to

11  be a citizen of the state where it has its principal place of business and the state

12  under whose laws it is organized.  28 U.S.C. § 1332(d)(10); *Ferrell v. Express*

13  *Check Advance of South Carolina, LLC*, 591 F.3d 698, 704 (4th Cir. 2010); *Roling*

14  *v. E\*Trade Sec.*, LLC, 756 F. Supp. 2d 1179, 1184-1185 (N.D. Cal. 2010).

15  Therefore, under CAFA, Ocwen is a citizen of Delaware and Florida.

16       11.   Because plaintiff is a citizen of California and Ocwen is a citizen of

17  Delaware and Florida, at least one class member and one defendant are diverse

18  from one another as required by CAFA.

19               **NONE OF THE EXCEPTIONS TO CAFA APPLIES TO THIS ACTION**

20       12.   CAFA contains a number of exceptions which, where applicable,

21  prevent the Court from exercising jurisdiction over a class action, even where that

22  class action meets CAFA's threshold requirements triggering diversity jurisdiction.

23  None of these exceptions applies to the present case.

24       13.   Under CAFA's "Local Controversy Exception," an action is not

25  removable if (1) more than two-thirds of the class are citizens of the state in which

26  the action was filed; (2) at least one defendant whose conduct forms a significant

27  basis of the claims is a citizen of the state in which the action was filed; (3) the

28  principal injuries occurred in the state where the action was filed; and (4) no class

1  action has been filed alleging the same claims against any of the defendants in the
2  last three years. *See* 28 U.S.C. § 1332(d)(4)(A). This exception is not applicable
3  here because Ocwen is not a citizen of California.

4      14.    Under CAFA's "Home State Exception," an action is not removable if
5  at least two-thirds of class members and all primary defendants are citizens of the
6  state in which the action was filed. *See* 28 U.S.C. § 1332(d)(4)(B). This exception
7  is not applicable here because Ocwen is not a citizen of California.

8      15.    Accordingly, the exceptions to CAFA do not apply to this action and
9  this court has diversity jurisdiction over this action because matter in controversy
10  exceeds the sum or value of $5,000,000, exclusive of interest and cost, the putative
11  class includes 100 or more members, and there is at least one member of the
12  putative class that is a citizen of a state different from any defendant.

13                          **III. VENUE**

14      16.    The Superior Court of the State of California, County of Los Angeles
15  is located within the Central District of California, Western Division. *See* 28
16  U.S.C. § 84(c)(2). Therefore, venue is proper pursuant to 28 U.S.C. § 1441(a)
17  because the District Court for the Central District of California is the "district and
18  division embracing the place where such action is pending."

19                          **V. NOTICE**

20      17.    Pursuant to 28 U.S.C. § 1446(a), concurrently with the filing of this
21  Notice, a copy of this Notice of Removal is being served upon counsel for plaintiff
22  and a copy this Notice of Removal is being filed with the Clerk of the Superior
23  Court of California, County of Los Angeles.

24      WHEREFORE, Ocwen respectfully removes this Action from the Superior
25  Court of California, County of Los Angeles to this Court.

26
27
28

                          8        NOTICE OF REMOVAL CV _____

Dated: August 17, 2012

Respectfully submitted,

O'MELVENY & MYERS LLP
ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
EDGAR H. MARTINEZ



By: _____
        Edgar H. Martinez
Attorneys for Defendant
OCWEN LOAN SERVICING, L.L.C.

9          NOTICE OF REMOVAL  CV _____

**ER 161**

# Exhibit A

# Exhibit A

Jonathan Cothran (259210)
J. COTHRAN LAW OFFICES
2230 West Chapman Avenue, Suite 200
Orange, California 92868
(714) 974-5600
(888) 958-3028
jpcothranlaw@gmail.com

*Attorneys for Plaintiff Jeffrey Kuns, on his own behalf,*
*and on behalf of all others similarly situated*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 17 2012

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Mary Flores

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

JEFFREY KUNS, an individual, on his own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC, a Delaware limited liability companies, and DOES 1-100, inclusive,

    Defendants.

No.    BC 48 8 53 4

UNLIMITED CIVIL ACTION

**CLASS ACTION COMPLAINT**
FOR VIOLATION OF CONSUMER CREDIT REPORTING AGENCIES ACT, CIVIL CODE, § 1785.25(A).

**DEMAND FOR JURY TRIAL**

**BY FAX**

## CLASS ACTION COMPLAINT

    Plaintiff Jeffrey Kuns ("Kuns" or "Plaintiff"), makes this complaint against Defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"), and Does 1 to 100 (collectively, "Defendants"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his counsel's investigation of publicly available documents and interviews with witnesses, and information and belief.

### Introduction

    1.   Kuns purchased a residence in Nevada City, California in June with a purchase money loan. Ocwen serviced the loan. After these sources Kuns was unable to make mortgage payments. Kuns's residence was sold through a non-judicial foreclosure on December 21, 2009. There was a deficiency from sale of the home – that is, the proceeds were less than the amount of the loan and

Class Action Complaint

1   time of the foreclosure.

2       2.      At least two provisions of the California Code of Civil Procedure bar

3   deficiency liability in Kuns's situation. First, there is no deficiency liability on a

4   mortgage after a non-judicial foreclosure:

5           No judgment shall be rendered for any deficiency upon a note secured
            by a deed of trust or mortgage upon real property . . . hereafter
6           executed in any case in which the real property . . . has been sold by
            the mortgagee or trustee under power of sale contained in the
7           mortgage or deed of trust.

8   (Code Civ. Proc., § 580d.) Second, there is no deficiency liability after foreclosure

9   on a purchase money mortgage for a personal residence that is used by less than

10  five families:

11          No deficiency judgment shall lie in any event after a sale of real
            property . . . under a deed of trust or mortgage on a dwelling for not
12          more than four families given to a lender to secure repayment of a
            loan which was in fact used to pay all or part of the purchase price of
13          that dwelling occupied, entirely or in part, by the purchaser.

14  (Code Civ. Proc., § 580b.) Simply put, California law precludes deficiency liability

15  in the situation that Kuns faced.

16      3.      However, after the December 2009 foreclosure, Ocwen furnished

17  information to credit reporting agencies was inaccurate or incomplete because it

18  indicated that Kuns was liable for the deficiency after the foreclosure.

19      4.      The Consumer Credit Reporting Agencies Act ("CCRAA") (Civ.

20  Code, §§ 1785.1 to 1785.36) regulates furnishing information to credit reporting

21  agencies. In particular, the CCRAA prohibits furnishing information on specific

22  transactions "to any consumer credit reporting agency if the person knows or

23  should know the information is incomplete or inaccurate." (Civ. Code, § 1785.25,

24  subd. (a).)

25      5.      Ocwen services mortgage loans on residences throughout California,

26  and many of those mortgages have been foreclosed. On information and belief,

27  Ocwen furnishes information to credit reporting agencies that many consumers

28  owe the deficiencies from the non-judicial foreclosures or foreclosures of purchase

---

Class Action Complaint                          2

money mortgages on residences in California. Ocwen's credit reporting concerning these individuals is inaccurate and incomplete.

6.     Ocwen's practices violate section 1785.25(a) of the CCRAA. On his own behalf and on behalf of all similarly situated persons, Kuns seeks actual damages, statutory punitive damages, and injunctive relief under section 1785.31 of the CCRAA.

### Parties

7.     Plaintiff Jeffrey Kuns is a natural person who resided in Los Angeles County at the times relevant to this complaint. Kuns brings this action on behalf of himself and others similarly situated.

8.     Defendant Ocwen Loan Servicing, LLC is a Delaware limited liability company which maintains offices at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

9.     Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff. On information and belief, all Doe Defendants are citizens of California.

10.     Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and

joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

11. All Defendants, including Does 1 through 100, are collectively referred to as "Defendants" or "Ocwen."

12. Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

### Jurisdiction and Venue

13. This Court may exercise jurisdiction over this case and these parties under Code of Civil Procedure § 410.10. This is a court of general jurisdiction, and the amount in controversy exceeds this court's jurisdictional minimum.

14. Venue in this County is proper under Code of Civil Procedure sections 395.5, because, e.g., Ocwen's liability arose in the County of Los Angeles.

15. All allegations in this complaint are based on information and belief and/or the documents and information currently available and in the hands of Plaintiff's attorneys, and are such that additional evidentiary support and detail will be forthcoming after a reasonable opportunity for further investigation or discovery.

### Kuns's Individual Claims

16. Kuns purchased a residence in California with a purchase money loan. The residence was sold through a non-judicial foreclosure in December 21, 2009.

17. There was a deficiency from the sale of the home – that is, the proceeds were approximately $400,000 less than the amount of the loan at the time of the foreclosure. Immediately prior to filing for bankruptcy in June 16, 2011, he discovered that Ocwen had furnished information to Equifax and possibly other

Class Action Complaint                                    4

credit reporting agencies (collectively, "CRAs") suggesting that Kuns was liable for this deficiency. (In the alternative or in addition, Ocwen did not correct outdated information which misleadingly suggested that Kuns was liable for the deficiency from the foreclosure of his home.) Kuns has no notice of how Ocwen had reported this deficiency until he reviewed his credit report in preparation for his bankruptcy on or about June 16, 2011.

18.    In October 2011, Ocwen reported to Equifax credit reporting agencies that Kuns's liability for the deficiency was eliminated through his June 2011 bankruptcy – again, suggesting that Kuns had liability for the deficiency after Ocwen foreclosed on his home.

19.    The information Ocwen furnished to Equifax was incomplete and inaccurate because it failed to indicate or disclose that Kuns was not liable for the deficiency from the foreclosure of his home. Under Code of Civil Procedure sections 580b and 580d, Kuns was not liable for the deficiency from a non-judicial foreclosure of a personal residence under a purchase money loan. The CCRAA prohibits furnishing information on specific transactions "to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." (Civ. Code, § 1785.25, subd. (a).) Ocwen's credit reporting violated CCRAA section 1785.25.

### Class Certification Allegations

20.    **Class Definition:** Kuns seeks to certify a class and brings this Complaint against the Defendants, pursuant to Code of Civil Procedure section 382, on behalf of himself and the following class:

> All natural persons residing in California at the time Ocwen Loan Servicing, LLC reported information to TransUnion, Experian, and/or Equifax which (a) indicated that such person was liable for the deficiency from
>
> > (i)    a non-judicial foreclosure of a mortgage for a residential property in California; or
> >
> > (ii)    a foreclosure of a purchase money mortgage for an

Class Action Complaint                    5

 

owner-occupied residential property in California with less than five units; or

which (b) indicated that such person's liability for a deficiency from

    (i)    a non-judicial foreclosure of a mortgage for a residential property in California; or

    (ii)    a foreclosure of a purchase money mortgage for an owner-occupied residential property in California with less than five units

was discharged in bankruptcy when the bankruptcy occurred after the foreclosure ("the Class").

To the extent Ocwen asserts that other allegations in this Complaint alter the foregoing class definition, this paragraph and the next paragraph control and supersede all of Plaintiff's other allegations. Excluded from the class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Kuns reserves the right to revise the definition of the Class based on facts learned during discovery. Kuns is a member of the Class that he seeks to represent.

    21.    The Class is narrowly defined. Consistent with the definition of the Class set forth above, Kuns does not allege that all of Ocwen's credit reporting violated the CCRAA. First, the Class is limited to deficiencies arising from either (a) a non-judicial foreclosure of a mortgage on a residential property in California; or (b) a foreclosure of a purchase money mortgage on an owner-occupied residential property in California with less than five units. Most of the mortgages that Ocwen serviced do not fall into either of these categories. Second, the Class only concerns individuals residing in California at the time Ocwen reported the deficiency. Ocwen furnishes information to credit reporting agencies on consumers nationwide; most of Ocwen's credit-reporting does not include California residents.

Class Action Complaint          6



22.  **Class Numerosity:** The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants. Inferring from Ocwen's size and the likely volume of its credit-reporting, Plaintiff asserts that the number of Class members exceeds forty (40), so that individual joinder of all members of the Class is likely to be impracticable. However, based on the allegations in the preceding paragraph, Kuns expressly disavows any allegation that the number of Class members necessarily exceeds forty.

23.  **Class Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members of the Class. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member.

24.  **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is not different in any relevant way from any other member of the Class, and the relief he seeks is common to the Class.

25.  **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class: his interests do not conflict with their interests. Plaintiff has retained counsel competent and experienced in complex class actions, and they intend to prosecute this action vigorously.

26.  **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class

members themselves could sustain such individual litigation, it would still not be
preferable to a class action, because individual litigation would increase the delay
and expense to all parties due to the complex legal and factual controversies
presented in this Complaint. By contrast, class actions present far fewer
management difficulties and provide the benefits of single adjudication, economy
of scale, and comprehensive supervision by a single Court. Economies of time,
effort, and expense will be fostered and uniformity of decisions will be ensured.

27.    **Generally Applicable Policies:** This class action is also appropriate
for certification because Defendants have acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final injunctive relief
or corresponding declaratory relief with respect to the Class as a whole. The
policies of the Defendants challenged herein apply and affect members of the Class
uniformly, and Plaintiff's challenge of these policies hinges on Defendants'
conduct, not on facts or law applicable only to Plaintiff.

28.    **Injunctive Relief is Appropriate:** Based on information and belief,
Ocwen continues to engage in the improper practices discussed above. Injunctive
relief is necessary and appropriate to enjoin Defendants' conduct and to prevent
irreparable harm to Plaintiff and Class members for which they have no adequate
remedy at law.

### Class Allegations

29.    Ocwen services mortgage loans on residences throughout California,
and many of those mortgages have been foreclosed. On information and belief,
Ocwen furnishes information to credit reporting agencies (i.e., TransUnion,
Experian, and Equifax) indicating that Class members owe the deficiencies from
non-judicial foreclosures on the mortgages for residential properties in California
and foreclosures of purchase money mortgages on owner-occupied residential
properties in California with less than five units. On information and belief, Ocwen
also furnishes information to credit reporting agencies indicating that the other

Class Action Complaint                                8

Class members' liability for such deficiencies was discharged in bankruptcy.

30. Under Code of Civil Procedure sections 580b and 580d, Class members are not liable for the foregoing deficiencies. Therefore, Ocwen regularly furnishes inaccurate and incomplete information about these deficiencies to credit reporting agencies. Ocwen's credit reporting violates section 1785.25(a) of the CCRAA.

### FIRST CAUSE OF ACTION: Violation of the Consumer Credit Reporting Agencies Act (Civ. Code, § 1785.25) Against Ocwen by Plaintiff Individually and on Behalf of the Class

31. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

32. TransUnion, Experian, and Equifax are consumer credit reporting agencies, under the meaning of Civil Code section 1785.3, subdivision (d).

33. The CCRAA prohibits persons from furnishing information on specific transactions "to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." (Civ. Code, § 1785.25, subd. (a).)

34. Kuns and the other Class members had mortgages which were foreclosed. Under Code of Civil Procedure sections 580b and 580d, Kuns and the other Class members were not liable for the deficiency from these foreclosures.

35. Ocwen nonetheless furnished information to the CRAs was incomplete and inaccurate because it failed to indicate or disclose that Kuns and the other Class members had no liability for the foregoing deficiencies. The CCRAA prohibits furnishing information on specific transactions "to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." (Civ. Code, § 1785.25, subd. (a).) Defendants violated CCRAA section 1785.25.

36. Defendants intentionally transmitted information concerning the foregoing foreclosures to the credit reporting agencies. Defendants thereby

9

1   willfully violated CCRAA section 1785.25.

2       37.   Kuns and the other members of the Class have suffered actual injury

3   as a result of the Defendants' violations of the CCRAA. These injuries may

4   include emotional distress, declined and reduced credit, forced purchase of credit

5   reports and credit monitoring, postage and private courier costs, mileage, long-

6   distance telephone charges, lost cell phone airtime, increased credit costs, and

7       38.   Kuns and the other members of the Class seek to recover actual and

8   statutory punitive damages, injunctive and equitable relief, and the costs of the

9   action (including attorneys' fees) under Civil Code § 1785.31.

10       WHEREFORE, Plaintiff Jeffrey Kuns prays that the Court enter judgment

11   and orders in his favor and against Ocwen Loan Servicing, LLC and Does 1 to 100

12   as follows:

13       a.   An order certifying the Class, directing that this case proceed as
14          a class action, and appointing Kuns and his counsel to represent the Class;

15       b.   Judgment against Defendants, and in favor of Kuns and the
16          other Class members for actual damages and statutory punitive damages, proven at trial;

17       c.   Equitable and injunctive relief, including injunctions enjoining
18          further violations of the CCRAA;

19       e.   An order granting the costs of the action (including attorneys' fees); and

20       f.   Such other and further relief as this Court may deem
21          appropriate.

22   Dated: July 12, 2012    By: _____

23          Jonathan Cothran (259210)
           J. COTHRAN LAW OFFICES
24          2230 West Chapman Avenue, Suite 200
           Orange, California 92868
25          (714) 974-5600
           (888) 958-3028
26          jpcothranlaw@gmail.com

27          *Attorneys for Plaintiff Jeffrey Kuns, on his own*
           *behalf, and on behalf of all others similarly*
28          *situated*

---

**Class Action Complaint**          10

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 12, 2012        By: _____
                                Jonathan Cothran (259210)
                                J.COTHRAN LAW OFFICES
                                2230 West Chapman Avenue, Suite 200
                                Orange, California 92868
                                (714) 974-5600
                                (888) 958-3028
                                jpcothranlaw@gmail.com

                                *Attorneys for Plaintiff Jeffrey Kuns, on his own*
                                *behalf, and on behalf of all others similarly*
                                *situated*

Jury Demand

07/17/12

Exhibit A, Page 20

**ER 173**

(PLAx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:12-cv-07118-DMG-PLA

Jeffrey Kuns v. Ocwen Loan Servicing, LLC et al
Assigned to: Judge Dolly M. Gee
Referred to: Magistrate Judge Paul L. Abrams
Case in other court:  9th CCA, 13-55562
                  Superior Court of CA, Los
                  Angeles County, BC488534
Cause: 28:1441 Notice of Removal - Fair Credit
Reporting Act

Date Filed: 08/17/2012
Date Terminated: 04/01/2013
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer
Credit
Jurisdiction: Diversity

## Plaintiff

**Jeffrey Kuns**
*an individual, on his own behalf
and on behalf of all others
similarly situtated*

represented by **Ethan Preston**
Preston Law Offices
8245 North 85th Way
Scottsdale, AZ 85258
480-269-9540
Fax: 866- 509-1197
Email: ep@eplaw.us
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**David C Parisi**
Parisi and Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403-1545
818-990-1299
Fax: 818-501-7852
Email:
dcparisi@parisihavens.com
*ATTORNEY TO BE NOTICED*

**Jonathan Patrick Cothran**
Law Offices of Jonathan P
Cothran
2230 W Chapman Ave Suite 228
Orange, CA 92868
714-497-3024
Fax: 888-958-3028
Email: jpccmecf@gmail.com

*ATTORNEY TO BE NOTICED*

**Suzanne Havens-Beckman**
Parisi and Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
818-990-1299
Fax: 818-501-7852
Email:
shavens@parisihavens.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Ocwen Loan Servicing, LLC**<br>*a Delaware limited liability company* | represented by | **Danielle Nicole Oakley**<br>O'Melveny and Myers LLP<br>610 Newport Center Drive Suite 1700<br>Newport Beach, CA 92660-6429<br>949-760-9600<br>Fax: 949-823-6994<br>Email: doakley@omm.com<br>*ATTORNEY TO BE NOTICED* |

**Edgar H Martinez**
O'Melveny and Myers LLP
610 Newport Center Drive Suite 1700
Newport Beach, CA 92660-6429
949-760-9600
Fax: 949-823-6994
Email: emartinez@omm.com
*ATTORNEY TO BE NOTICED*

**Elizabeth Lemond McKeen**
O'Melveny & Myers
610 Newport Ctr Dr, 17th Fl
Newport Beach, CA 92660-6429
949-760-9600
Fax: 949 823 6994
Email: emckeen@omm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*1-100, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/17/2012 | 1 Ⓡ | NOTICE OF REMOVAL from the Superior Court of CA, Los Angeles County, case number BC488534 with CONFORMED copy of complaint. Case assigned to Judge Dolly M. Gee, discovery to Magistrate Judge Paul L Abrams; (Filing fee $ 350 PAID ); filed by defendant Ocwen Loan Servicing, LLC.(esa) (jp). (Entered: 08/20/2012) |
| 08/17/2012 | | COPY OF PROOF OF SERVICE executed by Plaintiff Jeffrey Kuns, upon Defendant Ocwen Loan Servicing, LLC served on 7/19/2012. Service of the Summons and Complaint were executed upon CSC in compliance with statute not specified by service on a domestic corporation. Original Summons NOT returned. (esa) (Entered: 08/20/2012) |
| 08/17/2012 | 2 | CERTIFICATION AND NOTICE OF INTERESTED PARTIES filed by defendant Ocwen Loan Servicing, LLC, identifying Other Affiliate Ocwen Financial Corporation for Ocwen Loan Servicing, LLC. (esa) (jp). (Entered: 08/20/2012) |
| 08/17/2012 | 3 | DECLARATION of SANDRA LYEW in support of Notice of Removal, 1 Ⓡ filed by Defendant Ocwen Loan Servicing, LLC. (esa) (jp). (Entered: 08/20/2012) |
| 08/17/2012 | 4 Ⓡ | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed.(esa) (Entered: 08/20/2012) |
| 08/20/2012 | 5 Ⓡ | NOTICE of Change of Attorney Information for attorney David C Parisi counsel for Plaintiff Jeffrey Kuns. Adding David C. Parisi as attorney as counsel of record for Jeffrey Kuns for the reason indicated in the G-06 Notice. Filed by plaintiff Jeffrey Kuns (Parisi, David) (Entered: 08/20/2012) |
| 08/20/2012 | 6 Ⓡ | NOTICE of Change of Attorney Information for attorney Suzanne Havens-Beckman counsel for Plaintiff Jeffrey Kuns. Adding Suzanne Havens Beckman as attorney as counsel of record for Jeffrey Kuns for the reason indicated in the G-06 Notice. Filed by plaintiff Suzanne Havens Beckman (Havens-Beckman, Suzanne) (Entered: 08/20/2012) |
| 08/20/2012 | 7 Ⓡ | STIPULATION Extending Time to Answer the complaint as to Ocwen Loan Servicing, LLC answer now due 9/19/2012, re Notice of Removal, 1 Ⓡ filed by defendant Ocwen Loan Servicing, LLC.(Martinez, Edgar) (Entered: 08/20/2012) |

| 08/20/2012 | 8 🅁 | PROOF OF SERVICE filed by defendant Ocwen Loan Servicing, LLC, re Notice of Removal, 1 🅁 served on 08/17/2012. (Martinez, Edgar) (Entered: 08/20/2012) |
|---|---|---|
| 08/20/2012 | 9 | NOTICE of Appearance filed by attorney Ethan Preston on behalf of Plaintiff Jeffrey Kuns (Preston, Ethan) (Entered: 08/20/2012) |
| 08/20/2012 | 10 | CERTIFICATE OF SERVICE filed by defendant Ocwen Loan Servicing, LLC, re Notice of Removal, 1 🅁 / *Certificate of Service of Notice to Adverse Party of Removal to Federal Court* served on 08/20/2012. (Attachments: # 1 Exhibit A to Certificate of Service) (Martinez, Edgar) (Entered: 08/20/2012) |
| 08/21/2012 | 11 | INITIAL STANDING ORDER upon filing of the complaint by Judge Dolly M. Gee. (ms) (Entered: 08/21/2012) |
| 08/21/2012 | 12 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Change of Attorney Information (G-06), 5 🅁 , 6 🅁 . The following error(s) was found:See Form G-06, counsel of record for the following party(s) are not specified. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lom) (Entered: 08/21/2012) |
| 09/19/2012 | 13 | NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Class Action Complaint* filed by defendant Ocwen Loan Servicing, LLC. Motion set for hearing on 10/19/2012 at 09:30 AM before Judge Dolly M. Gee. (Attachments: # 1 Ocwen's Request for Judicial Notice, # 2 Declaration Declaration of Danielle N. Oakley in Support of Ocwen's Request for Judicial Notice, # 3 Exhibit 1 to Oakley Declaration, # 4 Exhibit 2 to Oakley Declaration)(McKeen, Elizabeth) (Entered: 09/19/2012) |
| 09/19/2012 | 14 | NOTICE OF LODGING filed re MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 (Attachments: # 1 Exhibit 1 - [Proposed] Order Granting Ocwen's Motion to Dismiss Plaintiff's Class Action Complaint)(McKeen, Elizabeth) (Entered: 09/19/2012) |
| 09/25/2012 | 15 | Joint STIPULATION to Continue Local Rule 23-3 Deadline and Motion to Dismiss from October 17 and October 19, respectively to 30 days after answer and October 26, respectively Re: MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 filed by Plaintiff Jeffrey Kuns. (Attachments: # 1 Proposed Order)(Preston, Ethan) (Entered: 09/25/2012) |
| 09/26/2012 | 16 | ORDER RE STIPULATION TO CONTINUE HEARING ON MOTION TO DISMISS AND DEADLINE FOR MOTION FOR CLASS CERTIFICATION by Judge Dolly M. Gee: Upon Stipulation 15 , IT IS HEREBY ORDERED that the deadline for Plaintiff to file a |

| | | |
|---|---|---|
| | | Motion for Class Certification under Local Rule 23-3 is VACATED. In the event the case survives the motion to dismiss and an answer becomes required, the Court will set the deadline for Plaintiff to file his Motion for Class Certification after Defendant answers the operative complaint in this matter and the Court has set a Scheduling Conference for which the parties will file a Joint Rule 26(f) Report containing a proposed deadline. The hearing for Defendant's Motion to Dismiss 13 shall be continued to 10/26/2012 at 09:30 AM before Judge Dolly M. Gee. The deadlines for Plaintiff's opposition and Defendant's reply for such Motion to Dismiss shall be continued to 10/5/2012 and 10/12/2012, respectively. (gk) (Entered: 09/26/2012) |
| 10/03/2012 | 17 | REQUEST FOR JUDICIAL NOTICE re MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 filed by Plaintiff Jeffrey Kuns. (Attachments: # 1 Certificate of Service)(Preston, Ethan) (Entered: 10/03/2012) |
| 10/05/2012 | 18 | MEMORANDUM in Opposition to MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 filed by Plaintiff Jeffrey Kuns. (Preston, Ethan) (Entered: 10/05/2012) |
| 10/12/2012 | 19 | RESPONSE IN SUPPORT of MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 filed by Defendant Ocwen Loan Servicing, LLC. (Oakley, Danielle) (Entered: 10/12/2012) |
| 10/25/2012 | 20 | MINUTES OF IN CHAMBERS - ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE REMANDED TO STATE COURT FOR LACK OF SUBJECT MATTER JURISDICTION by Judge Dolly M. Gee: The parties are hereby ORDERED TO SHOW CAUSE why this action should not be remanded to the Los Angeles County Superior Court for lack of subject matter jurisdiction. The parties shall file their responses on or before 11/5/2012. Defendant's pending motion to dismiss is taken under submission pending a resolution of the jurisdictional issue. The 10/26/2012 hearing regarding Defendant's motion to dismiss 13 is hereby VACATED. Court Reporter: Not Reported. (gk) (Entered: 10/25/2012) |
| 11/05/2012 | 21 | RESPONSE filed by Defendant Ocwen Loan Servicing, LLCto Order on Motion to Dismiss Case,, 20 (Oakley, Danielle) (Entered: 11/05/2012) |
| 11/05/2012 | 22 | RESPONSE filed by Plaintiff Jeffrey Kunsto Order on Motion to Dismiss Case,, 20 (Parisi, David) (Entered: 11/05/2012) |
| 11/30/2012 | 23 | MINUTE ORDER IN CHAMBERS by Judge Dolly M. Gee. The parties shall engage in jurisdictional discovery and shall submit a Joint Report to the Court by February 1, 2013 containing their respective positions regarding the amount in controversy. SEE ORDER. (im) (Entered: 12/03/2012) |

| 01/24/2013 | 24 | Joint REQUEST for Protective Order filed by plaintiff Jeffrey Kuns. (Preston, Ethan) (Entered: 01/24/2013) |
|---|---|---|
| 01/28/2013 | 25 | MEMORANDUM AND ORDER RE: PARTIES' PROPOSED STIPULATED PROTECTIVE ORDER by Magistrate Judge Paul L. Abrams: The Court has received and considered the parties' proposed Stipulated Protective Order ("Protective Order"). 24 The Court is unable to adopt the Protective Order as stipulated to by the parties for the followings reasons: (See attached Order.) (es) (Entered: 01/28/2013) |
| 02/01/2013 | 26 | REPORT of Parties' Joint Report On Amount In Controversy filed by Defendant Ocwen Loan Servicing, LLC. (Attachments: # 1 Declaration Of Danielle N. Oakley In Support with Exhibits 1 - 8, # 2 Declaration Of Ethan Preston In Support with Exhibits A - H)(Oakley, Danielle) (Entered: 02/01/2013) |
| 02/08/2013 | 27 | MINUTE ORDER IN CHAMBERS ORDER DISCHARGING ORDER TO SHOW CAUSE by Judge Dolly M. Gee 20 . The October 25, 2012 OSC is hereby DISCHARGED. Plaintiffs request for additional time to complete jurisdictional discovery is DENIED as moot. SEE ORDER. (im) (Entered: 02/08/2013) |
| 02/11/2013 | 28 | SUPPLEMENT to MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 */Notice of Supplemental Authority in Support of Ocwen's Motion to Dismiss Class Action Complaint* filed by Defendant Ocwen Loan Servicing, LLC. (Attachments: # 1 Exhibit A)(Oakley, Danielle) (Entered: 02/11/2013) |
| 02/11/2013 | 29 | RESPONSE IN SUPPORT of MOTION to Dismiss Case *Plaintiff's Class Action Complaint* 13 *Response to Ocwen's Supplement to the Motion to Dismiss* filed by Plaintiff Jeffrey Kuns. (Attachments: # 1 Certificate of Service)(Preston, Ethan) (Entered: 02/11/2013) |
| 03/20/2013 | 30 | NOTICE Notice of Supplemental Authority filed by Plaintiff Jeffrey Kuns. (Attachments: # 1 Certificate of Service)(Preston, Ethan) (Entered: 03/20/2013) |
| 03/21/2013 | 31 | RESPONSE filed by Defendant Ocwen Loan Servicing, LLCto Notice (Other) 30 (Oakley, Danielle) (Entered: 03/21/2013) |
| 04/01/2013 | 32 | MINUTES OF IN CHAMBERS - ORDER GRANTING DEFENDANT'S MOTION TO DISMISS by Judge Dolly M. Gee: Defendant's Motion to Dismiss 13 is GRANTED and Plaintiff's Complaint is DISMISSED with prejudice. ( MD JS-6. Case Terminated ) Court Reporter: Not Reported. (gk) (Entered: 04/01/2013) |
| 04/04/2013 | 33 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff Jeffrey Kuns. Appeal of Order on Motion to Dismiss Case, 32 (Appeal fee of $455 receipt number 0973-11912976 paid.) (Preston, Ethan) (Entered: |

| | | 04/04/2013) |
|---|---|---|
| 04/04/2013 | 34 | NOTIFICATION by Circuit Court of Appellate Docket Number 13-55562 9th CCA regarding Notice of Appeal to 9th Circuit Court of Appeals 33 as to Plainitff Jeffrey Kuns. (dmap) (Entered: 04/08/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/20/2013 16:04:31 | | |
| **PACER Login:** | ep0290 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-cv-07118-DMG-PLA End date: 6/20/2013 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 4, 2013    By: _____ s/David C. Parisi _____
David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff-Appellee Jeffrey Kuns*