Appeal No. 13-55562

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————

*Jeffrey Kuns, Plaintiff and Appellant,*

*v.*

*Ocwen Loan Servicing, LLC, Defendant and Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE DOLLY M. GEE, JUDGE
CASE NO. 2:12-CV-07118-DMG-PLA

———————

## ANSWERING BRIEF OF APPELLEE OCWEN LOAN SERVICING, LLC

———————

O'MELVENY & MYERS LLP
ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
610 NEWPORT CENTER DRIVE, 17TH FLOOR
NEWPORT BEACH, CALIFORNIA  92660-6429
TELEPHONE:    (949) 823-6900
FACSIMILE:    (949) 823-6994

*Attorneys for Appellee Ocwen Loan Servicing, LLC*

## CORPORATE DISCLOSURE STATEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is a wholly owned subsidiary of Ocwen Mortgage Servicing, Inc., which is a wholly owned subsidiary of Ocwen Financial Corporation, a publicly traded company.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ....................................................................4

SUMMARY OF ARGUMENT ..............................................................5

STANDARD OF REVIEW ...................................................................7

ARGUMENT .......................................................................................8

I.    THE DISTRICT COURT PROPERLY DISMISSED KUNS'S
CCRAA CLAIM BECAUSE KUNS REMAINED LIABLE FOR HIS
DEFICIENCY DEBT AFTER HIS FORECLOSURE. ................................8

    A.    There Was Nothing "Inaccurate" About Ocwen's Reporting
Because Kuns Was Liable For His Deficiency Debt. .........................8

    B.    Ocwen's Reporting Of Kuns's Liability For His Deficiency
Was Complete Because The CCRAA Imposes No Obligation
To Report That Ocwen Could Not Obtain A Deficiency
Judgment. ....................................................................................12

II.    THE "MATERIALLY MISLEADING" STANDARD THAT
APPLIES TO CERTAIN AFFIRMATIVE REPORTING
REQUIREMENTS UNDER THE FCRA DOES NOT APPLY TO
KUNS'S CCRAA CLAIM. ................................................................16

    A.    The "Materially Misleading" Standard Is Intentionally Limited
To Affirmative Reporting Obligations Imposed By The FCRA
That Are Triggered By A Consumer Disputing His Debt. ...............16

    B.    The Alleged Credit Reporting Kuns Challenges Was not
Materially Misleading In Any Event..............................................21

III.    THE DISTRICT COURT PROPERLY DISMISSED KUNS'S
CCRAA CLAIM BASED UPON POST-BANKRUPTCY CREDIT
REPORTING. ...................................................................................25

    A.    Ocwen Completely And Accurately Reported That Kuns's Debt
Was Discharged In Bankruptcy.....................................................25

# TABLE OF CONTENTS
(continued)

**Page**

    B.    Kuns's Claim That Ocwen's Post-Bankruptcy Reporting May Result In His Debt Being Reported For Ten Years Rather Than Seven Was Properly Dismissed.........................................................28

CONCLUSION .....................................................................................................31

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abdelfattah v. Carrington Mortg. Servs.*,
   No. C-12-04656-RMW, 2013 WL 495358 (N.D. Cal. Feb. 7, 2013).......... 21, 22

*Acevado v. Citibank, N.A.*,
   No. 10 Civ. 8030(PGG), 2012 WL 996902 (S.D.N.Y. Mar. 23, 2012) .............31

*Am. City Bank v. Zetlen*,
   253 Cal. App. 2d 548 (1967)................................................................14

*Armsey v. Channel Assocs., Inc.*,
   184 Cal. App. 3d 833 (1986)..........................................................10, 27

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010).......................................................15, 17

*Cisneros v. U.D. Registry, Inc.*,
   39 Cal. App. 4th 548 (1995) ...............................................................20

*Conley v. Matthes*,
   56 Cal. App. 4th 1453(1997) ..............................................................14

*Daley v. A & S Collection Assoc., Inc.*,
   717 F. Supp. 2d 1150 (D. Or. 2010) ...................................................30

*Flores v. San Diego County*,
   206 F.3d 845 (9th Cir. 2000)................................................................7

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995)..................................................................24

*Gorman v. Wolpoff & Abramson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) ...........................................17, 18, 23

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (3d Cir. 2003)....................................................................30

*Guillen v. Bank of Am. Corp.*,
   No. 5:10-cv-05825 EJD (PSG), 2011 WL 4071996 (N.D. Cal. Aug. 31, 2011).10

# TABLE OF AUTHORITIES

(continued)

Page

*Hatch v. Security-First Nat'l Bank*,
   19 Cal. 2d 254 (1942) ...............................................................................10

*Herrera v. LCS Fin. Servs. Corp.*, No. C09–02843 TEH, 2009 WL 2912517 (N.D.
   Cal. Sept. 9, 2009)....................................................................................10

*Herrera v. LCS Fin. Servs. Corp.*,
   No. C09-02843 TEH, 2009 WL 5062192 (N.D. Cal. Dec. 22, 2009) ................10

*In re ATI Techs., Inc. Sec. Litig.*,
   216 F. Supp. 2d 418 (E.D. Pa. 2002) ....................................................24

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ..................................................................7

*In re Kuns*,
   No. 11-BK-36024-RK (Bankr. C.D. Cal.) ..................................................... 12, 26

*In re VeriFone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993).......................................................................7

*Kerivan v. Title Ins. & Trust Co.*,
   147 Cal. App. 3d 225 (1983)....................................................................10

*Koropoulos v. Credit Bureau, Inc.*,
   734 F.2d 37 (D.C. Cir. 1984) ..................................................................23

*Lenox v. Equifax Info. Servs., LLC*,
   No. 05-1501-AA, 2007 WL 1406914 (D. Or. May 7, 2007)...............................24

*Llewellyn v. Allstate Home Loans, Inc.*,
   711 F.3d 1173 (10th Cir. 2013) .............................................................23

*Lucero v. Cenlar FSB*,
   No. C13-0602RSL, 2013 WL 5530526 (W.D. Wash. Oct. 4, 2013)...................19

*McClelland v. Medtronic, Inc.*,
   No. 6:11-cv-1444-Orl-36TBS, --- F. Supp. 2d ---, 2013 WL 2109965 (M.D. Fla.
   May 16, 2013) ..........................................................................................30

# TABLE OF AUTHORITIES
### (continued)

**Page**

*McKell v. Wash. Mut. Inc.*,
  142 Cal. App. 4th 1457 (2006) ...............................................................24

*Merkel v. C.I.R.*,
  192 F.3d 844 (9th Cir. 1999)..................................................................11

*Montgomery v. Wells Fargo Bank*,
  No. C12-3895 TEH, 2012 WL 5497950 (N.D. Cal. Nov. 13, 2012) .................19

*Nelson v. Chase Manhattan Mortg. Corp.*,
  282 F.3d 1057 (9th Cir. 2002) ...............................................................19

*Paduano v. Am. Honda Motor Co., Inc.*,
  169 Cal. App. 4th 1453 (2009) ...............................................................25

*Pareto v. FDIC*,
  139 F.3d 696 (9th Cir. 1998)....................................................................7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007).....................................................................7

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011).....................................................................24

*Portman v. Cnty. of Santa Clara*,
  995 F.2d 898 (9th Cir. 1993)...................................................................29

*Rex v. Chase Home Finance LLC*,
  905 F. Supp. 2d 1111 (C.D. Cal. 2012) .................................................22

*Romo v. Stewart Title of Cal.*,
  35 Cal. App. 4th 1609 (1995) .................................................... 10, 27

*Saunders v. Branch Banking & Trust Co. of Va.*,
  526 F.3d 142 (4th Cir. 2008)...................................................... passim

*Shannon v. Equifax Info. Servs., LLC*,
  764 F. Supp. 2d 714 (E.D. Pa. 2011) .................................................23

*Simon v. Super. Ct.*,
  4 Cal. App. 4th 63 (1992) .......................................................................14

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Smith v. Ohio Sav. Bank, F.S.B.*,
  No. 2:05-cv-1236-LDG-RJJ, 2008 WL 2704719 (D. Nev. July 7, 2008) ..........24

*Texas v. United States*,
  523 U.S. 296 (1998) ................................................................................29

*Union Bank v. Wendland*,
  54 Cal. App. 3d 393 (1976) ....................................................................14

*Wang v. Asset Acceptance, LLC*,
  681 F. Supp. 2d 1143 (N.D. Cal. 2010) ....................................... 13, 14

*Yourke v. Experian Info. Solutions, Inc.*,
  No. C 06-2370 CW, 2007 WL 1795705 (N.D. Cal. June 20, 2007) ...................23

## Statutes

11 U.S.C. § 101(12) ...................................................................................11

11 U.S.C. § 502(b)(1) ................................................................................26

11 U.S.C. § 524(a) ....................................................................................27

11 U.S.C. § 727 .........................................................................................26

11 U.S.C. § 727(b) ............................................................................ 26, 27

15 U.S.C. § 1681 ........................................................................................6

15 U.S.C. § 1681c(4) .................................................................................30

15 U.S.C. § 1681c(5) .................................................................................30

15 U.S.C. § 1681c(a)(1) .............................................................................29

15 U.S.C. § 1681c(a)(4) .............................................................................28

15 U.S.C. § 1681s-2 ...................................................................................19

15 U.S.C. § 1681s-2(a)(3) ..........................................................................18

15 U.S.C. § 1681s-2(b) ..................................................... 14, 17, 18, 19

## TABLE OF AUTHORITIES
(continued)

**Page**

15 U.S.C. § 1681s-2(b)(1)........................................................ 16, 17, 18

15 U.S.C. § 1692 ....................................................................30

28 U.S.C. § 1291 ....................................................................1

28 U.S.C. § 1332(d)(2)(A) .......................................................1

Cal. Code Civ. Proc. § 1785.13(a)(5) ......................................28

Cal. Code Civ. Proc. § 1785.16 ..............................................20

Cal. Code Civ. Proc. § 1785.25(a) .................................... passim

Cal. Code Civ. Proc. § 580b ............................................ passim

Cal. Code Civ. Proc. § 580d ............................................ passim

Cal. Code Civ. Proc. § 580e ....................................................14

**Other Authorities**

*Black's Law Dictionary* (9th ed. 2009)........................................ 11, 27

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................31

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal from the final decision of a district court pursuant to 28 U.S.C. § 1291.  The district court had subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) ("CAFA"), because there exists minimum diversity and the aggregate amount in controversy exceeds $5,000,000.  The district court entered an order dismissing this action with prejudice on April 1, 2013.  Plaintiff-appellant Jeffrey Kuns ("Kuns") timely filed a notice of appeal on April 4, 2013.

## STATEMENT OF ISSUES

1.     Whether the district court properly dismissed Kuns's claim under California Civil Code Section 1785.25(a), holding that as a matter of law it is neither inaccurate nor incomplete to report to credit reporting agencies a deficiency balance, which the parties agree remained due and owing, following a non-judicial foreclosure sale in a way that "suggested Kuns was liable for the deficiency," though it could not be the subject of a deficiency judgment under California's anti-deficiency statutes, California Civil Procedure Code Sections 580b and 580d.

2.     Whether the district court properly dismissed Kuns's claim under California Civil Code Section 1785.25(a) based on Kuns's allegations that Ocwen reported that Kuns's deficiency was discharged via bankruptcy in October 2011 as opposed to discharged via Kuns's foreclosure sale in December 2009, when

Ocwen had the right under California law to seek repayment of the deficiency until Kuns's bankruptcy filing.

### STATEMENT OF THE CASE

On July 17, 2012, Kuns filed this action on behalf of himself and all similarly situated individuals in a putative class action in the Superior Court of the State of California for the County of Los Angeles. (ER 163.) Kuns's complaint named as the sole defendant his mortgage servicer Ocwen Loan Servicing, LLC. (*Id.*) The complaint asserted a single cause of action under California Civil Code Section 1785.25(a) of the Consumer Credit Reporting Agencies Act ("CCRAA"), which prohibits those who furnish information to credit reporting agencies ("CRAs") from providing information that those furnishers know or should know is "incomplete or inaccurate." Ocwen timely removed this action on August 17, 2012. (ER at 153-180.)

Generally, California's anti-deficiency statutes, specifically sections 580b and 580d of the California Civil Code, preclude a mortgagee from obtaining a judgment after a foreclosure sale of residential real property in California for amounts owed in excess of the proceeds of the foreclosure sale. As the basis for his sole claim, Kuns alleged that because these statutes bar deficiency judgments after non-judicial foreclosures, Ocwen was required to note in its reporting of Kuns's debt that Ocwen was barred from seeking a deficiency judgment against

Kuns.  (ER 171; Compl. ¶¶34, 35.)  Kuns alleged that Ocwen's failure to so note

was a violation of Section 1785.25(a).  (*Id.*)  Similarly, Kuns alleged that by

reporting that his deficiency was discharged in bankruptcy — and not at the time

of his foreclosure sale — Ocwen again violated Section 1785.25(a)'s bar on

providing "incomplete or inaccurate" information to CRAs.  (ER 167; Compl.

¶18.)

Ocwen moved to dismiss Kuns's putative class action for failure to state a

claim for which relief can be granted on September 19, 2012.  (ER 133.)  In his

opposition to Ocwen's motion to dismiss, Kuns for the first time advanced a

second theory of liability regarding Ocwen's reporting, claiming that by reporting

the debt as having been extinguished way of his bankruptcy in 2011 as opposed to

extinguished as a result of his foreclosure in 2009, the debt would remain on

Kuns's credit report longer than it should.  (ER 120-21; Opp. at 8-9.)  After the

parties engaged in jurisdictional discovery that satisfied the district court that

CAFA jurisdiction was present, the district court granted Ocwen's motion to

dismiss on April 1, 2013, dismissing Kuns's claim with prejudice as to both of his

theories of liability under the CCRAA.  (ER 11.)  Kuns timely filed a notice of

appeal on April 4, 2013.

## STATEMENT OF FACTS[1]

In June 2005, Kuns purchased a home in Nevada City, California, with a purchase money mortgage ultimately serviced by Ocwen.  (ER 163; Compl. ¶1.) Kuns was not able to meet his obligations under the mortgage and eventually defaulted on the loan.  (*Id.*)  The property was eventually sold at a non-judicial foreclosure sale on or about December 21, 2009.  (*Id.*)  The sale resulted in a deficiency (*i.e.*, the proceeds from the sale were less than Kuns's remaining obligations under the mortgage) of approximately $400,000.  (ER 166-167; Compl. ¶17.)  Kuns alleges that Ocwen reported Kuns's deficiency balance to Equifax and possibly other CRAs "suggesting that Kuns was liable for this deficiency."  (*Id.*)

Kuns filed for bankruptcy under chapter 7 in 2011 and was discharged from bankruptcy in October 2011.  (ER 166-167, Compl. ¶¶17-18.)  He alleges that following his discharge, Ocwen reported to the CRAs that Kuns's deficiency debt had been discharged in his bankruptcy in October 2011.  Kuns claims that Ocwen's reporting of his deficiency—both prior to and following his bankruptcy—was "incomplete or inaccurate" within the meaning of Section 1785.25(a) of the CCRAA because it suggested that he had been liable for the deficiency debt until the time the debt was discharged in bankruptcy rather than, as Kuns contends, the

---

[1] As Kuns's appeal is from the district court's order granting Ocwen's motion to dismiss, the factual allegations set forth herein derive from Kuns's complaint.  The allegations are accepted as true solely for purposes of assessing whether the court appropriately dismissed Kuns's complaint for failure to state a claim.

time his property was foreclosed.  (ER 120-121, Opp. at 8-9.)

## SUMMARY OF ARGUMENT

The thrust of Kuns's sole claim for violation of the CCRAA in this case is that Ocwen allegedly reported his debt—which he concedes he owed—in a manner that "suggested that he was liable" for it.  But under California law, Kuns was in fact liable for his debt until it was discharged in his bankruptcy proceeding. Ocwen's alleged reporting of that very fact cannot support a claim for "inaccurate" or "incomplete" credit reporting.  Therefore, the district court properly dismissed Kuns's claim at the outset.

Kuns concedes that after the foreclosure of his property, the remaining $400,000 deficiency balance remained due and owing.  (Appellant's Br. at 1-2.) He nevertheless challenges Ocwen's reporting of that deficiency balance because Kuns contends that reporting the balance without reporting that the debt could not be the subject of a deficiency judgment "suggest[ed] that Kuns was liable for [the deficiency]."  (ER 166-67; Compl. ¶¶17, 18.)  The problem with Kuns's theory is that as a matter of California law, Kuns was in fact liable for his deficiency debt. Thus Ocwen's reporting, about which Kuns alleges nothing more than that it suggested he was liable for his deficiency balance, was entirely accurate.  It was likewise complete because, as the district court properly held, the fact that California's anti-deficiency statutes may have barred Ocwen from obtaining a

deficiency judgment did not affect Kuns's liability for his debt. Therefore Ocwen was under no obligation to affirmatively report to the CRAs that Kuns's debt was not subject to a deficiency judgment. (*See* Section I, *infra*.)

Kuns further attempts to challenge the credit reporting as "materially misleading," but his attempt to import a "materially misleading" standard from decisions interpreting unrelated provisions of the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), is misplaced. The "materially misleading" standard applies only under the FCRA, not the CCRAA, and in any event is triggered only upon the receipt by a CRA or a furnisher of a consumer's dispute regarding his debt, which is not alleged to have occurred here. (*See* Section II.A., *infra*.) In any event, Ocwen's reporting was not "materially misleading" as a matter of law. (*See* Section II.B., *infra*.)

The district court likewise properly rejected Kuns's claim that there was something "inaccurate" or "incomplete" about Ocwen's allegedly having reported after Kuns's bankruptcy that his debt had been discharged in bankruptcy. Kuns takes the position that his debt had in fact been discharged by way of his foreclosure and that by stating that the discharge occurred in his bankruptcy, Ocwen created a "misleading" impression that he had been liable for his debt up until that point. But like Kuns's first theory of liability, this one fails too because Kuns was personally liable for his debt until it was discharged in bankruptcy.

-6-

Finally, Kuns cannot salvage his claim by erroneously contending that Ocwen's otherwise entirely appropriate credit reporting may result in his debt being reportable for ten years rather than seven under the FCRA.  (*See* Section III, *infra*.)

For each of these reasons, this Court should affirm the district court's dismissal of Kuns's claim with prejudice.

## STANDARD OF REVIEW

A district court's decision to dismiss a complaint for failure to state a claim is subject to *de novo* review.  *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  On review, while the Court should accept a plaintiff's allegations as true, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1013 (9th Cir. 2005) (quoting *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993)).  Additionally, the Court of Appeals may affirm the district court's dismissal for failure to state a claim on any basis fairly supported by the record, even if the district court relied on other grounds or different reasoning in rendering its decision.  *See, e.g.*, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *Flores v. San Diego Cnty.*, 206 F.3d 845, 847 (9th Cir. 2000).

<u>**ARGUMENT**</u>

**I.    THE DISTRICT COURT PROPERLY DISMISSED KUNS'S CCRAA CLAIM BECAUSE KUNS REMAINED LIABLE FOR HIS DEFICIENCY DEBT AFTER HIS FORECLOSURE.**

Kuns contends that Ocwen purportedly violated the Section 1785.25(a) of the CCRAA, which provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate," by "suggesting [in its credit reporting] that Kuns was liable for" the $400,000 deficiency balance that he admits remained due and owing to Ocwen after the foreclosure sale of his mortgaged property.  (ER 166-67; Compl. ¶¶17, 18.)  The district court properly held that as a matter of California law, Kuns was in fact liable for his deficiency balance and that therefore there could be nothing inaccurate or incomplete by reporting as much.

**A.    There Was Nothing "Inaccurate" About Ocwen's Reporting Because Kuns Was Liable For His Deficiency Debt.**

Kuns contends it was erroneous for Ocwen's alleged credit reporting to suggest he was liable for his deficiency balance because—though he concedes his debt remained due and owing after his foreclosure—he nevertheless contends he was not liable for his debt because California's anti-deficiency statutes supposedly extinguished his liability.  (*See* Appellant's Br. at 2.)  Kuns's position is not supported by longstanding California law.

-8-

As the district court held, the anti-deficiency statutes "merely limit remedies available to creditors and do not completely extinguish a debtor's liability for the deficiency."  (ER 10; Order Granting Def.'s Mot. to Dismiss ("Order") at 4.) (emphasis added).)[2]  Kuns concedes, as he must, that Sections 580b and 580d did not eliminate his deficiency debt and that therefore the debt remained due and owing after the foreclosure sale.  (*See* Appellant's Br. at 1 (conceding that the anti-deficiency statutes "do not eliminate Kuns's debt for the deficiency").)  California case law is uniformly in accord.  *E.g.*, *Herrera v. LCS Fin. Servs. Corp.*, No. C09–

---

[2] At the time of the conduct alleged in the complaint, the deficiency statutes Kuns invokes here provided as follows:

> *No deficiency judgment shall lie* in any event after a sale of real property . . . under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied entirely or in part, by the purchaser.

Cal. Code Civ. Proc. § 580b (emphasis added).

> *No judgment shall be rendered* for any deficiency upon a note secured by a deed of trust or mortgage upon real property . . . hereafter executed in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

Cal. Code Civ. Proc. § 580d (emphasis added).  As noted in appellant's opening brief, Section 580b was amended earlier this year, but former Section 580b, which was in effect at the time of the conduct alleged in the complaint, is what applies for purposes of resolving Kuns's dispute.  (Appellant's Br. at 1 n.1)

02843 TEH, 2009 WL 2912517, *7 (N.D. Cal. Sept. 9, 2009) ("Indeed, the California Court of Appeal has observed that the debt itself — and the debtor-creditor relationship — survive foreclosure under section 580b."); *Guillen v. Bank of Am. Corp.*, No. 5:10-cv-05825 EJD (PSG), 2011 WL 4071996, at *8 n.4 (N.D. Cal. Aug. 31, 2011) ("[C]ontinued attempts to collect on the loans [subject to the anti-deficiency statutes] . . . are nonetheless plausible."); *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 1615 n.5 (1995) (California's anti-deficiency laws "do[] not extinguish the debt. The lender retains other remedies for collection of the unpaid balance of the debt."); *Kerivan v. Title Ins. & Trust Co.*, 147 Cal. App. 3d 225, 231 (1983) (finding that an anti-deficiency statute "does not extinguish the permissible deficiency, but merely limits the remedy."); *Hatch v. Security-First Nat'l Bank*, 19 Cal. 2d 254, 260-61 (1942) (holding that California's anti-deficiency statutes operate "solely as a limitation upon the creditor's right to obtain a personal judgment for a deficiency against his debtor"); *Herrera v. LCS Fin. Servs. Corp.*, No. C09-02843 TEH, 2009 WL 5062192, at *4 (N.D. Cal. Dec. 22, 2009) ("*Herrera II*") (explicitly allowing collection attempts on a deficiency balance subject to California's anti-deficiency statutes); *Armsey v. Channel Assocs., Inc.*, 184 Cal. App. 3d 833, 837 (1986) ("While section 580b of the Code of Civil Procedure prohibits a judgment against a debtor following foreclosure, it does not prevent a creditor from realizing on additional security."). This

interpretation squares with the text of the statutes, which on their face merely limit the remedies available to a mortgagee after the foreclosure of property that once secured residential mortgage debt. *See* Cal. Civ. Proc. Code §580b; Cal. Civ. Proc. Code § 580d.

Yet Kuns contends that although his debt remained due and owing, he somehow was not "liable" for it. Plaintiff's contention that a debtor is immunized from "liability" for any debt that is not the proper subject of a deficiency judgment is not consistent with this Court's precedent. The anti-deficiency statutes themselves do not define "liability"—and for good reason: they do not impact liability for the underlying debt in any way. But the authorities to which this Court has previously looked to interpret the term "liability" draw no parallel between liability and the ability to recover the debt by way of a deficiency judgment. In *Merkel v. C.I.R.*, 192 F.3d 844, 848 (9th Cir. 1999), this Court relied on Black's Law Dictionary to interpret "liability" as a "broad legal term . . . including almost every character of hazard or responsibility, absolute, contingent, or likely." *See also Black's Law Dictionary* at 997 (9th ed. 2009) (defining "liability" as *inter alia* "[a] financial or pecuniary obligation"). The bankruptcy code is further instructive in that it includes liability in its definition of the term "debt," which no one disputes existed here. *See* 11 U.S.C. § 101(12) (defining "debt" to mean "liability on a claim").

-11-

In fact, until taking a contrary position became potentially advantageous to him in this litigation, Kuns conceded liability for the deficiency balance remaining after his foreclosure. *In re Kuns*, No. 11-BK-36024-RK (Bankr. C.D. Cal.) (Dkt. No. 1) (Kuns's liabilities schedules filed in support of his chapter 7 petition, listing his second-mortgage deficiency debt as an unsecured claim). Because Kuns was liable for his deficiency debt before it was discharged in bankruptcy, the district court properly dismissed his claim challenging Ocwen's credit reporting, which allegedly "suggested that Kuns was liable" for his deficiency debt.[3]

### B. Ocwen's Reporting Of Kuns's Liability For His Deficiency Was Complete Because The CCRAA Imposes No Obligation To Report That Ocwen Could Not Obtain A Deficiency Judgment.

Based on his erroneous contention that the anti-deficiency statutes eliminated his liability for his debt, Kuns claims Ocwen's reporting of the debt was "incomplete" without some unidentified additional disclosure to the CRAs that, while Kuns's debt remained owing and collectible from him, it was not subject to a

---

[3] Kuns's statement in his opening brief that "Ocwen has admitted to knowing that California's anti-deficiency laws barred Kuns's liability on the deficiency from his mortgage" is false and egregiously misrepresents the discovery responses on which Kuns relies for the statement. The cited request for admission merely requests an admission that "[b]y July 1, 2010, Ocwen was aware of California Code of Civil Procedure section 580b." (ER 87:5-6.) Ocwen responded that "[b]y July 1, 2010, [Ocwen] knew of California Code of Civil Procedure 580b." (ER 88:1-2.) The same request and admission were made with regard to Section 580d. (ER 88:4-28.) At no point has Ocwen ever taken the position that Section 580b or 580d "barred Kuns's liability on the deficiency from his mortgage." (*See* Appellant's Br. at 27.)

-12-

deficiency judgment.  As the district court properly held, Section 1785.25(a)

includes no such affirmative reporting obligation:

> The CCRAA mentions no affirmative duty to report that
> the debt cannot be collected as a deficiency.  Though
> [Ocwen] cannot recover the deficiency in court, the
> balance exists and may be reported as an existing debt as
> a matter of law.

(ER 10-11; Order 4-5.)  To hold otherwise would read into the statute an obligation

upon all furnishers to identify and report every possible legal defense a debtor

could potentially raise in defense to an action to recover on the admittedly valid

debt.  Section 1785.25(a) imposes no duty on Ocwen to report the existence of any

potential defenses—including the anti-deficiency provisions of Sections 580b and

580d—which may only become relevant if a suit were to be filed against the

borrower.  *See Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148-49

(N.D. Cal. 2010) (Section 1785.25(a) does not impose a duty to report information

regarding statute-of-limitations defense that may never be asserted).

In *Wang*, the court considered whether Section 1785.25(a) required a

furnisher to report to CRAs that certain debts were subject to a statute-of-

limitations defense.  *Id.* at 1148.  The court held that the CCRAA imposes no such

affirmative obligation, stating "it is clear from the plain language of [S]ection

1785.25(a) that it contains no duty to report to CRAs that debts are within the

applicable statute of limitations . . . ."  *Id.* at 1148.

Just as the plain language of Section 1785.25(a) does not include an affirmative duty to disclose that the judicial collection of a debt may be barred by the statute of limitations, the plain language of Section 1785.25(a) does not include an affirmative duty to disclose that a creditor may be precluded from obtaining a deficiency judgment. The language of Section 1785.25(a) limits a furnisher's obligation to ensure that information reported concerning a "specific transaction or experience" with the consumer is complete and accurate, and it imposes no broad duty to anticipate and report all potential defenses to a debt. *Cf. Wang*, 681 F. Supp. 2d at 1148-49. The court below agreed:

> If the California legislature wanted to include a creditor's affirmative duty to report that a debt is uncollectible in court, it could have done so, but that statute as written does not support such an interpretation.

(ER 11; Order 5.)[4]

Kuns makes much of the fact that the Fourth Circuit has declined to

---

[4] Further, as was true of the statute-of-limitations defense in *Wang*, which the defendant was not affirmatively required to report, neither Section 580b nor Section 580d extinguishes the underlying debt. Contrary to Kuns's contention, the anti-deficiency statutes are properly asserted as affirmative defenses. *E.g.*, *Conley v. Matthes*, 56 Cal. App. 4th 1453, 1458 (1997) (Section 580b raised as an affirmative defense); *Simon v. Super. Ct.*, 4 Cal. App. 4th 63, 66 (1992) (anti-deficiency statutes raised as affirmative defenses to personal liability); *Union Bank v. Wendland*, 54 Cal. App. 3d 393, 398 (1976) (Section 580b raised as an affirmative defense against personal liability); *Am. City Bank v. Zetlen*, 253 Cal. App. 2d 548, 550 (1967) (same); *see generally* Cal. Civ. Proc. §§ 580b, 580d, 580e (no private right of action created). Nevertheless, the affirmative-defense characteristic of the anti-deficiency statutes is not critical to the analysis, which is simple, that the statute imposes no affirmative reporting obligations.

-14-

articulate a *per se* rule that, under the FCRA, furnishers are never obligated to report affirmative defenses to CRAs. *See Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008). But the affirmative defense at issue in *Saunders* related to the very existence of the debt—disputes regarding which the FCRA expressly requires be reported by furnishers (*see* 15 U.S.C. § 1681s-2(b)). *Id.* at 150. Here, by contrast, Kuns concedes the existence, amount, and collectability of his debt, so the rationale of *Saunders* simply does not apply. (Appellant's Br. at 1 (conceding the existence of a deficiency "some $400,000 less than the outstanding balance of the mortgage"); *Id*. at 14 (conceding that the debt remains collectible through means other than a deficiency judgment).)

Interpreting FCRA requirements imposed upon CRAs, this Court has held that assessing the potential applicability and merit of legal defenses relating to specific debts "is a question for a court to resolve . . . not a job imposed upon consumer reporting agencies by the FCRA." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citations and internal quotations omitted). The same is true for furnishers, which cannot be required to investigate the legal merits of each possible affirmative defense a debtor may raise and report those hypothetical defenses to CRAs.

Because Ocwen accurately and completely reported a $400,000 debt that both parties agree was owing, the district court properly held that Ocwen did not

violate Section 1785.25(a) by reporting Kuns's deficiency in a manner that suggested Ocwen could still collect on the debt which, as a matter of law, it could. Ocwen was under no affirmative duty to add an as-yet undefined notation stating that it could not obtain a deficiency judgment against Kuns.

## II.   THE "MATERIALLY MISLEADING" STANDARD THAT APPLIES TO CERTAIN AFFIRMATIVE REPORTING REQUIREMENTS UNDER THE FCRA DOES NOT APPLY TO KUNS'S CCRAA CLAIM.

Kuns asks this Court to hold as a matter of first impression that the "materially misleading" standard that courts have applied to certain affirmative reporting obligations under the FCRA when a consumer has disputed a debt should apply to non-dispute-related claims under the CCRAA.  Plaintiff's attempt to import a "materially misleading" standard from inapplicable sections of the FCRA should be rejected.

### A.   The "Materially Misleading" Standard Is Intentionally Limited To Affirmative Reporting Obligations Imposed By The FCRA That Are Triggered By A Consumer Disputing His Debt.

The provisions of the FCRA that have been interpreted as including a "materially misleading" standard both relate to reporting obligations that are not triggered until a consumer disputes his debt.  *See* 15 U.S.C. § 1681s-2(b)(1) (providing that if a consumer disputes the validity of a debt or the accuracy of information reported, the furnisher must investigate the dispute and, if the dispute is legitimate, must report to the CRAs the results of the investigation); *Id.* §

1681i(a)(1)(A) (imposing similar requirements on CRAs when a consumer dispute is received). Each of the cases on which Kuns relies in his bid for this Court to read into Section 1785.25(a) a "materially misleading" standard involves one of these two provisions. *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008), and *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), both involved 15 U.S.C. § 1681s-2(b)(1), while *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010), involved Section 1681i(a)(1)(A).

In *Saunders*, plaintiff had contacted his creditor numerous times to dispute the validity of the debt reported by the creditor because the reported balance included illegitimate late fees. 526 F.3d at 145-46. The creditor also reported plaintiff as being in default, though plaintiff had communicated to the creditor numerous times that the default was the direct consequence of the creditor's admitted accounting errors. *Id.* Plaintiff had also lodged a dispute with the CRAs, which in turn inquired of the creditor regarding the dispute. *Id.* Despite the consumer's numerous communications regarding his dispute, the creditor still did not comply with Section 1681s-2(b)(1) and report the results of any investigation to the CRAs. *Id.* at 146. The "materially misleading" analysis only came into play after the court found that the creditor had shirked its affirmative duties in response to an express dispute being raised by the consumer, when the court analyzed whether that failure had resulted in a materially misleading credit report. *Id.* at

-17-

148-49.  That analysis is inapplicable here, where there has been no predicate failure to report affirmatively required information.

*Gorman v. Wolpoff & Abramson, LLP*, likewise involved the express dispute-related reporting obligations of FCRA's Section 1681s-2.  Specifically, the consumer there had a long history of disputing a particular debt both to the CRAs and to his credit-card company.  584 F.3d at 1152-53.  Yet the credit-card company reported the debt as owing without reporting, as it was affirmatively obligated to do under Section 1681s-2(a)(3), that the consumer disputed the debt.  *Id.* at 1152.  Upon realizing the creditor's failure to report his dispute, the consumer disputed the debt yet again, which caused the CRA to inquire of the credit-card company regarding the dispute, which prompted the credit-card company's investigation and related reporting obligations under Section 1681s-2(b)(1).  *Id.*  The credit-card company failed in those obligations in a way that resulted in potentially "materially misleading" credit reporting, in which case summary judgment of the FCRA claim was not appropriate.  *Id.* at 1162-64.  But once again, the "materially misleading" analysis related only to the credit reporting that occurred as a result of the furnisher's failure to report specific information affirmatively mandated by federal law.

Section 1681s-2(b) sets forth the only furnisher requirement under the FCRA for which there is a private right of action.  *Nelson v. Chase Manhattan*

-18-

*Mortg. Corp.*, 282 F.3d 1057, 1059-1060 (9th Cir. 2002). Intending to protect furnishers from being "exposed to suit by any and every consumer dissatisfied with the credit information furnished," Congress drafted into Section 1681s-2(b) a "filtering mechanism" in the form of requiring that a consumer dispute his debt before any furnisher obligations arise thereunder. *Id.* (explaining that 15 U.S.C. § 1681s-2(b) limits furnishers' obligations arising thereunder to circumstances in which the furnisher receives notice of a consumer's dispute); *see also Lucero v. Cenlar FSB*, No. C13-0602RSL, 2013 WL 5530526, at *1 (W.D. Wash. Oct. 4, 2013) ("The duty to investigate and correct arises only after the furnisher receives notice of a dispute from the CRA."). To import the broader "materially misleading" standard from sections of the FCRA that are subject to Congress's intentional "filtering mechanism" to a provision of the CCRAA that is not so constrained would violate the principle that Kuns purports to espouse here that *analogous* provisions of the FCRA can be instructive when interpreting CCRAA provisions.

Kuns relies on *Montgomery v. Wells Fargo Bank*, No. C12-3895 TEH, 2012 WL 5497950 (N.D. Cal. Nov. 13, 2012), as the sole authority supporting his effort to apply the "materially misleading" standard to claims arising under Section 1785.25(a). But the claim at issue in *Montgomery* was that the furnisher failed to reasonably investigate and correct allegedly erroneous reporting after the consumer

had disputed the reporting numerous times.  *Id.* at *1.  Thus, while plaintiff in that case asserted a CCRAA claim in addition to her FCRA claim under Section 1681s-2(b), the "filtering mechanism" of limiting the standard applicable to Section 1681s-2 to cases alleging a deficient response to a consumer dispute remained intact in a way that it does not here, where Kuns's claim does not stem from any purported failure by Ocwen to respond to a consumer dispute.[5]

Limiting the "materially misleading" standard to provisions that impose upon furnishers obligations that are not triggered until a consumer disputes his debt is particularly appropriate because, in those circumstances, the validity of the debt has already been called into question, in which case heightened investigatory and reporting obligations are arguably more justified.  The standard simply does not apply to non-dispute-related claims under the CCRAA, and the district court appropriately refused to apply it to Kuns's claim, applying instead the "accurate and complete" standard that applies under the plain text of the statute.[6]

---

[5] For the same reason, Kuns's reliance on *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548 (1995), which used the term "misleading" when referring to a CRA's obligations under Cal. Civ. Code § 1785.16, is misplaced.  Section 1785.16 of the CCRAA is the analog to Section 1681i of the FCRA and, like that statute, the obligations thereunder are triggered only upon receipt of a dispute from a consumer.

[6] The Court should further reject Kuns's argument that Section 1785.25(a) should be read to invoke a "materially misleading" standard based on the fact that a provision of the CCRAA that is not at issue in this case at all, Section 1785.14, which governs certain conduct of CRAs, *expressly* provides that *those specific* CRA duties are subject to a "maximum possible accuracy" standard.  Kuns's

**B.    The Alleged Credit Reporting Kuns Challenges Was not Materially Misleading In Any Event.**

Even if this Court were to credit Kuns's unprecedented attempt to import the "materially misleading" standard here, his claim would be subject to dismissal because "suggesting [Kuns] is liable" for the debt cannot be materially misleading as a matter of law when, in fact, he was liable for the debt. (*See supra* Section I.A.); *Abdelfattah v. Carrington Mortg. Servs.*, No. C-12-04656-RMW, 2013 WL 495358 (N.D. Cal. Feb. 7, 2013) (dismissing CCRAA claim based on reporting of deficiency balance because, as a matter of California law, deficiency balances remain due and owing after foreclosure).

In *Abdelfattah*, plaintiff's home was sold at a non-judicial foreclosure sale that resulted in a deficiency. *Id*. at *1. Following the sale, the mortgagee continued to report the entire balance of plaintiff's original loan to CRAs despite the fact that the lender had recouped a significant portion of the outstanding loan balance via the foreclosure sale. *Id*. Plaintiff contended that, by virtue of California's anti-deficiency laws, this reporting violated the CCRAA. *Id*. Like the district court here, the *Abdelfattah* court held that the continued reporting of a deficiency balance after a foreclosure sale did not as a matter of law support a

contention that Section 1785.25(a) should be interpreted to include a "materially misleading" standard that does not appear in the statute because an unrelated statute expressly sets forth an entirely different "maximum possible accuracy" standard for conduct not at issue here is entirely unsupported by the statute.

-21-

CCRAA claim.  The claim there proceeded only to the extent plaintiff alleged that the amount the mortgagee reported was not the deficiency amount that actually remained due and owing but was the original loan balance, the majority of which was no longer owed because it had been recouped in the sale of the property securing the loan.  *Id*. at 2 (holding that defendant could report deficiency balance to CRAs even though it "may not be reducible to a judgment").[7]

Kuns argues that whether Ocwen's alleged reporting was likely to create a "misleading impression" is a question of fact that can never be resolved as a matter of law on a motion to dismiss.  Kuns contends that simply because "technically accurate" statements can nevertheless be "materially misleading," his claim was immunized from dismissal and the district court erred in dismissing it. (Appellant's Br. at 15.)  But reliance on an allegedly "misleading impression" as the basis for liability depends upon the "impression" being inaccurate to some extent, which Kuns did not and cannot allege here.

A comparison of the cases Kuns asserts in support of his position is

---

[7] Kuns cites *Rex v. Chase Home Finance LLC*, 905 F. Supp. 2d 1111, 1157 (C.D. Cal. 2012) for the proposition that an "allegation that defendant reported deficiency balance as 'late,' 'charged off,' 'collection' or other derogatory status' to credit reporting agencies" sufficed to state a CCRAA claim, but he neglects to advise this Court that the analysis on which he relied held only that the allegation sufficed to meet the Rule 8 pleading standard.  (Appellant's Br. at 2.)  *Rex* does not address to any extent the arguments presented here, including the argument that because the California anti-deficiency statutes did not extinguish Kuns's debt when the property securing the debt was foreclosed, Ocwen did not violate the CCRAA by allegedly reporting the existence of the deficiency balance.  This issue was not raised in *Rex* at all.

instructive.  In *Saunders*, the technically *accurate statement* that plaintiff's loan

was delinquent and in repossession status nevertheless created an *inaccurate*

*impression* that plaintiff had fallen behind on his loan due to financial

irresponsibility when, in fact, the delinquency was caused by defendant's own

admitted accounting errors.  526 F.3d at 149-50.  Similarly, in *Gorman*, the

technically *accurate statement* that plaintiff's account had been "charged off" as

uncollectable could create the *inaccurate impression* that defendant was financially

irresponsible because he had fallen behind on his payments when, in fact, he had

not made those payments because he disputed the validity of the underlying debt.

584 F.3d at 1163-64.[8]  *See also Smith v. Ohio Sav. Bank, F.S.B.*, No. 2:05-cv-1236-

---

[8] The other cases on which Kuns relies are likewise distinguishable in that in those cases, unlike here, the *impression*s that the plaintiffs sought to avoid were inaccurate despite the fact that the statements creating those impressions were accurate.  *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1185-86 (10th Cir. 2013) (technically accurate statement that plaintiff had not paid his loan created an inaccurate impression that plaintiff was financially irresponsible when plaintiff had alleged that the loan had been refinanced and defendant never received the payoff funds through no fault of plaintiff); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 42 (D.C. Cir. 1984) (technically accurate statement indicating that a debt was unpaid could create inaccurate impression that plaintiff had never paid his loan when, in fact, plaintiff had repaid the debt through a collection agency); *Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714, 722 (E.D. Pa. 2011) (technically correct notation on plaintiff's credit report that he had not paid a telephone bill could create the inaccurate "impression that Plaintiff never even attempted to pay his bill, even though Plaintiff had in fact mailed a check to cover the debt"); *Yourke v. Experian Info. Solutions, Inc.*, No. C 06-2370 CW, 2007 WL 1795705, *5 (N.D. Cal. June 20, 2007) (technically true statement that large tax liens had been filed against plaintiff could create the inaccurate impression that plaintiff "had in fact failed to pay that amount in taxes" when, in

LDG-RJJ, 2008 WL 2704719, at *6-*7 (D. Nev. July 7, 2008) (technically

*accurate statement* that plaintiff's auto loan was listed in a bankruptcy filing could

create the *inaccurate impression* that plaintiff had filed for bankruptcy when, in

fact, it was her husband who had filed for bankruptcy); *see also McKell v. Wash.*

*Mut. Inc.*, 142 Cal. App. 4th 1457, 1471-72 (2006) (*accurate statements* listing the

fees charged for underwriting, wire transfers, and tax services in connection with

plaintiff's home loan could create the *inaccurate impression* that those fees were

the actual costs incurred by defendant in providing those services).

Here, by contrast, the allegedly misleading impression of which Kuns

complains is the "suggest[ion] that Kuns was liable for [the deficiency]," which as

established *supra* Section I.A., he was as a matter of California law.  (ER 166-67;

Compl. ¶¶17, 18.)[9]  In addition to Ocwen's reporting being accurate, which Kuns

---

truth, plaintiff was found not to owe any taxes and was released from those liens).
In *Lenox v. Equifax Info. Servs., LLC*, No. 05-1501-AA, 2007 WL 1406914, *6 (D.
Or. May 7, 2007), on which Kuns also relies, the statement at issue was that
plaintiff's accounts had been "charged off," but in fact they had been paid in full.
[9] While Kuns argues that whether the impression created by a statement is
misleading should always be decided by a jury, this is simply not the case where
that impression is necessarily true as a matter of law.  *Cf. Freeman v. Time, Inc.*,
68 F.3d 285, 288 (9th Cir. 1995) (holding that where there is no dispute as to the
nature of the representations, a district court may properly find that a
representation is not misleading as a matter of law); *Pernod Ricard USA, LLC v.
Bacardi U.S.A., Inc.*, 653 F.3d 241, 252 n.12 (3d Cir. 2011) (holding that courts
should be "more willing to use common sense" when determining if something is
misleading where "rational confusion is not possible"); *In re ATI Techs., Inc. Sec.
Litig.*, 216 F. Supp. 2d 418, 433 (E.D. Pa. 2002) (dismissing Private Securities
Litigation Reform Act claim based on company's announcement of financial

does not challenge, the impression allegedly created thereby is equally accurate and therefore cannot support a claim based on "materially misleading" credit reporting (even if such a claim existed under the CCRAA).

### III. THE DISTRICT COURT PROPERLY DISMISSED KUNS'S CCRAA CLAIM BASED UPON POST-BANKRUPTCY CREDIT REPORTING.

#### A. Ocwen Completely And Accurately Reported That Kuns's Debt Was Discharged In Bankruptcy.

Kuns does not challenge the accuracy of Ocwen's allegedly having reported that his debt was discharged in his chapter 7 bankruptcy proceeding. Rather, Kuns contends that by reporting that his debt had been discharged in bankruptcy, Ocwen created the "misleading impression" that "Kuns had personal liability for that deficiency" until his liability was discharged in bankruptcy. (Appellant's Br. at 31.) But as the district court properly held, Kuns was in fact liable for the deficiency until his personal liability was discharged by operation of law pursuant to the bankruptcy code. (ER at 11; Order at 5 (holding that Ocwen's reporting Kuns's debt as discharged in bankruptcy was not actionable under the CCRAA and rejecting Kuns's contention that "his personal liability for the debt ended upon the foreclosure sale").)

---

performance figures, as figures were not material misrepresentations as a matter of law because they were accurate); *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1470 (2009) (holding that true and accurate representations were not "materially misleading" as a matter of law under California's Unfair Competition Law).

Kuns takes the unprecedented position that the anti-deficiency statutes "discharged" his debt when his mortgage was foreclosed such that there was no liability remaining to be discharged in his chapter 7 bankruptcy. His current position on this issue differs of course from the position he took in his chapter 7 proceeding, in which he listed his mortgage deficiency balance as among his liabilities for which a creditor had an unsecured claim. *In re Kuns*, No. 11-BK-36024-RK (Bankr. C.D. Cal.) (Dkt. No. 1) (Kuns's liabilities schedules filed in support of his chapter 7 petition, listing his second-mortgage deficiency debt as an unsecured claim).

There is simply no support, in the text of the anti-deficiency statutes or elsewhere, for Kuns's contention that he had no liability for his mortgage debt that could have been discharged in his bankruptcy. The bankruptcy code itself makes clear that "discharge," is distinct from any pre-discharge circumstances that had rendered the debt unenforceable. Specifically, 11 U.S.C. § 727 contemplates discharge of debts under chapter 7 even if they were already unenforceable by operation of law. The statute provides that the effect of a chapter 7 discharge is to "discharge[] the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title . . . whether or not a claim based on any such debt or liability is allowed under section 502 of this title." 11 U.S.C. § 727(b). Among the

-26-

"disallowed" debts listed in Section 502 of the bankruptcy code, which are

nevertheless dischargeable under Section 727, are those that are "unenforceable

against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or unmatured."  11

U.S.C. § 502(b)(1).

      In the context of bankruptcy, "discharge" means "the release of a debtor

from monetary obligations upon adjudication of bankruptcy."  *Black's Law

Dictionary* 530 (9th ed. 2009).  As explained above, it is undisputed that Ocwen

retained the ability to collect on Kuns's debt following the foreclosure sale of his

property.  Thus, while Ocwen could not obtain a deficiency judgment against

Kuns, Kuns still had a "monetary obligation" to Ocwen that Ocwen could enforce

through other means.  *See, e.g.*, *Romo*, 35 Cal. App. 4th at 1615 n.5 (California's

anti-deficiency laws "do[] not extinguish the debt.  The lender retains other

remedies for collection of the unpaid balance of the debt."); *Armsey*, 184 Cal. App.

3d at 837 ("While section 580b of the Code of Civil Procedure prohibits a

judgment against a debtor following foreclosure, it does not prevent a creditor from

realizing on additional security.").  It was not until Kuns's discharge from

bankruptcy that this "monetary obligation" was extinguished and Ocwen lost the

ability to attempt to collect the debt.  *See* 11 U.S.C. § 524(a) (enjoining creditors

from collecting on debts that are discharged in bankruptcy); 11 U.S.C. § 727(b)

(discharging a debtor who successfully completes a chapter seven bankruptcy from all debts that arose prior to his filing).

Ocwen retained the ability to collect on Kuns's deficiency (though not through a deficiency judgment) until he was discharged from bankruptcy in October 2011.  Reporting Kuns's debt as discharged at that time was thus totally complete and accurate under Section 1785.25(a) of the CCRAA.

> **B.    Kuns's Claim That Ocwen's Post-Bankruptcy Reporting May Result In His Debt Being Reported For Ten Years Rather Than Seven Was Properly Dismissed.**

Kuns contends that Ocwen's having reported his discharge date as the date on which his debt was discharged in bankruptcy (rather than the date of his foreclosure sale), his debt will be reportable under the FCRA for ten years from the date of the discharge rather than seven years from the date of his foreclosure. Relying on the FCRA, Kuns asserts that his debt should only be reportable until December 2016, seven years after his foreclosure, because 15 U.S.C. § 1681c(a)(4) limits the amount of time "accounts placed for collection or charged to profit and loss" and "other adverse item[s] of information" may appear on a credit report to seven years.[10]  15 U.S.C. § 1681c(a)(4), (5).[11]  Kuns argues that because Ocwen allegedly reported the discharge date as October 2011, when his debt was

_____

[10] As a separate matter, Kuns does not allege that Ocwen charged his debt to profit and loss, so Kuns's reliance on 15 U.S.C. § 1681c(a)(4) is misplaced.

[11] Section 1785.13(a)(5) of the CCRAA provides similarly.  It too applies only to CRAs.

discharged in bankruptcy, the debt is now reportable under the FCRA for ten years. *Id.* § 1681c(a)(1).

However, as a threshold matter, Kuns cannot use the CCRAA to assert a claim based on a purported violation that is not alleged to have occurred yet. Even the seven-year period of time Kuns concedes his debt could appear on his credit report has not yet expired, and he lacks standing to assert a claim based on credit reporting that may or may not occur between 2016 and 2021. *Texas v. United States*, 523 U.S. 296, 300 (1998) (affirming finding that plaintiff's claims were not ripe because "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (citations and internal quotations omitted); *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 903 (9th Cir. 1993) (holding plaintiff's claims were not ripe because they were entirely "hypothetical" and would require the court to engage in "speculation" regarding the behavior of defendants).

Additionally, Kuns's contention is based on an erroneous interpretation of Section 1681c(a)(1). On its face, that section does not, as Kuns argues, extend the period of time that debts discharged in bankruptcy may be reported beyond the timelines otherwise accounted for in the FCRA. Rather, that section says only that the bankruptcy *itself* can be reported for a period of ten years. *Id.* Thus Kuns's theory for relief based on the alleged reporting of the date on which his debt was

-29-

discharged in bankruptcy is unsound.

Moreover, even if something about Ocwen's reporting affected the period for which the debt was reportable under the FCRA, that would not impact whether the reporting itself was "inaccurate" or "incomplete." Kuns cites *Daley v. A & S Collection Assoc., Inc.*, 717 F. Supp. 2d 1150 (D. Or. 2010), for the proposition that "misstatements which cause the CRAs to report adverse information longer than permitted are actionable." (Appellant's Br. at 32.) But *Daley* stands merely for the proposition that where a credit report was inaccurate in its own right, the fact that the inaccuracy resulted in the debt being reported for too long under the FCRA may be considered in relation to plaintiff's claim under the Fair Debt Collection Practices Act ("FDCPA").

Finally, by grounding his claim in the chance that Ocwen may hypothetically report his debt for a period of time longer than that prescribed by Section 1681c(4) and (5) of the FCRA, Kuns is attempting to end run around the fact that the statute only governs conduct by CRAs rather than furnishers. *Cf. Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (3d Cir. 2003) ("Since in this case, . . . no private right of action exists under the relevant statute, the plaintiff[']s efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the [statute]."); *McClelland v. Medtronic, Inc.*, No. 6:11-cv-1444-Orl-36TBS, --- F. Supp. 2d ---, 2013 WL 2109965. *5 (M.D. Fla.

May 16, 2013) (rejecting plaintiff's attempt to pursue a statutory claim for which

there was no private right of action by asserting a common law cause of action);

*Acevado v. Citibank, N.A.*, No. 10 Civ. 8030(PGG), 2012 WL 996902, *10

(S.D.N.Y. Mar. 23, 2012 ("Because Plaintiffs' breach of contract claim 'relies

entirely on incorporating the requirements of a statute with no private right of

action [for damages] . . ., Plaintiffs' claim . . . is precisely the form of 'artful

pleading' . . . that state courts have identified as making an impermissible end run

around statutes with no private right of action.'")

## CONCLUSION

For the foregoing reasons, Ocwen respectfully requests that this Court affirm

the judgment of the district court, dismissing Kuns's claim with prejudice under

Federal Rule of Civil Procedure 12(b)(6).


Dated:  December 4, 2013

ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
O'MELVENY & MYERS LLP


By:     /s/ Elizabeth L. McKeen
          Elizabeth L. McKeen

Attorneys for Appellee
Ocwen Loan Servicing, LLC

## STATEMENT OF RELATED CASES

Ocwen is not aware of any related cases currently pending before this Court.


Dated:  December 4, 2013

ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
O'MELVENY & MYERS LLP


By:   /s/ Elizabeth L. McKeen
      Elizabeth L. McKeen

Attorneys for Appellee
Ocwen Loan Servicing, LLC

**Form 6.**    **Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒    this brief contains  7,952          words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains_____lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒    this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)*   Microsoft Word 2010   *(state font size and name of type style)*  Times New Roman size 14 font, *or*

☐    this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____with *(state number of characters per inch and name of type style)*

_____ .

| | |
|---|---|
| Signature | /s/ Elizabeth L. McKeen |

| | |
|---|---|
| Attorney for | Appellee Ocwen Loan Servicing, LLC |

| | |
|---|---|
| Date | December 4, 2013 |

## Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 4, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.  The following participant is not currently a registered CM/ECF user and is therefore being served via first-class mail:

| | |
|---|---|
| Jonathan Cothran, Esq.<br>J. Cothran Law Offices<br>2230 West Chapman Avenue<br>Suite 200<br>Orange, CA  92868 | |

Dated:  December 4, 2013

ELIZABETH L. MCKEEN
DANIELLE N. OAKLEY
O'MELVENY & MYERS LLP


By:    /s/ Elizabeth L. McKeen
          Elizabeth L. McKeen

Attorneys for Appellee
Ocwen Loan Servicing, LLC